# In the United States Court of Federal Claims

FILED
AUG - 2 2006
U.S. COURT OF FEDERAL CLAIMS

**DANIEL N. NOEL,**
**705 Tupelo Road**
**Edgewood, Maryland 21040,**

***Plaintiff,***

**v.**

**No. 06-** 06-568 C

**THE UNITED STATES OF AMERICA,**
***Defendant.***

## COMPLAINT

### *I. Jurisdiction*

1. This Court has jurisdiction over the Complaint pursuant to 28 U.S.C. § 1491 (the "Tucker Act"), 37 U.S.C. § 204 (the "Military Pay Act") and 10 U.S.C. § 1201.

### *II. The Parties*

2. Plaintiff Daniel N. Noel is a former Sergeant in the Army National Guard.

3. Defendant is the United States of America.

### *III. The Facts*

4. Mr. Noel entered the Army National Guard in 1981. In January of 1988, Mr. Noel was diagnosed with Human Immunodeficiency Virus ("HIV"). Mr. Noel received treatment to manage his HIV infection from Walter Reed Army Medical Center ("Walter Reed"), including a regimen of medication approved by his doctors. Mr. Noel remained on active duty until 1995, serving in the positions of military police officer, personnel administration specialist, and, ultimately, computer analyst.

5. At the time of his diagnosis, Mr. Noel's T-cell count was 617 cells per cubic millimeter. Along with other factors, T-cell counts are routinely used by medical professionals to gauge the

relative strength of a person's immune system. Normal T-cell counts are in the range of 500 and 1,500 cells per cubic millimeter.

6. Notwithstanding the medical treatment and drug therapy he received while on active duty, Mr. Noel's T-cell count steadily fell while he was on active duty. Examinations at Walter Reed revealed that Mr. Noel's T-cell count had fallen to 523 by 1989, and fell further to 331 in February of 1992 and to 243 in August of 1992. An examination in December 1994 showed a slight increase to 284.

7. In January 1995, an examiner for the Medical Evaluation Board at Walter Reed reviewed Mr. Noel's medical records and found that Mr. Noel was "currently in his sixth year since diagnosis of HIV infection and has shown a progressive decline in CD4 [T-cell] count from 500 down to 200. His current CD4 [T-cell] count places him at high risk for developing an opportunistic infection and also has an 80 percent survival of less than five years." The examiner recommended that Mr. Noel's case be submitted for review by the Medical Evaluation Board for potential disability retirement, and the Medical Evaluation Board in turn recommended that his case be referred to the Army Physical Evaluation Board ("PEB") for consideration.

8. On February 21, 1995, an informal PEB found that Mr. Noel was disabled within the meaning of Army Regulation 635-40, Physical Evaluation for Retention, Retirement, or Separation. The informal PEB rated Mr. Noel's disability at 30 percent, but noted that Mr. Noel would actually receive 50 percent of his retired pay base per month until removed from temporarily disabled status. Mr. Noel consented to the informal PEB's findings and he was placed on the Army Temporary Disability Retirement List ("TDRL") effective May 27, 1995.

9. Placement on the TDRL with a rating of 30 percent or more entitles a service member to receive monthly retirement pay calculated using the service member's years of active service and

the percentage disability rating. *See* 10 U.S.C. § 1201 *et seq.* The Directorate of Retired Pay determined that Mr. Noel was entitled to monthly retired pay of $763.00, from which $50.65 would be deducted for federal income tax to result in a net monthly payment of $712.35.

10. In 1996, 1997 and 1998, Mr. Noel underwent periodic medical examinations while on the TDRL, with informal PEBs reviewing Mr. Noel's medical records in each case and concluding that he should remain on the TDRL.

11. Mr. Noel's medical records during this period showed he suffered from a variety of recurrent constitutional systems, including among others: recurrent flu-like symptoms, starting in 1997 and continuing through 2003; diarrhea, diagnosed on May 5, 1994 and episodic since that date; nausea, diagnosed on April 16, 1997; fever and cough, diagnosed on June 9, 1997.

12. In March 1999, Mr. Noel was examined again at Walter Reed. The informal PEB reviewing that examination, however, concluded that a disability rating of 10 percent would more accurately reflect the severity of Mr. Noel's condition rather than the 30 percent rating previously applied. At the time, the 10 percent and 30 percent ratings for HIV-related disability read as follows:

| | |
|---|---|
| 10 percent | Following development of definite medical symptoms, T4 cell count of 200 or more and less than 500, and on approved medication(s); or,<br>With evidence of depression or memory loss with employment limitations. |
| 30 percent | Recurrent constitutional symptoms, intermittent diarrhea, and on approved medication(s); or,<br>Minimum rating T4 cell count less than 200; or,<br>Hairy Cell Leukoplakia; or,<br>Oral Candidiasis. |

38 C.F.R. § 4.88b (1998). The informal PEB found that "[t]here is no evidence of any constitutional symptoms or any history of opportunistic infections" and therefore applied the 10 percent rating. The PEB further found Mr. Noel was unfit to serve based on this 10 percent

rating. On June 2, 1999, the informal PEB therefore recommended that Mr. Noel be removed from the TDRL, which given the finding of unfitness would have resulted in Mr. Noel's discharge from the service.

13. Mr. Noel timely requested a formal hearing to review the informal PEB's recommendations, which was held on August 16, 1999. The formal Board agreed with the informal Board's recommendations that the revised 10 percent rating more accurately reflected the current degree of severity of Mr. Noel's condition. The formal PEB again believed that "[t]here is no evidence of any constitutional systems or any history of opportunistic infections."

14. Mr. Noel submitted a timely rebuttal of the formal PEB's recommendations, which resulted in review of his case by the U.S. Army Physical Disability Agency (the "USAPDA"). During the USAPDA's review of the case, Mr. Noel specifically noted additional guidance that the Veterans Administration ("VA") had issued at the time regarding the appropriate rating of HIV infection. The VA guidance clearly stated that, "[i]f there have been recurrent constitutional symptoms [in the service member's medical history], even if they have responded to appropriate treatment, the minimum rating is 30 percent."

15. The USAPDA reviewed Mr. Noel's rebuttal and considered the VA guidance, but concluded that the guidance did not result in any changes to the PEB's findings. The USAPDA found that Mr. Noel's medical records did not satisfy any of the four criteria for a 30 percent rating (identified in paragraph 12 above). The USAPDA therefore forwarded Mr. Noel's case to the Physical Disability Branch for final disposition.

16. On August 3, 2000, Mr. Noel was removed from the TDRL and, over his objections, discharged from the Army without military disability retirement pay or medical benefits.

17. On August 8, 2001, Mr. Noel applied to the Army Board for the Correction of Military Records ("ABCMR"), asking that the PEB's 10 percent disability rating be corrected. Among other things, Mr. Noel noted that the Department of Defense ("DoD") had adopted the VA's guidance regarding the rating of HIV-related disabilities, explaining in an implementing memorandum that the 30 percent rating "applies whenever such a [constitutional] symptom occurs or has occurred more than once" during the service member's treatment. The DoD had also explained that "[e]xamples [of constitutional symptoms] (not an exhaustive list) include weakness, fatigue, nausea, shortness of breath, loss of appetite, etc." The DoD directed the Secretary of the Army to implement this guidance, who in turn required all Army PEBs to follow the DoD directive.

18. The ABCMR denied Mr. Noel's request to correct the PEB's 10 percent disability rating on December 3, 2002. Among other things, the ABCMR concluded that the PEB and USAPDA had appropriately found that Mr. Noel's medical records showed no history of constitutional symptoms as necessary to grant a 30 percent disability rating. The ABCMR noted, however, that it did not have Mr. Noel's complete medical records. It nonetheless concluded that the PEB itself had reviewed Mr. Noel's underlying medical records and appropriately settled on the 10 percent disability rating.

19. Mr. Noel had not been aware that the ABCMR did not have access to his medical records during its review. During its contemporaneous review of another HIV-related disability case, with facts strikingly similar to Mr. Noel's, ABCMR staff had notified the service member that it was unable to obtain the relevant medical records from the Army, requesting that the service member assist in obtaining those records. No similar request was made of Mr. Noel, nor was

there was any other indication at the time that ABCMR staff did not have Mr. Noel's medical records.

20. On October 17, 2003, Mr. Noel therefore sought reconsideration of the ABCMR's conclusions, noting among other things that the Board had not requested Mr. Noel's medical records during its review and therefore did not have access to complete documentation. Complete medical records were provided, along with a letter from Mr. Noel's physician specifically identifying the constitutional conditions that had been diagnosed over the years, including nausea, recurrent flu-like symptoms, diarrhea, and fevers. The physician also specifically identified an earlier diagnosis of Oral Hairy Leukoplakia. Mr. Noel's medical records thus clearly showed that he satisfied the Army's criteria for a 30 percent disability rating.

21. In the request for reconsideration, it was also noted that the disposition of Mr. Noel's case was inconsistent with the Army treatment of other HIV+ service members who, like Mr. Noel, had been given a 10 percent disability rating by various PEBs in 1999 and 2000. Although the disability ratings in these other cases were raised back to 30 percent by the PEB, USAPDA, or ABCMR, Mr. Noel's disability rating was not.

22. On June 17, 2004, the ABCMR denied the request for reconsideration. Although the ABCMR acknowledged that the 30 percent rating for HIV infection applied whenever a service member has had or currently has recurrent constitutional symptoms, the ABCMR concluded that Mr. Noel's medical records had been available to the Physical Evaluation Board and the USAPDA during their review of the case and that the documents submitted on reconsideration, including the specific identification of constitutional symptoms suffered by Mr. Noel and the diagnosis of Oral Hairy Leukoplakia, provided no compelling evidence that would warrant a change to the ABCMR's original findings.

## *IV. Cause of Action*

23. Plaintiff restates paragraphs 1 through 22 above, as if restated here.

24. The Army Physical Evaluation Board and USAPDA's 10 percent rating of Mr. Noel's HIV-related disability, and the ABCMR's refusal to correct that rating to 30 percent in accordance with controlling guidelines, was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to applicable statutes and regulations.

25. Mr. Noel was therefore wrongfully discharged without retirement pay and benefits, and is entitled to such retirement pay and benefits from the date of his wrongful discharge to the present.

## *V. Relief Requested*

WHEREFORE, Plaintiff respectfully requests that judgment be entered for him for retirement pay from and after the date of his discharge from the Army.

Plaintiff further requests that the Court, as an incident of and collateral to the judgment, also direct the Army to correct Mr. Noel's service and medical records to show that he was retired by reason of disability, with a rating of at least 30 percent, as of the day he was discharged from the Army, and grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Elizabeth Billhimer*
W. Mason Emnett
1440 New York Avenue, NW
Washington, D.C. 20005
(202) 371-7296 tel
(202) 661-8303 fax
ebillhim@probonolaw.com

*Attorney of Record for Plaintiff

August 2, 2006