IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DANIEL N. NOEL,<br><br>Plaintiff<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-568C<br>(Judge Damich) |

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiff, Daniel N. Noel, for lack of subject matter jurisdiction. In the alternative, pursuant to RCFC 52.1, we respectfully request that the Court enter judgment upon the administrative record in favor of the United States. In support of this motion, we rely upon the complaint, the following brief, the appendix attached to this brief, the defendant's statement of facts and the administrative record filed under separate cover.[1]

**STATEMENT OF THE ISSUES**

1. Whether the Court lacks subject matter jurisdiction because Mr. Noel's claim for disability retirement is barred by the statute of limitations.

2. In the alternative, whether the decision of the Army Board for Correction of Military Records denying Mr. Noel's petition for disability retirement was arbitrary, capricious,

---

[1] "App." refers to the appendix filed separately in hard copy. The appendix contains the relevant Army regulation and Department of Defense Directive and Instructions. "AR" refers to the administrative record filed separately today. "Compl." refers to plaintiff's complaint.

unsupported by substantial evidence, or contrary to law.

## STATEMENT OF THE CASE

I. Nature Of The Case

Mr. Noel is a former Sergeant in the Army National Guard. In January 1988, Mr. Noel was diagnosed with Human Immunodeficiency Virus ("HIV"). Mr. Noel continued to serve on active duty in the Army Guard and Reserve ("AGR") until May 1995, when he was found unfit to perform continued military service and placed on the Temporary Disability Retired List ("TDRL") based upon a progressive decline in his T Cell ("CD4") count. Mr. Noel was given a disability rating of 30 percent, the minimum disability rating for HIV in effect at that time. The next year, the Department of Defense ("DoD") abolished the minimum 30 percent disability rating for HIV, and required that each case be evaluated upon its own facts.

After his placement upon the TDRL, Mr. Noel began to undergo antiretroviral therapy and over the next four years, Mr. Noel was asymptomatic, had no opportunistic infections, and his CD4 count increased significantly and stabilized. On September 22, 1999, a Physical Evaluation Board ("PEB") concluded that Mr. Noel should be removed from the TDRL and separated from service with a disability rating of ten percent and severance pay. Mr. Noel appealed this decision, and on July 31, 2000, the United States Army Physical Disability Agency ("USAPDA") affirmed the findings and recommendation of the PEB. On August 3, 2000, Mr. Noel was removed from the TDRL and discharged from service with a disability rating of ten percent.

Mr. Noel appealed this decision to the Army Board for Correction of Military Records ("ABCMR"), which affirmed the conclusions of the PEB on November 12, 2002. The ABCMR

denied Mr. Noel's application for reconsideration on June 10, 2004.

Mr. Noel filed suit in this Court on August 2, 2006. He brings this action pursuant to the Tucker Act, 28 U.S.C. § 1491; the Military Pay Act, 37 U.S.C. § 204; and 10 U.S.C. § 1201.

II. Overview Of The Army Physical Disability Evaluation System

The Army Physical Disability Evaluation System is established by Title 10, United States Code, Chapter 61; DoD Directive 1332.18; and is implemented by Army Regulation ("Army Reg.") 635-40. The Army Physical Disability Evaluation System sets forth policies, responsibilities and the procedures that apply in determining whether a soldier is unfit to reasonably perform the duties of his or her office, grade, rank or rating because of physical disability. Army Reg. 635-40, ¶ 1-1. App. A.

Typically, when a soldier is believed to be unable to perform duty because of a physical disability, he will be referred to an Army Medical Treatment Facility ("MTF") for evaluation. Army Reg. 635-40, ¶ 4-8. Upon referral, the MTF commander will conduct an examination of the soldier. Id. at ¶ 4-9. If it appears that the soldier is not medically qualified to perform duty, the MTF commander will refer the soldier to a Medical Evaluation Board ("MEB"). Id.

A MEB is convened to document a soldier's medical status and duty limitations insofar as duty is affected by the soldier's status. Id. at ¶ 4-10. The MEB will render a decision regarding whether the soldier is medically qualified for retention based upon the criteria set forth in Army Reg. 40-501, Chapter 3. Id. The MEB will prepare a Narrative Summary ("NARSUM") describing the soldier's medical condition and its effect upon his or her ability to perform military duties. Id. at ¶ 4-11. The results of the MEB are provided to the soldier for his or her concurrence, and, if the soldier does not concur with the findings of the MEB, the soldier may

appeal that determination. Id. at ¶ 4-12. If the MEB determines that a soldier does not meet retention standards, the MEB will recommend referral of the soldier to a PEB. Id. at ¶ 4-13.

A PEB, which consists of at least three members, is responsible for evaluating cases of physical disability. Id. at ¶ 4-17(a) and (b). PEBs are fact-finding boards responsible for: (1) investigating the nature, cause, degree of severity and probable permanency of the disability of soldiers whose cases are referred to the PEB; (2) evaluating the physical condition of the soldier against the physical requirements of the soldier's duty; (3) providing a full and fair hearing; and (4) making findings and recommendations to establish the eligibility of a soldier to be separated or retired due to physical disability. Id. at ¶ 4-17(a)(1)-(4). The PEB makes findings and recommendations and determines, among other things: whether the soldier is physically fit to perform duty; whether the disability is of a permanent nature; and whether the disability meets the criteria established by law for compensation. Id. at ¶ 4-19(a)-(g).

Each case is first considered by an informal PEB. Id. at ¶ 4-20. The soldier may concur with the findings of the informal PEB, at which point the Secretary of the Army will approve the findings of the board and it will be forwarded for final disposition. Id. at ¶ 4-20(e). If the soldier nonconcurs with the findings of the informal PEB, he or she may elect to submit a rebuttal. Id. If found unfit by the informal PEB, the soldier may demand a formal hearing by the PEB. Id., DoD Instruction 1332.38.

A formal hearing of the PEB is normally conducted before a board composed of the same members who considered the case informally. Id. at ¶ 4-21(b). The purpose of the formal hearing is to afford the soldier the opportunity to present views, testimony and new evidence. Id. The soldier is entitled to representation by counsel at the formal hearing, and may appear in

person, testify, present evidence and witness testimony, cross-examine witnesses, and submit oral and written argument. Id. at ¶ 4-21. At the conclusion of its analysis, the PEB will issue its findings and recommendations along with a statement of the reasons for finding a soldier is fit or unfit, and if unfit, the basis for the rating on a Department of the Army ("DA") form 199. Id. at ¶ 4-19, 4-21.

If a soldier nonconcurs with a formal PEB's findings, and submits a statement of rebuttal, the case will be reviewed by the USAPDA. Id. at ¶ 4-22. The USAPDA may take the following actions with regard to the PEB proceedings: (1) concur with the findings and recommendations of the PEB, (2) return the case to the PEB for reconsideration, (3) issue revised findings, or (4) refer the case to the Army Physical Disability Appeal Board ("APDAB"). Id. at ¶ 4-22(c)(1)-(4).

If the case is referred to the APDAB, the board will review the case and take one of the following actions: (1) concur with the decision of the USAPDA, (2) concur with the recommendations of the PEB, (3) adopt the recommendations of the minority member of the PEB if the decision was not unanimous, (4) concur with the requests contained in the rebuttal of the soldier, or (5) specify new findings and recommendations. Id. at ¶ 4-25(b)(1)-(5).

If an individual is qualified for disability retirement under 10 U.S.C. § 1201 but his or her disability is not stable, he or she may be placed upon the TDRL. Id. at ¶ 7-2. While on the TDRL, a soldier will undergo periodic medical examinations at least once every eighteen months to determine whether a change has occurred in the disability. Id. at ¶ 7-4. No changes will be made in the disability percentage rating while the soldier is retained on the TDRL, even if the disability becomes materially better or worse. Id. at ¶ 7-20(b). A soldier is to be removed from the TDRL upon the fifth anniversary of the date the soldier's named was placed on the TDRL, or

sooner on the approved recommendation of a PEB. Id. at ¶ 7-11. Upon removal from the TDRL, a soldier will be returned to duty, permanently retired with disability retirement pay, or separated with severance pay. Id. at ¶ 7-11.

Soldiers with less than twenty years of active federal service and who have an impairment which is rated at less than 30 percent disabling are separated with severance pay rather than disability retirement pay. 10 U.S.C. § 1203; Army Reg. 635-40. Army ratings are permanent upon disposition, however the Veterans Administration ("VA") may award compensation for any service-connected impairment, and those ratings may change depending upon the progress of the condition.

## III. Overview Of The Statutory And Regulatory Framework For Disability Processing Of HIV

Congress established the Department of Veterans Affairs Schedule for Rating Disabilities ("VASRD") as the standard under which percentage rating decisions are to be made for disabled military personnel. AR 193. In March 1992, the VA consolidated the ratings used for HIV and Acquired Immune Deficiency Syndrome ("AIDS")-related illnesses into a single VASRD code 6351, providing rating schedules from 0 to 100 percent. 38 C.F.R. § 4.88b, code 6351.

USAPDA Policy Memorandum #9, dated June 6, 1995, provided rating guidance for HIV infection, and referred to the rating schedule published by the VA in March 1992 and the DoD Directive 1332.18 then in effect. AR 309-314. It stated that, in accordance with DoD guidance, soldiers who did not meet medical retention standards for HIV would be found physically unfit and rated at no less than 30 percent. AR 310. It went on to state that the minimum rating of 30 percent applied upon a soldier's removal from the TDRL, even though the soldier's condition

may have improved enough to warrant a zero or ten percent rating. Id.

On November 4, 1996, DoD issued DoD Directive 1332.18 providing the responsibilities for separation or retirement for physical disability. App. B. The directive stated that disability ratings shall be based on the VASRD as implemented by DoD Instructions 1332.38 and 1332.39. App. C-D. On November 14, 1996, DoD issued DoD Instruction 1332.38, with an effective date of May 15, 1997, which provided that when a disability is established as compensable, it will be rated according to the VASRD, DoD Instruction 1332.39, and federal law. App. D.

On November 14, 1996, DoD also issued DoD Instruction 1332.39, which clarified that, although the VASRD is the standard for assigning disability percentage ratings, not all provisions of the VASRD are applicable to the military departments. App. D. Enclosure 2 to that instruction provides that members found unfit because of HIV or AIDS will be rated according to the 6351 VASRD code and the rating scheme in the VASRD. Id. The instruction provided that the minimum rating of 30 percent, which existed prior to the establishment of the VASRD code 6351, was no longer in effect. App.

On May 13, 1997, the USAPDA issued a memorandum to PEB Presidents providing the implementing instructions to DoD Directive 1332.18, and DoD Instructions 1332.38 and 1332.39. AR 308. The USAPDA memorandum stated that MEBs and TDRL examinations with a NARSUM dictation date prior to May 15, 1997 were to be processed according to the 1986 DoD Directive and the current Army Reg. 635-40 insofar as it did not conflict with DoD policy and procedures. Id. It went on to provide that MEBs and TDRL examinations with a NARSUM dictation date on or after May 15, 1997, were to be processed according to the VASRD, the new DoD Instruction (DoD Instruction 1332.39) and any other agency guidance concerning the

condition. Id.

On February 14, 2000, the Office of the Secretary of Defense ("OSD") requested that the VA correct an outdated provision of the VASRD denying eligibility for disability retirement for many military members with advanced HIV disease due to some of the changes in their conditions brought about by Highly Active Anti-Retroviral Therapy ("HAART"). AR 217-219. In short, the VASRD standard for a 30 percent rating for HIV, the minimum rating for the receipt of disability retirement benefits, relied most heavily on a drop in CD4 count below 200. AR 217. The OSD requested that the VASRD standard be revised to provide a 30 percent rating for recurrent constitutional symptoms, intermittent diarrhea, and on approved medication(s), or a minimum rating with CD4 count at any time less than 200, or hairy cell leukoplakia, or oral candidiasis. AR 218. On May 10, 2000, in accordance with the request from OSD, the VASRD guidelines for rating HIV were amended to reflect a 30 percent rating for HIV with recurrent constitutional symptoms. AR 220-222.

On October 18, 2000, the Office of the Under Secretary of Defense provided clarification to the service secretaries regarding the standards for evaluating service members with HIV coming off of the TDRL. AR 223-224. The guidance referred to the new VASRD guidelines for rating HIV issued by the VA on May 10, 2000, and stated that under those guidelines, each case should be resolved on its own facts. AR 224.

## IV. Statement Of The Facts

We respectfully refer the Court to Defendant's Statement of Facts filed with this brief pursuant to RCFC 52.1.

## SUMMARY OF ARGUMENT

Mr. Noel's disability retirement claim is barred by the statute of limitations. A disability retirement claim generally accrues upon the decision of the first competent board denying the claim, which in this case, was the decision of the PEB on September 22, 1999. Mr. Noel's claim expired six years later, on September 22, 2005, in accordance with the applicable statute of limitations proscribed by 28 U.S.C. § 2501. Mr. Noel waited until August 2, 2006, to file his complaint, thus exceeding the statute of limitations by nearly one year. His claim is, therefore, time-barred, and the Court should dismiss his complaint for lack of subject matter jurisdiction.

Alternatively, the Court should grant judgment upon the administrative record in favor of the Government. The ABCMR's decision denying Mr. Noel's claim for disability retirement pay was not arbitrary or capricious, unsupported by substantial evidence, or contrary to law. The ABCMR properly concluded that Mr. Noel did not satisfy the criteria for a 30 percent disability rating, and all appropriate procedures were followed in evaluating his claim for disability retirement.

Moreover, the ABCMR's decision upon reconsideration was reasonable, lawful and supported by substantial evidence. The ABCMR properly fulfilled its role as an appellate authority for the decision of the PEB. The ABCMR provided a detailed review of all of Mr. Noel's records, and correctly concluded that there was no basis for amending its prior decision. Accordingly, the ABCMR did not err as a matter of law and the Court should affirm the ABCMR's denial of relief.

## ARGUMENT

I. The Court Lacks Jurisdiction Because Mr. Noel's Claims Are Barred By The Statute Of Limitations

A. Standard of Review For A Motion To Dismiss

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or on appeal. Booth v. United States, 990 F.2d 617, 720 (Fed. Cir. 1993). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

When deciding a motion to dismiss for lack of subject matter jurisdiction, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). If defendant challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt, 298 U.S. at 189; see also Reynolds, 846 F.2d at 747; Catellus Development Corp. v. United States, 31 Fed. Cl. 399, 404-405 (1994). This Court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

B. Mr. Noel Filed His Claim Outside The Statute Of Limitations

Pursuant to 28 U.S.C. § 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Id. Unlike an ordinary statute of limitations, section 2501 is a jurisdictional condition attached to the Government's waiver of sovereign immunity, and as such must be strictly construed. Soriano v. United States 352 U.S. 270, 273-74 (1957); Hart v. United States, 910 F.2d 815, 819 (Fed. Cir. 1990).

Generally, "claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies the claim or refuses to hear it." Real v. United States, 906 F.2d 1557, 1560 (1990) (citing Friedman v. United States, 310 F.2d 381, 159 Ct.Cl. 1 (1962)); Colon v. United States, 71 Fed. Cl. 473, 481 (citing Chambers v. United States, 417 F.3d 1218, 1223 (Fed. Cir. 2005). The decision of the first statutorily authorized board triggers the accrual date. See Real, 906 F.2d at 1560. "A Physical Evaluation Board is an appropriate board to make a final disability determination, and its decision is adequate to trigger the running of the statute of limitations." Myers v. United States, 50 Fed. Cl. 674, 684 (2001), (citing Real, 906 F.2d at 1560); Aubre v. United States, 40 Fed. Cl. 371, 376 n.6 (1998); Colon v. United States, 35 Fed. Cl. 515, 518 (1996); Fuller v. United States, 14 Cl. Ct. 542, 544 (1988); Steiner v. United States, 9 Cl. Ct. 307, 310 (1986); Bruno v. United States, 214 Ct. Cl. 383, 386-88 (1977).

1. The Decision Of The PEB Caused Mr. Noel's Cause Of Action To Accrue

Here, the PEB's determination constitutes the first competent board's decision. Specifically, the PEB notified Mr. Noel on September 22, 1999, that it affirmed the decision of the formal PEB to remove him from the TDRL and separate him with a disability rating of 10

percent. At this point, Mr. Noel's cause of action accrued. "The PEB is a proper and competent tribunal whose decision is adequate to trigger the running of the statute of limitations." Bricker v. United States, 36 Fed. Cl. 589, 591 (1996), (citing Fuller v. United States 14, Cl. Ct. 542, 544 (1988)). Mr. Noel was armed with all the facts necessary to commence judicial action at the time of this decision of the PEB, and he had six years to vindicate those rights. Because he failed to do so, his claim is time barred.

Even if the Court were to view the decision of the USAPDA as the final decision that triggers the accrual of Mr. Noel's claim, his claim is still time barred. For example, in Bricker, this Court held that the decision of the PEB triggered the statute of limitations to run, but noted that there was some support for the plaintiff's argument that the decision of the USAPDA, rather than the PEB, was the "final decision" which commenced the running of the statute of limitations. 36 Fed. Cl. at 591. Id. In Bricker, as here, that question need not be resolved because both the plaintiff in Bricker and Mr. Noel's claims are barred by the statute of limitations regardless of whether it the decision of the PEB or the USAPDA triggers its commencement. Specifically, the USAPDA affirmed the findings and recommendations of the PEB on July 31, 2000. AR 274. Thus, even if, for the sake of argument only, the statute of limitations commenced on that date, it expired six years later on July 31, 2006. Mr. Noel filed his complaint more than six years later on August 2, 2006, and thus filed out of time.[2]

[2] Mr. Noel obviously believed the decision of the PEB to be a final decision, as he submitted a request for reconsideration to the Assistant Secretary of the Army on July 26, 2000, five days before the USAPDA took action on his claim. AR 272-273. Appeal to the Assistant Secretary of the Army is not a part of the physical disability evaluation system, therefore Mr. Noel must have felt that he had exhausted his appeal rights through that system and final action had been taken on his claim.

2. There Are No Conditions Which Deprive The PEB's Decision Of Finality

For purposes of the statute of limitations, a board's action is not final if (1) the claimant has been misled, (2) the board's decision is tentative and invites reopening, (3) the armed service itself reopens the case, or (4) there are circumstances depriving the action of finality. Bricker, 36 Fed. Cl. at 591, (citing Friedman, 159 Ct. Cl. at 396). However, when a correction board reviews a prior board's decision, the correction board's determination not to correct a soldier's records does not give rise to a new cause of action and create a new period of limitations. Id.

Here, none of the conditions exists that could deprive this action of finality. Mr. Noel does not allege that he was in any way mislead during the PEB proceedings. Indeed, Mr. Noel requested and was given a full hearing, with representation, after the PEB issued its informal decision. Neither the decision of the PEB nor the USAPDA was tentative or invited reopening. Both decisions stated unequivocally that his rebuttal to the findings and recommendation of the formal PEB had been fully considered, but the PEB's findings and recommendations were being affirmed. AR 275, 274.

The Army did not, itself, reopen Mr. Noel's case. Mr. Noel submitted a request for reconsideration to the Assistant Secretary of the Army on July 26, 2000, and that request was referred to the USAPDA for action. AR 272-273. The USAPDA considered the VA rating guidance provided by Mr. Noel, but the case was not reopened by the service itself. Moreover, it is well settled in this Circuit that resort to permissive administrative remedies does not toll the running of the statute of limitations. Martinez v. United States, 333 F. 3d 1295, 1312 (Fed. Cir. 2003). Once the service made a final decision on Mr. Noel's claim, his request for reconsideration of that decision was permissive and does not toll the commencement of the

statute of limitations.

Finally, there are no circumstances depriving this action of finality. Mr. Noel was removed from the TDRL and discharged from the Army on August 3, 2000, in accordance with the decision of the PEB. AR 270, 10. Mr. Noel received severance pay, and has had no military status for the past six years. No circumstances have been alleged that deprive this action of finality. Therefore, because six years has elapsed since the PEB's decision (and, for purposes of argument only, from the USAPDA's decision also), Mr. Noel's claims are time-barred and this Court lacks jurisdiction to consider them.

## II. In The Alternative, The Court Should Grant Judgment Upon The Administrative Record In Favor Of The Government

### A. Standard Of Review For Judgment Upon The Administrative Record

The United States Court of Appeals for the Federal Circuit recently clarified the standard for deciding a motion for judgment upon the administrative record, pursuant to RCFC 52.1[3]. In Bannum, Inc. v. United States, 404 F.3d 1346, 1355 (Fed. Cir. 2005), the court held that courts must "distinguish . . . [a] judgment upon the administrative record from a summary judgment requiring the absence of a genuine issue of material fact." The Bannum court properly observed that while RCFC 56.1(a) (now RCFC 52.1) incorporates the provisions of RCFC 56(a) and (b), it does not incorporate any of the other paragraphs of RCFC 56, including (c) and (d). Id. at 1356-57. As the Federal Circuit noted, the latter omission is significant, as RCFC 56(c) and (d) are concerned with the fundamental questions associated with a motion for summary judgment,

[3] Motions for judgment on the administrative record are now governed by RCFC 52.1. RCFC 52.1 replaced RCFC 56.1 effective June 20, 2006.

specifically whether there exists genuine issues of material fact that preclude a grant of summary judgment and that inferences be weighed in favor of the non-moving party. The Federal Circuit held that the latter principles are inapplicable to a motion for judgment upon the administrative record under RCFC 56.1 (now RCFC 52.1). Id. at 1356. Thus, pursuant to Bannum, the existence of a fact question neither precludes the granting of a motion for judgment nor requires this Court to conduct an evidentiary proceeding. Instead, such fact questions must be resolved by reference to the administrative record, "as if [this Court] were conducting a trial on [that] record." Id. at 1357; see also Doe v. United States, 66 Fed. Cl. 165, 174-75 (2005).

Record review, rather than de novo review, respects the judicial deference owed to the administrative decision maker. In military personnel cases, the particular agency to which deference is owed is the service. Friedman v. United States, 159 Ct. Cl. 1, 9-10 (1962) ("Congress has entrusted the administrators with a large measure of discretion and has in effect established an executive agency as the primary tribunal for determining whether certain adverse action should be taken against the employee.").

The substantial evidence rule is not "intended to negative the function of the [particular agency] as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951).

B. The Court’s Review Of ABCMR Decisions Is Limited

Once a plaintiff has sought relief from a military corrections board, he is bound by that board’s determination. Koretsky v. United States, 57 Fed. Cl. 154, 161 (2003), (quoting

Zavialak v. United States, 29 Fed. Cl. 525 (1993), citing Sanders v. United States, 219 Ct. Cl. 285, 594 F.2d 804 (1979)). The standard of review for military disability retirement claims is well settled in this Court. Mr. Noel has the burden of proving that the ABCMR's decision to deny him relief was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. Myers, 50 Fed. Cl. at 687, (citing Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). Mr. Noel can only meet his considerable burden by presenting "cogent and convincing evidence" that the ABCMR's decision was in error. Dorl v. United States, 200 Ct. Cl. 626, 633 (1973), cert. denied, 414 U.S. 1032 (1973).

This standard of review "does not require a reweighing of evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Heisig, 719 F.2d at 1157. Because the Court of Federal Claims does not sit as a "super correction board," Skinner v. United States, 219 Ct. Cl. 322, 330-31, 592 F.2d 824, 829-830 (1979), the Court of Federal Claims will not substitute its judgment for that of the Secretary. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986), cert. denied, 479 U.S. 853 (1986).

Judicial review in this case is limited to the administrative record before the ABCMR. See Wyatt v. United States, 23 Cl. Ct. 314, 319 (1991); Long v. United States, 12 Cl. Ct. 174, 177 (1987). As a general rule, courts presume civil and military officials in the armed forces act properly and in accordance with the law. Bockoven v. United States, 727 F.2d 1558, 1563 (Fed. Cir.1984), cert. denied, 469 U.S. 880 (1984). Accordingly, the plaintiff bears the burden of overcoming the "strong, but rebuttal, presumption" that the military discharges its duties "correctly, lawfully and in good faith." Bernard v. United States, 59 Fed. Cl. 497, 501 (2004), (quoting Hary v. United States, 223 Ct. Cl. 10, 17 (1980)).

Military determinations as to a soldier's fitness for duty are entitled to substantial deference. "Judicial deference to administrative decisions of fitness for duty of [a] service member is and of right should be the norm." Bernard, 59 Fed. Cl. at 500 (2004), citing Maier v. Orr, 754 F.2d 973, 984 (Fed. Cir. 1985); Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953). Responsibility for determining who is fit or unfit to serve is not a judicial province therefore courts cannot substitute their judgment when reasonable minds could reach different conclusions on the same evidence. Bernard, 59 Fed. Cl. at 501 (2004), (citing Heisig, 719 F.2d at 1156; Rose v. United States, 35 Fed. Cl. 510 (1996); Pomory v. United States, 39 Fed. Cl. 213 (1997)).

### C. The ABCMR's Decision To Deny Mr. Noel's Claim Was Reasonable, Lawful And Fully Substantiated By The Record

The ABCMR's decision to deny Mr. Noel's claim for disability retirement was reasonable, lawful and fully substantiated by the evidence. In a detailed, sixteen-page opinion, the ABCMR outlined all of the plaintiff's contentions, his military history, an explanation of the pertinent law and regulations, and the rationale for its decision. Mr. Noel has not identified any cogent or clearly convincing record evidence that demonstrates that the ABCMR's decision was not supported by the record.

#### 1. The ABCMR Appropriately Affirmed The 10 Percent Disability Rating Awarded By The PEB

Substantial record evidence supports the ABCMR's affirmance of the ten percent disability rating issued by the PEB. Mr. Noel received extensive process in connection with his physical disability proceedings. He was given no less than five opportunities to demonstrate that was entitled to a 30 percent disability rating. However, as the ABCMR correctly concluded, Mr. Noel did not possess any of the debilitating health affects that would warrant more than a ten

percent disability rating.

At each of Mr. Noel's four periodic medical examinations while on the TDRL, he was found to be asymptomatic. AR 354-355, 343-344, 329-330, 305-306. Mr. Noel reported that he was doing well, and was leading an active lifestyle. Mr. Noel does not contend that he was actually seriously ill, indeed, his periodic medical examinations demonstrate that he was actually doing quite well. Instead, Mr. Noel appears to argue that his rating was unfair. However, "[i]t takes more than an unfair rating or simple injustice to merit [the court's] consideration or judicial relief." Myers, 50 Fed. Cl. at 689, n.36.

Indeed, the PEB's decision, affirmed by the ABCMR, correctly determined that Mr. Noel's status fell squarely within the VASRD code providing a ten percent rating. Specifically, the VASRD code 6351 provides for a ten percent disability rating: "[f]ollowing development of definite medical symptoms, T4 cell of 200 or more and less than 500, and on approved medication(s), or; with evidence of depression or memory loss with employment limitations." AR 195. As the ABCMR stated, Mr. Noel's final 1999 TDRL examination revealed that he "had done well since his last examination except for occasional episodes of bronchitis as well as a small perirectal abscess developed in July 1998. He was asymptomatic with his HIV and had a good response in his CD4 count." AR 188. Indeed, his CD4 count in 1999 was 648. Id. The PEB's rating of ten percent reasonably accounts for Mr. Noel's absence of symptoms associated with HIV and his high CD4 count both in 1999 and for the previous four years.

2. Mr. Noel Did Not Meet The Criteria For A 30 Percent Disability Rating

By contrast, Mr. Noel's HIV status did not warrant a 30 percent disability rating, which is reserved for: "[r]ecurrent constitutional symptoms, intermittent diarrhea, and on approved

medication(s), or; minimum rating with T4 cell count less than 200, or Hairy Cell Leukoplakia, or Oral Candidiasis." Id. Mr. Noel appears to argue that if he had any symptoms at all from his HIV, regardless of their nature, he was entitled to a 30 percent disability rating. However, a ten percent disability rating is perfectly appropriate and indeed warranted when an individual is experiencing definite medical symptoms. Thus, the ABCMR correctly found that there is a distinction between medical symptoms and recurrent constitutional symptoms, and Mr. Noel only satisfied the criteria for a 10 percent disability rating.

After the minimum 30 percent disability rating for HIV was abolished in 1996 (pursuant to the October 18, 2000, guidance from the Office of the Under Secretary of Defense), each HIV case was to be evaluated on its own facts and circumstances. AR 224. Mr. Noel does not appear to dispute this.[4] What Mr. Noel does dispute is the ABCMR's (and the PEB's) evaluation of his symptoms as they applied to the rating criteria. Mr. Noel's contentions fall into two general categories: first, that his symptoms warranted a higher disability rating; and second, that the Army was required, as a matter of law, to award him the 30 percent minimum that existed before 1996.

Mr. Noel argued to the ABCMR that his occasional episodes of bronchitis, one incidence of small perirectal abscess, hyperlipidemia and hypercholesterolemia qualify as recurrent constitutional symptoms. AR 204. As the ABCMR correctly concluded, these conditions do not qualify as recurrent constitutional symptoms. AR 197-198. Bronchitis is an illness, not a symptom resulting from his HIV. AR 198. Mr. Noel did not experience weight loss, chronic

[4] Mr. Noel contends AR 207-08, that similarly situated HIV-infected soldiers were treated differently from him. The record does not contain any support for this assertion, nor could it.

cough, sleep deprivation, headaches, shortness of breath, or any other symptom that could be deemed constitutional in connection with these brief episodes of bronchitis. Id.

The ABCMR also properly noted that Mr. Noel had a single episode of perirectal abscess, could not, by its nature, qualify as a recurrent constitutional symptom. AR 198. Moreover, it did not cause any type of infection that required the use of antibiotics. Id. Rather, it was localized, minor, and would not warrant separation with a 30 percent disability rating. "A service member who incurs a disability on active duty is not entitled to a disability retirement unless the disability renders the service member unfit to perform his or her military duties." Myers, 50 Fed. Cl. at 688, n.33, (citing, 10 U.S.C. § 1201).

Similarly, Mr. Noel's hyperlipidemia and hypercholesterolemia, elevated levels of fat and cholesterol in the blood, do not qualify as symptoms because, as the ABCMR correctly concluded, they are conditions diagnosed by laboratory tests and are "not readily apparent" to him. AR 198. Moreover, these conditions were controlled with diet and exercise, and did not at any time affect his exercise tolerance, strength or energy levels. Id. Disability ratings are reserved for conditions which affect an individuals ability to perform their military duties. The mere presence of an impairment does not warrant a disability rating. Army Reg. 635-40, ¶ 3-1. Thus, any condition that has no outward effect upon an individual's overall sense of well-being does not qualify for a disability rating.

In short, there was substantial evidence in the record to support the ABCMR's affirmance of the decision of the PEB. Mr. Noel's disagreement with the PEB's determination and the ABCMR's decision reflects merely his unhappiness with the result, and does not identify any flaw in either boards' analyses or application of his case to the appropriate regulations.

To the extent that Mr. Noel contends that the Army was required by law to award him a 30 percent disability rate, Mr. Noel misinterprets the applicable law. The ABCMR properly rejected Mr. Noel's claim that the USAPDA memorandum to PEB presidents dated May 13, 1997, "grandfathered" the 30 percent minimum rating for HIV cases with a NARSUM dictation date prior to May 15, 1997. Mr. Noel essentially contends that the USAPDA misinterpreted its own policy memorandum.

The plain language of the May 13, 1997, USAPDA Memorandum belies Mr. Noel's contention and states:

> Medical Evaluation Boards (MEBs) and Temporary Retired List (TDRL) examinations with a narrative summary dictation date prior to 15 May 1997 are to be processed according to the 1986 DoD directive and the current AR 635-40, 1 September 1990. This includes any case held by the PEB or temporarily returned to the MTF for additional evidence. The MEBs and TDRL examinations with a narrative summary dictation date on or after 15 May 1997 will be processed according to the new DoD directive and instructions and those provisions of the current AR 635-40 that do not conflict with the DoD policy and procedures.

AR 215 (emphasis added). Mr. Noel repeatedly contends that, because the NARSUM dictation date of his original MEB was January 31, 1995, he was grandfathered by this memorandum into receiving a minimum 30 percent disability rating. He ignores the language in the memorandum that refers to TDRL examination dates. Because his final TDRL examination date was in April 1999, (AR 305-306), Mr. Noel fell under the provision for processing according to the new DoD Directive.

Mr. Noel's interpretation of this policy memorandum conflicts with the DoD Directive,

which is binding upon the services. DoD mandated that the services no longer apply a minimum 30 percent disability rating for cases of HIV, and the USAPDA did not have the authority to issue guidance in conflict with that directive. Given this framework, Mr. Noel's argument that the USAPDA intended to grandfather him a 30 percent disability rating simply cannot succeed. And, in any event, the USAPDA is in the best position to provide an interpretation of its own guidance. An agency's interpretation of a rule is "controlling unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997); Smith v. Nicholson, 451 F.3d 1344, 1351 (Fed. Cir. 2006).

3. Mr. Noel Was Not Harmed By His Three Month Retention Upon The TDRL During the Pendency Of His Appeal

The ABCMR appropriately rejected Mr. Noel's contention that he was harmed by his retention upon the TDRL for an additional three months. Mr. Noel was placed upon the TDRL May 27, 1995, and removed August 3, 2000. AR 375, 270. Although 10 U.S.C. § 1210(b) and Army Reg. 635-40, ¶ 7-11 provide for a soldier's removal from the TDRL upon the fifth anniversary of their placement upon the list, the USAPDA's decision to retain him upon the TDRL while his appeal ran its course did not harm Mr. Noel. Indeed, Mr. Noel does not allege that he was harmed in any way by the three extra months he was retained on the TDRL receiving disability benefits. "It is insufficient to simply show that a statutory procedure was not followed at the agency level. Harmful error must be shown." Pomory v. United States, 39 Fed. Cl. 213, 218 (1997), (citing Handy v. U.S. Postal Service, 754 F.2d 335, 338 (Fed. Cir. 1985)). Mr. Noel has not, and cannot, demonstrate that he was harmed by his brief detention on the TDRL during the pendancy of his appeal.

Additionally, the requirement for removal from the TDRL upon the fifth anniversary of placement upon the list is to provide guidance for when a final decision can be made on medical conditions which are currently unstable. The statutory time limitations in 10 U.S.C. § 1210(b) provides that if the condition that caused a service member's placement upon the TDRL still exists after five years, it will be considered to be of a permanent nature and stable. Id. This provision provides a definite end point at which the service can make a permanent disability rating if one is warranted. In other words, here, his retention upon the TDRL actually benefitted Mr. Noel — allowing him additional time within which to present any arguments to the PEB in support of his claims.

4. The USAPDA Was Not Required To Forward Mr. Noel's Case To The APDAB

The ABCMR properly addressed Mr. Noel's contention that the USAPDA failed to forward his rebuttal for review by the APDAB. As the ABCMR correctly found, there was no disagreement between the PEB and USAPDA regarding Mr. Noel's disability ratings, therefore referral to the APDAB was not required. AR 196. Army Reg. 635-40, ¶ 4-23(c) provides that the USAPDA may refer a case to the APDAB as one of four possible courses of action the agency may take with regard to determinations made by the PEB. Id. (emphasis added). The regulation goes on to provide that if the USAPDA issues revised findings, and the soldier nonconcurs and submits a statement of rebuttal to the revised findings, then the case is to be forwarded to the APDAB for review. Id. at ¶ 4-23(f)(emphasis added). In this case, the USAPDA did not issue revised findings, thus the provision of paragraph 4-23(f) regarding referral to the APDAB did not apply to Mr. Noel's case. The USAPDA, therefore, retained the

discretion to refer the case to the APDAB, and it chose not to do so. Accordingly, the ABCMR properly concluded that regulatory procedures were correctly followed in the evaluation of his disability.

D. The ABCMR's Decision Upon Reconsideration Was Supported By Substantial Evidence

The ABCMR's decision upon reconsideration was likewise supported by substantial evidence. The ABCMR gave thorough consideration to all of the evidence and arguments provided by Mr. Noel, and concluded that he had not demonstrated by clear and convincing evidence, a basis for altering the ABCMR's prior denial of relief.

In his complaint, Mr. Noel attacks the decision of the ABCMR for failing to consider his medical records. However, in his initial appeal to the ABCMR, Mr. Noel failed to provide copies of his medical records to the ABCMR for its review. The burden is on the applicant to demonstrate by clear and convincing evidence that error or injustice exists in his or her record. Thus, the onus was on Mr. Noel to provide the evidence which he wanted the board to consider.

Additionally, as we have demonstrated, the ABCMR acted as an appellate authority in this case — it was not the first competent board reviewing Mr. Noel's medical disability claim. Thus, it was not error for the ABCMR to rely upon the decision of the PEB in arriving at its decision. Throughout those proceedings, Mr. Noel's medical records were available for review. As the ABCMR stated, it considered the records of the PEB, and the PEB had access to Mr. Noel's medical records during its review on June 6, 1999; the USAPDA had access to his medical records during its initial review on July 20, 1999, and again on August 3, 2000. AR 9. The ABCMR therefore properly fulfilled its function as an appellate authority in this case

reviewing the records of the PEB and the evidence provided by Mr. Noel.

And, in any event, Mr. Noel's medical records were fully considered when the ABCMR granted reconsideration of his application. Upon reconsideration, Mr. Noel submitted medical records with his application to the board, and those medical records were given a detailed review by the ABCMR. The ABCMR fully reviewed Mr. Noel's medical records upon reconsideration, and concluded that those records did not provide any compelling evidence that the findings of the PEB were incorrect. AR 9.

Similarly, upon reconsideration, the ABCMR properly and thoroughly considered Mr. Noel's submission of a letter from Dr. Glenn Wortmann, a physician at Walter Reed Army Medical Center who had conducted Mr. Noel's four periodic TDRL medical examinations. AR 17. The letter from Dr. Wortmann listed a number of conditions that he classified as constitutional symptoms Mr. Noel suffered from while on the TDRL. Id. Mr. Noel argued to the ABCMR that this letter established that he satisfied the criteria for a 30 percent disability rating for his HIV. The ABCMR carefully considered this evidence, and concluded that the letter did not establish Mr. Noel's entitlement to an increased disability rating.

Most importantly, the ABCMR noted that Dr. Wortmann was the same physician who had stated during the TDRL periodic medical examinations of Mr. Noel that he was asymptomatic with his HIV infection. AR 354-355, 343-344, 329-330, 305-306. Dr. Wortmann specifically conducted those examinations for the TDRL, therefore he was aware of the importance of fully documenting Mr. Noel's symptoms as they would be used in determining a disability rating. Dr. Wortmann's after-the-fact attempt to reclassify the symptoms as constitutional, perhaps based upon sympathy for Mr. Noel's situation, casts doubt upon this new

medical conclusion.

In any event, the PEB and ABCMR fully considered the very same conditions considered by Dr. Wortmann and concluded that the symptoms were not "constitutional symptoms" of HIV that would entitle Mr. Noel to a 30 percent disability rating. When differing conclusions are based upon the same evidence, the court should not substitute its judgment for that of the agency. See Bernard, 59 Fed. Cl. at 501 (2004) (citations omitted). Specifically, three of the conditions listed by Dr. Wortmann were conditions that the ABCMR had previously considered: bronchitis, perirectal abscess and hyperlipidemia, and as noted above, found not to be recurrent constitutional symptoms. Two additional conditions listed by Dr. Wortmann, impetigo and lipodystrophy, the ABCMR found were also diseases and not constitutional symptoms caused by HIV. The ABCMR concluded that those conditions that might be classified as symptoms were non-specific in nature are were not indicative of HIV-related constitutional symptoms. AR 10. This finding comports with Mr. Noel's repeated categorization as asymptomatic.

To the extent that Dr. Wortmann considered more remote symptoms, the symptoms were not at issue during Mr. Noel's final TDRL examination in 1999. Specifically, Mr. Noel was placed upon the TDRL May 27, 1995. AR 375. Seven of the conditions listed by Dr. Wortmann occurred prior to Mr. Noel's placement on the TDRL: diarrhea (May 1994), folliculitis (June 1993), allergic rhinitis (September 1993), tinea pedis (September 1993), oral hairy leukoplakia (April 1993), herpes simplex virus (May 1994), and human papilloma virus (February 1995). AR 17. Because these conditions occurred prior to his placement on the TDRL, they were not indicative of his condition at the time the PEB assigned his disability rating, therefore the ABCMR properly concluded that they were not a basis for increasing his disability rating.

Moreover, as the ABCMR noted, many of the conditions that Dr. Wortmann documents as recurrent became recurrent only after Mr. Noel's removal from the TDRL. Army disability ratings are permanent upon disposition, however allowance for a change in the severity of a condition is provided by the ratings issued by the VA, which may fluctuate with time depending on the progress of the condition. See 38 U.S.C. § 101 et seq. Mr. Noel applied for and is receiving benefits from the VA to account for the changes in his condition subsequent to his placement upon the TDRL. Any subsequent occurrence of symptoms does not warrant a change to the disability rating awarded by the PEB.

CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint for lack of jurisdiction. In the alternative, defendant respectfully requests that the Court grant judgment upon the administrative record in favor of the Government.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Assistant Director

s/ Claudia Burke
CLAUDIA BURKE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-9063
Fax: (202) 307-0972

OF COUNSEL:
Major Rebecca Ausprung
United States Army Litigation Division
Military Personnel Branch
901 N. Stuart Street, Suite 400
Arlington, VA 22203-1837
Tel: (703) 696-1627
Fax: (703) 696-8126

November 21, 2006

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 21st day of November 2006, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD", was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Claudia Burke