NO. 06-568C
(Chief Judge Edward J. Damich)

---

# In the United States Court of Federal Claims

---

DANIEL N. NOEL,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

---

Elizabeth C. Billhimer
1440 New York Avenue, NW
Washington, D.C.  20005
(202) 371-7206 Telephone
(202) 661-0546 Facsimile
ebillhim@probonolaw.com

*Attorney of Record for Plaintiff*

**TABLE OF CONTENTS**

**Page**


STATEMENT OF THE ISSUES ........................................ 1

STATEMENT OF THE CASE ........................................ 2

SUMMARY OF ARGUMENT ........................................ 7

ARGUMENT ........................................ 7

I. THIS COURT HAS JURISDICTION OVER MR. NOEL'S CLAIM. ........ 7

A. Standard of Review for a Motion to Dismiss for Lack of Jurisdiction. ........................................ 7

B. Mr. Noel's Claim Was Timely Filed Within Six Years of Accrual. ........................................ 8

1. Federal Circuit precedent establishes that Mr. Noel's Claim did not accrue until his discharge from the Army National Guard. ........................................ 8

2. The Government's legal position cannot be sustained. ........ 10

II. THE COURT SHOULD GRANT MR. NOEL'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD. ........ 13

A. Standard of Review for Judgment Upon the Administrative Record in Military Disability Retirement Cases. ........ 13

B. The ABCMR Decisions To Deny Mr. Noel's Claim Are Arbitrary, Capricious, Unsupported by Substantial Evidence, and Violated Applicable Statutes and Regulations. ........ 14

1. Mr. Noel suffers from a condition that mandates a 30 percent disability rating. ........................................ 14

2. Mr. Noel's condition has not changed since 1998 in any manner to justify the ABCMR decision to reduce in his disability rating. ........................................ 16

3. The Board has not uniformly applied the VASRD in rating HIV disabilities. ........................................ 23

CONCLUSION ........................................ 27

# TABLE OF AUTHORITIES

**Page**

**STATUTES:**

10 U.S.C. § 1201 ........ 3, 6, 10, 14

10 U.S.C. § 1202 ........ 3,10

10 U.S.C. § 1203 ........ 14

10 U.S.C. § 1204 ........ 14

10 U.S.C. § 1206 ........ 14

10 U.S.C. § 1210 ........ 4, 20

10 U.S.C. § 1401 ........ 3, 10

28 U.S.C. § 1491 ........ 6, 8

28 U.S.C. § 2501 ........ 7, 8, 9

37 U.S.C. § 204 ........ 6

**REGULATIONS:**

38 C.F.R. § 4.88b ........ 4, 15, 17

Army Regulation 635-40 ........ *passim*

**CASES:**

*Aubre v. United States*,
40 Fed. Cl. 371 (1998) ........ 12

*Bannum, Inc. v. United States*,
404 F.3d 1346 (Fed. Cir. 2005) ........ 13

*Beckham v. United States*,
375 F.2d 782 (Ct. Cl. 1967) ........ 13

*Bosch v. United States*,
27 Fed. Cl. 250 (1992) ........ 26

*Bricker v. United States*,
36 Fed. Cl. 589 (1996)....................12

*Brown v. United States*,
396 F.2d 989 (Ct. Cl. 1968)....................13, 14, 15, 22, 24

*Bruno v. United States*,
556 F.2d 1104 (1977)....................11, 12

*Burns v. United States*,
20 Cl. Ct. 758 (1990)....................9

*Chambers v. United States*,
417 F.3d 1218 (Fed. Cir. 2005)....................*passim*

*Collins v. United States*,
47 Fed. Cl. 196 (2000)....................9

*Colon v. United States*,
71 Fed. Cl. 473 (2006)....................12

*Fisher v. United States*,
402 F.3d 1167 (Fed. Cir. 2005)....................13

*Friedman v. United States*,
310 F.2d 381 (Ct. Cl. 1962)....................9

*Fuller v. United States*,
14 Cl. Ct. 542 (1988)....................12

*Furlong v. United States*,
152 F. Supp. 238 (Ct. Cl. 1957)....................9

*Heisig v. United States*,
719 F.2d 1153 (Fed. Cir. 1983)....................13, 16

*Henke v. United States*,
60 F.3d 795 (Fed. Cir. 1995)....................7

*Huntzinger v. United States*,
9 Cl. Ct. 90, 96 (1985)....................10

*In re Jane Doe*,
Docket No. BC-2003-01135 (AFBCMR May 5, 2004)....................26

*In re John Doe*,

Docket No. AR2001061061 (ABCMR Aug. 1, 2002) ............................................... *passim*

*Istivan v. United States*,
689 F.2d 1034 (Ct. Cl. 1982) .......................................................................... 23

*Levadi v. United States*,
146 F. Supp. 455 (Ct. Cl. 1956) ....................................................................... 9

*Loomis v. United States*,
68 Fed. Cl. 503 (2005) ...................................................................................... 23

*MacFarlane v. United States*,
140 F. Supp. 420 (Ct. Cl. 1956) ....................................................................... 10

*Martinez v. United States*,
333 F.3d 1295 (Fed. Cir. 2003) ..................................................................... 8, 10

*McHenry v. United States*,
367 F.3d 1370 (Fed. Cir. 2004) ........................................................ 14, 15, 17, 22

*Myers v. United States*,
50 Fed. Cl. 674 (2001) .............................................................................. 10, 11, 12

*Nager Elec. Co. v. United States*,
368 F.2d 847 (Ct. Cl. 1966) ............................................................................... 8

*Poole v. United States*,
64 Fed. Cl. 776 (2005) ...................................................................................... 23

*Real v. United States*,
906 F.2d 1557 (Fed. Cir. 1990) ..................................................................... 9, 10, 11

*Reynolds v. Army & Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) ............................................................................ 7

*Rosnick v. United States*,
129 F. Supp. 958 (Ct. Cl. 1955) ......................................................................... 9

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) ........................................................................................... 7

*Steiner v. United States*,
9 Cl. Ct. 307 (1986) .......................................................................................... 12

*Van Cleave v. United States*,
66 Fed. Cl. 133 (2005) .................................................................................. 13, 16

*Waldorf v. United States*,
8 Cl. Ct. 321 (1985)........................................................................................ 10

*Wolf v. United States*,
168 Ct. Cl. 24 (1964)...................................................................................... 15

**<u>OTHER</u>:**

Department of Defense Directive 1332.18...................................................................... 17

Department of Defense Directive 1332.38........................................................................ 3

Department of Defense Directive 1332.39................................................................. 3, 17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DANIEL N. NOEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-568C |
| v. | ) | Edward J. Damich, Chief Judge |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD, AND PLAINTIFF'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

Plaintiff, Daniel N. Noel, through the undersigned counsel, respectfully submits this Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Judgment on the Administrative Record. Mr. Noel cross moves for judgment upon the administrative record. This Court has jurisdiction over Mr. Noel's claim for retirement disability compensation as it was timely filed within six years of his discharge from the Army National Guard. Moreover, because the Army acted arbitrarily and capriciously when ruling that Mr. Noel no longer qualifies for disability retirement compensation – even though his physical condition clearly meets the applicable disability standards – Mr. Noel is entitled to judgment on the administrative record.

## STATEMENT OF THE ISSUES

1. Whether, pursuant to *Chambers v. United States*, 417 F.3d 1218 (Fed. Cir. 2005), Mr. Noel's claim for disability retirement was timely filed, where his action was initiated within six years of his discharge from the Army?

2. Whether, in denying Mr. Noel's petition for disability retirement, the Army Board for Correction of Military Records acted arbitrarily, capriciously, without support of substantial evidence, or contrary to applicable statutes and regulations where it (i) ignored the

fact that Mr. Noel was diagnosed in 1993 with a medical condition (hairy cell leukoplakia) that, pursuant to the governing Army regulations, mandates a 30 percent disability rating; (ii) acted inconsistently with the findings made each year between 1995-1998 by the Physical Evaluation Board, notwithstanding the fact that Mr. Noel's medical condition did not improve and there is no factual basis to support such a determination; and (iii) failed to apply the objective standards set forth in the governing regulations in a uniform manner as evidenced by the disability ratings bestowed upon similarly situated soldiers, resulting in disparate treatment of Mr. Noel.

## STATEMENT OF THE CASE

Mr. Noel is a former soldier in the Army National Guard ("Army"). In February 1988, Mr. Noel was diagnosed with Human Immunodeficiency Virus ("HIV") and in 1992, Mr. Noel began a regimen of AZT, an antiretroviral medication, because of a drop in his CD4 or "T" cell count. AR at 161, 406. In 1993, Mr. Noel was diagnosed with hairy cell leukoplakia, one of the first opportunistic infections to occur in HIV-positive patients, indicating that the immune system is weakening and increasing the risk of other, more serious infections. AR at 17.

From 1988 until 1995, Mr. Noel continued to serve in the Army, fulfilling all duties required of him. In 1995, after a routine medical examination, Mr. Noel was referred to a Physical Evaluation Board ("PEB") to determine whether he was medically unfit for continued service on active duty. In May 1995, the PEB concluded that, based on a review of the medical evidence of record, Mr. Noel's medical condition precluded him from satisfactorily performing his duties and, as a result, he was placed on the Temporary Disability Retirement List ("TDRL"). AR at 375. Mr. Noel's disability was rated at 30 percent, the minimum HIV disability rating permitted pursuant to the Department of Defense ("DoD") policy in effect at the time. AR at

209-14, 375. While on the TDRL, Mr. Noel was entitled to disability retirement pay of the type and nature afforded under permanent disability retirement. *See* 10 U.S.C. §§ 1201, 1202, 1401.

Service members on the TDRL are required by regulation to undergo periodic medical evaluations to determine whether they should be retained in that status. Army Reg. 635-40 ¶7-4.[1] Following each periodic medical evaluation, the Army is required to determine whether a soldier should be removed from the TDRL. Army Reg. 635-40 ¶ 7-11 a.(2), 7-20 c.). The regulation requires that if the soldier has less than 20 years of service and the disability, although not stabilized, has improved so as to be ratable at less than 30 percent, then the soldier should be removed from the TDRL. *Id.*

In April 1996, after a periodic medical evaluation, the PEB retained Mr. Noel on the TDRL. AR at 352; *see also* AR at 209-14. On November 14, 1996, the DoD policy that established the minimum 30 percent rating for HIV-related illnesses was abolished and replaced by a policy that required PEBs to utilize the Veterans Administration Schedule for Rating Disabilities ("VASRD") when evaluating HIV-related illnesses. AR at 193, 215; *see also* Pl. App. D (DoD Directives 1332.38, 1332.39).

Mr. Noel underwent required periodic medical evaluations in 1997, 1998, and 1999. AR at 341, 343-34 (1997); AR at 293, 333-335 (1998); AR at 277, 317-19 (1999). In 1997 and 1998, Mr. Noel was retained on the TDRL because he had less than 20 years of service

---

[1] It is undisputed that Army Regulation 635-40, *Physical Evaluation for Retention, Retirement, or Separation*, dated August 15, 1990, is applicable to this case. A copy of the regulation is included in Plaintiff's Appendix filed contemporaneously with this brief. *See* Pl. App. C.

and met one or more of the standards under the VASRD to qualify for a 30 percent disability rating.[2] AR at 293, 341; *see also* Army Reg. 635-40 ¶¶ 7-11 a.(2), 7-20 c.

The contemporaneous medical records, created prior to and after Mr. Noel's placement on the TDRL, demonstrate that, in addition to hairy cell leukoplakia, Mr. Noel suffered from a history of recurrent constitutional symptoms, including episodic diarrhea and numerous other ailments directly related to his HIV illness, or which are secondary to his complex HIV medications. AR at 17-181. The medical records also evidence that he had an unstable CD4 count, participated in a research study involving an investigational drug, and as of 1998, was on a quadruple antiretroviral protocol. AR at 17-181, 243, 277; *see also* AR at 293, 317-19, 341, 333-335, 343-34.

Regulations authorize service members to remain on the TDRL for up to five years, as long as they continue to meet a 30 percent minimum disability rating after each periodic medical evaluation. Army Reg. ¶¶ 7-11 a., 7-20 c. Thereafter, the Army is required either to permanently retire the individual with disability benefits or discharge the individual from the service without such benefits. Army Reg. 635-40 ¶ 7-11 a. Service members with a disability rating of 30 percent or greater are eligible for permanent retirement with disability benefits. 10 U.S.C. § 1210. Service members whose disability rating is less than 30 percent are discharged with severance pay, but are not eligible to receive long-term disability benefits. *Id.*

In the Spring 1999, the Army and other branches of the service began removing HIV-positive service members from the TDRL. *See* Pl. App. A, B. In connection with this

---

[2] Under the VASRD for HIV-related illnesses, a 30 percent disability rating is required for service members who have had "recurrent constitutional symptoms, intermittent diarrhea, and on approved medication(s); or minimum rating T4 cell count less than 200; or Hairy Cell Leukoplakia; or Oral Candidiasis." 38 C.F.R. § 4.88b.

process, the Army systematically reduced certain service members' disability ratings to 10 percent or lower in order to discharge them without having to incur the costs of long-term benefits. *Id*. Mr. Noel is one of the service members adversely affected by this arbitrary and capricious action.

Specifically, in 1999, contrary to applicable regulations and guidelines, the PEB recommended that Mr. Noel be removed from the TDRL, assigned a 10 percent disability rating and be discharged from the Army National Guard with minimal severance pay. AR at 290, 294-95. The PEB did not explain why it recommended that the 30 percent rating assigned to Mr. Noel from 1995 through 1998 be reduced to 10 percent.

Mr. Noel challenged the findings and recommendations of the PEB. AR at 291-92; *see also* 280-84, 298-301. As required by regulation, Mr. Noel's case was forwarded to the United States Army Physical Disability Agency ("USAPDA"). AR at 275. On July 26, 2000, Mr. Noel sent a letter to the Assistant Secretary of the Army requesting that new VA guidance be considered in evaluating his disability rating. AR at 272. On July 31, 2000, the USAPDA issued its initial decision denying Mr. Noel's request to reinstate his 30 percent disability rating. AR at 266. On August 3, 2000, the USAPDA re-opened Mr. Noel's case, considered the VA guidance, and then issued its final decision denying Mr. Noel's request to reinstate his 30 percent disability rating. AR at 272-73. On that same date, the Secretary of the Army approved the USAPDA's action, and Mr. Noel was removed for the TDRL and discharged from the Army National Guard without disability retirement benefits. AR at 270, 277.

On December 11, 2000, a Coast Guard PEB in a strikingly similar HIV disability retirement case, reconsidered its earlier reduction of a service member's HIV disability rating and restored the service member's 30 percent disability rating, making him eligible for permanent

disability retirement. Pl. App. B at 9-18. On January 1, 2001, an Army PEB in another strikingly similar HIV disability retirement case, reconsidered its 1999 reduction of a soldier's HIV disability rating from 30 percent to 10 percent, and granted the soldier a 60 percent disability rating, making him eligible for permanent disability retirement. Pl. App. B at 1-8.

On August 8, 2001, Mr. Noel sought correction from the Army Board for Correction of Military Records (the "Board"). AR at 200-08. In August 2002, the Board issued a decision in yet another strikingly similar HIV disability retirement case, restoring that soldier's disability rating to 30 percent. Pl. App. at A. On November 21, 2002, *without reviewing Mr. Noel's medical records*, the Board denied Mr. Noel's request to restore his disability rating to 30 percent. AR at 184-99.

On October 17, 2003, Mr. Noel filed a request for reconsideration and provided the Board with a complete copy of his medical records and a letter from his treating physician, Dr. Glenn Wortmann, who works at the Infectious Diseases Division of Walter Reed Army Medical Center, summarizing Mr. Noel's medical conditions. AR at 13-181. Dr. Wortmann's letter confirmed that Mr. Noel had been diagnosed with hairy cell leukoplakia, recurrent constitutional symptoms, and numerous other ailments directly related to the HIV condition. AR at 17; *see also* AR 18-181. On June 10, 2004, the ABCMR, without discussing the hairy cell leukoplakia diagnosis and misinterpreting other relevant medical evidence, denied Mr. Noel's request for reconsideration. AR at 3-11.

Mr. Noel filed suit in this Court on August 2, 2006. Mr. Noel brings this action pursuant to the Tucker Act, 28 U.S.C. § 1491; the Military Pay Act, 37 U.S.C. § 204; and 10 U.S.C. § 1201.

## SUMMARY OF ARGUMENT

Mr. Noel's disability retirement claim was timely filed and therefore is not barred by the statute of limitations. Under Federal Circuit precedent, where, as here, a service member's claim is heard and denied by an appropriate administrative board prior to discharge, the statutory limitations period begins to run on the date of discharge from the service. Mr. Noel was discharged from the Army National Guard on August 3, 2000 and in accordance with 28 U.S.C. § 2501, timely filed his claim in this Court on August 2, 2006.

Mr. Noel's cross-motion for judgment upon the administrative record is compelling and establishes that the Army Board for Correction of Military Records ("ABCMR" or the "Board") acted arbitrarily and capriciously in ruling that Mr. Noel is not entitled to receive disability retirement compensation. Indeed, the Board's decision is not supported by substantial evidence and runs afoul of the applicable statutes and regulations. Accordingly, we respectfully request that the Court grant Mr. Noel's cross-motion for judgment upon the administrative record.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION OVER MR. NOEL'S CLAIM.

#### A. Standard of Review for a Motion to Dismiss for Lack of Jurisdiction.

In deciding a motion to dismiss, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236-37 (1974)). Where a party challenges the jurisdiction of the court to hear an action, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). There is no factual dispute that needs to be resolved by the Court in ruling on the pending motion to dismiss. Rather, the

issue before the Court turns on when, as a matter of law, the statute of limitations began to run on Mr. Noel's disability retirement claim. The government erroneously asserts that the statute of limitations began to run *before* Mr. Noel was discharged from the Army National Guard and while he was receiving the benefits that are the subject of this action. As explained below, controlling Federal Circuit precedent establishes that the statute of limitations began to run on the date Mr. Noel was discharged and, therefore, his claim was timely filed.

**B. Mr. Noel's Claim Was Timely Filed Within Six Years of Accrual.**

1. Federal Circuit precedent establishes that Mr. Noel's Claim did not accrue until his discharge from the Army National Guard.

Mr. Noel's claim for disability retirement arises under the Tucker Act, 28 U.S.C. § 1491, which is subject to a six-year statute of limitations. 28 U.S.C. § 2501. A Tucker Act claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)). Mr. Noel maintains that his claim accrued on August 3, 2000, the date upon which the Secretary of the Army approved the decision of the PEB and USAPDA, and discharged him from the Army National Guard without disability retirement. The government contends that Mr. Noel's claim accrued as early as September 22, 1999, when the PEB made its initial recommendations.

The government’s position cannot be reconciled with controlling authority. Specifically, in *Chambers v. United States,* the Federal Circuit plainly stated:

> Therefore, if at the time of discharge, the service member requested review by an appropriate board and the request was denied, or if the board heard the service member's claim and denied it, *then the limitations period begins to run upon discharge.*

417 F.3d 1218, 1225 (Fed. Cir. 2005) (emphasis added). *See also Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (holding that if at the time of discharge the board heard the service member's claim but denied it, the limitations period begins to run upon discharge); *Burns v. United States*, 20 Cl. Ct. 758, 760 (1990) (quoting *Real* and holding that where PEB made a determination on January 5, 1972, plaintiff's claim accrued on February 18, 1972, the date of plaintiff's discharge); *Collins v. United States*, 47 Fed. Cl. 196, 199 (2000) (quoting *Real*, recognizing that if the medical evaluation board considering plaintiff's claim prior to discharge was statutorily authorized, then the accrual date for plaintiff's remaining claims is plaintiff's discharge date).[3]

Accordingly, this Court "cannot acquire jurisdiction of [a disability retirement claim] until after the board *and* the Secretary have acted, or failed or refused to act[.]" *Chambers*, 417 F.3d at 1224 (quoting *Furlong v. United States*, 152 F. Supp. 238, 240-41 (Ct. Cl. 1957)) (emphasis added); *Levadi v. United States*, 146 F. Supp. 455, 457 (Ct. Cl. 1956) ("Plaintiff's right to retired pay is dependent upon favorable action of the retiring board and the approval of such action by the Secretary of War."); *Rosnick v. United States*, 129 F. Supp. 958, 959 (Ct. Cl. 1955) (holding that where the Secretary of War approved the findings of the Army Retiring Board and plaintiff was subsequently discharged, "[i]t was on [the discharge date] that plaintiff's claim first accrued within the meaning of 28 U.S.C. § 2501, since at that time all events had occurred which fixed the liability, if any, of the United States to plaintiff."). Indeed, while on the TDRL, Mr.

---

[3] A service member's discharge date is the earliest date upon which retirement claims accrue for purposes of applying the statute of limitations. For example, if the claimant did not have or did not seek a Retirement Board decision, his claim does not accrue until final action by the Correction Board. *Chambers*, 417 F.3d at 1225 (quoting *Friedman v. United States*, 310 F.2d 381, 396 (Ct. Cl. 1962)).

Noel received disability retirement benefits of the type and nature afforded under permanent disability retirement. *See* 10 U.S.C. §§ 1201, 1202, 1401. These disability retirement benefits continued until the date Mr. Noel was discharged from the service. *See* AR at 270-71. Accordingly, it was not until the date of his discharge that Mr. Noel could assert a claim for entitlement to disability retirement pay and benefits unlawfully denied him. *Martinez*, 333 F.3d at 1303.

Case law and the circumstances surrounding Mr. Noel's discharge from the Army compels the conclusion that Mr. Noel's claim for disability retirement accrued upon his discharge from the service. *See e.g., Huntzinger v. United States*, 9 Cl. Ct. 90, 96 (1985) (holding that plaintiff's disability retirement claim accrued on October 1, 1970, the date plaintiff was discharged, and not on October 2, 1969, when the PEB issued its decision, or on August 13, 1970, when the Army Physical Disability Appeal Board issued its decision); *Waldorf v. United States*, 8 Cl. Ct. 321, 323 (1985) (holding that plaintiff's cause of action for 50 percent disability accrued on January 31, 1972, the date of his retirement at 30 percent disability, and not on the date of the PEB's December 13, 1971 decision establishing the 30 percent disability rating); *MacFarlane v. United States*, 140 F. Supp. 420, 423 (Ct. Cl. 1956) (holding that where plaintiff appeared before a Army Retiring Board, plaintiff's cause of action accrued at discharge). Mr. Noel filed his claim in this Court on August 2, 2006, within six years of his discharge date, and therefore his claim was timely filed and is not barred by the statute of limitations.

2. <u>The Government's legal position cannot be sustained.</u>

In arguing that Mr. Noel's claim accrued *prior to* his discharge and is therefore time-barred, the government principally relies upon *Myers v. United States*, 50 Fed. Cl. 674, 684 (2001) for the proposition that the PEB's decision triggered the running of the statute of

limitations.[4] Although the government accurately cites language from the *Myers* decision, it does so selectively, conveniently omitting that court's recognition of the rule established in *Real*, -- that "[i]f at the time of discharge an appropriate board * * * heard the service member's claim but denied it, the limitations period begins to run upon discharge." 906 F.2d at 1560. This is the very rule reaffirmed by the Federal Circuit in *Chambers*.

Moreover, the *Myers* court did not hold that the service member's claim accrued on the date the PEB acted. Rather, because the service member in *Myers* filed his claim more than six years after both the PEB's decision and the date of his discharge, the court never reached the issue of when the service member's claim actually accrued. Indeed, the court recognized that the accrual date might very well be the date of discharge. *Myers*, 50 Fed. Cl. at 681 ("Assuming – at the latest – that the statute began running on the date of the plaintiff's September 13, 1993 discharge, [plaintiff filed his Complaint] well over six years after the date he separated from the service *i.e.*, the statute expired no later than September 13, 1999."). *Chambers* makes clear what the *Meyers* court did not – that, under the circumstances presented, the service member's claim accrues upon discharge.

The government's reliance on *Bruno v. United States*, 556 F.2d 1104 (Fed. Cl. 1977), is misplaced as that case actually *supports* Mr. Noel's argument. In *Bruno*, the PEB rendered its decision on December 20, 1951. The court, however, held that plaintiff's cause of action accrued months later on his discharge date. *Id.* at 1107 ("In conclusion, it is obvious that under the holdings of this court herein cited, *supra*, plaintiff's cause of action accrued as of

---

[4] Remarkably, the government cites *Chambers* in a string cite for the proposition that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies the claim or refuses to hear it, but ignores the rules governing accrual of disability retirement cases set forth therein.

February 8, 1952 (his discharge date)[.]"). Simply put, the authority cited by the government does not support the position it advances – that Mr. Noel's claim accrued either when the PEB rendered its decision or when the USAPDA approved the PEB's action.[5]

The other authority relied upon by the government is equally unavailing as *Myers*. *Aubre v. United States*, 40 Fed. Cl. 371 (1998), and *Colon v. United States*, 71 Fed. Cl. 473 (2006), involved disability claims where the service member did not have board review at the time of discharge. The appropriate accrual date under the facts presented in those cases would be the date of the final action by the Correction Board. *Chambers*, 417 F.3d at 1225. *Fuller v. United States*, 14 Cl. Ct. 542 (1988), involved a service member who voluntarily executed a formal, written waiver of his right to demand a hearing before the PEB and who did not file his claim until almost 25 years after he signed the waiver and was discharged from the Navy. *Bricker v. United States*, 36 Fed. Cl. 589 (1996), and *Steiner v. United States*, 9 Cl. Ct. 307 (1986), were decided before *Chambers*; consequently, to the extent their holdings conflict with *Chambers*, they should be disregarded.

* * *

In sum, Mr. Noel's claim did not accrue until his discharge from the service on August 3, 2000, and his claim before this Court was timely filed. Accordingly, the government's motion to dismiss must be denied.

---

[5] Although not relevant to the jurisdictional issue before the Court, contrary to the government's assertion, neither the PEB recommendation nor the USADPA decision was final prior to Mr. Noel's discharge from the service. The PEB recommendation was subject to and reviewed by the USADPA. The initial USADPA decision was reopened by request of the Secretary in order to consider new guidelines issued by the Veterans Administration. The reconsideration decision was rendered on August 3, 2000 – the *same day* the Secretary acted to discharge Mr. Noel without disability retirement benefits. AR at 267-69, 277.

## II. THE COURT SHOULD GRANT MR. NOEL'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD.

### A. Standard of Review for Judgment Upon the Administrative Record in Military Disability Retirement Cases.

The well-settled standard of review in disability retirement cases is whether the decision by the Army Board for Correction of Military Records ("ABCMR") was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *Fisher v. United States*, 402 F.3d 1167, 1180 (Fed. Cir. 2005). Although courts must give some deference to boards for the correction of military records, "[a] court may find a correction board's decision arbitrary and capricious if the board entirely fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board, or is so implausible that it could not be ascribed to a difference in view or the product of board expertise." *Van Cleave v. United States*, 66 Fed. Cl. 133, 136 (2005).[6]

[6] The government argues that judicial review of disability retirement cases is limited to the administrative record before the ABCMR. Govt. Mot. at 15, 16. The Court of Claims, however, has consistently rejected this argument. *Beckham v. United States*, 375 F.2d 782, 785 (Ct. Cl. 1967) ("In determining the arbitrariness, capriciousness, or insubstantiality of an administrative decision, it is not necessary that the review always be restricted to the record before the administrative body."); *Brown v. United States*, 396 F.2d 989, 990-91 (Ct. Cl. 1968) (reaffirming *Beckham* and holding that "[w]e have also . . . regularly considered evidence over and above that presented before the administrative boards if a party wishes to offer it."). Rather, in ruling on a motion for judgment upon the administrative record, this Court is empowered to make factual determinations based on the record evidence "as if [this court] were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). The administrative record, moreover, may be supplemented where appropriate. *Id.*

**B. The ABCMR Decisions To Deny Mr. Noel's Claim Are Arbitrary, Capricious, Unsupported by Substantial Evidence, and Violated Applicable Statutes and Regulations.**

Contrary to the government's assertion, Mr. Noel's argument does not simply turn on the notion that his disability rating "was unfair." Govt. Mot. at 18. Rather, Mr. Noel contends that the decision reached by the ABCMR is fatally flawed and cannot withstand judicial scrutiny for three principal reasons: (i) the ABCMR ignored the fact that Mr. Noel was diagnosed in 1993 with hairy cell leukoplakia, – a condition that, pursuant to the governing Army regulations, removes any discretion from the Army and mandates a 30 percent disability rating; (ii) in affirming the rating of Mr. Noel's condition as a 10 percent disability in 1999, the ABCMR acted inconsistently with the findings made each year between 1995-1998 by the Physical Evaluation Board, notwithstanding the fact that Mr. Noel's medical condition had not changed and there is no factual basis to support such a determination; and (iii) the ABCMR failed to apply the objective standards set forth in the governing regulations in a uniform manner as evidenced by the disability ratings bestowed upon similarly-situated soldiers, resulting in disparate treatment of Mr. Noel.

1. Mr. Noel suffers from a condition that mandates a 30 percent disability rating.

Disability ratings by the Secretary of the Army are required to be based upon the Department of Veterans Affairs Schedule for Rating Disabilities ("VASRD"). *Brown v. United States*, 396 F.2d 989, 996 (Ct. Cl. 1968) ("[T]he Secretary and the boards are now bound by statute to follow the detailed guidelines of the Veterans' Administration's disability code when determining the percentage of disability under [10 U.S.C. §§ 1201, 1203-04, 1206]."); *McHenry v. United States*, 367 F.3d 1370, 1378 (Fed. Cir. 2004) (holding that "10 U.S.C. § 1201 requires

that disability ratings by the Secretary of the pertinent military department be based on the VASRD schedule.").

It is uncontroverted that the applicable VASRD for rating HIV-related illnesses is 6351, entitled *HIV-Related Illness*. 38 C.F.R. § 4.88b; *see also* AR at 195, 277. VASRD 6351 provides, *inter alia*, that a 30 percent disability rating is required for any service member diagnosed with Hairy Cell Leukoplakia. 38 C.F.R. § 4.88b; *see also* AR at 195, 272. The fact that Mr. Noel was diagnosed with Hairy Cell Leukoplakia in 1993 is documented in his medical records and confirmed in his treating physician's letter to the Board. AR at 17, 151. Inexplicably, in its reconsideration decision, the Board noted the diagnosis of Hairy Cell Leukoplakia, but failed to recognize that this condition, in and of itself, mandated a 30 percent disability rating. *See* AR at 7. There is no rational basis for the Board to have acted in this fashion.[7]

The Board may not circumvent the VASRD requirements as there is "no authority for reducing percentages beyond those found in the schedule itself." *McHenry*, 367 F.3d at 1379 (quoting *Wolf v. United States*, 168 Ct. Cl. 24, 32 (1964)); *Brown*, 396 F.2d at 996 ("[T]he boards have little latitude for developing general retirement policies in individual cases. Their job is to pass upon a particular case under the standards handed down to them.").[8] Nor may the government contend that the diagnosis of Hairy Cell Leukoplakia is irrelevant because it

---

[7] In its final decision, the ABCMR acknowledged the letter from Dr. Glenn Wortmann, Mr. Noel's treating physician and a member of the Infectious Diseases Service at Walter Reed Army Medical Center (AR at 7), but never addressed the significance of the hairy cell leukoplakia diagnosis. Rather, the Board erroneously concluded that Mr. Noel's medical records, including the letter from Dr. Wortmann, provided "no compelling evidence that would warrant a change to the ABCMR's original findings." *Id.*

[8] The contention that Mr. Noel currently is doing well physically (Govt. Mot. at 18), even if true, therefore provides no support for the reduction in his disability rating.

occurred prior to the time Mr. Noel was placed on the TDRL. Govt. Mot. at 26. Indeed, in a strikingly similar disability retirement case, in which an HIV-positive service member's disability rating had been reduced from 30 percent to 10 percent, the ABCMR held the fact that the service member had a T-cell count below 200 in 1993 (another enumerated condition in the VASRD mandating a 30 percent disability rating), some three years *before* he was placed on the TDRL, required that the service member be awarded a 30 percent disability rating upon discharge. *In re John Doe*, Docket No. AR2001061061 at 7 (ABCMR Aug. 1, 2002) (emphasis added).[9] In *Doe*, unlike here, the Board corrected the service member's records to restore his 30 percent disability rating, making him eligible for permanent disability retirement. *Id.*

The Court's analysis need go no further than this first issue to resolve the matter in Mr. Noel's favor. The Court should find that the Board's decision to affirm the reduction in Mr. Noel's disability rating from 30 percent to 10 percent was arbitrary and capricious because the Board failed to consider the fact that Mr. Noel has been diagnosed with Hairy Cell Leukoplakia, which, by regulation, requires a 30 percent disability rating. *Van Cleave*, 66 Fed. Cl. at 136 (holding that a court may find a correction board's decision arbitrary and capricious if the board entirely fails to consider an important aspect of a problem). The record thus establishes that, with respect to Mr. Noel's retirement, the Board has acted contrary to applicable statutes and regulations, requiring remedial action by this Court. *Heisig v. United States*, 719 F.2d at 1156.

2. Mr. Noel's condition has not changed since 1998 in any manner to justify the ABCMR decision to reduce in his disability rating.

Mr. Noel was diagnosed as HIV positive in 1988. He remained on active duty for approximately six additional years before being placed on the TDRL in May 1995. He did not

---

9 For the convenience of the court, a copy of the *Doe* opinion is included in plaintiff's Appendix, filed contemporaneously with this brief. *See* Pl. App. A.

request to be placed on the TDRL, but rather was forced to leave active duty after a PEB found that his medical condition prevented satisfactory performance of duty. AR at 372, 375. As required by Army Reg. 635-40, Mr. Noel underwent periodic TDRL medical evaluations in 1996, 1997, and 1998 to determine whether he would be retained on the TDRL. *See* Army Reg. 635-40 ¶ 7-4. After each evaluation by the PEB, Mr. Noel was retained on the TDRL. AR at 351-52 (1996), 340-41 (1997), 293, 327 (1998); *see also* Army Reg. 635-40 ¶¶ 7-11 a.(2); 7-20 c.

When Mr. Noel initially was placed on the TDRL in 1995, Department of Defense ("DoD") Directive 1332.18 and USAPDA Policy Memorandum #9 required a minimum disability rating of 30 percent for anyone diagnosed HIV positive. AR at 210 (discussing DoD Directive 1332.18, USAPDA Policy Memorandum #9); AR at 309-14; *see also McHenry*, 367 F.3d at 1375 (recognizing that in 1996 "[t]he Physical Evaluation Board will use the VASRD Code 6351 guidelines for assigning disability percentage ratings for HIV positive related illnesses; however, no member will be assigned any percentage rating less than 30%."). In other words, when Mr. Noel underwent a medical evaluation in 1995 and then again in 1996 to determine whether he would remain on the TDRL, the Army's policy required that he be rated at a minimum 30 percent disability and that he remain on the TDRL. AR at 351-52.

The November 1996 DoD Directive 1332.39 and May 1997 USAPDA Implementing Memorandum for PEB Presidents eliminated the minimum 30 percent rating for HIV positive members and required that each service member, determined to be unfit for duty, be rated according to the VASRD. Pl. App. at D (DoD Directive 1332.39, ¶ E2.5, p. 21); AR at 308. As a result, when Mr. Noel was medically re-evaluated in June 1997 and again in April 1998, the PEB was required to apply VASRD 6351 -- the same standard at issue in this case. *Id.*; 38 C.F.R. § 4.88b; Army Reg. 635-40 ¶ 7-20 c.; Pl. App. at D. Moreover, Army Reg. 635-40 ¶

7-11 required that if Mr. Noel did not meet a 30 percent disability rating, he was to be removed from the TDRL. Army Reg. 635-40 ¶¶ 7-11 a.(2), 7-20 c.

VASRD 6351 provides, in pertinent part, that there are four conditions that require a service member to be rated with a 30 percent disability and placed on the TDRL:

(i) Recurrent constitutional symptoms, intermittent diarrhea and on approved medications; or

(ii) Minimum T4 cell count less than 200; or

(iii) Hairy cell leukoplakia; or

(iv) Oral candidiasis.

Applying the standards and requirements of VASRD 6351 in 1997, and then again in 1998, the PEB determined that Mr. Noel should be retained on the TDRL and ascribed a 30 percent disability rating to him. AR at 340-41 (1997); AR at 293, 327 (1998). In reaching its decision to maintain Mr. Noel on the TDRL in 1997 and 1998, the Army determined that the condition that served to place him on the TDRL in 1995 (i) had not become stable; and (ii) the combined disability rating at the time of the re-evaluation was at least 30 percent. Army Reg. 635-40 ¶¶ 7-11 a.(2), 7-20 c.[10] In other words, in both 1997 and 1998, the PEB determined that Mr. Noel suffered from one or more conditions set forth in VASRD 6531, giving rise to 30 percent disability rating.[11]

It is not surprising that the PEB retained Mr. Noel on the TDRL in 1997 and 1998 at a 30 percent disability rating. The medical evidence in the record clearly and convincingly

---

[10] The government acknowledges that Department of Defense Directives are binding upon the services. *See* Govt. Mot. at 21-22.

[11] *See also* Army Reg. 635-40 ¶ 7-2 c. ("When a soldier's correct rating is less than 30 percent, a rating will not be increased to 30 percent solely for the purpose of making a soldier eligible for TDRL.").

demonstrates that Mr. Noel's condition met the standards for such a finding. Dr. Wortmann's synopsis of Mr. Noel's medical records is compelling:

> I have reviewed Mr. Noel's past medical records and interviewed him again today regarding his constitutional symptoms. I am writing to confirm that, while on the Temporary Disability Retirement List, Mr. Noel suffered from recurrent constitutional symptoms. These included:
>
> 1. *Diarrhea, diagnosed 5 May 94, episodic since then*
> 2. Recurrent flu-like episodes, *starting in 1997 and continuing through 2003.*
>
> Review of Mr. Noel's medical records since he was removed from the TDRL reveals additional symptoms, including:
>
> 1. Folliculitis, diagnosed 14 Jun 93
> 2. Allergic rhinitis, diagnosed 14 Sep 93, *episodic since then*
> 3. Tinea pedis, diagnosed 29 Sep 93
> 4. *Oral Hairy Leukoplakia,* diagnosed 9 Apr 93
> 5. Herpes simplex virus, perianal, recurrent, diagnosed 6 May 94
> 6. Human papilloma virus, perioral, diagnosed 2 Feb 95
> 7. Impetigo, diagnosed Dec 95
> 8. Hypertension, diagnosed 2 Oct 96
> 9. Upper respiratory tract infection/bronchitis, diagnosed 18 Feb 97, *episodic since then*
> 10. Nausea, diagnosed 16 Apr 97
> 11. Fever and cough, diagnosed 9 Jun 97
> 12. Hemorroid, diagnosed 3 Apr 98
> 13. Perirectal abscess
> 14. Lipodystrophy, diagnosed 8 Jun 99
> 15. Hyperlipidemia secondary to HIV medications, diagnosed 8 Jun 99

AR at 17 (September 11, 2003 Letter from Dr. Wortmann to the ABCMR) (emphasis added).[12]

Moreover, as the ABCMR has recognized, the VA guidelines provide that "[while on an HIV

---

[12] Impliedly conceding the significance of Dr. Wortmann's summary, the government suggests, without any support, that this uncontroverted evidence should be discounted as a mere exercise in compassion by Mr. Noel's physician (Govt. Mot. at 25-26), or rejected as inconsistent with Dr. Wortmann's TDRL reports (*Id.* at 25). In fact, Dr. Wortmann's summary of Mr. Noel's medical history is consistent with Mr. Noel's underlying medical records. (AR at 18-181.) Moreover, the Board often considers such physician's summaries when granting relief. *See Doe* at 7. The government also contends that many of the conditions that Dr. Wortmann documented became recurrent only after Mr. Noel's removal

*(cont'd)*

treatment regimen], a number of side effects and complications are likely, and *it will be the unusual case* where less than a 30 percent level of disability evaluation will be warranted." AR at 195 (emphasis added).[13]

In 1999, Mr. Noel underwent what was to be his last PEB medical evaluation before the Army would be required to make a final determination regarding his long-term disability eligibility.[14] In a dramatic reversal of prior evaluations, the PEB, with no new facts and no changes in Mr. Noel's condition, determined that he should be rated at a 10 percent disability, effectively directing his discharge from the service without disability benefits. In reaching this adverse determination, the PEB failed to explain what, if anything, had changed from the previous four years to justify the decreased disability rating. Similarly, the subsequent ABCMR decisions failed to explain the PEB's change of position and is devoid of any discussion regarding the applicable Army regulation governing retention of service members on the TDRL.

The government erroneously asserts that because Mr. Noel's physical condition improved, the PEB correctly determined that his health status fell squarely within the VASRD guideline for a 10 percent disability rating. Govt. Mot. at 18. By advancing this argument, the government demonstrates that it does not appreciate the substance of the VASRD for HIV-

*(cont'd from previous page)*

from the TDRL. (Govt. Mot. at 27). Dr. Wortmann's letter, however, refutes this contention as it specifically lists the date on which each symptom was diagnosed.

13 The ABCMR also noted that the VA guidelines further state that "of those [service members] on treatment who will be rated below 30 percent, most will probably be veterans treated soon after HIV has been diagnosed, when they are asymptomatic and who also develop few or no side effects or complications from treatment." AR at 195. This guidance makes clear that service members, like Mr. Noel, who did not begin antiretroviral medication until five years after diagnosis and who suffer from numerous HIV positive symptoms and complications, are never likely to be rated below 30 percent. AR at 17.

14 Pursuant to 10 U.S.C. § 1210, "[i]f his name is not sooner removed, the disability retired pay of a member whose name is on the temporary disability retired list terminates upon the expiration of five years after the date when his name was placed on that list."

positive soldiers. Once a soldier is not fit for active duty and demonstrates that he has one of the four criteria for a 30 percent disability rating under the HIV-positive rubric, that rating may never be decreased and can only be increased as the disease progresses. For this reason, whether Mr. Noel responded favorably to treatment is not relevant to the analysis.[15] As the Office of the Secretary of Defense has observed, even though HIV positive members have experienced some improvement in their conditions due to highly active anti-retroviral therapy, "they remain very sick, with continuing immune system impairment, high vulnerability to opportunistic infections, heavy reliance on toxic and complex drug regimens, and dependence upon ongoing expert medical follow-up." AR at 217.[16]

Even though compelling medical evidence demonstrates that Mr. Noel suffered from recurrent constitutional symptoms, the ABCMR attempted to distinguish symptoms from diseases and tried to minimize any constitutional symptoms as being of short duration and of minimal severity.[17] The medical records document that Mr. Noel suffered from recurrent flu-like symptoms, nausea, diarrhea, fever, and cough, in addition to a host of other symptoms and

---

15 Although the government asserts that the PEB's rating of ten percent reasonably accounts for Mr. Noel's high CD4 count in 1999 and the previous four years, nothing in the VASRD or guidelines supports the assertion that an increase in CD4 authorizes a decrease in disability rating where the service member otherwise qualifies for a 30 percent or higher disability rating.

16 In view of the Defense Department's recognition that service members who are HIV-positive are genuinely ill requiring significant medical attention, the government's assertion that Mr. Noel "does not contend that he was actually seriously ill" (Govt. Mot. at 18) is patently offensive. Indeed, the Army determined that Mr. Noel was unfit for continued service and forced him into premature retirement.

17 In its initial decision, the ABCMR made the unsupportable conclusion that "[m]edical authorities have determined that [Mr. Noel] did not have recurrent constitutional symptoms." AR at 198. Yet, in that same decision, the ABCMR admitted that it had not even considered Mr. Noel's medical records, which clearly do not support the ABCMR's conclusion.

conditions directly related to the progression of his HIV disease. Indeed, the ABCMR noted that Mr. Noel suffered fatigue -- the same recurrent constitutional symptom outlined in the VA guidelines. AR at 224 ("Examples (not an exhaustive list) [of constitutional symptoms] include weakness, fatigue, nausea, shortness of breath, loss of appetite, etc."). Indeed, Mr. Noel's medical records demonstrate exactly what the Office of the Secretary of Defense had observed: HIV-positive service member's, although experiencing some improvement, "remain very sick."

As recognized by the ABCMR, the VA *Guidelines for Rating HIV Infection* provide that "if there have been recurrent constitutional symptoms, even if they have responded to appropriate treatment, the *minimum rating is 30%*." AR at 195, 221 (emphasis added). Moreover, as the ABCMR acknowledged, "[t]his rule applies whenever such a symptom occurs or has occurred more than once." AR at 194. As the guidelines make clear, the focus in properly rating under the VASRD is not on "minimal severity" or "short duration," but whether the symptoms occur or have occurred more than once.

The ABCMR's holding in *Doe* establishes that, as long as the service member had any one of the four qualifying criteria at any time, the service member qualifies for a 30 percent rating.[18] Accordingly, the ABCMR decision to reduce Mr. Noel's disability rating to 10 percent was arbitrary and capricious. *See McHenry*, 367 F.3d at 1379; *Brown*, 396 F.2d at 996 ("[T]he boards have little latitude for developing general retirement policies in individual cases. Their job is to pass upon a particular case under the standards handed down to them.").

---

[18] The government's suggestion that a service member's medical history prior to placement on the TDRL is irrelevant for purposes of rating a service member's disability (*see* Govt. Mot. at 26) cannot be reconciled with the Board's conclusion in *Doe* or DoD Policy. *See* AR at 223. ("By considering a member's full medical history and ongoing requirement for medication and medical care, the [Disability Evaluation System] will have more flexibility in awarding an appropriate disability rating and permanent requirement recommendation, even if certain laboratory tests reflect positive response to aggressive therapies.")

Mr. Noel has demonstrated by clear and cogent evidence that he met the standard required under VASRD 6351 for a 30 percent disability. Since the ABCMR's decisions failed to explain the PEB's sudden reversal in rating and are devoid of any discussion concerning the applicable regulations governing retention of service members on the TDRL, the decisions must be deemed to be contrary to applicable statutes and regulations, arbitrary and capricious, and unsupported by substantial evidence. *See Istivan v. United States*, 689 F.2d 1034, 1038 (Ct. Cl. 1982) ("[T]he PEB's failure to explain its actions adequately was contrary to the Army's own regulations [and] the decision to discharge plaintiff with a 10-percent disability rating and the refusal of the ABCMR to reconsider the matter was not supported by substantial evidence, was arbitrary and capricious and violated applicable regulations."); *see also Poole v. United States*, 64 Fed. Cl. 776, 783 (2005) (holding that where the ABCMR failed to properly evaluate the record evidence in light of the criteria set forth in Army Reg. 635-40, the decision of the ABCMR not to amend plaintiff's disability rating was arbitrary and capricious); *Loomis v. United States*, 68 Fed. Cl. 503, 508-09 (2005) ("It is well established that the military must comply with its own regulations, even if those regulations are not required by statute. . . . It was therefore improper to disregard the mandate of the regulation, unless the regulation itself was not applicable.").[19]

3. The Board has not uniformly applied the VASRD in rating HIV disabilities.

That the Board's decision to deny Mr. Noel disability retirement compensation was arbitrary and capricious also is borne out by the fact that similarly-situated service members

---

[19] Although Mr. Noel previously asserted that he was "grandfathered in" to a 30 percent minimum disability rating, Mr. Noel does not advance that argument here. Mr. Noel maintains, however, that applying the applicable regulations and Department of Defense directives, he is entitled, as a matter of law, to a minimum disability rating of 30 percent.

have been deemed eligible for permanent disability retirement and medical benefits. *See* Army Reg. 635-40 ¶¶ 7-11 a.(2), 7-20 c.; *see also Brown*, 396 F.3d at 999 ("Compliance with . . . regulations ensures uniformity of treatment."). In addition to *In re Doe*, discussed *supra*, we are aware of at least four similar cases where an HIV-positive service member's disability rating was reduced from 30 percent to 10 percent in accordance with the Armed Forces' effort to permanently remove these men from service without retirement benefits. When these four service members challenged this action, all were successful in having their disability rating restored to 30 percent or higher so that they could retire with their benefits in tact.

Two of these servicemen have agreed to permit Mr. Noel to present their records to this Court in order to demonstrate the disparate treatment he has received. (*See* Motion to Supplement the Administrative Record filed concurrently herewith.)[20] The first case involves an Army officer who, like Mr. Noel, had been on the TDRL for a period of time with a 30 percent disability rating, but was discharged in June 1999 with a 10 percent disability rating and denied retirement benefits. Pl. App. B at 1-5. It should not be lost on this Court that Mr. Noel's PEB convened in June 1999. As with Mr. Noel, the service member's physician submitted a letter detailing the former officer's physical condition. *Id.* at 6. Initially, the Army rejected the physician's letter, but ultimately found that he had suffered from recurrent constitutional symptoms (like Mr. Noel) and awarded a 60% disability rating, making him eligible for

[20] In anticipation of Mr. Noel's argument regarding the disparate treatment afforded HIV-positive service members, the government contends that the record does not support such an argument. (*See* Govt. Mot. at 19 n.4.) *In re Doe*, however, directly supports this assertion. Moreover, Mr. Noel is supplementing the administrative record with relevant documents from two similar cases. We were unable to locate the other two servicemen and therefore cannot, at this time, present their records to this Court.

retirement benefits. *Id.* at 7-8. The fact that he had a CD4 count of 570 at the time of final determination did not, in any way, affect his disability rating. *Id.* at 8.

The second case involves a service member who was discharged from the Coast Guard in 2000 with a disability rating of 0 percent after he had been on the TDRL for a period of time. Pl. App. B at 9. After Congressional inquiry raised this and other service members' plight to the attention of the Coast Guard Commandant, the Commandant recognized the significance of the VA Guidelines and the horrific nature of this disease in concluding, "We will not involuntarily separate an HIV+ member without medical treatment benefits." *Id.* at 11. Ultimately, the Coast Guard reconsidered its previous findings and awarded a 30 percent disability rating, noting simply that the member had a "HIV related illness." *Id.* at 16-18.

The record in *Doe* is even more compelling. He, too, was placed on the TDRL for a number of years, each time meeting the requirements for a 30 percent disability rating. *Doe* at 4. Then, in November 1998, an informal Army PEB reduced his disability rating to zero and recommended that he be discharged only with severance pay. *Id.* At the time of the PEB's recommendation, Doe had a CD4 count of 680. *Id.* All his appeals were denied prior to discharge. *Id.* at 4-6. The ABCMR, however, after presuming the existence of a laboratory report *from 1993* – three years before he was first placed on the TDRL, that supported a finding of a CD4 count below 200, awarded a 30 percent disability rating and restored his retirement benefits. *Id.* at 7. This case is remarkable in that the ABCMR made its findings regarding the CD4 count based solely upon information supplied by the service member and his treating physician – the very evidence that the government eschews here.[21] More importantly, the Army

[21] The record evidence before the PEB and USAPDA reflected a CD4 count of 380 in the *same month* that the service member and his physician reported a CD4 count of 179. The Army *(cont'd)*

expressly recognized the meaning of its own regulations – that the existence of one of the four enumerated conditions, no matter when the service member suffers from that condition, renders him at least 30 percent disabled for retirement purposes. This is the very principle the ABCMR has ignored in Mr. Noel's case.

It is not possible to square these decisions with the treatment afforded Mr. Noel. His case provides compelling evidence that he too should be awarded a minimum 30 percent disability rating, but has been arbitrarily and capriciously been denied the same. Although each service member's case must be evaluated on its own facts and circumstances (Govt. Mot. at 19), where, as here, similarly situated servicemen are treated differently, it is appropriate to conclude that the disparate treatment necessarily resulted from an arbitrary and capricious application of the governing statutes, regulations, and standards. *See In re Jane Doe*, Docket No. BC-2003-01135 (AFBCMR May 5, 2004) (holding that one basis for granting correction was the fact that applicant was not treated the same as trainees with similar injuries); *Bosch v. United States*, 27 Fed. Cl. 250, 260 (1992) ("It should also be noted that the Department of the Navy employs a centralized rating system in order to ensure the uniform application of disability rating principles."); Army Reg. 635-40 ¶ 3-1 a. ("The major objective of these standards is to achieve uniform disposition of cases arising under the law.").

---

*(cont'd from previous page)*

elected to accept the accuracy of the service member's representations in awarding disability benefits – even though the 380 CD4 count was based upon a laboratory report appearing in the medical records and there was no laboratory report available to confirm the accuracy of the representations made.

## **CONCLUSION**

Mr. Noel served his country for almost 14 years, until the Army decided that his HIV-positive status prevented him from doing so. For four years, the Army deemed Mr. Noel sufficiently disabled that he would have been eligible for disability retirement compensation had the Army decided to permanently retire him at that time. Yet, in 1999, when the Army was required to decide whether to reinstate Mr. Noel or retain him on the TDRL, the Army deemed him unfit for service, but reduced his disability rating to ten percent in order to discharge him without any disability retirement benefits. Because the record evidence does not support the Army's actions and conclusively demonstrates that Mr. Noel was 30 percent disabled under the governing regulations, he is entitled to judgment in his favor on the administrative record.

Respectfully submitted this 22nd day of December 2006.

s/Elizabeth Clements Billhimer
Elizabeth Clements Billhimer
1440 New York Avenue, NW
Washington, D.C. 20005
(202) 371-7206 Telephone
(202) 661-0546 Facsimile
ebillhim@probonolaw.com

*Attorney of Record for Plaintiff*