IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DANIEL N. NOEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-568C |
| v. | ) | Edward J. Damich, Chief Judge |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S COUNTER STATEMENT OF FACTS**

Pursuant to Rule 52.1(b), plaintiff, Daniel N. Noel, respectfully submits a Counter-Statement of Facts based upon the Administrative Record:

1. Mr. Noel enlisted in the United States Army and entered active duty service on September 29, 1981. AR at 562. Mr. Noel attained the rank of Specialist, pay grade E-4, and was released from active duty on September 28, 1984. *Id*. Mr. Noel then served in the Army Reserve Control Group until February 6, 1985, when he enlisted in the Maryland Army National Guard. AR at 549-51. In June 1985, he returned to active duty in the Active Guard and Reserve ("AGR"). AR at 547. In March 1986, Mr. Noel achieved the rank of Sergeant, pay grade E-5. AR at 455.

2. In January 1988, Mr. Noel was diagnosed with Human Immunodeficiency Virus ("HIV"), with a CD4 count of 617. AR at 403, 382. In 1989, Mr. Noel's CD4 count dropped to 523. AR at 393, 395. In 1992, Mr. Noel began a regimen of AZT, an antiretroviral medication. AR at 161, 406. At that time, his T cell count was 243. In 1993, Mr. Noel was diagnosed with hairy cell leukoplakia, one of the first opportunistic infections to occur in HIV-positive patients, indicating that the immune system is weakening and increasing the risk of other, more serious infections. AR at 17, 151.

3. From 1988 until 1995, Mr. Noel continued to serve in the Army, fulfilling all duties required of him. AR at 580. In 1995, after a routine medical examination, Mr. Noel was referred to a Medical Evaluation Board ("MEB"). AR at 122, 380-81. At the conclusion of the MEB, Mr. Noel was referred to a Physical Evaluation Board ("PEB") to determine whether he was fit for continued service. AR 375-77. In May 1995, a PEB concluded that, based on a review of the medical evidence of record, Mr. Noel's medical condition precluded him from satisfactorily performing his duties and, as a result, on May 27, 1995, he was placed on the Temporary Disability Retirement List ("TDRL"). AR at 372, 375-77. Mr. Noel's disability was rated at 30 percent, the minimum HIV disability rating permitted pursuant to the Department of Defense ("DoD") policy in effect at the time. AR at 209-14, 375-77. With a 30 percent disability rating, Mr. Noel was entitled to disability retirement pay at 50 percent of his base pay per month. AR 375.

4. Service members on the TDRL are required by regulation to undergo periodic medical evaluations to determine whether they should be retained in that status. Army Reg. 635-40 ¶ 7-4.[1] Following each periodic medical evaluation, the Army is required by regulation to determine whether a soldier should be removed from the TDRL. Army Reg. 635-40 ¶ 7-11 a.(2), 7-20 c. The regulation requires that if the soldier has less than 20 years of service and the disability, although not stabilized, has improved so as to be ratable at less than 30 percent, then the soldier should be removed from the TDRL. *Id*.

5. In February 1996, Mr. Noel underwent a periodic medical evaluation. AR at 354-55, 359-62. The PEB noted that, although Mr. Noel had faired well since his last

---

[1] It is undisputed that Army Regulation 635-40 *Physical Evaluation for Retention, Retirement, or Separation*, dated August 15, 1990 is applicable to this case. A copy of the regulation is included in Plaintiff's Appendix filed contemporaneously with this brief. *See* Pl. App. C.

evaluation and was asymptomatic at that time, he continued to suffer from an incurable medical condition that inexorably would lead to immunosuppression and probable death. AR at 354-55. Mr. Noel's CD4 count was 314 in June 1995 and 310 in February 1996. The PEB retained Mr. Noel on the TDRL. AR at 352; *see also* AR at 209-14. On November 14, 1996, the DoD policy that established the minimum 30 percent rating for HIV-related illnesses was abolished and replaced by a policy that required PEBs to utilize the Veterans Administration Schedule for Rating Disabilities ("VASRD") when evaluating HIV-related illnesses. AR at 193, 215; *see also* Pl. App. at D (DoD Directives 1332.38, 1332.39).

6. Mr. Noel underwent the required periodic medical evaluations in 1997, 1998, and 1999. AR at 341, 343-34 (1997); AR at 293, 333-335 (1998); AR at 277, 317-19 (1999). In 1997 and 1998, the PEB retained Mr. Noel on the TDRL because he had less than 20 years of service and met one or more of the standards under the VASRD to qualify for a 30 percent disability rating.[2] AR at 293, 341; *see also* Army Reg. 635-40 ¶¶ 7-11 a.(2), 7-20 c.

7. The April 1997 medical evaluation revealed that Mr. Noel had a CD4 count of 319 with an undetectable viral load, had not had any opportunistic infections since his last evaluation, and was enrolled in a medical study comparing antiretroviral therapies. AR at 343-45. Although he exhibited a good response to the investigational medications, the length of the physiological effect was undefined. *Id.*

8. The March 1998 medical evaluation revealed that Mr. Noel had a CD4 count of 579. AR at 333. The evaluation also revealed that Mr. Noel had occasional episodes of

---

[2] Under the VASRD for HIV-related illnesses, a 30 percent disability rating requires a finding of "recurrent constitutional symptoms, intermittent diarrhea, and on approved medication(s); or minimum rating T4 cell count less than 200; or Hairy Cell Leukoplakia; or Oral Candidiasis." 38 C.F.R. § 4.88b.

bronchitis and a lump in his perirectal area that had been present for two weeks. *Id.* Mr. Noel also was enrolled in an investigational new drug study. *Id.*

9. The contemporaneous medical records, created prior to and after Mr. Noel's placement on the TDRL, demonstrate that, in addition to hairy cell leukoplakia, Mr. Noel suffered from a history of recurrent constitutional symptoms, including episodic diarrhea (diagnosed May 5, 1994 and episodic since then) and recurrent flu-like episodes (starting in 1997 and continuing through 2003). Mr. Noel also suffered from numerous additional symptoms and ailments directly related to his HIV illness or secondary to his complex HIV medications, including Folliculitis (diagnosed June 14, 1993), Allergic rhinitis (diagnosed September 14, 1993 and episodic since then), Tinea pedis (diagnosed September 29, 1993), Herpes simplex virus, perianal (recurrent, diagnosed May 6, 1994), Human papilloma virus, perioral (diagnosed February 2, 1995), Impetigo (diagnosed December 1995), Hypertension (diagnosed October 2, 1996), upper respiratory tract infection/bronchitis (diagnosed February 18, 1997, episodic since then), Nausea (diagnosed April 16, 1997), fever and cough (diagnosed June 9, 1997), hemorrhoid (diagnosed April 3, 1988), perirectal abscess, lipodystrophy (diagnosed June 8, 1999), hyperlipidemia secondary to HIV medications (diagnosed June 8, 1999). AR at 17-181. The medical records also evidence that he had an unstable CD4 count, participated in a research study involving an investigational drug, and as of 1998, was on a quadruple antiretroviral protocol. AR at 17-181, 243, 277; *see also* AR at 293, 317-19, 341, 333-335, 343-34.

10. Regulations authorize service members to remain on the TDRL for up to five years, as long as they continue to meet a 30 percent minimum disability rating after each periodic medical evaluation. Army Reg. 635-40 ¶¶ 7-11 a., 7-20 c. Thereafter, the Army is required either to permanently retire the individual with disability benefits or discharge the

individual from the service without such benefits. Army Reg. 635-40 ¶ 7-11 a. Service members with a disability rating of 30 percent or greater are eligible for permanent retirement with disability benefits. 10 U.S.C. § 1210. Service members whose disability rating is less than 30 percent are discharged with severance pay, but are not eligible to receive long-term disability benefits. *Id*.

11. Beginning in the Spring 1999, the Army and other branches of the service began removing HIV-positive service members from the TDRL. Pl. App. A, B. In connection with this process, the Army systematically reduced certain service members' disability ratings to 10 percent or lower in order to discharge them without having to incur the costs of long-term benefits. *Id*.

12. In 1999, contrary to applicable regulations and guidelines, the PEB recommended that Mr. Noel be removed from the TDRL, assigned a 10 percent disability rating and discharged from the Army National Guard with severance pay. AR at 290, 294-95. The PEB did not explain why it recommended that the 30 percent rating that had been assigned to Mr. Noel from 1995 through 1998 be reduced to 10 percent. *Id.* The 1999 medical evaluation noted the development of occasional episodes of bronchitis and small perirectal abscess, which had developed a year earlier. AR at 244-45. The medical evaluation also noted two CD4 counts – one at 559 and one at 648. AR at 244-45. The medical evaluation noted the diagnosis of hypercholesterolemia, secondary to protese-inhibitor therapy, indicating that notwithstanding this condition it would be unsafe to stop the protease-inhibitor treatment. *Id.* The medical evaluation also noted that although Mr. Noel experienced an encouraging response to the highly active antiretroviral therapy, it was not known how long the therapy would continue to "hold the virus

in check," and that recent reports suggested that only 60 percent of patients experience long-term suppression of the virus. *Id*.

13. Mr. Noel challenged the findings and recommendations of the PEB. AR at 291-92; *see also* 280-84, 298-301. As required by regulation, Mr. Noel's case was forwarded to the United States Army Physical Disability Agency ("USAPDA"). AR at 275; Army Reg. 635-40 ¶¶ 4-17 a., 4-22a. On July 26, 2000, Mr. Noel sent a letter to the Assistant Secretary of the Army requesting that the new VA guidance be considered in evaluating his disability rating. AR at 272. On July 31, 2000, the USAPDA issued its initial decision denying Mr. Noel's request to reinstate his 30 percent disability rating. AR at 266. On August 3, 2000, the USAPDA unilaterally re-opened Mr. Noel's case, considered the VA guidance, and then issued its final decision denying Mr. Noel's request to reinstate his 30 percent disability rating. AR at 272-73. On that same date, the Secretary of the Army approved the USAPDA's action, and Mr. Noel was removed from the TDRL and discharged from the Army National Guard without disability retirement benefits. AR at 270, 277.

14. On December 11, 2000, a Coast Guard PEB in a strikingly similar HIV disability retirement case, reconsidered its earlier reduction of a service member's HIV disability rating and restored the service member's 30 percent disability rating, making him eligible for permanent disability retirement. Pl. App. B at 9-18. On January 1, 2001, an Army PEB in another strikingly similar HIV disability retirement case, reconsidered its 1999 reduction of a soldier's HIV disability rating from 30 percent to 10 percent, and granted the soldier a 60 percent disability rating, making him eligible for permanent disability retirement. Pl. App. B at 1-8. On August 8, 2001, Mr. Noel sought relief from the Army Board for Correction of Military Records (the "Board"). AR at 200-08. While Mr. Noel's application was pending, the Board, in August

2002, issued a decision in yet another strikingly similar HIV disability retirement case, restoring that soldier's disability rating to 30 percent. Pl. App. at A. On November 21, 2002, *without reviewing Mr. Noel's medical records*, the Board denied Mr. Noel's request to restore his disability rating to 30 percent. AR at 184-99.

15. On October 17, 2003, Mr. Noel filed a request for reconsideration and provided the Board with a complete copy of his medical records and a letter from his treating physician, Dr. Glenn Wortmann, who works at the Infectious Diseases Division of Walter Reed Army Medical Center, summarizing Mr. Noel's medical conditions. AR at 13-181. Dr. Wortmann's letter confirmed that Mr. Noel had been diagnosed with hairy cell leukoplakia, recurrent constitutional symptoms, episodic diarrhea, and numerous other ailments directly related to the HIV condition. AR at 17; *see also* AR 18-181. On June 10, 2004, the ABCMR, without discussing the hairy cell leukoplakia diagnosis and misinterpreting other relevant medical evidence, denied Mr. Noel's request for reconsideration. AR at 3-11.

16. Mr. Noel filed suit in this Court on August 2, 2006. Mr. Noel brings this action pursuant to the Tucker Act, 28 U.S.C. § 1491; the Military Pay Act, 37 U.S.C. § 204; and 10 U.S.C. § 1201.

Respectfully submitted this 22nd day of December 2006.

s/Elizabeth Clements Billhimer
Elizabeth Clements Billhimer
1440 New York Avenue, NW
Washington, D.C. 20005
(202) 371-7206 Telephone
(202) 661-0546 Facsimile
ebillhim@probonolaw.com

*Attorney of Record for Plaintiff*