NO. 06-568C
(Chief Judge Edward J. Damich)

---

# In the United States Court of Federal Claims

---

DANIEL N. NOEL,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

**PLAINTIFF'S APPENDIX**

---

Elizabeth C. Billhimer
1440 New York Avenue, NW
Washington, D.C. 20005
(202) 371-7206 Telephone
(202) 661-0546 Facsimile
ebillhim@probonolaw.com

*Attorney of Record for Plaintiff*

NO. 06-568C
(Chief Judge Edward J. Damich)

# In the United States Court of Federal Claims

DANIEL N. NOEL,

Plaintiff,

v.

UNITED STATES,

Defendant.

## PLAINTIFF'S APPENDIX

Elizabeth C. Billhimer
1440 New York Avenue, NW
Washington, D.C. 20005
(202) 371-7206 Telephone
(202) 661-0546 Facsimile
ebillhim@probonolaw.com

*Attorney of Record for Plaintiff*

# TABLE OF CONTENTS

Army Board for Correction of Military Records Opinion,
*In re John Doe*, Docket No. AR2001061061 (ABCMR Aug. 1, 2002) ................. Tab A

Air Board for Correction of Military Records Opinion,
*In re Jane Doe*, Docket No. BC-2003-01135 (AFBCMR May 5, 2004)................ Tab A

Records of Other Similarly Situated Service Members ...................................................... Tab B

Army Regulation 635-40 ........................................................................................ Tab C

Department of Defense Directive 1332.18 (November 4, 1996)....................................... Tab D

Department of Defense Directive 1332.38 (November 14, 1996)..................................... Tab D

Department of Defense Directive 1332.39 (November 14, 1996)..................................... Tab D

# TAB

# A

PROCEEDINGS

IN THE CASE OF:

BOARD DATE: 1 August 2002
DOCKET NUMBER: AR2001061061

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Mr. Carl W. S. Chun | Director |
| Ms. Nancy L. Amos | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Mr. Samuel A. Crumpler | Chairperson |
| Mr. Melvin H. Meyer | Member |
| Ms. Regan K. Smith | Member |

The applicant and counsel if any, did not appear before the Board.

The Board considered the following evidence:

Exhibit A - Application for correction of military records
Exhibit B - Military Personnel Records (including advisory opinion, if any)

FINDINGS:

1. The applicant has exhausted or the Board has waived the requirement for exhaustion of all administrative remedies afforded by existing law or regulations.

2. The applicant requests that his physical disability discharge with severance pay at a zero percent disability rating be changed to a medical retirement. In the event the Board is unwilling to correct the U. S. Army Physical Disability Agency's (USAPDA's) zero percent rating of his Human Immunodeficiency Virus (HIV)-related disability, he requests the Board correct the USAPDA's finding that he is unfit to serve and then reinstate his length-of-service retirement.

3. The applicant states that he believes his condition at the time of his separation satisfied the requirements for a 30 percent disability rating under the Veterans Affairs Schedule for Rating Disabilities (VASRD), that the actions of the USAPDA were contrary to policy changes proposed by the Department of Defense (DoD) regarding the rating of HIV infection, and that prior to his placement on the Temporary Disability Retired List (TDRL) he was scheduled for a length of service retirement. He was scheduled to retire on 30 September 1996 with over 17 years of active service. During his retirement physical examination, his medical condition was evaluated by a physical evaluation board (PEB) and his retirement was delayed. He was placed on the TDRL on 27 September 1996 and his retirement orders were revoked. He was placed on the TDRL consistent with the then-current policy of providing a minimum rating for HIV infection of 30 percent. In November 1996, this minimum rating was eliminated by DoD. During his next re-evaluation, the PEB ordered that he remain on the TDRL. In 1999, however, the PEB recommended that his name be removed from the TDRL since he never had a CD4 count below 200. He disagreed with this recommendation and informed the PEB that in March 1993 his CD4 count was 179. The higher CD4 levels revealed in his subsequent TDRL evaluations were the direct result of an experimental research protocol in which his CD4 cells were removed, grown up, and re-infused into his body. His treating physician explained there was no way of knowing whether the higher CD4 counts in fact were accurate or whether his CD4 count would decline significantly if treatment were suspended. The USAPDA appears to have ignored his letters and his physician's letters and summarily affirmed the PEB's initial recommendation. Moreover, the PEB and USAPDA failed to consider the history of recurrent constitutional symptoms evidenced in his medical evaluations, an independent basis on which a 30 percent rating under the VASRD is to be granted. He suffered from several of those constitutional symptoms cited by DoD.

4. The applicant noted that the USAPDA's actions in his case were directly contrary to recent policy changes at DoD regarding the rating of HIV infection under the VASRD. On 20 August 1999, the Under Secretary of Defense for Personnel and Readiness indicated in a letter to Senator K___ that DoD was reviewing current policy with regard to the rating of HIV-positive service members

to preclude those individuals from being denied disability retirement benefits. On 14 February 2000 DoD requested that the VA alter the VASRD requirements for a 30 percent rating to provide for additional flexibility in rating HIV-related disabilities. In response, the VA issued on 10 May 2000 interpretive guidance for rating HIV infection under VASRD code 6351. Specifically, the VA confirmed that the 30 percent rating applies to HIV-positive service members who at any time have suffered from recurrent constitutional symptoms even if the symptoms have responded to appropriate treatment. Moreover, it clarified that only those who have no symptoms from HIV infection or its treatment should be rated at zero percent.

5. If the Board will not grant him a medical retirement, it would be only fair to return him to the same position he was in before his name was placed on the TDRL. He should not be harmed by having participated in the Army's disability retirement program.

6. The applicant's military records show that he was commissioned a second lieutenant on 9 June 1978 and entered active duty.

7. By memorandum dated 4 April 1996, the applicant was informed that he had been twice nonselected for promotion to lieutenant colonel and his mandatory release date was 1 October 1996. He was permitted to request voluntary retirement in lieu of mandatory discharge or retirement as he had completed 15 years of active federal service. On 13 April 1996, he requested voluntary early retirement. Orders dated 15 July 1996 were published retiring him from active service effective 30 September 1996 and placing him on the retired list 1 October 1996.

8. On 20 July 1996, a medical evaluation board (MEB) diagnosed the applicant with the medically unacceptable condition of HIV with a CD4 count of 340, normal DHS (delayed hypersensitivity skin test), insignificant adenopathy, no oral thrush or opportunistic infection, stage 3. The MEB's Narrative Summary noted that the applicant was first diagnosed with HIV in June 1992 and listed ten CD4 counts between July 1992 and January 1996. The counts ranged from a low of 237 in December 1993 to a high of 381 in July 1992. The count for March 1993 was listed as 380. He was referred to a PEB. On 1 August 1996, the applicant agreed with the MEB's findings and recommendation. He voluntarily requested retention on active duty beyond his scheduled release date for physical disability processing.

9. On 12 August 1996, a PEB found the applicant unfit for duty for a diagnosis of HIV infection, stage 3, with a CD4 count of 340, VASRD code 6351, with a disability rating of 30 percent. The PEB recommended he be placed on the

TDRL. On 19 August 1996, the applicant concurred with the findings and recommendations of the PEB. His retirement orders were revoked and he was released from active duty on 26 September 1996 after completing 17 years, 10 months, and 26 days of creditable active service.

10. In December 1997, the applicant was retained on the TDRL.

11. After his second TDRL re-evaluation around November 1998, a PEB recommended the applicant's separation for a diagnosis of HIV with a CD4 count of 680 and no intercurrent infection with severance pay and a zero percent disability rating.

12. On 26 February 1999, the applicant disagreed with the disposition that he be separated with severance pay. He requested that he remain on the TDRL or, since he was rated with zero percent disability, that he resume active duty. He also disagreed with the PEB's finding that he never had a CD4 count below 200. He stated that he had a CD4 count of 179 during March 1993. He provided a letter of support from his treating physician. She noted that while it was not well reflected in her medical board, the applicant had a nadir of his CD4 count at 179. It was because of his participation in a very experimental research protocol that removed, grew, and re-infused CD4 cells back into him that he was currently doing well. In addition, he was found at his most recent TDRL re-evaluation to have two new conditions – an elevated hematocrit that possibly represented polycythemia vera and tinnitus and decreased hearing. Also of concern was the fact that in the last two months his HIV viral load was starting to be uncontrolled on his current antiretroviral regimen. She recommended the applicant remain on the TDRL.

13. On 15 March 1999, the USAPDA determined that there was no medical evidence upon which to base a change. Since the applicant nonconcurred with the USAPDA's findings, his appeal and records would be forwarded to the Army Physical Disability Appeals Board (APDAB) for review.

14. On 22 March 1999, the applicant faxed to the USAPDA a withdrawal of his appeal. He later informed the Board's analyst that he did not intend for this withdrawal to be received by the USAPDA. He was extremely upset and discouraged when the USAPDA denied his appeal. He had not sought legal advice and believed his case to be a lost cause. He was a single father heavily in debt. He feared that continued prosecution of his appeal would leave him with no resources to take care of his family. Therefore, he drafted the withdrawal of his appeal. However, after putting the withdrawal letter on the fax machine, he hesitated and stopped the transmission. He believed that the transmission never went through.

15. The applicant also provided to the Board's analyst a letter from his treating physician. She stated that the applicant did have recurrent constitutional symptoms prior to his removal from the TDRL to include diarrhea, recurrent flu-like episodes, fatigue, and recurrent and intermittent night sweats.

16. Apparently based upon receipt of the applicant's request for withdrawal of his appeal, his case was never forwarded to the APDAB and he was removed from the TDRL effective 30 March 1999 with entitlement to severance pay and a disability rating of zero percent.

17. USAPDA Policy Memorandum #9, Rating Guidance for Human Immunodeficiency Virus Infection, dated 6 June 1995 was issued to conform USAPDA HIV rating guidance to the VA rating criteria within the parameters of DoD guidance. The memorandum noted that DoD Directive 1332.18 stated that service members meeting the requirement for PEB referral would be given a minimum rating of 30 percent. After clinical manifestation of associated conditions, to include decreased T4 (same as CD4) cell count below the Army standard, the soldier would be unfit based on diagnosis alone of the clinical manifestation. VASRD rating criteria ranged from zero through 100 percent; however, the zero and ten percent ratings did not apply to military HIV cases. Soldiers who improved while on the TDRL would be continued on the TDRL until stable. To be considered stable for removal, the clinical condition must be the same as when placed on the TDRL and the CD4 count unchanged for two consecutive TDRL re-evaluations. Improvement achieved with the administration of anti-retroviral drugs or with vaccines might not represent a true restoration of normal immune function. Soldiers receiving such therapy or prophylaxis should be retained on the TDRL at the previously established rating or separated at that rating if removal from the TDRL was required.

18. On 20 August 1999, the Under Secretary of Defense for Personnel and Readiness responded to an inquiry from Senator K___ informing the Senator that DoD was considering possible solutions to a problem that could lead HIV-positive service members to be denied retirement benefits. The response indicated that with the advent of potent anti-retroviral therapy, many service members on the TDRL were experiencing significant clinical and immunologic improvements to include increases in their T4 cell count, resulting in reduced disability ratings. It was recognized that the durability of the response to anti-retroviral therapy was not certain and 20 to 50 percent of patients were not able to maintain complete viral suppression and subsequently developed resistant HIV and increasing immunodeficiency.

19. On 14 February 2000, the Assistant Secretaries of Defense for Health Affairs and for Force Management Policy sent a letter to the Department of Veterans Affairs urging that Department to correct an outdated provision in the VASRD denying eligibility for disability retirement for a significant number of military members with advanced HIV disease. The letter noted that because of some changes in the service members' conditions brought about by Highly Active Anti-Retroviral Therapy (HAART), many of these members would not qualify for the Permanent Disability Retired List and would be separated without retirement benefits. This was due to the outdated VASRD standard for a 30 percent rating for HIV-related illness. The VASRD standard for a 30 percent rating for HIV-related illness relies most heavily on the patient suffering a drop in T4 cell count below 200. Many members placed on the TDRL on this basis have experienced improvement in T4 cell count because of HAART. However, they remain very sick with continuing immune system impairment, high vulnerability to opportunistic infections, and heavy reliance on toxic and complex drug regimens. The suggested change was to revise the VASRD standard for a 30 percent rating for HIV-related illness, code 6351 to read, "Recurrent constitutional symptoms, intermittent diarrhea, and on approved medication(s), or minimum rating with T4 cell count at any time less than 200, or Hairy Cell Luekoplakia, or Oral Candiasis.

20. On 10 May 2000, the VA issued new guidelines for rating HIV infection. The new guidelines included recognizing that on HAART, a number of side effects and complications are likely, and it would be the unusual case where less than a 30 percent level of disability evaluation would be warranted. The new guidelines also stated that if there have been recurrent constitutional symptoms, even if they have responded to appropriate treatment, the minimum rating is 30 percent.

21. On 18 October 2000, the Under Secretaries of Defense for Health Affairs and for Force Management Policy disseminated DoD's policy for service members on the TDRL with HIV to the Services. The DoD memorandum reiterated that, as a general rule, if a member has had or currently has recurrent constitutional symptoms, even if they have responded to appropriate treatment, the minimum rating is 30 percent. This rule applies whenever such a symptom occurs or has occurred more than once. Examples (not an exhaustive list) include weakness, fatigue, nausea, shortness of breath, loss of appetite, etc.

22. The USAPDA sent its Policy Guidance Memorandum #15, Rating Guidance for Human Immunodeficiency Virus Infection, dated 17 November 2000 to PEB presidents reiterating DoD's policy guidance disseminated on 18 October 2000.

23. Title 10, United States Code, section 1203, provides for the physical disability separation of a member who has less than 20 years service and a disability rated at less than 30 percent.

CONCLUSIONS:

1. While it appears the USAPDA properly noted that there was no medical evidence upon which to base a change in the applicant's disability rating (the MEB's Narrative Summary noted he had a March 1993 CD4 cell count of 380 and there was no medical evidence other than the applicant's own statement and that of his doctor indicating he had a CD4 cell count of 179 in March 1993), the Board presumes that the applicant had more than one count during March 1993 and for some reason his lowest count was not listed when the Narrative Summary was prepared. It appears that the USAPDA adhered to the "official" count noted on the Narrative Summary when it determined his disability rating. Since at the time the VASRD standard for a 30 percent rating for HIV-related illness relied most heavily on the patient suffering a drop in CD4 cell count below 200, the USAPDA rated the applicant below 30 percent.

2. In light of the facts of this case, however, (the applicant was scheduled for a length of service retirement prior to his being placed on the TDRL; his doctor was the Director, Infectious Diseases Division at Walter Reed Army Medical Center; and the VASRD guidelines for rating HIV-related diseases were changed and the changes were officially accepted by DoD in October 2000), the Board believes that it would be equitable to amend the applicant's MEB Narrative Summary to show he had a CD4 cell count of 179 in 1993. The applicant would then have met the criteria for a 30 percent disability rating and a medical retirement.

3. The Board notes that the applicant received severance pay. It would be equitable to recoup that severance pay if full relief is granted.

4. In view of the foregoing, the applicant's records should be corrected as recommended below.

RECOMMENDATION:

1. That all of the Department of the Army records related to this case be corrected by:

a. showing that the applicant's medical history reflects a CD4 cell count of 179 in March 1993;

b. showing that the applicant was determined to be unfit for duty with a 30 percent disability rating;

c. voiding the applicant's 30 March 1999 removal from the TDRL and separation from the Army with severance pay at a zero percent disability rating; and

d. showing that the applicant was removed from the TDRL effective 30 March 1999 and permanently retired by reason of a physical disability with a 30 percent disability rating.

2. That the Defense Finance and Accounting Service be instructed to begin paying the applicant all due retired pay; however, payment of all due retired pay will be withheld until the previously paid severance pay has been offset.

BOARD VOTE:

__SAC__ __MHM__ __RKS__ GRANT AS STATED IN RECOMMENDATION

________ ________ ________ GRANT FORMAL HEARING

________ ________ ________ DENY APPLICATION

Samuel A. Crumpler
CHAIRPERSON

# TAB

# B

# SIMILARLY SITUATED SERVICE MEMBER 1

Walter Reed Army Medical Ctr

**PHYSICAL EVALUATION BOARD (PEB) PROCEEDINGS**
For use of this form, see AR 635-40; the proponent agency is USAPDA

1. NAME (Last, First, Middle Initial): [redacted]

2. RANK: [redacted]

3. PEBD: 84.06.03 BASD: 84.06.03

4. SOCIAL SECURITY NUMBER: [redacted]

5. PMOS: [redacted]

6. BRANCH / COMPONENT: TDRL/MI/Active Duty Regular Army

7. THE PEB CONSISTED OF THE INDIVIDUALS INDICATED IN EXHIBIT B

DATE CONVENED: 99.04.15

AT (Location including ZIP Code): WALTER REED MEDICAL CENTER, WASHINGTON D.C. 20307-5001

8. THE BOARD CONSIDERED THE MEMBER'S CONDITION DESCRIBED IN THE RECORDS. EACH DISABILITY IS LISTED BELOW in descending order of significance

c. Intentional misconduct, willful neglect or unauthorized absence
d. While entitled to basic pay (Incurred or aggravated)
e. In LD in the time of national emergency or after 14 SEP 78 (Incurred or aggravated)
f. Proximate result of performing duty
g. Recommended disability percentage

| VA CODE a | DISABILITY DESCRIPTION b | c | d | e | f | g |
|---|---|---|---|---|---|---|
| 6351 | HIV infection Walter Reed stage III with CD4 count of 554. Presently on five drug antiretroviral regimen. (TDRL Dx 1)<br><br>TDRL Dx 2-5, not rated.<br><br>The present PEB rating of 10% more accurately reflects the current degree of severity of your condition. The PEB considers your condition to have improved so as to be ratable at less than 30%. Rating of less than 30% for soldiers with less than 20 years retirement service require separation with severance pay in lieu of retirement.<br><br>You are advised that a member of an armed force may not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury that he/she has. | N | Y | Y | Y | 10% |

9. THE BOARD FINDS THE SOLDIER IS PHYSICALLY UNFIT AND RECOMMENDS A COMBINED RATING OF: 10%

AND THAT THE SOLDIER'S DISPOSITION BE: Separation with severance pay if otherwise qualified

10. Not applicable

11. EXHIBITS (identify each)
A. Medical Board Proceedings
B. Appointing Orders
C. TDRL Reevaluation
D. TDRL Packet

12. TYPED NAME, GRADE, BRANCH OF PRESIDENT: RONALD A. GRUBB, COL, IN, President

SIGNATURE: [signature]

DATE: 99.04.15

DA FORM 199, JUN. 97

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 Continued...

**13. ELECTION OF SOLDIER**

TO: President, Physical Evaluation Board

I HAVE BEEN ADVISED OF THE FINDINGS AND RECOMMENDATIONS OF THE PHYSICAL EVALUATION BOARD, AND HAVE RECEIVED A FULL EXPLANATION OF THE RESULTS OF THE FINDINGS AND RECOMMENDATIONS AND LEGAL RIGHTS PERTAINING THERETO AND

FOR INFORMAL PROCEEDINGS ON SOLDIERS DETERMINED FIT (EXCEPT MEMBERS ON THE TDRL)

____ I CONCUR.

____ I DO NOT CONCUR. MY WRITTEN APPEAL ____ IS ATTACHED ____ IS NOT ATTACHED. I UNDERSTAND THAT FAILURE TO SUBMIT A WRITTEN APPEAL MAY RESULT IN FINAL PROCESSING OF MY CASE WITHOUT REVIEW BY HQ, USAPDA.

FOR ALL OTHER INFORMAL PROCEEDINGS

____ I CONCUR AND WAIVE A FORMAL HEARING OF MY CASE.

____ I DO NOT CONCUR BUT WAIVE A FORMAL HEARING. MY WRITTEN APPEAL ____ IS ATTACHED ____ IS NOT ATTACHED. I UNDERSTAND THAT FAILURE TO SUBMIT A WRITTEN APPEAL MAY RESULT IN FINAL PROCESSING OF MY CASE WITHOUT REVIEW BY HQ, USAPDA.

_✓_ I DO NOT CONCUR AND DEMAND A FORMAL HEARING _✓_ WITH PERSONAL APPEARANCE ____ WITHOUT PERSONAL APPEARANCE. MY STATEMENT IDENTIFYING MY ISSUES OF DISAGREEMENT WITH THE INFORMAL PEB ____ IS ATTACHED _✓_ IS NOT ATTACHED.

_✓_ I REQUEST A REGULARLY APPOINTED COUNSEL TO REPRESENT ME.

____ I WILL HAVE COUNSEL OF MY CHOICE AT NO EXPENSE TO THE GOVERNMENT. I UNDERSTAND THAT I MUST NOTIFY MY COUNSEL AT THIS TIME OF THE PENDING HEARING. I FURTHER UNDERSTAND THAT A DELAY WILL NOT BE GRANTED MERELY BECAUSE I DID NOT CONTACT MY COUNSEL IN SUFFICIENT TIME FOR HIM OR HER TO PROPERLY PREPARE. I WILL INFORM MY COUNSEL THAT HE OR SHE SHOULD IMMEDIATELY CONTACT THE PEB TO COORDINATE FURTHER ACTIONS IN MY CASE.

| SIGNATURE OF SOLDIER | DATE |
|---|---|
| | |

**14. COUNSELOR'S STATEMENT**

I have informed the soldier of the findings and recommendations of the Physical Evaluation Board and explained to him/her the result of the findings and recommendations and his/her legal rights pertaining thereto. The soldier has made the election(s) shown above.

| TYPE NAME AND GRADE OF COUNSELOR | SIGNATURE | DATE |
|---|---|---|
| | | |

DA FORM 199, JUN. 97

***FORMAL BOARD***

Walter Reed Army Medical Ctr

PHYSICAL EVALUATION BOARD (PEB) PROCEEDINGS
For use of this form, see AR 635-40; the proponent agency is USAPDA

| 1. NAME (Last, First, Middle Initial) | 2. RANK | 3. PEBD: 84.06.03 BASD: 84.06.03 |
|---|---|---|
| [redacted] | [redacted] | |

| 4. SOCIAL SECURITY NUMBER | 5. PMOS | 6. BRANCH / COMPONENT |
|---|---|---|
| [redacted] | [redacted] | TDRL/MI/Active Duty Regular Army |

7. THE PEB CONSISTED OF THE INDIVIDUALS INDICATED IN EXHIBIT B

| DATE CONVENED | AT (Location including ZIP Code) |
|---|---|
| 99.06.01 | WALTER REED MEDICAL CENTER, WASHINGTON D.C. 20307-5001 |

8. THE BOARD CONSIDERED THE MEMBER'S CONDITION DESCRIBED IN THE RECORDS. EACH DISABILITY IS LISTED BELOW in descending order of significance

c. Intentional misconduct, willful neglect or unauthorized absence
d. While entitled to basic pay (Incurred or aggravated)
e. In LD in the time of national emergency or after 14 SEP 78 (Incurred or aggravated)
f. Proximate result of performing duty
g. Recommended disability percentage

| VA CODE a | DISABILITY DESCRIPTION b | c | d | e | f | g |
|---|---|---|---|---|---|---|
| 6351 | HIV infection Walter Reed stage III with CD4 count of 554. Presently on five drug antiretroviral regimen. (TDRL Dx 1) | N | Y | Y | Y | 10% |
| | TDRL Dx 2-5, not rated. | | | | | |
| | Having considered all of the evidence available to include the medical evidence; your written statement, and comments of counsel, the board finds you unfit to perform the duties of a Military Officer. The determination was reached for the reason stated above. | | | | | |
| | Your condition HIV-related illness is unfitting and is rated at 10% under VASRD Code 6351. | | | | | |
| | The board therefore recommends that you be separated with severance pay. FORMAL BOARD | | | | | |
| | The present PEB rating of 10% more accurately reflects the current degree of severity of your condition. The PEB considers your condition to have improved so as to be ratable at less than 30%. Rating of less than 30% for soldiers with less than 20 years retirement service require separation with severance pay in lieu of retirement. | | | | | |
| | You are advised that a member of an armed force may not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury that he/she has. | | | | | |

9. THE BOARD FINDS THE SOLDIER IS PHYSICALLY UNFIT AND RECOMMENDS A COMBINED RATING OF: 10%

AND THAT THE SOLDIER'S DISPOSITION BE: Separation with severance pay if otherwise qualified

10. Not applicable

11. EXHIBITS (identify each)
A. Medical Board Proceedings
B. Appointing Orders
C. TDRL Reevaluation
D. TDRL Packet

12. Not applicable

DA FORM 199, JUN. 97

**FORMAL BOARD**

Continued...

**13. ELECTION OF MEMBER**

TO: President, Physical Evaluation Board

I HAVE BEEN ADVISED OF THE FINDINGS AND RECOMMENDATIONS OF THE PHYSICAL EVALUATION BOARD, AND HAVE RECEIVED A FULL EXPLANATION OF THE RESULTS OF THE FINDINGS AND RECOMMENDATIONS AND LEGAL RIGHTS PERTAINING THERETO AND

____ I CONCUR AND WAIVE A FORMAL HEARING OF MY CASE

____ I DO NOT CONCUR BUT WAIVE A FORMAL HEARING. MY WRITTEN APPEAL ___ IS ATTACHED ___ IS NOT ATTACHED.

____ I DO NOT CONCUR AND DEMAND A FORMAL HEARING ___ WITHOUT PERSONAL APPEARANCE ___ WITH PERSONAL APPEARANCE.

____ I REQUEST A REGULARLY APPOINTED COUNSEL TO REPRESENT ME.

____ I WILL HAVE COUNSEL OF MY CHOICE AT NO EXPENSE TO THE GOVERNMENT. I UNDERSTAND THAT I MUST NOTIFY MY COUNSEL AT THIS TIME OF THE PENDING HEARING. I FURTHER UNDERSTAND THAT A DELAY WILL NOT BE GRANTED MERELY BECAUSE I DID NOT CONTACT MY COUNSEL IN SUFFICIENT TIME FOR HIM TO PROPERLY PREPARE. I WILL INFORM MY COUNSEL THAT HE SHOULD IMMEDIATELY CONTACT THE PEB TO COORDINATE FURTHER ACTIONS IN MY CASE.

| SIGNATURE OF MEMBER | DATE |
|---|---|
| | |

**14. COUNSELOR'S STATEMENT**

I have informed the member of the findings and recommendations of the Physical Evaluation Board and explained to him/her the result of the findings and recommendations and his/her legal rights pertaining thereto. The member has made the election(s) shown above.

| TYPE NAME AND GRADE OF COUNSELOR | SIGNATURE | DATE |
|---|---|---|
| | | |

Not Applicable

**15. FOR FORMAL HEARINGS:**

a. THE INDIVIDUAL ELECTED ~~X TO APPEAR~~ X NOT TO APPEAR, AND DID NOT APPEAR.

b. THE MEMBER WAS REPRESENTED BY THE REGULARLY APPOINTED COUNSEL, OR INDIVIDUAL COUNSEL SELECTED BY THE MEMBER AS INDICATED IN EXHIBIT 4. THE COUNSEL'S NAME IS [redacted]

c. IF THE MEMBER'S CASE WAS REFERRED FROM ANOTHER STATION, THE PHYSICAL EVALUATION BOARD LIAISON OFFICER'S NAME IS ____________.

d. IF THE MEMBER WAS NOT PRESENT BECAUSE HE IS A DELETERIOUS TYPE CASE, OR OTHERWISE UNABLE TO COOPERATE IN A REQUIRED FORMAL HEARING, ____________ (Next-of-kin or guardian) ___ WAS ___ WAS NOT PRESENT TO REPRESENT HIS/HER INTERESTS, NEXT-OF-KIN OR GUARDIAN'S ELECTION IS AT EXHIBIT ________.

e. TRANSCRIPT ___ IS ___ IS NOT REQUIRED.

| RECORDER | REPORTER | INTERPRETER (if any) |
|---|---|---|
| CARL W. S. CHUN, GS13, Adj/Alt Pres. | WAYNE MARTIN | |

The attached transcript of the formal hearing, if required, is a record of proceedings and is accurate and complete.

| DATE BOARD ADJOURNED | TYPED NAME, GRADE, BRANCH OF COUNSEL | TYPED NAME, GRADE, BRANCH OF PRESIDENT |
|---|---|---|
| 1 June 1999 | MAJ DAVID C. WHITE, JAGC, WRAMC | RONALD A. GRUBB, COL, IN, President |
| | SIGNATURE David C. White | SIGNATURE [signature] |

DA FORM 199, FEB. 89

**ELECTION TO FORMAL PHYSICAL EVALUATION BOARD PROCEEDINGS**
For use of this form, see AR 635-40; the proponent agency is DCSPER

I have been advised of the findings and recommendations of the formal Physical Evaluation Board and have received a full explanation of the results of the findings and recommendations and legal rights pertaining thereto; and

| | |
|---|---|
| | I concur. |
| | I do not concur; however, I do not wish to submit a statement of rebuttal. I understand that if I do not submit a statement explaining my reasons for disagreement, my case may be forwarded for final disposition action without review of my case by USAPDA. |
| | I do not concur. Attached (or written below) is a statement of rebuttal explaining why I do not agree with the findings and recommendations. |

| Typed or Printed Signature | Signature | Date |
|---|---|---|
| [redacted] | | [redacted] |

Rebuttal:

DA FORM 199-1, JUN. 90

UNIFORMED SERVICES UNIVERSITY OF THE HEALTH SCIENCES
4301 JONES BRIDGE ROAD
BETHESDA, MARYLAND 20814-4799

3 June 1999

COL Ronald A. Grubb
President, Physical Evaluation Board
Walter Reed Army Medical Center
6825 Georgia Ave., NW Building 41
Washington, DC 20307-5001

REFERENCE: [redacted]

Dear COL Grubb:

I am writing to clarify the medical record in conection with the matter of continuing [redacted] on the TDRL for another 12 months for re-evaluation and monitoring of his HIV disease.

Although as I noted in his last TDRL evaluation, [redacted] condition has remained stable *clinically*, his CD4 counts, and particularly his CD4 percentages (which is what is actually measured), considered a reflection of disease activity, have not. While they showed an initial, expected rise with treatment, from a low of 22% to 33%, over the 15 month period leading to the time of his third TDRL evaluation, this figure dropped back to 27%. This despite being on 4 antiretroviral medications and a viral load that had dropped below the level of detection of 400 copies /ml.

These findings indicate that [redacted] is not presently stable and may be a prodrome to a beginning deterioration of his clinical condition. At the very least, they suggest that he may be developing viral resistance to his present medications, which will require modification of his treatment regimen. Only time will enable an accurate assessment of the direction his disease is currently taking.

Truly yours,

Simon Auster, M.D.
Associate Professor
Staff Physician, WRAMC

Printed on Recycled Paper

**DEPARTMENT OF THE ARMY**
U.S. ARMY PHYSICAL EVALUATION BOARD
WALTER REED ARMY MEDICAL CENTER
WASHINGTON, D.C. 20307-5001

REPLY TO
ATTENTION OF

10 June 1999

Dr. Simon Auster
Associate Professor, USUHS
4301 Jones Bridge Road
Bethesda, MD 20814-4799

Dr. Auster,

Reference your letter of 3 June 1999, subject: [redacted]

1. I have sent a copy of your letter and this correspondence to the WRAMC PEBLO. The PEBLO can obtain an approval of your findings and or comments by the appropriate clinic chief. In this way your letter would serve as an addendum to [redacted] file.

2. Your letter does not amend [redacted] diagnosis. This officer is HIV positive and the objective medical standard for retention of an individual with this diagnosis on the TDRL is that the individual have a CD4 count below 200, or have oral hairy leukoplakia, or thrush, or be suffering from AIDS. The fact that this officer's condition is not stable is not at issue. His health at the time of the TDRL examination revealed that his medical condition does not warrant retention on the TDRL but rather requires separation with severance pay.

3. Thank you for providing this documentation.

Ronald A. Grubb
Colonel, Infantry
President, Physical Evaluation Board

cf: PEBLO, WRAMC
[redacted]

Walter Reed AMC

**PHYSICAL EVALUATION BOARD (PEB) PROCEEDINGS**
For use of this form, see AR 635-40; the proponent agency is USAPDA

1. NAME (Last, First, Middle Initial)
[redacted]

2. RANK
[redacted]

3. PEBD: 84.06.03 BASD: 84.06.03

4. SOCIAL SECURITY NUMBER
[redacted]

5. PMOS
[redacted]

6. BRANCH / COMPONENT
TDRL/MI/Active Duty Regular Army

7. THE PEB CONSISTED OF THE INDIVIDUALS INDICATED IN EXHIBIT B

DATE CONVENED
01.01.12

AT (Location including ZIP Code)
Washington PEB, Washington DC 20307-5001

8. THE BOARD CONSIDERED THE MEMBER'S CONDITION DESCRIBED IN THE RECORDS. EACH DISABILITY IS LISTED BELOW in descending order of significance

c. Intentional misconduct, willful neglect or unauthorized absence
d. While entitled to basic pay (Incurred or aggravated)
e. In LD in the time of national emergency or after 14 SEP 78 (Incurred or aggravated)
f. Proximate result of performing duty

| VA CODE a | DISABILITY DESCRIPTION b | 9. Recommended disability percentage c | d | e | f | g |
|---|---|---|---|---|---|---|
| 6351 | HIV infection with a CD4 count of 570 and constitutional symptoms including diarrhea reportedly refractory to therapy. (TDRL Exam)<br><br>The present PEB rating of 60% accurately reflects the current degree of severity of your condition. The PEB considers you to have stabilized sufficiently for rating purposes and recommends permanent retirement IAW para 7-11a(1), AR 635-40.<br><br>FORMAL RECONSIDERATION<br>****This case was reconsidered in accordance with Para 4-21t, AR 635-40, based on the additional information provided. This supersedes DA Form 199 dated 1 June 1999.<br><br>You are advised that a member of an armed force may not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury that he/she has. | N | Y | Y | Y | 60% |

9. THE BOARD FINDS THE SOLDIER IS PHYSICALLY UNFIT AND RECOMMENDS A COMBINED RATING OF: 60%

AND THAT THE SOLDIER'S DISPOSITION BE: Permanent disability retirement

10. Not applicable

11. EXHIBITS (Identify each)
A. Medical Board Proceedings
B. Appointing Orders
C. TDRL Reevaluation
D. TDRL Packet

12. TYPED NAME, GRADE, BRANCH OF PRESIDENT
Curtis K. Southern, LTC, IN, President

SIGNATURE

DATE
01.01.12

DA FORM 199, JUN. 97

# SIMILARLY SITUATED SERVICE MEMBER 2

# PROCEEDINGS AND RECOMMENDED FINDINGS OF COAST GUARD PHYSICAL EVALUATION BOARD

| NAME OF EVALUEE | SERVICE NO. | GRADE OR RATE | TOTAL YEARS ACTIVE SERVICE |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | 20 OR MORE: ___ X 8 OR MORE: ___ LESS THAN 8: ___ |

## SECTION III - FINDINGS

11. EXTENT OF DISABILITY *(Based upon the evaluee's over-all condition)*

| FIT | UNFIT | DESCRIPTION *(Check and complete)* |
|---|---|---|
| | X | a. TO PERFORM THE DUTIES OF GRADE OR RATING *(For other than BMIN Personnel)* |
| | | b. TO PERFORM THE DUTIES OF GRADE AND IN SPECIALTY AS DESIGNATED HEREIN *(For former BMIN personnel only)* |

12. LISTING OF DISABILITIES *(In column B answer "No" or enter "N" for neglect, "M" for misconduct or "A" for unauthorized absence. In column C answer either "Yes" or "No". In column D (1) answer "Yes" or "No", as applicable; if answer is negative, attach Explanatory Statement indicating basis for such answer, (2) make no entry if evaluee (regular or reserve on extended active duty) has eight or more years of active service. In column E and F answer "Yes" or "N/A" (not applicable) as appropriate; do not answer "Yes" in both columns. In column G enter percentage of disability. In column H enter rating code.*

| DIAGNOSIS OF EVALUEE *(List each diagnosis of the evaluee, numbering as (1), (2), etc. Briefly describe disability in the phraseology of the Veterans Administration Schedule for Rating Disabilities, indicating the degree of severity.)* | WILLFUL NEGLECT, INTENTIONAL MISCONDUCT OR UNAUTHORIZED ABSENCE | INCURRED WHILE ENTITLED TO RECEIVE BASIC PAY | PROXIMATE RESULT OF PERFORMANCE OF ACTIVE DUTY OR ACTIVE OR INACTIVE DUTY TRAINING OR INCURRED IN LINE OF DUTY DURING WAR OR NATIONAL EMERGENCY | IS PERMANENT | MAY BE PERMANENT | PERCENTAGE | VETERANS ADMINISTRATION DIAGNOSTIC CODE NUMBER |
|---|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G | H |
| HIV RELATED ILLNESS: ASYMPTOMATIC | NO | YES | YES | YES | N/A | 0 | 6351 |
| FPEB CONVENED ON 12 OCT 00 | | | | | | | |

COMPENSABLE PERCENTAGE OF DISABILITY *(Computed from VA Rating Schedule)*

ZERO

DEPARTMENT OF TRANSPORTATION, U.S. COAST GUARD, CG-3511A (Rev. 4-87)

**SECTION IV - DISPOSITION**

13. DISPOSITION RECOMMENDED *(Check appropriate box)*

| | |
|---|---|
| X | a. SEPARATION WITH SEVERANCE PAY |
| | b. SEPARATION WITHOUT SEVERANCE PAY |
| | c. PERMANENT RETIREMENT |
| | d. TEMPORARY RETIREMENT |
| | e. RETURN TO DUTY |

14. DISPOSITION WITH REGARD TO MENTAL COMPETENCE *(Check only when mental competence is at issue)*

| | |
|---|---|
| | a. IT IS RECOMMENDED THAT THE EVALUEE BE ORDERED TO APPEAR BEFORE A BOARD OF NOT LESS THAN THREE MEDICAL OFFICERS TO DETERMINE WHETHER OR NOT HE IS CAPABLE OF MANAGING HIS OWN AFFAIRS. |

**SECTION V - ACCEPTANCE OF FINDINGS AND CERTIFICATION**

15. NOTIFICATION

The evaluee whose case was considered, or his counsel, has been informed that his copy of the record of the proceedings of this hearing will be furnished to him in the near future, and that he may prepare such written comment or rebuttal to items 11 and 12 as he may desire. The evaluee has been informed that any statement in rebuttal shall be submitted, within 15 days, excluding Sundays and holidays, after receipt of the copy of these proceedings.

The evaluee, or his counsel, has been informed that the findings of the Physical Evaluation Board are not final, but are subject to review by the Physical Review Council at Coast Guard Headquarters. In the event that the Physical Review Council does not concur with the Physical Evaluation Board, and the substitute findings would affect his ultimate disposition or would decrease the amount of his retired pay, he will be notified and afforded an opportunity to submit a statement of rebuttal. In the event a statement of rebuttal is to be submitted, such statement shall be submitted within 15 days of notification of substitute findings by the Physical Review Council.

16. SIGNATURES OF BOARD MEMBERS

| TYPED NAME AND GRADE | SERVICE NO. | SIGNATURE |
|---|---|---|
| TYPED NAME AND GRADE OF BOARD PRESIDENT<br>F. L. PROPST, CDR, USCG | | F L Propst |
| TYPED NAME AND GRADE OF MEDICAL MEMBER<br>E. L. JONES, III, CAPT, USPHS | | E L Jones |
| TYPED NAME AND GRADE OF OTHER MEMBER *(If other member is also designated as Recorder, so state)*<br>K. R. MARTIN, LT, USCGR | | K.R. Martin, LT |
| TYPED NAME AND GRADE OF RECORDER *(When separate Recorder is designated)* | | |

17. ACCEPTANCE OF TENTATIVE FINDINGS BY EVALUEE

I ACCEPT THE TENTATIVE FINDINGS AND WAIVE MY RIGHTS TO A FORMAL HEARING BEFORE THE PHYSICAL EVALUATION BOARD

| DATE | TYPED NAME AND GRADE/RATE OF EVALUEE | SIGNATURE |
|---|---|---|
| | | |

**SECTION VI - REBUTTAL**

18. REBUTTAL AFTER FORMAL HEARING *(Check appropriate box)*

| | |
|---|---|
| | a. REBUTTAL RECEIVED AND ATTACHED TO THIS RECORD |
| | b. PERIOD DURING WHICH REBUTTAL MAY BE FILED HAS ELAPSED AND NO REBUTTAL HAS BEEN RECEIVED |
| | c. EVALUEE HAS STATED IN WRITING THAT HE WILL NOT FILE A REBUTTAL *(Statement attached)* |

| DATE | TYPED NAME AND GRADE OF RECORDER | SIGNATURE |
|---|---|---|
| | K. R. MARTIN, LT, USCGR | |

U.S. Department of Transportation

United States Coast Guard

Commandant
U. S. Coast Guard

2100 Second St. S.W.
Washington, DC 20593
Staff Symbol: G-ICA
Phone: (202) 366-4280

5730
OCT 26 2000

The Honorable Barney Frank
House of Representatives
Washington, DC 20515

Dear Representative Frank:

This letter is a follow-up to our conversation of October 19th concerning Coast Guard policy and actions in cases involving HIV+ members. As discussed, we have had four recent cases of HIV+ members. A brief synopsis of each case follows:

- An HIV+ member on the Temporary Disability Retired List (TDRL) reached the third and final TDRL review, was rated 60 % disabled and permanently retired.

→ - An HIV+ member was mildly symptomatic and on highly active anti-retroviral therapy (HAART). After receiving legal council, the member accepted the Central Physical Evaluation Board's findings of 10 % disability and was separated with severance pay. This member did not request a Formal Physical Evaluation Board. This case will be reviewed, to reexamine the level of disability.

- An HIV+ member was diagnosed with multiple symptoms and complications of advanced disease. This member was rated 100 % disabled and placed on the TDRL. Mandatory reviews will be conducted every 18 months for five years.

- An HIV+ member undergoing final TDRL review was found to have mild symptoms. The member's spouse is also HIV+. This case is currently in the Physical Disability Evaluation System.

Presently, HIV+ members may continue serving in a limited duty status as long as they are asymptomatic. Like all other members, they may voluntarily leave the Service or retire when eligible. When an asymptomatic HIV+ member reaches the end of enlistment or becomes retirement eligible, they will be evaluated to determine the need for disability separation in order to ensure benefits are provided both to the member and family as allowed by law. During that evaluation, we are required to close cases if the disability is rated below 30%; the minimum allowed for a disability retirement. However, recent Veterans Administration (VA) guidance provides latitude in assigning ratings for HIV+ cases and we now know that CD-4 count is not an accurate ruler for measuring the severity or long-term consequences of the disease. Accordingly, we will not involuntarily separate an HIV+ member without military medical treatment benefits. Our policies are consistent with the Department of Defense and Veterans Administration policies.

The Coast Guard is committed to compassionate immediate and long term care of all men and women of the Coast Guard and their families, including those who are afflicted with HIV or AIDS. I will ensure that our policies remain fair and sensitive to the needs of our members.

Sincerely,

JAMES M. LOY
Admiral, U.S. Coast Guard
Commandant

1440 NEW YORK AVENUE, N.W.
SUITE 800
WASHINGTON, D.C. 20005-2107
(202) 371-7000

DIRECT DIAL
(202) 371-7296
DIRECT FAX
(202) 371-7983
EMAIL ADDRESS
[redacted]

November 3, 2000

The Honorable Rodney E. Slater
Secretary
Department of Transportation
400 Seventh Street, S.W.
Washington, D.C. 20590

Admiral James M. Loy
Commandant
United States Coast Guard
2100 Second Street, S.W.
Washington, D.C. 20593-0001

Re: [redacted] TDRL Review

Dear Secretary Slater and Admiral Loy:

I am writing to express my concern that the Coast Guard Physical Evaluation Board (the "PEB") has improperly recommended removal o[redacted] from the Temporary Disability Retirement List (the "TDRL"). Pe[redacted] request, I have reviewed the record in his TDRL proceeding and believe that the PEB is in violation of Coast Guard regulations in its findings.

[redacted] presented credible evidence, in the form of testimony from two treating Navy physicians specializing in the treatment of HIV, that he has suffered and continues to suffer from recurrent constitutional symptoms and intermittent diarrhea and that he is on approved medications for his HIV infection. Under the Veterans Administration Schedule for Rating Disabilities (the "VASRD"), this qualifies [redacted] for a minimum thirty percent disability rating. Nonetheless, the PEB reduced [redacted] from thirty percent to zero percent and recommended that his name be removed from the TDRL (despite the fact that the VA continues to rate [redacted] HIV-related disability at thirty percent).

309990.01-D.C. S2A

Commandant, Coast Guard Personnel Command
November 2, 2000
Page 2

I believe the PEB's finding was in error. Although the PEB provided no explanation of its finding, and I am only left to guess at the reasons for its recommendation, the PEB apparently determined that the testimony presented by [redacted] doctors was in conflict with evidence otherwise contained in the evaluee's medical records. However, to the extent the PEB may have determined such medical evidence to be in conflict with the doctor's testimony, the PEB erred in failing to order an additional examination of the evaluee in order to resolve the inconsistency. Commandant Instruction M1850.2C provides that, when evidence submitted at a PEB hearing "presents credible evidence in conflict with the medical records and the issue thus drawn is not one that can be readily resolved by the observation of the board, the case should be continued and further developed by additional physical examination, special studies, or investigation by appropriate agencies." COMDTINST M1850.2C § 5.C.1.d.

Moreover, I am troubled that the Coast Guard has yet to acknowledge that the Veterans Administration (the "VA"), on 10 May 2000, issued clarifying guidelines for rating HIV under the VASRD. There is no indication in [redacted]case that the PEB applied the VA guidance and, indeed, the PEB's finding in this case appears contrary to these new guidelines. On 18 October 2000, the Department of Defense issued a memorandum[1] to the Secretaries of the Army, Navy, and Air Force to ensure that those branches were following the new VA guidance. I ask that the Coast Guard similarly ensure that its PEBs are interpreting and applying the VASRD in accordance with current VA instructions.

Because of these reasons, as well as those stated in [redacted] rebuttal, I believe the PEB's recommendation "was arbitrary, capricious, not in compliance with law or regulation, [and] an abuse of discretion." COMDTINST M1850.2C § 6.B.3.d. Accordingly, the Physical Review Council should substitute the PEB's findings and recommendation with its own determination that [redacted] continues to rate at least thirty percent under the current VASRD and that his name should remain on the TDRL. If the Council fails to do so, it will be

---

1 Office of the Under Secretary of Defense Memorandum, Subj: "Department of Defense Policy for Service Members on the Temporary Disability Retired List with the Human Immunodeficiency Virus-1 (HIV-1)," dated 18 October 2000.

29990.01 D.C. S2A

Commandant, Coast Guard Personnel Command
November 2, 2000
Page 3

wrongfully – and illegally – stripping [redacted] and his family[2] of retirement-related benefits, including vital medical benefits.

I and others intend to assist [redacted] in litigation to ensure continued receipt of these benefits and, therefore, encourage the Coast Guard to resolve this issue at the administrative level in order to avoid costly, and potentially embarrassing, litigation.

We thank you for your attention and review of this matter.

Sincerely,

W. Mason Emnett

W. Mason Emnett, Esq.
Counsel for [redacted]

cc: John Podesta, White House Chief of Staff
Sandy Thurman, White House Office of AIDS Policy
Dr. J. Jarrett Clinton, DoD Acting Assist. Sec. for Health Affairs
Alphonso Maldon, Jr., DoD Assist. Sec. for Force Management Policy
Stacey L. Sobel, Esq., Servicemembers Legal Defense Network
Bridget Wilson, Esq.
LTJG Vasilios Tasikas, USCG
[redacted]

---

2 [redacted] wife also is HIV+ and is completely dependent upon the military health care system for her life-sustaining medical treatments.

389990 01-DC. S2A

U.S. Department of Transportation
United States Coast Guard

Commandant
United States Coast Guard

2100 Second St. S.W.
Washington, DC 20593-0001
Staff Symbol: G-WPM-1
Phone: (202)267-6017

5730 NOV 22 2000

NOV 17 2000

Stacey L. Sobel, Esq.
Legal Director
Servicemembers Legal Defense Network
P.O. Box 65301
Washington, DC 20035

Dear Ms. Sobel:

This letter is to follow up on our August 21, 2000, correspondence regarding removal of HIV positive (HIV+) members from the Temporary Disability Retirement List (TDRL).

As we stated in that letter, we now allow HIV+ members to remain on active duty and continue their careers in a limited assignment status as long as they remain asymptomatic. They may voluntarily separate or retire from the Coast Guard, the same as any other member of the Coast Guard.

Recent Veterans Administration (VA) guidance recognizes that CD-4 count is not an accurate ruler for measuring the severity or long-term consequences of the disease. Hence, we will not rely solely on the CD-4 count, but on all of the evaluees' symptoms, including adverse reactions to the prescribed medication. Our policies are consistent with the Department of Defense and Veterans Administration policies.

I assure you, we are committed to compassionate care of all men and women of the Coast Guard, including those who are afflicted with HIV or AIDS, and will do everything possible to care for them.

Sincerely,

R. C. OLSEN, JR.
Assistant Commandant for Human Resources
Acting

U.S. Department of Transportation

United States Coast Guard

Commander
United States Coast Guard
Personnel Command

2100 Second Street, S.W.
Washington, DC 20593
Staff Symbol: CGPC-adm-1
Phone: (202) 267-2758
FAX: (202) 267-4467

1850
11 Dec 2000

From: President, Formal Physical Evaluation Board
To: [redacted]

Subj: REBUTTAL TO FORMAL PHYSICAL EVALUATION BOARD FINDINGS

Ref: (a) [redacted] ltr of 3 Nov 2000
(b) Physical Disability Evaluation System, COMDTINST M1850.2C

1. The Formal Physical Evaluation Board has reviewed reference (a). The board has reconsidered and issued new recommended findings and disposition (enclosure (1)). Your entire record, including the rebuttal, this response and the new CG-3511A, has been forwarded for further review and processing.

F. C. PROBST

Copy: [redacted]
Case File

Encl: (1) Proceedings and Recommended Findings of Coast Guard Physical Evaluation Board, [redacted]

**PROCEEDINGS AND RECOMMENDED FINDINGS OF COAST GUARD PHYSICAL EVALUATION BOARD**

| NAME OF EVALUEE | SERVICE NO. | GRADE OR RATE | TOTAL YEARS ACTIVE SERVICE |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | 20 OR MORE X 8 OR MORE LESS THAN 8 |

**SECTION III - FINDINGS**

11. EXTENT OF DISABILITY *(Based upon the evaluee's over-all condition)*

| FIT | UNFIT | DESCRIPTION *(Check and complete)* |
|---|---|---|
| | X | a. TO PERFORM THE DUTIES OF GRADE OR RATING *(For other than BMIN Personnel)* |
| | | b. TO PERFORM THE DUTIES OF GRADE AND IN SPECIALTY AS DESIGNATED HEREIN *(For former BMIN personnel only)* |

12. LISTING OF DISABILITIES *(In column B answer "No" or enter "N" for neglect, "M" for misconduct or "A" for unauthorized absence. In column C answer either "Yes" or "No". In column D (1) answer "Yes" or "No", as applicable; if answer is negative, attach Explanatory Statement indicating basis for such answer, (2) make no entry if evaluee (regular or reserve on extended active duty) has eight or more years of active service. In column E and F answer "Yes" or "N/A" (not applicable) as appropriate; do not answer "Yes" in both columns. In column G enter percentage of disability. In column H enter rating code.*

| DIAGNOSIS OF EVALUEE *(List each diagnosis of the evaluee, numbering as (1), (2), etc. Briefly describe disability in the phraseology of the Veterans Administration Schedule for Rating Disabilities, indicating the degree of severity.)* | WILLFUL NEGLECT, INTENTIONAL MISCONDUCT OR UNAUTHORIZED ABSENCE | INCURRED WHILE ENTITLED TO RECEIVE BASIC PAY | PROXIMATE RESULT OF PERFORMANCE OF ACTIVE DUTY OR ACTIVE OR INACTIVE DUTY TRAINING OR INCURRED IN LINE OF DUTY DURING WAR OR NATIONAL EMERGENCY | IS PERMANENT | MAY BE PERMANENT | PERCENTAGE | VETERANS ADMINISTRATION DIAGNOSTIC CODE NUMBER |
|---|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G | H |
| HIV RELATED ILLNESS | NO | YES | YES | YES | N/A | 30% | 6351 |

COMPENSABLE PERCENTAGE OF DISABILITY *(Computed from VA Rating Schedule)*

THIRTY PERCENT

DEPARTMENT OF TRANSPORTATION, U.S. COAST GUARD, CG-3511A (Rev. 4-87)

**SECTION IV - DISPOSITION**

13. DISPOSITION RECOMMENDED *(Check appropriate box)*

| | |
|---|---|
| | a. SEPARATION WITH SEVERANCE PAY |
| | b. SEPARATION WITHOUT SEVERANCE PAY |
| X | c. PERMANENT RETIREMENT |
| | d. TEMPORARY RETIREMENT |
| | e. RETURN TO DUTY |

14. DISPOSITION WITH REGARD TO MENTAL COMPETENCE *(Check only when mental competence is at issue)*

| | |
|---|---|
| | a. IT IS RECOMMENDED THAT THE EVALUEE BE ORDERED TO APPEAR BEFORE A BOARD OF NOT LESS THAN THREE MEDICAL OFFICERS TO DETERMINE WHETHER OR NOT HE IS CAPABLE OF MANAGING HIS OWN AFFAIRS. |

**SECTION V - ACCEPTANCE OF FINDINGS AND CERTIFICATION**

15. NOTIFICATION

The evaluee whose case was considered, or his counsel, has been informed that his copy of the record of the proceedings of this hearing will be furnished to him in the near future, and that he may prepare such written comment or rebuttal to Items 11 and 12 as he may desire. The evaluee has been informed that any statement in rebuttal shall be submitted, within 15 days, excluding Sundays and holidays, after receipt of the copy of these proceedings.

The evaluee, or his counsel, has been informed that the findings of the Physical Evaluation Board are not final, but are subject to review by the Physical Review Council at Coast Guard Headquarters. In the event that the Physical Review Council does not concur with the Physical Evaluation Board, and the substitute findings would affect his ultimate disposition or would decrease the amount of his retired pay, he will be notified and afforded an opportunity to submit a statement of rebuttal. In the event a statement of rebuttal is to be submitted, such statement shall be submitted within 15 days of notification of substitute findings by the Physical Review Council.

16. SIGNATURES OF BOARD MEMBERS

| TYPED NAME AND GRADE | SERVICE NO. | SIGNATURE |
|---|---|---|
| TYPED NAME AND GRADE OF BOARD PRESIDENT<br>F. L. PROPST, CDR, USCG | | [signature] |
| TYPED NAME AND GRADE OF MEDICAL MEMBER<br>E. L. JONES, III, CAPT, USPHS | | [signature] |
| TYPED NAME AND GRADE OF OTHER MEMBER *(If other member is also designated as Recorder, so state)*<br>K. R. MARTIN, LT, USCGR | | K. L. Mart[signature] |
| TYPED NAME AND GRADE OF RECORDER *(When separate Recorder is designated)* | | |

17. ACCEPTANCE OF TENTATIVE FINDINGS BY EVALUEE

I ACCEPT THE TENTATIVE FINDINGS AND WAIVE MY RIGHTS TO A FORMAL HEARING BEFORE THE PHYSICAL EVALUATION BOARD

| DATE | TYPED NAME AND GRADE/RATE OF EVALUEE | SIGNATURE |
|---|---|---|
| | | |

**SECTION VI - REBUTTAL**

18. REBUTTAL AFTER FORMAL HEARING *(Check appropriate box)*

| | |
|---|---|
| | a. REBUTTAL RECEIVED AND ATTACHED TO THIS RECORD |
| | b. PERIOD DURING WHICH REBUTTAL MAY BE FILED HAS ELAPSED AND NO REBUTTAL HAS BEEN RECEIVED |
| | c. EVALUEE HAS STATED IN WRITING THAT HE WILL NOT FILE A REBUTTAL *(Statement attached)* |

| DATE | TYPED NAME AND GRADE OF RECORDER | SIGNATURE |
|---|---|---|
| | | |