# TAB

# C1

Army Regulation 635–40

Personnel Separations

# Physical Evaluation for Retention, Retirement, or Separation

Headquarters
Department of the Army
Washington, DC
15 August 1990

UNCLASSIFIED

# SUMMARY of CHANGE

AR 635-40
Physical Evaluation for Retention, Retirement, or Separation

This revision--

- o Deletes "worldwide under field conditions" as a sole criterion for determining physical unfitness (para 3-1d).

- o Deletes "clear and convincing" as the standard of evidence to overcome the presumption of physical fitness for soldiers processing for nondisability retirement at the time of referral into the disability system (para 3-2).

- o Prohibits rating disabilities which are neither unfitting nor contribute to the physical unfitness of a soldier (para 3-5).

- o Authorizes NCO's to be appointed the PEBLO (para 3-8).

- o Includes special rules applicable to the disability processing of general and medical corps officers (para 3-13).

- o Establishes that separation or retirement for physical disability will normally occur within 20 days from the date of approval of the determination of physical unfitness for the SA (para 3-14).

- o Establishes the policy that the effective date of separation or retirement for physical disability may be adjusted for accrued leave in excess of that which cannot be sold back to the Government (para 3-14).

- o Establishes the policy that cases of soldiers who have a prognosis of imminent death will be processed in a comparable manner and procedural sequence to the disability cases of all other soldiers (para 3-14).

- o Requires the date of the physical examination to be stated on the NARSUM (para 4-11).

- o Contains updated instructions on documents to be forwarded to the PEB with the MEBD (para 4-15).

- o Updates guidance on composition of the PEB (para 4-17).

- o Requires advisory statements on the DA Form 199 for specific circumstances (para 4-18).

- o Establishes a limited approval authority for PEB presidents to approve PEB findings and recommendations for the SA (para 4-19).

- o Requires determination of physical fitness to be made on the soldier's primary MOS (para 4-19).

- o Deletes the provision for the presumption of service aggravation in cases where an EPTS condition has become unfitting through natural progression after 3 years of service (para 4-19).

- o Establishes procedures for PEB to implement when an LD decision is challanged during a formal hearing (para 4-19).

- o Provides a limited approval authority for PEB presidents to approve PEB findings and recommendations for the SA (para 4-19).

- o Provides approval authority for the DCO and the PEB president and alternate president to determine LD for specific types of cases(para 4-19).

- o Requires the soldier and his or her counsel be provided a copy of any minority report prepared for PEB findings (para 4-19).

- o Provides new guidance on election timeframes and the preparation of rebuttals to findings (paras 4-20, 4-21, and 4-22).

- o Prescribes PEBLO counseling forms (para 4-20).

- o Prescribes a rights counseling form (para 4-21).

- o Prescribes a form for acknowledgement of formal hearing date and release of records (para 4-21).

- o Provides guidance on invitational travel orders for the next-of-kin acting in behalf of a mentally incompetent soldier (para 4-21)1.

- o Deletes restriction prohibiting PEB members from questioning soldier on the origin or aggravation of any disease or injury (para 4-21).

- o Designates the special court-martial convening authority as the approving authority for separation (for non-service aggravated EPTS conditions) upon soldier's waiver of PEB (para 5-4).

- o Establishes new criteria for approval of COAD for soldiers of the Active Components (para 6-3).

- o Advises that PERSCOM may authorize an attendant to accompany a soldier who is on the TDRL and physically incapable of travelling alone to the periodic physical examination (para 7-10).

- o Requires the PEB to provide PERSCOM copies of travel orders endorsed by the PEB authorizing soldiers on the TDRL, their attendant or next-of-kin, funded travel to a formal hearing (para 7-21).

- o Establishes eligibility for referral into the disability system, soldiers of the RC who incur a disease subsequent to 14 November 1986, while performing duty for 30 days or less (para 8-7).

- o Provides for referral of an RC soldier to the PEB, prior to consideration of his or her request to continue in the Active Reserve(para 8-7).

- o Updates guidance for Army application of the VASRD.

- o Updates guidance on PCSH (para E-5).

**Headquarters**
**Department of the Army**
**Washington, DC**
**15 August 1990**

***Army Regulation 635–40**

**Effective 15 September 1990**

**Personnel Separations**

# Physical Evaluation for Retention, Retirement, or Separation

By Order of the Secretary of the Army:
CARL E. VUONO
*General, United States Army*
*Chief of Staff*
Official:

MILTON H. HAMILTON
*Administrative Assistant to the Secretary of the Army*

**History.** This UPDATE printing publishes a revision of this publication. This publication has been reorganized to make it compatible with the Army electronic publishing database. No content has been changed.

**Summary.** This regulation governs the evaluation for physical fitness of soldiers who may be unfit to perform their military duties because of physical disability. It updates policy and procedures resulting from the Department of Defense Directive 1332.18 dated February 25, 1986; the reorganization of the Physical Disability Agency; the implementation of streamlined procedures for case processing; and the passage of Public Law 99–661 as it relates to disability processing of soldiers in the Reserve Components.

**Applicability.** This regulation applies to the Active Army, the Army National Guard, and the U.S. Army Reserve.

**Proponent and exception authority.** Not Applicable.

**Army management control process.** This regulation is subject to the requirements of AR 11–2. It contains internal control provisions but does not contain checklists for conducting internal control reviews. These checklists are being developed and will be published at a later date.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without approval from HQDA (DAPE–MP).

**Suggested Improvements.** The proponent agency of this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to Commander, U.S. Army Physical Disability Agency, ATTN: TAPD–OEA, Forest Glen Section—WRAMC, Washington, DC 20307–5001.

**Distribution.** Distribution of this publication is made in accordance with the requirements on DA Form 12–09–E, block number 2266, intended for command level A for the Active Army, the Army National Guard, and the U.S. Army Reserve.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**Introduction,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Ineligibility for processing • 1–4, *page 1*

**Chapter 2**
**Responsibilities and Functions,** *page 1*

*Section I*
*Responsible Individuals, page 1*
Secretary of the Army (SA) • 2–1, *page 1*
Deputy Chief of Staff for Personnel (DCSPER) • 2–2, *page 1*
Commander, U.S. Total Army Personnel Command (Commander PERSCOM) • 2–3, *page 1*
CG, USAPDA • 2–4, *page 1*
The Surgeon General (TSG) • 2–5, *page 1*
The Judge Advocate General (TJAG) • 2–6, *page 1*
Commanding Generals of Health Services Command (HSC); 7th Medical Command/Europe (7 MEDCOM/EUR); and 18th Medical Command (18 MEDCOM) • 2–7, *page 1*
Commander, MTF • 2–8, *page 1*
Unit commander • 2–9, *page 1*

*Section II*
*Related Boards, page 2*
Board Elements • 2–10, *page 2*
Army Physical Disability Appeal Board (APDAB) • 2–11, *page 2*
The Army Board for Correction of Military Records (ABCMR) • 2–12, *page 2*
Army Disability Rating Review Board (ADRRB) • 2–13, *page 2*

**Chapter 3**
**Policies,** *page 2*
Standards of unfitness because of physical disability • 3–1, *page 2*
Presumptions • 3–2, *page 3*
Conditions existing before active military service • 3–3, *page 3*
LD decisions • 3–4, *page 3*
Use of the Department of Veterans Affairs Schedule for Rating Disabilities (VASRD) • 3–5, *page 4*
Length of hospitalization • 3–6, *page 4*
Retaining soldiers on active duty after scheduled nondisability retirement or discharge date • 3–7, *page 4*
Counseling provided to soldier • 3–8, *page 4*
The TDRL • 3–9, *page 4*
COAD by soldiers unfit because of physical disability • 3–10, *page 4*
Limitation on appearance by soldiers • 3–11, *page 5*
Findings and recommendations of agencies reviewing disability cases • 3–12, *page 5*
Special rules applicable to general and medical corps officers • 3–13, *page 5*

*This regulation supersedes AR 635–40, 13 December 1985.



UNCLASSIFIED

**Contents—Continued**


Factors governing time of processing • 3–14, *page 5*

**Chapter 4**
**Procedures,** *page 5*

*Section I*
*Eligibility for Disability Evaluation, page 5*
Soldiers charged with an offense • 4–1, *page 5*
Soldiers with suspended sentences • 4–2, *page 5*
Enlisted soldiers subject to administrative separation • 4–3, *page 5*
Commissioned or warrant officers who may be separated under other than honorable conditions • 4–4, *page 5*
Soldiers absent without leave (AWOL) • 4–5, *page 5*

*Section II*
*Initiation of Medical Evaluation, page 6*
Referral by HQDA • 4–6, *page 6*
Referral by commanders of MTFs • 4–7, *page 6*
Referral by commanders • 4–8, *page 6*

*Section III*
*Medical Processing Related to Disability Evaluation, page 6*
Medical examination • 4–9, *page 6*
The MEBD • 4–10, *page 6*
Narrative summary (NARSUM) • 4–11, *page 6*
Counseling soldiers who have been evaluated by a MEBD • 4–12, *page 6*
Referral to a PEB • 4–13, *page 6*
Psychiatric and spinal cord injury patients requiring continuing hospitalization • 4–14, *page 6*
Action following approval of MEBD report • 4–15, *page 7*
Rehospitalization of disabled soldier • 4–16, *page 8*

*Section IV*
*Physical Disability Evaluation, page 8*
PEBs • 4–17, *page 8*
Initial processing • 4–18, *page 8*
PEB decisions—common criteria • 4–19, *page 9*
Informal board • 4–20, *page 12*
Formal board • 4–21, *page 13*

*Section V*
*Review and Confirmation of PEB Action, page 17*
Review by USAPDA • 4–22, *page 17*
Disposition of medical records • 4–23, *page 18*

*Section VI*
*Disposition Subsequent to Adjudication, page 18*
Disposition by PERSCOM • 4–24, *page 18*
The APDAB • 4–25, *page 19*
ADRRB • 4–26, *page 19*

**Chapter 5**
**Separation for Non-Service Aggravated, EPTS Conditions upon Soldier's Waiver of PEB Evaluation,** *page 28*
General • 5–1, *page 28*
Criteria • 5–2, *page 28*
Actions by PEBLO • 5–3, *page 29*
Authority to order discharge • 5–4, *page 29*
Action by commander authorized to effect discharge • 5–5, *page 29*

**Chapter 6**
**Continuance of Disabled Personnel on Active Duty,** *page 30*
General • 6–1, *page 30*
Objective • 6–2, *page 30*
Qualification for continuance • 6–3, *page 30*
Processing of application • 6–4, *page 30*
Special counseling • 6–5, *page 30*
Reclassification procedures (enlisted soldiers only) • 6–6, *page 31*
Processing by MTF • 6–7, *page 31*
PEB processing • 6–8, *page 31*
Review at USAPDA or APDAB • 6–9, *page 31*
Action by Approving Authority • 6–10, *page 31*
Disposition of records • 6–11, *page 31*
Disposition of soldiers unable to perform their duty • 6–12, *page 31*
Reevaluation • 6–13, *page 31*
Final retirement or separation • 6–14, *page 32*

**Chapter 7**
**Temporary Disability Retired List,** *page 33*

*Section I*
*Introduction, page 33*
Overview • 7–1, *page 33*
Reasons for placement on the TDRL • 7–2, *page 33*
Information reflected on the TDRL • 7–3, *page 33*
Requirement for periodic medical examination and PEB evaluation • 7–4, *page 34*
Counseling • 7–5, *page 34*
Prompt processing • 7–6, *page 34*
Prompt removal from TDRL • 7–7, *page 34*

*Section II*
*Administration, page 34*
Individual TDRL file • 7–8, *page 34*
PERSCOM's letter of instruction to the MTF commander on periodic medical examination • 7–9, *page 34*
PERSCOM's letter of instruction to the soldier • 7–10, *page 34*
Disposition of the TDRL soldier • 7–11, *page 35*
Restoring eligibility • 7–12, *page 35*

*Section III*
*Periodic Medical Examination, page 35*
Responsible MTF • 7–13, *page 35*
Selection of examining facilities • 7–14, *page 35*
Medical records • 7–15, *page 36*
The MTF commander's duties in notifying the soldier • 7–16, *page 36*
Examination of the soldier • 7–17, *page 36*
Report of the medical examination • 7–18, *page 36*
Review and forwarding the report of the examination • 7–19, *page 36*

*Section IV*
*Physical Disability Decision, page 36*
PEB processing • 7–20, *page 36*
Travel orders for formal hearing • 7–21, *page 37*
Review of TDRL cases • 7–22, *page 37*

**Chapter 8**
**Reserve Components,** *page 40*
Overview • 8–1, *page 40*
Eligibility • 8–2, *page 40*
Proximate result • 8–3, *page 40*
Hospitalization • 8–4, *page 41*
Duty and Pay Status • 8–5, *page 41*
Medical processing • 8–6, *page 41*
Continuance in an Active Reserve status • 8–7, *page 41*
PEB processing • 8–8, *page 41*
Disposition • 8–9, *page 41*

**Appendixes**

**A.** References, *page 44*

**Contents—Continued**

**B.** Army Application of the Department of Veterans Affairs Schedule for Rating Disabilities, *page 46*

**C.** Counseling, *page 64*

**D.** Instructions for DA Form 199 (Physical Evaluation Board (PEB)Proceedings), *page 70*

**E.** Personnel Processing Actions, *page 73*

**Glossary**

**Index**

RESERVED

# Chapter 1
# Introduction

## 1–1. Purpose

This regulation establishes the Army Physical Disability Evaluation System according to the provisions of chapter 61, title 10, United States Code (10 USC 61) and Department of Defense Directive (DODD) 1332.18. It sets forth policies, responsibilities, and procedures that apply in determining whether a soldier is unfit because of physical disability to reasonably perform the duties of his or her office, grade, rank, or rating. If a soldier is found unfit because of physical disability, this regulation provides for disposition of the soldier according to applicable laws and regulations. The objectives of this regulation are to—

*a.* Maintain an effective and fit military organization with maximum use of available manpower.

*b.* Provide benefits for eligible soldiers whose military service is terminated because of a service-connected disability.

*c.* Provide prompt disability processing while ensuring that the rights and interests of the Government and the soldier are protected.

## 1–2. References

Required and related publications are listed in appendix A. Prescribed and referenced forms are also listed in appendix A.

## 1–3. Explanation of abbreviations and terms

Abbreviations and special terms used in this regulation are explained in the glossary.

## 1–4. Ineligibility for processing

*a.* Section 1217, title 10, United States Code (10 USC 1217) excludes cadets of service academies from eligibility for disability benefits under 10 USC 61. However, USMA cadets may be entitled to compensation administered by the Department of Veterans Affairs (VA). Section 101(21)(D), title 38, United States Code (38 USC 101(21)(D)) includes service as a cadet at the United States Military Academy (USMA) within the definition of active duty for purposes of entitlement to VA compensation.

*b.* Reserve Officers' Training Corps (ROTC) cadets are not eligible for processing under this regulation. Senior ROTC cadets may be eligible for VA disability benefits under section 101(22)(D), title 38, United States Code (38 USC 101(22)(D)) as explained above for USMA cadets.

# Chapter 2
# Responsibilities and Functions

## Section I
## Responsible Individuals

### 2–1. Secretary of the Army (SA)

The SA will prescribe regulations to carry out the provisions of 10 USC 61.Unless otherwise specified in this regulation, the SA reserves all powers, functions, and duties of the Army Physical Disability Evaluation System.

### 2–2. Deputy Chief of Staff for Personnel (DCSPER)

The DCSPER has overall Army Staff responsibility for the Army Physical Disability Evaluation System. Policy guidance will be provided by the Director of Military Personnel Management (DMPM), Office of the Deputy Chief of Staff for Personnel (ODCSPER).

### 2–3. Commander, U.S. Total Army Personnel Command (Commander PERSCOM)

The commander, PERSCOM will—

*a.* Operate the Army Physical Disability Evaluation System under the general staff supervision of the DCSPER.

*b.* Accomplish final administrative actions in processing physical disability cases; issue needed orders or other instructions for the SA, based on decisions of the Commanding General, U.S. Army Physical Disability Agency(CG, USAPDA) or higher authority (chap 4 and app E).

*c.* Notify the VA of all individuals being separated or retired from the Army for physical disability.

*d.* Coordinate, control, and manage all soldiers on the Temporary Disability Retired List (TDRL)

### 2–4. CG, USAPDA

The CG, USAPDA, under the operational control of the Commander, PERSCOM, will operate the Army Physical Disability Evaluation System, to include—

*a.* Interpreting and implementing policies coming from higher authority.

*b.* Developing the policies, procedures, and programs of the system.

*c.* Coordinating with other military departments to ensure applicable laws, policies, and directives are interpreted uniformly. (A uniform interpretation is required to ensure that a soldier of the Army will be granted substantially the same benefits as a member of another Service under similar conditions.)

*d.* Commanding and managing the subordinate elements of the USAPDA.

*e.* Reviewing Physical Evaluation Board (PEB) proceedings to ensure that soldiers are given uniform and fair consideration under applicable laws, policies, and directives.

*f.* Making the final decision whether a soldier is unfit because of physical disability except when such decisions are reserved to higher authority. Included as higher authority are the Office of the Secretary of the Army (OSA) and the Office of the Secretary of Defense (OSD).

*g.* Determining percentage rating and disposition.

### 2–5. The Surgeon General (TSG)

TSG will establish and interpret medical standards for retaining soldiers on active duty (see AR 40–3 and AR 40–501).

### 2–6. The Judge Advocate General (TJAG)

The TJAG will—

*a.* Interpret laws and regulations governing the Army Physical Disability Evaluation System.

*b.* Train and provide sufficient legal counsel to represent soldiers appearing before a PEB.

*c.* Train Army attorneys in disability law.

### 2–7. Commanding Generals of Health Services Command (HSC); 7th Medical Command/Europe (7 MEDCOM/EUR); and 18th Medical Command (18 MEDCOM)

The commanding generals of the Health Services Command (HSC); the 7th Medical Command/Europe (7 MEDCOM/EUR); and the 19 Medical Command (19 MEDCOM) will—

*a.* Ensure that Army medical treatment facilities (MTFs) under their control fulfill their responsibilities in connection with the Army Physical Disability Evaluation System as outlined in AR 40–3 and this regulation.

*b.* Appoint MTFs responsible for accomplishing periodic medical evaluation for TDRL members (chap 7).

### 2–8. Commander, MTF

The commander, MTF will—

*a.* Provide a thorough and prompt evaluation when a soldier's medical condition becomes questionable in respect to physical ability to perform duty.

*b.* Appoint a Physical Evaluation Board Liaison officer (PEBLO) to counsel soldiers undergoing physical disability processing.

*c.* Ensure medical evaluation board (MEBD) proceedings referred to the PEB are complete, accurate, and fully documented as outlined in AR 40–3, chapter 7, and chapter 4 of this regulation.

### 2–9. Unit commander

The unit commander will—

*a.* Become thoroughly familiar with the purpose of the Army Physical Disability Evaluation System.

*b.* Ensure that any physical defects impacting on a soldier's performance of duty are reflected in the soldier's evaluation report.

*c.* Refer a soldier to the servicing MTF for medical evaluation when the soldier is believed to be unable to perform the duties of his or her office, grade, rank, or rating.

*d.* Upon request of the MTF commander, provide the information, statements, and records on soldiers of their command being processed for physical disability evaluation.

*e.* Ensure timely compliance with AR 600–8–1 to prevent delay in the disability processing of soldiers under their command.

## Section II Related Boards

### 2–10. Board Elements

*a.* The Army Physical Disability Evaluation System consists of—

(1) MEBDs (a function of the Army Medical Department).

(2) PEBs (elements of the USAPDA).

(3) Case reviews, when applicable, by USAPDA.

*b.* Certain Department of the Army (DA) boards, though not a part of the disability system, are closely related to disability evaluation because of their assigned function to review disability decisions upon request of the soldier, former soldier, or when otherwise required. These boards are described in paragraphs 2–11 through 2–13 below.

### 2–11. Army Physical Disability Appeal Board (APDAB)

The APDAB is a component of the Army Council of Review Boards (ACRB). APDAB was established to review disability evaluation cases forwarded by the CG, USAPDA as provided under the circumstances prescribed in chapter 4.

### 2–12. The Army Board for Correction of Military Records (ABCMR)

The ABCMR is a statutory board established within the OSA under the provisions of section 1552, title 10, (10 USC 1552). The ABCMR provides a means for correcting an error or removing an injustice. Within 3 years of the first knowledge of an error or injustice, a soldier, former soldier, or individual acting on the soldier's behalf may submit an application to the ABCMR according to AR 15–185 if the individual—

*a.* Believes that his or her military records reflect an error or an injustice.

*b.* Has exhausted all administrative remedies offered by existing laws and regulations.

### 2–13. Army Disability Rating Review Board (ADRRB)

The ADRRB is a component of the Army Council of Review Boards (ACRB). The ADRRB reviews disability percentage ratings on request of a soldier who was retired because of physical disability (chap 4, sec VI). Requests for review must be made within 5 years from the date of retirement.

## Chapter 3 Policies

### 3–1. Standards of unfitness because of physical disability

The mere presences of an impairment does not, of itself, justify a finding of unfitness because of physical disability. In each case, it is necessary to compare the nature and degree of physical disability present with the requirements of the duties the soldier reasonably may be expected to perform because of his or her office, grade, rank, or rating.

*a. Objectives of standards.* To ensure all soldiers are physically qualified to perform their duties in a reasonable manner, medical retention qualification standards have been established in AR 40–501, chapter 3. These standards include guidelines for applying them to fitness decisions in individual cases. These guidelines are used to refer soldiers to a MEBD. The major objective of these standards is to achieve uniform disposition of cases arising under the law. These retention standards and guidelines should not be interpreted to mean that possessing one or more of the listed conditions or physical defects signifies automatic disability retirement or separation from the Army. The fact that the soldier has one or more defects sufficient to require referral for evaluation, or that these defects may be unfitting for soldiers in a different office, grade, rank, or rating, does not justify a decision of physical unfitness.

*b. Considering the overall effect of disabilities.* The overall effect of all disabilities present in a soldier whose physical fitness is under evaluation must be considered. The effect will be considered both from the standpoint of how the disabilities affect the soldier's performance and the requirements imposed on the Army to maintain and protect him or her during future duty assignments. A soldier may be unfit because of physical disability caused by a single impairment or physical disabilities resulting from the overall effect of two or more impairments even though each of them, alone, would not cause unfitness.

*c. Evaluating the soldier's fitness to perform duties.* All relevant evidence must be considered in evaluating the fitness of a soldier.Findings with respect to fitness or unfitness for military service will be made on the basis of the preponderance of the evidence. Thus, if the preponderance of evidence indicates unfitness, a finding to that effect will be made. For example, when a referral for physical evaluation immediately follows acute, grave illness or injury, the medical evaluation may have the greater weight.This is particularly true if medical evidence establishes the fact that continued service would be harmful to the soldier's health or would prejudice the best interests of the Army. A soldier may be referred for physical evaluation under other circumstances. If so, evaluations of the performance of duty by supervisors (letters, efficiency reports, or personal testimony) may provide better evidence than a clinical estimate by the soldier's physician describing the physical ability to perform the duties of the office, grade, rank, or rating. Thus, if the evidence establishes the fact that the soldier adequately performed the normal duties of his or her office, grade, rank, or rating until the time of referral for physical evaluation, the soldier might be considered fit for duty. This is true even though medical evidence indicates the soldier's physical ability to perform such duties may be questionable.However, inadequate duty performance should not be considered as evidence of physical unfitness unless a cause and effect relationship exists between the inadequate duty performance and the presence of physical disabilities.

*d. Deciding the soldier's unfitness to perform duties.* Initial enlistment, induction, or commissioning physical standards are not relevant to deciding unfitness for continued military service. Once a soldier has been enlisted, inducted, or commissioned, the fact that the soldier may later fall below initial entry physical standards does not, in itself, authorize separation or retirement unless it is also established that the soldier is unfit because of physical disability as described above. Likewise, a lack of special skills in demand, inability to meet physical standards established for specialized duty such as flying, or transfer between components or branches within the Army, does not, in itself, establish eligibility for disability separation or retirement. Although the ability of a soldier to reasonably perform his or her duties in all geographic locations under all conceivable circumstances is a key to maintaining an effective and fit force, this criterion (world-wide deployability) will not serve as the sole basis for a finding of unfitness.

*e. Prior-service disabilities.* Prior-service medical conditions are to be considered according to the following standards and limitations.

(1) Despite any other provisions of this regulation, after a soldier has been enlisted, inducted, and appointed or commissioned, the soldier will not be declared physically unfit for military service because of disabilities known to exist at the time of the soldier's acceptance for military service that have remained essentially the same in degree since acceptance, and have not interfered with the soldier's performance of effective military service.

(2) Nowithstanding the above, when a soldier enters the military with a waiver for a medical condition or physical defect, and the condition represents a decided medical risk which would probably prejudice the best interests of the Government were the soldier to remain in military service, separation without benefits may be appropriate, if initiated within 6 months of initial entry on active duty. Entry physical standards will be used in separating individuals with pre-existing medical conditions. Such cases will be referred to a PEB to determine if the pre-existing condition has been service-aggravated.

### 3–2. Presumptions

The following presumptions will apply to physical disability evaluation

*a. Before and during active service.*

(1) A soldier was in sound physical and mental condition upon entering active service except for physical disabilities noted and recorded at the time of entry.

(2) Any disease or injury discovered after a soldier entered active service, with the exception of congenital and hereditary conditions, was not due to the soldier's intentional misconduct or willful neglect and was incurred in line of duty (LD).

(3) If the foregoing presumptions are overcome by a preponderance of the evidence, any additional disability or death resulting from the preexisting injury or disease was caused by military service aggravation. (Only specific findings of "natural progression" of the preexisting disease or injury, based upon well-established medical principles are enough to overcome the presumption of military service aggravation.)

(4) Acute infections and sudden developments occurring while the soldier is in military service will be regarded as service-incurred or service-aggravated. Acute infections are those such as pneumonia, active rheumatic fever (even though recurrent), acute pleurisy, or acute ear disease.Sudden developments are those such as hemoptysis, lung collapse, perforating ulcer, decompensating heart disease, coronary occlusion, thrombosis, or cerebral hemorrhage. This presumption may be overcome when a preponderance of the evidence shows that no permanent new or increased disability resulting from these causes occurred during active military service or that such conditions were the result of "natural progression" of preexisting injuries or diseases as in (3) above.

(5) The foregoing presumptions may be overcome only by a preponderance of the evidence, which differs from personal opinion, speculation, or conjecture. When reasonable doubt exists about a soldier's condition, an attempt should be made to resolve the doubt by further clinical investigation and observation and by consideration of any other evidence that may apply. In the absence of such proof by the preponderance of the evidence, reasonable doubt should be resolved in favor of the soldier.

*b. Processing for separation or retirement from active service.*

(1) Disability compensation is not an entitlement acquired by reason of service-incurred illness or injury; rather, it is provided to soldiers whose service is interrupted and they can no longer continue to reasonably perform because of a physical disability incurred or aggravated in service.

(2) When a soldier is being processed for separation or retirement for reasons other than physical disability, continued performance of assigned duty commensurate with his or her rank or grade until the soldier is scheduled for separation or retirement, creates a presumption that the soldier is fit. An enlisted solider whose reenlistment has been approved before the end of his or her current enlistment, is not processing for separation; therefore, this rule does not apply. The presumption of fitness may be overcome if the evidence establishes that—

*(a)* The soldier was, in fact, physically unable to perform adequately the duties of his or her office, grade, rank or rating for a period of time because of disability. There must be a causative relationship between the less than adequate duty performance and the unfitting medical condition or conditions.

*(b)* An acute, grave illness or injury or other significant deterioration of the soldier's physical condition occurred immediately prior to, or coincident with processing for separation or retirement for reasons other than physical disability and which rendered the soldier unfit for further duty.

(3) A soldier previously found unfit but approved for continuation on active duty (COAD) is evaluated according to chapter 6.

### 3–3. Conditions existing before active military service

*a.* According to accepted medical principles, certain abnormalities and residual conditions exist that, when discovered, lead to the conclusion that they must have existed or have started before the individual entered the military service.

(1) Examples of these conditions are as follows:

*(a)* Scars.

*(b)* Fibrosis of the lungs.

*(c)* Atrophy following disease of the central or peripheral nervous system.

*(d)* Healed fractures.

*(e)* Absent, displaced, or resected organs.

*(f)* Supernumerary parts.

*(g)* Congenital malformations and hereditary conditions

*(h)* Similar conditions in which medical authorities are in such consistent and universal agreement as to their cause and time of origin that no additional confirmation is needed to support the conclusion that they existed prior to military service.

(2) Likewise, manifestation of lesions or symptoms of chronic disease from date of entry on active military service (or so close to that date of entry that the disease could not have started in so short a period) will be accepted as proof that the disease existed prior to entrance into active military service.

(3) Manifestations of communicable disease within less than the minimum incubation period after entry on active service will be accepted as proof of inception prior to military service.

*b.* Standard in-service medical and surgical treatment reducing the effect of the disease or other conditions incurred prior to entry into military service does not constitute service aggravation unless the treatment was required to relieve disability that had been aggravated by military service.

*c.* Unexpected adverse effects, over and above known hazards, directly attributable to treatment, anesthetic, or operation performed or administered for a disease or medical condition existing before entry on active duty, may be considered service aggravation.

*d.* For separation guidance on non-service aggravated EPTS conditions when a soldier requests waiver of referral to a PEB, see chapter 5.

### 3–4. LD decisions

*a.* Under the laws governing the Army Physical Disability Evaluation System, soldiers who sustain or aggravate physically unfitting disabilities must meet the following LD criteria to be eligible to receive retirement and severance pay benefits.

(1) The disability must have been incurred or aggravated while the soldier was entitled to basic pay or as the proximate cause of performing active duty or inactive duty training.

(2) The disability must not have resulted from the soldier's intentional misconduct or willful neglect and must not have been incurred during a period of unauthorized absence.

*b.* LD decisions are reached according to policies and procedures prescribed in AR 600–8–1, chapters 39, 40, and 41. Copies of LD decision, DA Form 2173 (Statement of Medical Examination and Duty Status), or DD Form 261(Report of Investigation—Line of Duty and Misconduct Status) must be included in the official records of the case. When a board or council has substantial evidence, however, showing that a prior decision may be incorrect for any reason, they must include such evidence in the case record and request PERSCOM(TAPC–PED–S) to review the LD determination before final disposition of disability processing at HQDA level (para 4–19*g*).

*c.* In certain categories of activities, the Deputy Commander, PEB president, or alternate president have the authority to make

findings of "in line of duty, not due to own misconduct" when no LD investigation has been completed and specific criteria have been met (para 4–19*g*).

### 3–5. Use of the Department of Veterans Affairs Schedule for Rating Disabilities (VASRD)

*a.* The percentage assigned to a medical defect or condition is the disability rating. A rating is not assigned until the PEB determines the soldier is physically unfit for duty. Under the provisions of 10 USC 61 these ratings are assigned from the VASRD.

*b.* Special guidance concerning Army use of the VASRD, as well as modifications and exceptions to it as prescribed by DODD 1332.18, are set forth in appendix B of this regulation.

*c.* The fact that a soldier has a condition listed in the VASRD does not equate to a finding of physical unfitness. An unfitting, or ratable condition, is one which renders the soldier unable to perform the duties of his or her office, grade, rank, or rating in such a way as to reasonably fulfill the purpose of his or her employment on active duty.

*d.* There is no legal requirement in arriving at the rated degree of incapacity to rate a physical condition which is not in itself considered disqualifying for military service when a soldier is found unfit because of another condition that is disqualifying. Only the unfitting conditions or defects and those which contribute to unfitness will be considered in arriving at the rated degree of incapacity warranting retirement or separation for disability. Any non-ratable defects or conditions will be listed in item 8 of DA Form 199, but will be annotated as non-ratable.

### 3–6. Length of hospitalization

Providing definitive medical care to active duty soldiers requiring prolonged hospitalization who are unlikely to return to active duty is not within the DA mission. The time at which a soldier should be processed for disability retirement or separation must be decided on an individual basis. The interest of both the Army and the soldier must be considered. A soldier may not be retained or separated solely to increase retirement or separation benefits.Soldiers who are medically unfit and not likely to return to duty should be processed for disability retirement or separation when it is decided that they have attained optimum hospital improvement.

### 3–7. Retaining soldiers on active duty after scheduled nondisability retirement or discharge date

A soldier whose normal scheduled date of nondisability retirement or separation occurs during the course of hospitalization or disability evaluation may, with his or her consent, be retained in the service until he or she has attained maximum hospital benefits and completion of disability evaluation if otherwise eligible for referral into the disability system.

*a.* Officers and warrant officers on extended active duty may be retained on active duty according to the provision of AR 635–100, chapter 3.

*b.* Enlisted soldiers on extended active duty may be retained on active duty according to the provisions of AR 635–200, chapter 1.

*c.* Soldiers in the Reserve Components (other than Active Guard/Reserve)(AGR)) may be retained according to the provisions of AR 135–381.

*d.* Reserve Component soldiers serving on AGR status will be retained on active duty as prescribed in AR 635–200.

### 3–8. Counseling provided to soldier

*a. PEBLO counseling.* The appointed PEBLO at the MTF is responsible for counseling soldiers (or the next of kin or legal guardian in appropriate cases) concerning their rights and privileges at each step in disability evaluation, beginning with the decision of the treating physician to refer the soldier to a MEBD and until final disposition is accomplished. For this purpose, the MTF commander will name an experienced, qualified officer, noncommissioned officer (NCO), or civilian employee as the PEBLO. At least one additional qualified officer, NCO, or civilian employee will be designated as alternate PEBLO. Only personnel whose duties will not conflict with their counseling responsibilities will be selected. The MTF commander will notify the recorder of the applicable PEB, of the name and telephone number of the PEBLO and alternate PEBLO. PEBLOs will use the Disability Counseling Guide (app C) to assist them in providing thorough counseling. Counseling will be documented(para 4–20*d*). Counseling will cover as a minimum, the following areas:

(1) Legal rights (including the sequence of and the nature of disability processing).

(2) Effects and recommendations of MEBD and PEB findings.

(3) Estimated disability retired or severance pay (after receipt of PEB findings and recommendations).

(4) Probable grade upon retirement.

(5) Potential veteran's benefits.

(6) Recourse to and preparation of rebuttals to PEB findings and recommendations.

(7) Disabled Veterans Outreach Program (DVOP).

(8) Post-retirement insurance programs and the Survivor Benefit Plan(SBP).

*b. Legal counseling.* Counseling by the appointed legal counsel is provided when the soldier requests a formal hearing.

### 3–9. The TDRL

*a.* The TDRL is used in the nature of a "pending list". It provides a safeguard for the Government against permanently retiring a soldier who can later fully recover, or nearly recover, from the disability causing him or her to be unfit. Conversely, the TDRL safeguards the soldier from being permanently retired with a condition that may reasonably be expected to develop into a more serious permanent disability.

*b.* Requirements for placement on the TDRL are the same as for permanent retirement. The soldier must be unfit to perform the duties of his or her office, grade, rank, or rating at the time of evaluation. The disability must be rated at a minimum of 30 percent or the soldier must have 20 years of service computed under section 1208, title 10, United States Code (10 USC 1208). In addition, the condition must be determined to be temporary or unstable.

*c.* A soldier who is determined to be physically fit will not be placed on the TDRL regardless of the severity of the physical defects or the fact that they might become unfitting were the soldier to remain on active duty for a period of time.

### 3–10. COAD by soldiers unfit because of physical disability

*a.* Headquarters, Department of the Army (HQDA) may defer the disposition of a soldier who, although unfit because of physical disability, can still serve effectively with proper assignment limitations. The soldier must consent to being deferred.

*b.* A soldier COAD according to the provisions in chapter 6 must be unfit because of physical disability. The physical disability must be a basically stable condition or one for which accepted medical principles show slow progression. The soldier must be able to maintain himself or herself in a military environment without jeopardizing individual health or the health of others. The soldier must not require an excessive amount of medical care.

*c.* A soldier who is unfit because of physical disability will not be COAD solely to increase benefits. He or she will not be COAD unless his or her retention is justified as being of value to the Army.

*d.* HQDA will reevaluate soldiers approved for COAD when—

(1) An enlisted soldier's term of service expires during the period for which continuance was approved and the soldier requests reenlistment (para 6–17*d*).

(2) Soldier requests extension of continuance on active duty (para 6–13*e*).

*e.* When COAD is approved, the soldier remains liable to complete any service obligation he or she has incurred unless the disqualifying condition progresses to a point wherein the soldier becomes unable to perform within established limitations.

*f.* At the time of final retirement or separation, the soldier will be referred to a MEBD and PEB (para 6–14).

### 3–11. Limitation on appearance by soldiers
A soldier or his or her representative will not be permitted to appear before the informal PEB, USAPDA (during case review), the APDAB, or the ADRRB.

### 3–12. Findings and recommendations of agencies reviewing disability cases
Review and appeal activities are bound by the regulations under which adjudicative activities function. A rare and unusual case may occur to which current regulations do not apply. If so, refer the case through channels to the OSA with a recommendation for disposition.

### 3–13. Special rules applicable to general and medical corps officers
*a.* General officers and medical corps officers will not be found to be unfit by reason of physical disability if they can be expected to perform satisfactorily in an assignment appropriate to their grade, qualifications, and experience.

*b.* General officers and medical corps officers who are processing for retirement by reason of age or length of service may not be retired for physical disability unless the initial unfitness determination of the SA is approved by the Secretary of Defense on the recommendation of the Assistant Secretary of Defense (Health Affairs) (ASD(HA)).

*c.* General officers and medical corps officers not processing for retirement by reason of length of service at the time of their referral into the disability system, may not be retired or separated for physical disability until a recommendation therefore by the SA is approved by the ASD(HA).

*d.* One copy of all retirement orders issued in the case of general officers retired because of physical disability will be submitted to ASD(HA).

### 3–14. Factors governing time of processing
The point in time for referral of a soldier for disability separation or retirement is determined on an individual basis. Normally, soldiers who are not likely to return to duty will be processed as soon as this probability is ascertained.

*a.* Separation or retirement should normally occur within 20 days of the date of the final determination of unfitness by the SA. However, soldiers are entitled to use accrued leave in excess of that which cannot be sold back to the Government.

*b.* Soldiers having a prognosis of imminent death shall be evaluated and processed in a comparable manner and procedural sequence to that of all other soldiers. No procedures will be circumvented or omitted, to include LD determination in the interest of timely processing.

# Chapter 4 Procedures

## Section I Eligibility for Disability Evaluation

### 4–1. Soldiers charged with an offense
*a. Uniform Code of Military Justice (UCMJ) action.* The case of a soldier charged with an offense under the UCMJ or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge, may not be referred for, or continue, disability processing unless—

(1) The investigation ends without charges.

(2) The officer exercising proper court-martial jurisdiction dismisses the charges.

(3) The officer exercising proper court-martial jurisdiction refers the charge for trial to a court-martial that cannot adjudge such a sentence.

*b. Civil court action.* If civil criminal court action is pending and the soldier is present for duty, disability processing continues provided any movement of the soldier is cleared with responsible military and civilian authorities.

### 4–2. Soldiers with suspended sentences
A soldier may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge. If the sentence is suspended, the soldier's case may then be referred for disability processing. A copy of the order suspending the sentence must be included in the soldier's records. If action to vacate the suspension is started after the case is forwarded for disability processing, the PEB serving the area must be promptly notified to stop disability processing. Disability processing may resume if the commander decides not to vacate the suspension.

### 4–3. Enlisted soldiers subject to administrative separation
*a.* Except as provided below, an enlisted soldier may not be referred for, or continue, physical disability processing when action has been started under any regulatory provision which authorizes a characterization of service of under other than honorable conditions.

*b.* If the case comes within the limitations above, the commander exercising general court-martial jurisdiction over the soldier may abate the administrative separation. This authority may not be delegated. A copy of the decision, signed by the general court-martial convening authority (GCMCA), must be forwarded with the disability case file to the PEB. A case file may be referred in this way if the GCMCA finds the following:

(1) The disability is the cause, or a substantial contributing cause, of the misconduct that might result in a discharge under other than honorable conditions.

(2) Other circumstances warrant disability processing instead of alternate administrative separation.

*c.* A soldier being considered for separation because of unsatisfactory performance (AR 635–200, chap 13), must be referred for disability processing upon approved recommendation of a MEBD (AR 635–200, para 1–35*a*).

### 4–4. Commissioned or warrant officers who may be separated under other than honorable conditions
*a.* A commissioned or warrant officer will not be referred for disability processing instead of elimination action (administrative separation)that could result in separation under other than honorable conditions. Officers in this category who are believed to be unfit because of physical disability will be processed simultaneously for administrative separation and physical disability evaluation.

*b.* Commanders exercising general court-martial authority will ensure that the foregoing actions processed together are properly identified and cross-referenced. The administrative separation will be forwarded to the Commander, PERSCOM, ATTN: TAPC–OP–P–M, Alexandria, VA 22332–0418.

*c.* The Commander, PERSCOM, will refer the entire file, including both courses of action, to the Office of the Secretary of the Army, ATTN: SAMR–RB, Washington DC 20310–3073 for necessary review. The SA will decide the proper disposition of the case.

### 4–5. Soldiers absent without leave (AWOL)
A soldier may not be processed through the Army Physical Disability Evaluation System unless he or she is under military control. The soldier must be available to be notified of the findings of the PEB and to indicate concurrence or nonconcurrence with the PEB findings and recommendations. If AWOL, the soldier's case file may not be sent to a PEB. If determined AWOL after the soldier's case file has been referred, the PEB must be promptly notified in order to suspend processing. If the soldier returns within 10 days, the PEB must be notified so that processing may resume. Any substantial change in the soldier's condition during a period of AWOL must be

recorded by an addendum to the original MEBD or by a new MEBD and furnished to the PEB.

## Section II
## Initiation of Medical Evaluation

### 4–6. Referral by HQDA
The Commander, PERSCOM, upon recommendation of TSG, may refer a soldier to the responsible MTF for medical evaluation when a question arises as to the soldier's ability to perform the duties of his or her office, grade, rank, or rating because of physical disability.

### 4–7. Referral by commanders of MTFs
Commanders of MTFs who are treating soldiers in an assigned, attached, or outpatient status may initiate action to evaluate the soldier's physical ability to perform the duties of his or her office, grade, rank, or rating.

### 4–8. Referral by commanders
When a commander believes that a soldier of his or her command is unable to perform the duties of his or her office, grade, rank, or rating because of physical disability, the commander will refer the soldier to the responsible MTF for evaluation. The request for evaluation will be in writing and will state the commander's reasons for believing that the soldier is unable to perform his or her duties. DD Form 689 (Individual Sick Slip) may be used for such referral (AR 600–6). Commanders of Reserve units not on active duty will be guided by AR 40–501 and chapter 8 of this regulation.

## Section III
## Medical Processing Related to Disability Evaluation

### 4–9. Medical examination
The MTF commander having primary medical care responsibility will conduct an examination of a soldier referred for evaluation. The commander will advise the soldier's commanding officer of the results of the evaluation and the proposed disposition. If it appears the soldier is not medically qualified to perform duty, the MTF commander will refer the soldier to a MEBD.

### 4–10. The MEBD
MEBD's are convened to document a soldier's medical status and duty limitations insofar as duty is affected by the soldier's status. A decision is made as to the soldier's medical qualification for retention based on the criteria in AR 40–501, chapter 3. If the MEBD determines the soldier does not meet retention standards, the board will recommend referral of the soldier to a PEB. For MEBD's rules for documentation, recommendations, and disposition of the evaluated soldier, see AR 40–3, chapters 7 and 8.

### 4–11. Narrative summary (NARSUM)
The NARSUM to the MEBD is the heart of the disability evaluation system.Incomplete, inaccurate, misleading, or delayed NARSUMs may result in injustice to the soldier or to the Army.

*a.* Physicians who prepare cases for the MEBD and PEB should use the VA Physician's Guide for Disability Evaluation Examinations (published by the VA)to describe physical defects. This helps to ensure consistency in reporting similar conditions and assists the boards of the disability system in their review and evaluation process. (See AR 40–3, chapter 8.)

*b.* In describing a soldier's conditions, a medical diagnosis alone is not sufficient to establish that the individual is unfit for further military service. The history of the soldier's illness, objective findings on examination, results of X-ray and laboratory tests, reports of consultations, response to therapy, and subjective conclusions with rationale must be addressed.

*c.* A correlation must be established between the soldier's medical defects and physical capabilities. (This is important when a chronic condition is the basis for referral to a PEB and no change in severity of the condition has occurred or when referral of the case to a PEB appears controversial.)

*d.* The date of onset of a medical impairment may be questionable because of relatively short military service and the nature of the impairment, for example, a mental disease. If so, the NARSUM should address the results of inquiry into the pre-service background (family, relatives, medical, and community) of the soldier in sufficient detail to overcome substantive question concerning the date of onset.

*e.* When a soldier is diagnosed with a mental disorder, the NARSUM must include a statement indicating whether the soldier is mentally competent for pay purposes and capable of understanding the nature of, and cooperating in, PEB proceedings.

*f.* NARSUMs will not reflect a conclusion of unfitness. Therefore, diagnoses must not be qualified by such terms as "unfitting", "disqualifying", "ratable", "not ratable".

*g.* When disclosure of medical information would adversely affect the soldier's physical or mental health, the NARSUM should include a statement to that fact.

*h.* The NARSUM should include the date of the physical examination conducted for purposes of physical disability evaluation.

*i.* MEBD proceedings from other than Army MTF's must be forwarded through the designated Army facility (AR 40–3, chap 7).

### 4–12. Counseling soldiers who have been evaluated by a MEBD
*a.* The PEBLO will advise the soldier of the results of the MEBD. The soldier will be given the opportunity to read and sign the MEBD proceedings. If the soldier does not agree with any item in the medical board report or NARSUM, he or she will be advised of appeal procedures.

*b.* The decisions below are exclusively within the province of adjudicative bodies. Neither the PEBLO nor the attending medical personnel will tell the soldier that—

(1) The soldier is medically or physically unfit for further military service.

(2) The soldier will be discharged or retired from the Army because of physical disability.

(3) A given percentage rating appears proper.

(4) A LD decision is final (unless final approval has been obtained according to AR 600–8–1).

### 4–13. Referral to a PEB
*a.* The MEBD will recommend referral to a PEB those soldiers who do not meet medical retention standards. Those who apply for COAD under the provisions of chapter 6 will be included. Do not refer soldiers to a PEB who request discharge under the provisions of chapter 5. A soldier being processed for nondisability separation will not be referred to a PEB unless the soldier has medical impairments that raise substantial doubt as to his or her ability to continue to perform the duties of his or her office, grade, rank, or rating.Soldiers previously found unfit and retained in limited assignment duty status under chapter 6, or a previous authority, will be referred to a PEB.

*b.* A soldier may provide additional information to the MTF commander to forward to the PEB. The information may be from the unit commander, supervisor, or other persons who have knowledge regarding the effect the condition has on the soldier's ability to perform the duties of the office, grade, rank, or rating.

*c.* Personnel processing actions for soldiers referred to a PEB will be according to appendix E.

### 4–14. Psychiatric and spinal cord injury patients requiring continuing hospitalization
*a.* AR 40–3 provides for transfer of psychiatric and spinal cord injury patients to a VA medical facility.

(1) Psychiatric patients requiring continuing hospitalization may be transferred after completion of MEBD action. To ensure timely processing, the MEBD proceedings must be referred to the PEB immediately after transfer of the patient.

(2) Spinal cord injury patients requiring continuing hospitalization will be expeditiously transferred to the VA Spinal Cord Injury Center, regardless of whether the MEBD is completed. The MTF that has responsibility for patients in the particular VA Spinal Cord Injury Center will coordinate the completion and processing of the MEBD.

*b.* The PEBLO of the MTF that has responsibility for the completion of the MEBD will provide disability counseling to the soldier or the soldier's next-of-kin when the soldier is mentally incompetent. The PEBLO will also notify the Installation Retirement Services Officer of the soldier's transfer to the VA hospital; and in cases of mental incompetence, provide the RSO the name and address of the next of kin in order to coordinate counseling on SBP as required under section 1455, title 10, United States Code (10 USC 1455).

**4–15. Action following approval of MEBD report**

The MTF commander will notify the unit commander of the planned referral of a soldier to a PEB and obtain from the commander the written statement described in paragraph *e* below. If further action is not barred, the original and two copies of the MEBD proceedings and allied documents described below, as applicable, will be forwarded to the PEB.

*a.* DA Form 5889–R (PEB Referral Transmittal Document). This document serves as the forwarding memorandum. It identifies the documents forwarded and provides unit and home addresses and telephone numbers for the PEB to contact the soldier as required. DA Form 5889–R will be locally reproduced on 8½ by 11 inch paper. A copy of the form for reproduction purposes is located at the back of this regulation.

*b.* Documents submitted by soldier to accompany MEBD as evidence of physical ability to adequately perform military duties (letters, efficiency reports, or personal statements).

*c.* DA Form 3947 (Medical Evaluation Board Proceedings) with SF 502(Medical Record—Narrative Summary Clinical Survey) as enclosure 1 and DA Form 3349 (Physical Profile) as enclosure 2.

*d.* In cases where the soldier has been determined mentally incompetent, a statement confirming the name, address, telephone number, and relationship of individual authorized to act in behalf of the soldier; whether this person is available for counseling following PEB action; and whether the person has been advised of the referral to a PEB. If the next-of-kin is not known or cannot be located and no court-appointed guardian exists, include a summary of the attempts to identify or locate the next-of-kin. To establish the individual having authority to act for an incompetent soldier, in the absence of a valid and pertinent power of attorney or a court order authorizing an individual to act for an incompetent soldier, follow the guidelines below. The person authorized to act is the person highest in the line of authority listed below.

(1) Spouse, even if a minor.

(2) Adult sons or daughters in order of seniority. An individual is an adult upon reaching the age of majority under the state law of the individual's legal residence.

(3) Parent in order of seniority, unless legal custody was granted to another person by reason of court decree or statutory provision. The person to whom custody was granted remains as next of kin although the individual has reached the age of majority.

(4) Blood or adoptive relative who was granted legal custody of the person by reason of a court decree or statutory provision. The person to whom custody has been granted remains the nearest next of kin although the individual has reached age of majority.

(5) Adult brother and sisters in order of seniority.

(6) Grandparents in order of seniority.

(7) Other relatives in order of relationship to the individual and according to the laws of the soldier's domicile. A soldier's domicile is the soldier's legal residence. It is not necessarily where the soldier is actually living, the soldier's home of record, or where the soldier is stationed.

(8) Persons who stand in place of a parent. Seniority in age will control when the persons are of equal relationship.

*e.* Statement from soldier's commander confirming whether any adverse personnel action is being considered against the soldier and describing the soldier's current duty performance. The description of duty performance should address the following:

(1) The soldier's most recent performance of duty.

(2) Any special limitation of duty due to the soldier's physical condition.

(3) The soldier's ability to adequately perform the duties normally expected of an individual of the soldier's office, grade, rank, or rating.

(4) The soldier's current duty assignment, anticipated future assignments, branch, age, and career specialities.

*f.* A copy of the document reflecting the approved LD decision (AR 600–8–1) if the disability is the result of injury; the result of disease secondary to injury or due to misconduct; or the result of disease when the case is that of a soldier performing duty for 30 days or less. Provide either a DD Form 261, DA Form 2173, or similar LD reports from the Navy or Air Force.If the documents are not available, the MTF commander will send a request for LD decision, well in advance of a preparation of the MEBD report, to the soldier's unit of assignment at the time of injury or disease. Include a copy of the request in the case file sent to the PEB and send a copy to PERSCOM(TAPC–PED–S). The request will provide the following information:

(1) Name, grade, and SSN.

(2) Date and place of injury.

(3) Short summary of circumstances of injury, including the identity of MTF where the soldier was treated.

(4) Unit of assignment when the soldier was injured.

(5) Statement that the LD determination is required for disability processing.

*g.* Orders or training schedule under which the soldier was performing active duty, active duty for training, or inactive duty training when the soldier is subject to disability processing under chapter 8. If the soldier is retained for medical care beyond termination date of active duty for training, include a copy of the affidavit required by AR 135–381. If referral to a PEB occurs during rehospitalization for treatment of residuals of an injury, provide a copy of the authorization for rehospitalization required by AR 40–3, para 4–2*d*(2).

*h.* Copy of memorandum approving COAD when case is that of a soldier previously continued on duty under the COAD program. If available, include a copy of the DA Form 199 related to the previous COAD action.

*i.* Soldier's request for COAD under chapter 6 of this regulation.

*j.* Statement of COAD counseling when soldier has 18 but less than 20 years of service and declines to request COAD. (para 6–5).

*k.* Copy of decision by the GCMCA to waive administrative separation under AR 635–200, chapter 14 for referral of soldier to a PEB. Requirement applies even if a general discharge is directed under AR 635–200, chapter 14.Requirement is not applicable to soldiers pending separation under AR 635–200, chapter 13.

*l.* Statement from the custodian of the soldier's personnel records confirming whether one of the circumstances below is applicable at the time the soldier is referred to a PEB.

(1) Voluntary or mandatory retirement processing.

(2) Expiration of term of service without reenlistment.

(3) Expiration of term of service with bar to reenlistment.

(4) Involuntary release from active duty due to DA board action.

(5) Qualitative management denial for reenlistment.

(6) Adverse personnel action.

*m.* Document authorizing soldier's retention beyond scheduled separation or retirement date. (See AR 635–100, AR 635–120, or AR 635–200.)

*n.* If available, DA Form 2 (Personnel Qualification Record—Part I) and DA Form 2–1 (Personnel Qualification Record—Part 2). If the documents are not available, use alternative sources to obtain the required personnel data if the information is reliable. Examples include requesting the Military Personnel Office (MILPO) to extract a DA Form 2A (Personnel Qualification Record, Parts I and II) from SIDPERS and asking the soldier to furnish the information directly. The use of alternative sources does not relieve the PEBLO of the

requirement to initially request a copy of the DA Form 2 and DA Form 2–1.

*o.* If available, a statement explaining the reason for reduction to the lower grade when the soldier is serving in a grade below the highest grade held. When the information is available, include a statement explaining the circumstance precluding advancement to private or private first class under the provisions of AR 600–200 (NGR 600–200 or AR 140–158 for soldiers in the Reserve Components) if—

(1) The current grade is private (pay grade E–1), and the soldier has completed more than 6 month's service.

(2) The current grade is private (pay grade E–2), and the soldier has completed more than 12 months service.

*p.* Copy of request for VA hospital bed designation, if applicable.

*q.* Copy of orders moving patient to a VA hospital for continued hospitalization, if applicable.

*r.* Copy of letter(s) to proper state authorities, as applicable.

*s.* Copy of the request for Statement of Service when soldier is a member of the Reserve Components (fig 4–1).

*t.* Copy of latest DA Form 3686–1 (Army Leave and Earnings Statement).

### 4–16. Rehospitalization of disabled soldier

A soldier who is rehospitalized while undergoing disability evaluation or awaiting final disposition must be evaluated to decide if his or her condition may change the findings or recommendations of the PEB. If the soldier's condition may change the findings and recommendations, the MTF commander will notify the PEB president. Further adjudicative and review action may be suspended pending resolution. When the soldier has received optimum hospital improvement for disposition purposes, the hospital commander will prepare an addendum to the original medical board. The addendum will be forwarded to the PEB with any other pertinent records unless some other disposition is indicated. The PEB must be notified if other disposition terminates disability processing.

## Section IV
## Physical Disability Evaluation

### 4–17. PEBs

*a. Purpose.* PEBs are established to evaluate all cases of physical disability equitably for the soldier and the Army. The PEB is not a statutory board. Its findings and recommendations may be revised. It is a fact-finding board for the following:

(1) Investigating the nature, cause, degree of severity, and probable permanency of the disability of soldiers whose cases are referred to the board.

(2) Evaluating the physical condition of the soldier against the physical requirements of the soldier's particular office, grade, rank, or rating.

(3) Providing a full and fair hearing for the soldier as required by section 1214, title 10 United States Code (10 USC 1214).

(4) Making findings and recommendations required by law to establish the eligibility of a soldier to be separated or retired because of physical disability (10 USC 61).

*b. Composition.* PEBs will consist of at least three members(president, personnel management officer, and a medical member). PEB members will be experienced officers who are thoroughly familiar with board procedures.The CG, USAPDA will appoint PEB members from assigned personnel for full-time duty. Part-time members may be appointed by the CG, USAPDA with the consent of the commander having jurisdiction over the individual to be appointed-.Part-time members supplement or temporarily replace full-time members, as needed, for the prompt processing of disability cases. The president and personnel management officer will be field grade officers (other than Medical Corps) on active duty in the U.S. Army (other than active duty for training).The medical member will be either an officer of the U.S. Army Medical Corps or a Department of the Army civilian (DAC) physician with previous U.S. Army Medical Corps experience. The medical member must not have served in any capacity with the MEBD that referred the soldier to the PEB. If possible, the voting members should be senior to the person being evaluated. To ensure fair and independent decision making, the PEB president will not rate the other members of the board for purposes of evaluating job proficiency.

*c. President of PEB.* The appointing authority will name a senior commissioned officer as president of each PEB. The senior nonmedical member will act as president when the president is absent. The president has full responsibility for the board. He will ensure that law, regulations, and DA adjudicative principles are followed.

*d. Reserve Component member.* When a soldier of the Reserve Components (RC) is being evaluated, one of the PEB members must be a Reserve officer who is otherwise qualified for duty as a member of the PEB.

*e. Disqualification.* PEB voting members must disqualify themselves if they have had a personal or professional relationship with the soldier being evaluated.

*f. Disability evaluation of PEB members.* When members of the PEB are referred into the physical disability system, they will be evaluated by other than the PEB to which assigned. After PEB evaluation such cases will be forwarded to USAPDA for review.

*g. Female or minority representation.*

(1) When requested, the PEB will substitute a female or minority soldier of the same minority group for one of the regular members of the board, if the requested representation is reasonably available. Request for female or minority representation should be made in writing at the time of request for a formal hearing. The substitute must meet the qualifications for regular voting members. The PEB president will determine if the requested representation is reasonably available. The proceedings will include a statement of the request and whether the representation was or was not provided, that is, "Minority (or female) representation was requested and provided" or "Minority representation (or female) was requested and not reasonably available and, therefore, was not provided."

(2) When an enlisted soldier is being evaluated, the PEB will upon written request of the soldier, include enlisted representation if reasonably available. Request for enlisted representation should be in writing at the time of request for a formal hearing. The enlisted representation must be in the ranks of sergeants first class to sergeants major and senior to the soldier being evaluated. The PEB president will determine if enlisted representation is reasonably available. The proceedings will include a statement of the request and whether the representation was or was not provided as described in paragraphg(1) above. When enlisted representation is provided, the PEB will increase to five members, all of whom will have a vote. The fifth member may be enlisted or officer.

*h. Counsel.* An Army attorney will be appointed as counsel to represent soldiers at formal PEB hearings. The attorney will not be a voting member of the PEB or an advisor to the PEB, but will represent the soldier as required when the soldier requests a formal hearing. The attorney will counsel the soldier until formal disability proceedings are completed. The appointed counsel may also advise PEBLOs of MTFs that refer cases to the PEB.

*i. Recorder.* The appointing authority will assign a permanent recorder for the PEB. The recorder will be a commissioned officer, warrant officer, or civilian employee of equivalent grade of any branch or career field except those listed below.

(1) Medical Corps.

(2) Dental Corps.

(3) Army Nurse Corps.

(4) Army Medical Specialist Corps.

(5) The Judge Advocate General's Corps.

*j. Reporter.* The appointing authority will assign permanent qualified reporters to the PEB.

*k. Support.* A PEB is a tenant of the installation where located. The CG, USAPDA enters into agreements providing for administrative and logistical support with installation and MTF commanders.

### 4–18. Initial processing

*a.* Upon receipt of a case by the PEB, the case file will be reviewed to ensure it is complete. If documents are missing, action

will be taken to complete the file. When the case file is complete, it may be referred to the board for evaluation.

*b.* The PEB may return a case to the MTF commander for additional information. However, efforts should be made to resolve all issues without returning the case. When circumstances permit resolution of the problem by discussion, a memorandum of the discussion must be included in the case file as an exhibit. When return of the case to the MTF is necessary, the reason for its return will be clearly stated in the letter of transmittal. Examples of reasons for which a case may be returned are as follows:

(1) Further physical examination, clarification, or preparation of additional records is required.

(2) Additional description and information by the medical board of the soldier's defects and their effect on the soldier's functional ability to perform duty are necessary for proper PEB evaluation of the case.

(3) Further observation, evaluation, and reconsideration by a medical board is required.

(4) Additional information from the command concerning the soldier's ability to perform the duties of his or her office, grade, rank, or rating must be provided for proper PEB evaluation of the case.

(5) The soldier has been AWOL for 10 days or more.

**4–19. PEB decisions—common criteria**

*a. Determinations.* The voting members of a PEB make findings and recommendations in each case on the basis of the instructions set forth in paragraphs *b* thru *q* below. The board decides all questions by majority vote. All findings must be based on a preponderance of the evidence. Recommendations must be supported by the findings. In summary, the board determines the following:

(1) Whether the soldier is physically fit or unfit to perform the duties of the soldier's office, grade, rank, or rating.

(2) Whether the disability is of a permanent nature.

(3) Whether the disability meets the criteria established by law for compensation. This determination considers the following questions:

*(a)* Was the disability incurred or aggravated while the soldier was entitled to basic pay (when the soldier is on active duty for more than 30 days)?

*(b)* Was the disability the result of misconduct or willful neglect or incurred during a period of unauthorized absence?

*(c)* Was the disability incurred in LD during a time of war or national emergency or incurred in LD after 14 September 1978?

*(d)* In the case of a soldier ordered to active duty for 30 days or less or ordered to duty under section 270(b), title 10, United States Code (10 USC 270(b)), was the disability the proximate result of performing active duty or inactive duty training? If the disability results from a disease, was it incurred prior to or after 15 November 1986 (chap 8).

(3) Whether the disability meets the criteria for exemption of disability retired or severance pay from gross federal income.

(4) Whether the disability meets the criteria for Civil Service preference eligible status and exemption from the Dual Compensation Act.

*b. Limitations of PEB approval authority.* The PEB may approve for the SA all but the following cases:

(1) General and medical corps officers found unfit.

(2) Informal proceedings when the soldier nonconcurs, waives a formal hearing, and submits within the required time frame a statement explaining his or her reasons for disagreement. The PEB will forward the proceedings to USAPDA for review when its consideration of the rebuttal does not result in a change of the PEB findings and recommendations.

(3) Formal proceedings when the soldier nonconcurs with any finding or recommendation, submits within the required time frame a statement explaining his reasons for disagreement, and the PEB does not modify its decision as requested by the soldier.

(4) All cases in which a minority report is submitted.

(5) Cases of members assigned to a PEB.

(6) Any case previously forwarded to USAPDA for review and approval, which was returned to the PEB for reconsideration or rehearing.

*c. Additional documents.* Any member of the PEB, the soldier, or counsel acting in the soldier's behalf may request additional documents. The PEB president will determine if the requested information is required for proper adjudication of the case. If it is determined that the additional information is required, the PEB president will suspend consideration of the case until an effort has been made to obtain the requested information. If requested documents cannot be obtained, a memorandum for record will be included in the case file reflecting all efforts made to obtain the information.The case will then be adjudicated on the basis of the available evidence.

*d. Decision on fitness.*

(1) The first and most important determination made by the PEB is whether the soldier is physically fit or unfit to perform the duties of the soldier's office, grade, rank, or rating. All other actions are directly or indirectly tied to this one finding.

(2) The determination of physical fitness will be made by relating the nature and degree of physical disability of the soldier to the requirements and duties that the soldier may reasonably be expected to perform in his or her primary MOS.

(3) Changes in medications or other therapy for chronic conditions do not alone establish deterioration of a chronic condition. Unless recent, significant deterioration has occurred or unexpected adverse results are evident from the new treatment, such changes are not a basis for finding a soldier unfit.

*e. Conditions which existed prior to entry in service.*

(1) *Unchanged physical defects.* A soldier will not be found unfit because of physical defects that—

*(a)* Were known to exist at the time of acceptance for military service,

*(b)* Have remained essentially unchanged since acceptance,

*(c)* Have not interfered with performance of effective military service.

(2) *Application of accepted medical principles.* After a soldier is accepted for active duty, discovery of an impairment causing physical disability is not conclusive evidence that the condition was incurred after acceptance. Consideration must also be given to accepted medical principles in deciding whether a medical impairment was the result of, or aggravated by, military service while the soldier was entitled to basic pay; or in the case of a Reservist on active duty for 30 days or less, whether the disability was the proximate result of performing active duty or inactive duty training. Accepted medical principles may not be excluded in making these decisions even when there is no other evidence indicating the impairment was present before the soldier's entry on active duty. The soldier's length of service must be considered when determining service aggravation. When a decision or recommendation of a PEB is based primarily on accepted medical principles, the principle must be cited as part of the rationale.

(3) *Service aggravation.*

*(a)* The PEB may decide that a soldier's physical defect existed prior to service, or inactive duty for training, or resulted from a nonservice connected condition (not in LD). If so, the board must further consider whether military service aggravated the unfitting defect.

*(b)* If the soldier's military service makes the condition worse or hastens the natural progression of the condition beyond the normal or anticipated rate had he or she not been exposed to such service, a finding of aggravation must be considered. AR 600–8–1, chapter 41, contains guidance on service aggravation. When the PEB decides that a condition has been aggravated by service, the PEB will consider the degree of disability that is in excess of the degree existing at the time of entrance into service. (app B).

(4) *Conditions not aggravated by service.* Soldiers who are unfit by reason of physical disability neither incurred nor aggravated during any period of service while entitled to basic pay, or as the proximate result of performing active duty or inactive duty training,

but which effects duty performance, will be separated for physical disability without entitlement to benefits.

(a) Enlisted soldiers who are eligible for discharge under chapter 5, may be processed under the provisions of that chapter upon their application.

(b) Soldiers who meet the criteria and apply for COAD as set forth in chapter 6 will be processed under the provisions of that chapter.

(c) RC soldiers may request transfer to the Retired Reserve if eligible.

*f. Entitlements to benefits.* The following rules apply when deciding whether a soldier is entitled to Army disability retired or severance pay.

(1) Sections 1201 through 1203, title 10, United States Code (10 USC 1201 thru 1203) establish the criteria for compensation for soldiers of the Regular Army or soldiers of the RC ordered to active duty for more than 30 days(other than for training under 10 USC 270(b)). These criteria include the following:

(a) Disability was incurred while the soldier was entitled to basic pay.

(b) The disability is not the result of the soldier's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and either the soldier has at least eight years of active federal service for retirement; the disability is the proximate result of performing active duty; the disability was incurred in the line of duty in time of war or national emergency; or the disability was incurred in line of duty after September 14, 1978.

(2) Sections 1204 through 1206, title 10, United States Code (10 USC 1204 thru 1206) establish the criteria for entitlements for soldiers of the RC ordered to active duty for 30 days or less or under 10 USC 270(b) (chap 8).

(3) Decision of the Comptroller General of the United States, B–205953, dated 18 June 1982, has ruled that a member in excess leave status is not entitled to basic pay and, therefore, is not entitled to any disability benefits under the provisions of 10 USC 61.

(4) When a finding of unfitness depends on the combined effect of two or more disabilities, each disability must meet the above eligibility requirements to qualify the soldier for disability retirement or severance pay.If one of the combined disabilities that, in combination, renders the soldier unfit does not meet the requirements for entitlement to benefits, the soldier is not eligible for disability benefits from the Army. For example, a soldier may be found unfit because of a disability determined to be EPTS. That soldier may also have a disability that alone is not unfitting but when considered with the EPTS disability would be unfitting. Such a soldier may not be found unfit because of the first disability (EPTS) and thereafter rated for the second disability (which is only unfitting in combination with the first disability).

(5) If the soldier is entitled to disability benefits, the PEB decides the rating for each compensable disability from the VASRD, as modified by appendix B.

(6) When a soldier is eligible for disability benefits, any other disability is compensable if—

(a) The criteria in (1) and (2) above are met.

(b) The disability, in itself, is unfitting or contributes to the unfitting condition.

*g. Application of LD policy.*

(1) Normally PEBs accept the validity of informal and formal LD investigations and reports. However, the PEB may question the validity of a favorable LD determination. If so, the PEB will conditionally adjudicate the case as if a favorable line of duty decision is correct. Unless the case is subject to review by USAPDA, the PEB will forward the case to PERSCOM(TAPC–PED–S), requesting a review of the LD determination. The following comment will be made in the remarks section of the DA Form 199. "This PEB questions the validity of the line of duty decision rendered in your case. Your case has been processed assuming the decision is valid. Should an unfavorable line of duty determination result, you will not be eligible for entitlement to benefits under the Army disability system." The soldier will be informed of the conditional processing and advised that final disposition by HQDA will be held in abeyance until the LD decision is resolved.

(2) It is not intended that PEBs act as hearing authorities for soldiers' appeal of LD determinations. AR 600–8–1 sets out LD appeal procedures. However, if during a formal hearing, the soldier or his or her counsel presents evidence of error in the LD finding, the PEB shall consider such evidence. If the PEB believes the evidence warrants reconsideration of the LD finding, a referral of the case to PERSCOM (TAPC–PED–S) for review of the LD determination by TAG is authorized. When forwarding a case for such review, the PEB will explain in the forwarding memorandum its rationale for determining that the new evidence raises a question as to the correctness of the LD determination. The soldier and his or her counsel will be advised of the referral and that the case has been conditionally adjudicated as if a favorable LD decision has been made. If the PEB determines that the evidence does not provide reason to question the LD determination, the PEB will inform the soldier and the counsel of this fact and that the case was adjudicated based upon the approved LD determination.

(3) The deputy commander, PEB president, or alternate PEB president have the authority to make a finding of "in line of duty—not due to own misconduct" in the following categories below when an LD determination has not been made at the time a case is referred to a PEB. This authority may only be used when the PEB is convinced no further investigation is required and the weight of the evidence in the case indicates that the injury was not due to misconduct or willful negligence, was not incurred during a period of unauthorized absence, and that the use of alcohol or drugs was not involved.

(a) Training accidents to include maneuvers and physical training.

(b) Unit organized sports and recreational activities.

(c) Individual jogging and sports activities.

(d) Household accidents.

(e) Slip-and-fall injuries.

(f) Injuries incurred in Vietnam, Cambodia, and in other geographical areas where U.S. Army soldiers are not longer present.

(4) If the case is lacking an LD determination and it does not fall into one of the above categories, the PEB will conditionally adjudicate the case as if a favorable decision has been made. The applicable advisory statement described in para 4–19*l*(2) will be included on the Form 199. The soldier will be informed of the conditional processing and advised that final disposition by HQDA will be held in abeyance until the LD decision is resolved.

*h. Deciding permanency of disability.*

(1) Based on accepted medical principles, a disability is"permanent", and a soldier who is otherwise qualified will be permanently retired, if—

(a) The defect has become stable so that, with reasonable expectation, the compensable percentage rating will remain unchanged during the following 5-year period.

(b) The compensable percentage rating is 80 percent or more and the disability will probably not improve so as to be ratable at less than 80 percent during the following 5 years.

(2) A soldier is placed on the TDRL if fully qualified for permanent retirement except that the disability "may be permanent." The soldier may not be placed on the TDRL for any other reason. Based on accepted medical principles, a disability will be considered as "may be permanent" if it has not stabilized, and one of the following occurs:

(a) The soldier may recover so as to be fit for duty.

(b) The defect is expected to change in severity within the next 5 years so as to change the compensable percentage rating.

*i. Percent of disability.* After establishing the fact that a soldier is unfit because of physical disability, and that the soldier is entitled to benefits, the PEB must decide the percentage rating for each unfitting compensable disability. Percentage ratings reflect the severity of the soldier's medical condition at time of rating. The VASRD, as modified by appendix B of this regulation, is used in deriving percentage ratings. The first 31 paragraphs of the VASRD, which provide general policies, do not apply and have been replaced by

section I and II of appendix B of this regulation.PEBLOs, raters, and reviewers must be familiar with the VASRD, including introductory paragraphs to sections and italicized footnotes. Appendix B sets forth Army policies (including modifications) on use of the VASRD when rules or ratings provided by the VA schedule are improper for Army use or do not provide a rating basis.

*j. Armed conflict—instrumentality of war.* Certain advantages accrue to soldiers who are retired for physical disability and later return to work for the Federal Government when it is determined that the disability for which retired was incurred under specific circumstances. These advantages concern preference eligible status within the Civil Service system (section 3501, title 5, United States Code (USC 3501)) and exemption of retired veterans to the provisions of the Dual Compensation Act (section 5532, title 5, United States Code (5 USC 5532)). As part of its findings, the PEB will make an entry in block 10A of DA Form 199 to reflect its determination as to whether the disability was incurred within the specified parameters discussed below.

(1) The disability resulted from injury or disease received in LD as a direct result of armed conflict and which itself renders the soldier unfit. A disability may be considered a direct result of armed conflict if—

*(a)* The disability was incurred while the soldier was engaged in armed conflict, or in an operation or incident involving armed conflict or the likelihood of armed conflict; while the soldier was interned as a prisoner of war or detained against his will in the custody of a hostile or belligerent force; or while the soldier was escaping or attempting to escape from such prisoner of war or detained status.

*(b)* A direct causal relationship exists between the armed conflict or the incident or operation, and the disability.

(2) The disability is unfitting, was caused by an instrumentality of war, and was incurred in LD during a period of war as defined by law. The periods of war as defined in 38 USC 101 and 301 are shown below: (The statute does not include the action in Grenada).

*(a) World War II.* The period beginning 7 December 1941 and ending 31 December 1946 and any period of continuous service performed after 31 December 1946 and before 26 July 1947 if such period began before 1 January 1947.

*(b) Korea.* The period beginning 27 June 1950 and ending 31 January 1955.

*(c) Vietnam.* The period beginning 5 August 1964 and ending 7 May 1975. (The "Dominican Intervention" occurred during this period.)

*k. Disability compensation excluded from gross income.*

(1) *The Tax Reform Act of 1976 (TRA 76).* Prior to the enactment of TRA 76 (section 104, title 26, United States Code (26 USC 104)), military disability retired pay or disability severance pay was excluded from gross income for Federal tax purposes. (Disability retired pay is that portion of retired pay based on a person's disability percentage rating. Disability severance pay is a lump sum payment based on years of service.) With the passage of TRA 76, one of two conditions listed below must be satisfied for military disability retired or severance pay to be exempt from Federal taxation.

*(a)* On 24 September 1975, the individual was a member (including RC membership) of the armed forces of any country, the National Oceanic and Atmospheric Administration (NOAA and formerly the Coast and Geodetic Survey), the U.S. Public Health Service (USPHS), or was under binding written agreement to become such a member. (Soldiers retired or separated by reason of disability on or before the cited date are not affected by TRA 76.)

*(b)* The disability pay is awarded by reason of a combat-related injury. Within the meaning of 26 USC 104, combat-related injuries cover those disabilities attributable to the special dangers associated with armed conflict or the preparation or training for armed conflict.

*1.* A soldier may be performing extrahazardous service even if not directly engaged in combat. Extrahazardous service includes but is not limited to the following activities: Aerial flight duty, parachute duty, demolition duty, experimental stress duty, and diving duty.

*2.* Conditions simulating war include, but are not limited to, the following activities: performance of tactical exercises such as the squad or platoon in the assault; airborne operations; leadership reaction courses;grenade and live fire weapons practice; bayonet training; hand-to-hand combat training; repelling; and negotiation of combat confidence and obstacle courses.

*3.* Unlike the provisions for exemption from the Dual Compensation Act(5 USC 5532) and the provisions for Civil Service retention preference (5 USC 3501), the injury resulting from an instrumentality of war need not have occurred during a period of war as defined by law.

(2) *Entries on DA Form 199.* The entries made on DA Form 199, blocks 10B and 10C, concern disability compensation excludable from gross income.

*(a)* If the PEB can establish the fact (from available records) that the soldier was or was not a member or obligated to become a member of one of the designated organizations on 24 September 1975, the board will make the proper entry in block 10B. If such a decision cannot be made, the PEB will enter a statement after the last entry in block 8 to reflect that fact and leave block 10B blank.

*(b)* In block 10C, the board will record its determination of whether the injury was combat-related as defined by 26 USC 104.

(3) *VA compensation.* VA compensation is exempt from income tax. An individual may waive disability retired pay to receive VA compensation, or receive a combination of the two, or receive military retired pay and exclude from his or her gross income an amount equal to the VA entitlement. The Army does not make the determination as to the probable VA disability compensation. The individual must apply to the VA and receive a disability rating.

*l. Recording of rationale and advisory statements.*

(1) *Rationale.* The PEB will include the rationale for the findings and recommendations on the DA Form 199 along with a statement of the reasons for finding a soldier fit or unfit, and if unfit, the basis for the rating. The rationale will support specifically, the finding that the soldier was, or was not, capable of performing the duties of his or her office, grade, rank or rating. A significant variance may occur between the disability described in block 8 of DA Form 199 and diagnoses or degree of impairment reflected in the MEBD proceedings. If so, explain the variance completely in block 16.

(2) *Advisory statements.* The DA Form 199 will inform the soldier of legal or administrative requirements that impact on the soldier's disability benefits in the situations described below.

*(a)* When the recommendation of the PEB is placement or retention on the TDRL: "Failure to report for a scheduled periodic examination or to inform PERSCOM of a change in address will result in the suspension of retired pay.Address changes must be reported to: Commander, PERSCOM, ATTN: TAPC–PDB, 2461 Eisenhower Avenue, Alexandria, VA 22331–0477."

*(b)* When a case has been adjudicated pending completion of a LD:"Your case has been conditionally adjudicated pending the receipt of a favorable LD determination. Should an unfavorable LD determination result, you will not be eligible for benefits under the Army disability system."

*(c)* When a soldier has a rating of less than 30 percent and has at least 20 qualifying years for retirement for non-regular service: "You have the option of accepting discharge with disability severance pay and forfeiting retirement for non-regular service; or you may request transfer to the Retired Reserve and receive retired pay at age 60. According to sections 1209 and 1213, title 10 United States Codes (10 USC 1209 and 1213), you will forfeit all rights to retired pay if you accept severance pay instead of transfer to the Retired Reserve."

*m. Minority reports.* If a voting member of the PEB disagrees with the findings and recommendation of the other members, that member may prepare a minority report explaining wherein and why he or she differs with the other members. The minority report will be included in the record of the proceedings and referenced in the remarks section of DA Form 199. A copy will be provided to the soldier and his or her counsel.

*n. Continuances.* A PEB may continue a hearing upon its own motion, at the request of the recorder, or at the request of the soldier

or the soldier's counsel, if the board determines a continuance is needed for a full and fair hearing. Examples of proper reasons for continuance are the need for further medical evaluation and the need to obtain additional records, reports, or statements as evidenced in the case. When a continuance is granted, only one DA Form 199 will be used. Data such as the date, fact, and time of recess and reconvening, and changes in membership will be recorded. If a change of membership is involved, the record will show the reason for the change and that the new member became familiar with the case before proceeding with the hearing.

*o. Recording, assembly, and transmittal of reports of proceedings.*

(1) The findings and recommendations of the PEB are recorded on DA Form 199. This form is distributed on a limited issue basis from the US Army Publications Distribution Center to the PEB's. Instructions for completion of the form are at appendix D. The recorder will initial erasures and corrections involving any substantive matters in the proceedings.

(2) Records of PEB proceedings will be assembled as indicated in table 4–1.

*p. Reconvened and improperly constituted boards.*

(1) *Reconvened board.* Before final action on a case, the proceedings of a properly constituted PEB may be returned to the same board for further consideration of findings, correction of errors, or other reasons. When proceedings are returned, the reconvened board will include as many members of the original PEB as possible. However, proceedings may be conducted properly even though no members of the original board are available. The board must be otherwise properly constituted. The new members must have acquainted themselves with the records of the case before reconvening the board. When reconvening the board with the same members would be prejudicial to the soldier, a new board with all new members will be convened. The case may be transferred to another PEB for this purpose. Proceedings will be the same (formal or informal) as were used at the original hearing and any transcript of the prior hearing will be included with the original and USAPDA copy of the case. If a formal hearing is held, the soldier (his or her next-of-kin or legal guardian if he or she represents the soldier's interests) will be notified of the new hearing date.Should the PEB reconsider the case and change its findings or recommendations, a new DA Form 199 will be prepared and referred to the soldier for his or her election. Despite the procedures employed, the soldier (next-of-kin or legal guardian) will be notified of the results if a change is made in the disposition or benefits from those originally recommended. The soldier will be afforded the opportunity to consult with counsel and to rebut any change. When new findings are made by the PEB, they become the only findings on which later action will be taken. If the reconsideration results in no change, a new DA Form 199 will not be prepared but the fact that the case was reconsidered will be reflected in block 16.

(2) *Improperly constituted boards.* Proceedings of an improperly constituted PEB are null and void. Whenever a hearing is discovered to have been conducted by an improperly constituted PEB, the record of proceedings less the DA Form 199 will be forwarded for the new hearing by a properly constituted board.

*q. Action when soldier is AWOL or dies during disability processing.*

(1) If a PEB receives information that a soldier whose case is in the disability system is AWOL, case processing will be suspended. If the soldier returns to military control within 10 days, processing may be resumed.Processing will include consideration of any new or increased disability incurred during the period of AWOL. Should the soldier not return to military control within 10 days, the case file will be returned to the MTF. If information that a soldier is AWOL is received after the case file has been forwarded for disposition, the PEB will promptly notify the USAPDA.

(2) If information is received that a soldier being processed for physical disability has died, disability processing will be discontinued and the case file will be returned to the MTF.

*r. Disposition.* PEB's will recommend disposition of the case according to the rules stated in table 4–2.

### 4–20. Informal board

*a. Procedure.* Each case is first considered by an informal PEB. Informal procedures reduce the overall time required to process a case through the disability evaluation system. An informal board must ensure that each case considered is complete and correct. The rapid processing intended by the use of informal boards must not override the fundamental requirement for detailed and uniform evaluation of each case. All evidence in the case file must be closely examined and additional evidence obtained if required. The PEB will consider each case using the policies of chapter 3 and the criteria provided in paragraph 4–19.

*b. DA Form 199.* The findings and recommendations of the informal PEB are recorded on DA Form 199 according to the procedures described in appendix D. If the soldier is on active duty, the original form, signed by the president of the PEB, the soldier's copy, and the MTF's copy will be promptly forwarded to the MTF commander concerned using the fastest means of transmission available. If the DA Form 199 is not received by the PEBLO, the PEB will prepare new copies and forward them promptly.

*c. Soldier's election.*

(1) DA Form 199, block 13, lists the election options available to the soldier for informal determinations. These include the following:

*(a)* Concurrence with the findings and recommendations and waiver of a formal hearing.

*(b)* Nonconcurrence with the findings and recommendations; submission of a rebuttal explaining the soldier's reasons for nonconcurrence; and waiver of a formal hearing.

*(c)* Demand for a formal hearing with or without personal appearance.

*(d)* Choice of counsel if a hearing is demanded.

(2) Soldiers indicate their elections by checkmark in block 13 and sign and date the original and MTF copies of DA Form 199.

(3) The election must be received at the PEB within 10 days from the soldier's receipt of the informal findings. See paragraph 4–20*f* below for procedures when elections and rebuttals are received after the required time.

*d. PEBLO.* In all informal cases, the PEBLO of the MTF having control of the soldier will be the counselor for the soldier. As such, the PEBLO is primarily concerned with the soldier's interests. The PEBLO should consult with, and obtain advice as needed from the local legal office, the legal counsel at the nearest PEB, or the Agency Judge Advocate. Upon receipt of the informal proceedings, the PEBLO will accomplish the following actions:

(1) Counsel the soldier according to appendix C. The soldier will be made fully aware of the election options available to him or her, the processing procedures, and the benefits to which he will be entitled if separated or retired for physical disability. As needed, the PEBLO should consult with the local finance officer and the installation Retirement Services Officer (RSO) when counselling on benefits. DA Form 5892–R (PEBLO Estimated Disability Compensation Worksheet) will be provided to the soldier as an estimate only of disability compensation. DA Form 5892–R will be locally reproduced on 8½ and 11 inch paper. A copy of the form for reproduction purposes is located at the back of this regulation.

(2) After the soldier completes block 13, the PEBLO will complete block 14 of the original and MTF copies of DA Form 199. If the soldier fails or declines to make an election, the PEBLO will prepare a brief statement describing the circumstances, indicating the date the soldier was first informed of, and counselled on, the informal board's action. The PEBLO will then forward the DA Form 199 and the statement to the PEB.

(3) In deleterious-type cases or others involving mental incompetence, the PEBLO will contact the next-of-kin or legal guardian (if one has been appointed) and request that person to act in behalf of the soldier. If one cannot be located, the PEBLO will prepare a statement reflecting all actions taken to identify and contact a responsible person to act on behalf of the soldier and forward the

statement for inclusion with the case. (See para 4-15*a* for guidance on establishing the next of kin.)

(4) If soldier elects formal hearing, forward soldier's medical records to the PEB if they were not submitted with MEBD proceedings for the informal PEB.

(5) Complete DA Form 5893–R (PEBLO Counseling Checklist/ Statement).This form will be used to document counseling. At the time of the soldier's final election to PEB determinations, the PEBLO and soldier will sign the form.A copy will be forwarded to the PEB for inclusion in the record of proceedings.DA Form 5893–R will be locally reproduced on 8½ and 11 inch paper. A copy of the form for reproduction purpose is located at the back of this regulation.

*e. Disposition by PEB.* Upon receipt of the soldier's completed DA Form 199 from the PEBLO, the PEB will take the following actions as applicable.

(1) If the soldier accepts the findings and recommendations of the informal PEB, the recorder will assemble the records as required by table 4–1.The proceedings will be approved for the SA and forwarded to PERSCOM for final disposition.

(2) If the soldier nonconcurs with the findings without submitting a rebuttal, the PEB will approve the proceedings for the SA and forward the case to PERSCOM for final disposition.

(3) If the soldier fails or declines to make an election within the prescribed time and the PEB has not received from the PEBLO the statement described in 4–20*d*(2) above, the PEB will contact the PEBLO to confirm the status of the soldier's election. When the PEBLO confirms the soldier has been informed of the findings and recommendations but has not made an election, the PEB will proceed as if the soldier has accepted the findings and recommendations. The proceedings will be forwarded to PERSCOM for final disposition. The forwarding memorandum will document the circumstances resulting in the waiver of election (fig 4–2). The PEB will forward a copy of the memorandum to the soldier through the PEBLO.

(4) In deleterious-type cases or those involving mental incompetence in which the next-of-kin or guardian fails to make an election on behalf of the soldier, the PEB will appoint legal counsel to act on behalf of the soldier.The counsel will prepare a memorandum documenting the results of his or her action (fig 4–3).

(5) If the soldier nonconcurs and submits a statement or rebuttal to the recommended findings without asking for a formal hearing, the PEB president will respond in writing to the soldier, normally within 3 days. When the soldier's rebuttal does not result in a change to the PEB's findings, the response will acknowledge receipt of the rebuttal and explain the PEB's decision to adhere to the earlier findings. The soldier will be advised that the rebuttal will be included in the case file and considered in the review action by USAPDA. A copy of the PEB president's letter will be included in the case file.

(6) If the soldier nonconcurs with the findings and recommendations with a statement of rebuttal and demands a formal hearing, the PEB may reconsider their findings and recommendations in the light of the soldier's statement of rebuttal. Should the PEB agree with the soldier and modify their findings and recommendations, the PEB will initiate a new DA Form 199 informing the soldier through the MTF commander of the results. If the soldier accepts them, the case will be processed as in paragraph 4–20*e*(1), above.Otherwise, the case will be scheduled for a formal hearing. The PEB will inform the appointed legal counsel of the pending action. If the soldier (in demanding a formal hearing) has elected to be represented by individual counsel, the appointed PEB counsel in coordination with the PEB president will make arrangements for the hearing with the individual counsel. If the soldier is at some location other than that of the PEB, the commanding officer will promptly issue necessary TDY orders for travel of the soldier using locally available funds.

(7) Whenever more than one hearing (including a reconsideration) is held on a case, a copy of the DA Form 199 for each hearing will be attached to the final DA Form 199 to reflect and explain the multiple considerations. For example, a copy of an informal board's DA Form 199 attached to the copy of the formal board's DA Form 199 will record the soldier's demand for a formal hearing without further comment or explanation.

*f. Rebuttals.* Rebuttals received after the allotted time or after initial election of concurrence.

(1) In those instances when a rebuttal from a soldier is received after the allotted time for submission of a rebuttal, or after a soldier has initially agreed with the findings and recommendations of the PEB and the case has been approved for the SA and forwarded to PERSCOM for final disposition, the PEB will respond to the soldier as set forth below.

*(a)* If the rebuttal does not result in a change to the findings and recommendations, the PEB will advise the soldier in writing that no change is warranted and the rebuttal, together with the reply, has been forwarded to PERSCOM for inclusion in the case proceedings. The soldier retains the right to one formal hearing prior to final disposition by PERSCOM if the soldier is otherwise entitled and requests the hearing.

*(b)* When the rebuttal results in a change to the PEB's findings or recommendations, the PEB will recall the case and effect the necessary changes by preparing a new DA Form 199. The new findings will be furnished to the soldier. Normal processing procedures apply.

(2) Notwithstanding the above, when additional medical evidence or an addendum to the MEBD is received after the PEB has forwarded the case and the PEB determines that such evidence would change any finding or recommendation, the case will be recalled by the PEB and a new DA Form 199 issued. Normal procedures apply following the preparation of a new DA Form 199.

### 4–21. Formal board

*a. Formal hearing.* A soldier is entitled to a formal hearing if requested after informal consideration by a PEB. The soldier may waive this right by concurring in the findings and recommendations of the informal board.If the soldier is incompetent, the right to waive a formal hearing may be exercised by next-of-kin or legal counsel. After demanding a formal hearing, a soldier may later withdraw the demand and accept the informal board's decision, in which case, the counsel will inform the PEB. The case will be forwarded to PERSCOM. The soldier must be counseled on the right to demand a formal board.If the soldier demands a formal hearing, he or she is entitled to counsel as provided in paragraph 3–10*d* and *h* below. A formal board will be convened when—

(1) A soldier (next-of-kin or legal guardian) demands it after electing not to accept the findings and recommendations of an informal board.

(2) The case file has been forwarded to PERSCOM for issuance of retirement or separation instructions and the soldier demands a formal hearing before PERSCOM action is final.

(3) After an informal board, the president of the PEB decides that a formal hearing is in the best interest of the soldier or the Army.

*b. Formal board membership.* A formal hearing will normally be conducted before a board composed of the same members who considered the soldier's case informally. The purpose of a formal hearing is to afford the soldier the opportunity to present views, testimony, and new evidence. The board members must consider these matters with open minds despite their earlier decisions. For this reason the challenge of a voting member, solely because the member took part in the informal board, ordinarily should be denied. If the soldier is able to establish that a member of the formal board is not impartial, that board member will be replaced. If a replacement for the successfully challenged member is not available, the CG, USAPDA will appoint another member to the PEB panel for the formal hearing. If an original voting member of the informal board is not available for the formal hearing, that member may be replaced with another who is qualified to sit. The new member must become thoroughly acquainted with all pertinent records before the formal hearing is convened.

*c. Hearing room.* Locally available space will dictate the arrangement of the hearing room. The minimum requirement gives room for three board members, the recorder, the soldier whose case is to

be heard, counsel for the soldier, and the reporter. Proper decorum consistent with the purpose of the hearing is important; however, every effort should be made to maintain a relaxed and courteous environment. Avoid any implication of adversary proceedings in the case.

*d. Scheduling hearing.* The president of the PEB will establish the date, time, and place of the hearing subject to the following:

(1) The soldier (next-of-kin or legal guardian) will be allowed a minimum of 3 working days to prepare for the hearing.

(2) The soldier may waive the 3-day period or any portion of it.

(3) If more time is required to prepare the case, the soldier will forward a written request for an extension to the president of the PEB. The president, in turn, will endorse the request to the soldier indicating approval or disapproval and forward a copy of the response to the soldier's counsel. In deciding whether to approve the request, the president must consider whether the soldier would be unable to receive a full and fair consideration of his case if a delay were not granted. The date and time of any rescheduled hearing will be specified in the endorsement. If, in the judgment of the PEB president, the soldier or counsel are attempting to delay the hearing without valid reasons, the formal hearing will be held with or without the presence of the soldier and selected counsel.

(4) Ample travel time will be allowed if the soldier will be represented by his or her next-of-kin or legal guardian in those cases where the member is mentally incompetent or the physician determines that divulging information to the soldier would be harmful to his or her well being. Funded travel is authorized under the provisions of C6000 of the Joint Federal Travel Regulation. The MTF will issue invitational travel orders authorizing travel for one person.

(5) The PEB will—

*(a)* Notify the soldier (next-of-kin or legal guardian) of the scheduled hearing. Figures 4-4 and 4-5 show notification to the soldier based on soldier's selection of counsel. Figure 4-6 shows notification to the next-of-kin. DA Form 5890-R (Acknowledgment of Notification of Formal Physical Evaluation Board Hearing) will be enclosed with the letter of notification to the soldier or next-of-kin. DA Form 5890-R will be locally reproduced on 8½- and 11-inch paper. A copy of the form for reproduction purposes is located at the back of this regulation.

*(b)* Notify the board members, witnesses, counsel, reporter, and interpreter (if needed) of the date, time, and place of the hearing.

*(c)* Arrange for the attendance of all available military witnesses or, under appropriate circumstances, obtain depositions and other evidence.

*(d)* Ensure that the soldier's records are furnished to medical witnesses for review before hearing.

*(e)* Present all available evidence and witnesses to the board.

*e. Soldier's rights.*

(1) Certain rights accrue to a soldier whose case is under evaluation by a PEB. A counsel must be aware of these rights. When communicating with the soldier (next-of-kin or legal guardian), counsel must ensure the soldier knows and understands the rights that apply to the circumstances of the soldier's case. Although certain rights apply in all cases, some are particularly applicable during formal hearings, especially when the soldier is present at the hearing. These rights are described below:

*(a)* The Privacy Act of 1974 applies to information of a personal nature requested of the soldier during a formal hearing.

*(b)* The soldier may testify as a witness under oath in his or her own behalf, in which case the soldier may be cross-examined as any other witness.

*(c)* The soldier or the soldier's counsel may introduce witnesses, depositions, documents, or other evidence in his or her own behalf, and cross-examine witnesses who have been examined by the PEB including witnesses who have specific knowledge of the soldier's case and whose conversations have been summarized for the record.

*(d)* The soldier or soldier's counsel may make unsworn statements, orally, or in writing, or both, without being subject to cross-examination.

*(e)* The soldier may remain silent. The choice not to make a statement or answer questions is not to be considered adverse to the soldier's interests.

(2) Appointed counsel will use DA Form 5891-R (Acknowledgment of Counseling on Legal/Procedural Rights) to counsel the soldier on his or her procedural rights and to provide a record of such counseling. DA Form 5891-R informs the soldier of the rights described above, and requests acknowledgment by soldier's signature. A copy will be included in the record of formal proceedings and provided to the soldier. DA Form 5891-R will be locally reproduced on 8½- and 11-inch paper. A copy of the form for reproduction purposes is located at the back of this regulation.

*f. Failure to appear.* If a soldier who has elected to appear at a formal hearing fails to do so, the president of the PEB will take the following actions:

(1) Suspend the hearing and determine the reason for the soldier's absence. Subject to the provisions of (2) below, if no reasonable excuse is apparent for the soldier's absence, the hearing may proceed. The president will include in the record a statement of circumstances. Should the soldier later appear before the hearing has been concluded, the president may recess the hearing. He may permit the counsel to brief the soldier on proceedings up to that point. The hearing will then proceed.

(2) A formal hearing may not proceed if the soldier's individually selected counsel (if the soldier has one and who has been determined to be available to represent the soldier) is absent, unless the appointed counsel is present in open session.

*g. Waiver of appearance.* A soldier may waive, in writing, his or her appearance at a formal hearing. In such a case, the appointed counsel(or individually selected counsel if the soldier has one) must be present. The counsel will represent the soldier during all open sessions of the hearing, and perform the duties required of counsel during post-hearing actions.

*h. Counsel.* For formal hearings at which the soldier will be present, each soldier will be represented by counsel unless representation is specifically declined in writing.

(1) *Representation.* The appointed PEB counsel, other military counsel if reasonably available and released by the counsel's command for this purpose, or civilian counsel of the soldier's choice will represent the soldier. A soldier may arrange for civilian counsel of the soldier's own choice at no expense to the Government. The soldier may present his or her case without counsel, in which case the soldier must conform to all procedural rules. The soldier must sign a statement specifically excusing appointed PEB counsel. The statement will be made a part of the record. The PEB president will require appointed counsel to remain in the hearing room even if counsel is released by the soldier in writing, except when counsel of choice is present.Appointed counsel will act as co-counsel when the soldier chooses another counsel unless excused by the soldier.

(2) *Duties.* The counsel safeguards the legal rights of the soldier. He or she remains in attendance at all open sessions of the board unless excused, in writing, by the soldier. Counsel's duties are to—

*(a)* Confer with the soldier and advise the soldier of his or her rights.

*(b)* Prepare the soldier's case for presentation to the board.

*(c)* Request the PEB arrange for the attendance of available witnesses or obtain their depositions or other specifically desired evidence in support of the soldier's position.

*(d)* Examine and cross-examine witnesses and otherwise assist the soldier in presenting his or her case.

*(e)* Submit oral or written arguments.

*(f)* Counsel the soldier on the board's findings.

*(g)* Upon request, assist in the preparation of the rebuttal.

(3) Mentally incompetent and deleterious-type cases. The appointed legal counsel will serve as counsel when the next-of-kin (or legal guardian)acts for the soldier in a case of this type unless replaced by special counsel.Funded travel is authorized as described in paragraph *d*(4) above. In the absence of the next-of-kin, the PEB counsel must be present, even though special counsel is representing the soldier, unless excused by the next-of-kin or special counsel in writing.

*i. Records review by soldier.* All records assembled for use during the hearing, including those furnished by HQDA and by other official sources, will be made available to the soldier and his or her counsel for review. The assembled records will include memoranda of conversations with individuals who have specific knowledge of the soldier's case, including, but not limited to, the soldier's chain of command or treating physician. In cases involving mental incompetence or deleterious-type cases, only the counsel and, if present, the next-of-kin or legal guardian may examine the records. The soldier (next-of-kin or legal guardian) and counsel may make notes from the records to prepare the soldier's case properly. However, the PEB president may withhold from civilian counsel, next-of-kin, or legal guardian, any security information.

*j. Challenges.*

(1) The recorder will announce the names and grades of the members of the board present. Any member of the board or counsel who is aware of any facts that the member believes to be grounds for challenge against himself or any other member, including the president of the board, will state such facts. If it appears a member is subject to challenge for cause, and the fact is not disputed, the member will be excused and replaced. The recorder is not subject to challenge.

(2) The statutory right to a full and fair hearing includes the right to challenge for cause. Grounds for challenge may be made by a statement of any fact indicating any member should not sit as a member of the board in the interest of having the hearing and later proceedings free from substantial doubt as to legality, fairness, and impartiality. Not more than one member will be challenged at one time. Later challenges may be made against other members of the board after a ruling is made on a previous challenge.

(3) A challenge may be withdrawn at any time. If a challenge is not withdrawn, the board will give the soldier the opportunity to introduce evidence, examine the challenged member under oath, and make an argument as to why the challenge should be granted. The PEB will decide if the challenge should be granted by majority vote of the remaining members following discussion in closed deliberation. If the challenged member is the president of the board, the next senior nonmedical board member will preside in the case. A tie vote will sustain the challenge. Upon reopening the board, the president of the board will announce whether the challenge has been sustained. This announcement will be reflected in the record. If the challenge is sustained, the proceedings will be suspended until a replacement for the challenged member is provided.

*k. Verifying soldier's rights.* When the hearing begins, the PEB president will assure himself or herself that the soldier has been informed of his or her rights. If it appears the soldier has not been so informed, the PEB president will recess the hearing and allow the counsel time to advise the soldier.

*l. Proof of facts.*

(1) *General.* Facts and circumstances relevant to the matter under investigation are most often proved or disproved, either directly or through inferences, by real (tangible) evidence, documentary evidence, testimony or statements of witnesses, and matters of which official notice may be taken without proof.

(2) *Real evidence.* A tangible object (for example, brace, crutch) which is material and relevant to the subject of the inquiry is real evidence. Whenever an item of real evidence would aid in establishing the existence or nonexistence of a fact, that item, or a photograph, description, or other suitable reproduction of it, should be included in the report of proceedings, together with any statement of witnesses necessary to identify the item and verify the accuracy of the reproduction. Board members should not overlook their own observations respecting real evidence. If a board member observes an item and gains impressions not adequately portrayed by a photograph, chart, or other representation, he or she should ensure that an appropriate description of the item is made and included in the report.

(3) *Documentary evidence.* Documentary evidence consists of records, reports, letters, and other written, printed, or graphic materials which indicate the existence or nonexistence of a fact. Boards should be alert to discover all such evidence relevant to the matter under inquiry and to include the originals or copies in the record.

(4) *Testimony or statements of witnesses.* Oral or written accounts of matters within the personal knowledge of individuals usually constitute an indispensable part of the evidence considered by a board.Because, unlike real or documentary evidence, such evidence is not fixed as to form or substance, obtaining a witness' testimony or statement requires careful advance analysis of relevant matters of which the witness is expected to have knowledge and preparation of questions to elicit that knowledge without distorting its substance. A preliminary interview of the witness to clarify what information can be elicited is often appropriate, especially by the soldier's counsel and the recorder. Voting members, however, may not conduct separate interviews of witnesses.

(5) *Official notice.* Some facts are of such common knowledge that there is no need to obtain specific evidence to prove them (for example, general facts and laws of nature; general facts of history; location of major elements of the Army; organization of the Department of Defense and its components).

*m. Rules of evidence.*

(1) *General.* Proceedings of the PEB are administrative and not judicial in nature; therefore, a board is not bound by the rules of evidence prescribed for trials by court-martial or for court proceedings generally. Accordingly, except as limited in (3) below, anything which in the opinions of reasonable persons is relevant and material to an issue, may be accepted as evidence. All evidence will be given such weight as is warranted under the circumstances.

(2) *Best evidence.* A board is not precluded from considering any evidence merely because there may be better evidence available to prove the same fact. Generally, however, an effort should be made to obtain the best evidence reasonably available, considering factors such as time, importance, and expense as well as the availability and reliability of substitute evidence.Although hearsay evidence may always be accepted, the personal statement or recent deposition of a witness is usually better evidence than an earlier written statement by that witness or having someone else state what the witness said.

(3) *Limitations.* Administrative proceedings governed by this regulation generally are not subject to exclusionary rules precluding the use of relevant evidence. However, the following does apply with regard to evidence which may be accepted and considered in a board.

*(a) Privileged communications.* The rules concerning privileged communications between client-attorney, and penitent-clergyman, apply to PEBs.

*(b) "Off the record" statements.* Findings and recommendations of the board must be supported by evidence contained in the record. Accordingly, witnesses should not be allowed to make statements "off the record" to board members in formal proceedings.

*(c) Statements regarding disease or injury.* Section 1219, title 10, United States Code (10 USC 1219) provides that a soldier may not be required to sign a statement relating to the origin, incurrence, or aggravation of a disease or injury that the soldier has suffered. Before any signed, written statement against the soldiers interest may be considered, it must be determined that such a statement was made voluntarily. Any statement signed after the soldier has been advised of the right not to make a statement is presumed to be voluntary and is valid for consideration. (This restriction does not include oral testimony.)

*(d) Self-incrimination.* Military witnesses will not be compelled to incriminate themselves, or to answer any question to which the answer might tend to incriminate them, or to make a statement or produce evidence if the statement or evidence is not material to the issue and might tend to degrade them (article 31, Uniform Code of Military Justice (UCMJ, Art 31)). Any witness not subject to the UCMJ, will not be required to make a statement or produce evidence which would deprive them of their rights under the Fifth Amendment of the United States Constitution.

*n. Administering oaths.* Voting members of a PEB, the recorder, counsel, and others who regularly take part in PEB evaluations and have no vested interest in the outcome of cases considered need not

be sworn before performing their duties. Officers are required in their oath of office to "carefully and diligently discharge the duties of the office to which appointed." Civilian employees are sworn to perform their duties faithfully. A high standard of performance is to be expected, therefore, of individuals assigned to these duties.

(1) A soldier appearing in his or her own behalf is not sworn unless the soldier elects to testify under oath. If the soldier chooses to be sworn, the oath or affirmation prescribed in (2) below will be used.

(2) Witnesses will sometimes have a vested interest in a case, often adverse to the soldier's or the Army's interest. Because this partiality is not evident initially, any person who is to testify will first be sworn. In deleterious-type cases or those involving mental incompetence, the next-of-kin or guardian will be sworn. If the witness desires to affirm rather than swear, the words "so help you God" will be omitted. The recorder will administer the following oath:

"Do you swear (or affirm) that the evidence you shall give in the case now in hearing shall be truth, the whole truth, and nothing but the truth? (So help you God)?"

*o. Attendance of witnesses.* The board will summon available witnesses needed for the hearing. Either the soldier or the PEB may request attendance of a witness. Whether a witness is available depends on the conditions described below.

(1) Members and employees of the armed services located at the same installation as the PEB are usually available. If available, the commander or supervisor will ensure that they appear.

(2) Members and employees of the armed services located at other installations may be available. The PEB president will decide whether the presence of such witnesses is required for a full and fair hearing. If the PEB president decides the testimony of such a witness is needed and that alternative forms of evidence cannot be substituted for the personal presence of the witness, the commander or supervisor must ensure the witness is present.

(3) The soldier is responsible for arranging for the attendance of witneses who are not members or employees of the armed forces. Such witnesses attend hearings at no expense to the Government. Additionally, the soldier is entitled to present the testimony of any other soldier or employee of the Army, or other armed services, whom the soldier obtains at no expense to the Government, and whom is given leave to attend.

(4) Witnesses summoned by the PEB who are members or employees of the armed services are entitled to travel expenses and per diem allowances authorized by Joint Federal Travel Regulations. The commander of the command to which the witness belongs is responsible for these costs. If command funds are not available, and the PEB president still considers personal testimony by the witness essential, funds available to the PEB may be used to pay the costs.

(5) The PEB president may decide that the witness need not appear in person to testify. If so, he or she may authorize the soldier's military counsel to take the deposition at the witness' location. The counsel may take the deposition either personally or by arranging with the soldier's representative to do so. If the counsel is to take the deposition in person and TDY is involved, the counsel will provide the PEB president a summary of the information he or she expects to discover and how it relates to the case. if the PEB president approves the TDY, the PEB will pay costs from travel funds available to the PEB. The deponent may be at a distance so that the military counsel is unable to take the deposition in person. If so, the soldier's counsel may request assistance from the staff Judge Advocate nearest the deponent's location. Should expenditure of per diem or travel funds be involved, the counsel will make his or her request through the PEB president who is considering the case. A summary of the information to be discovered will be included. If no expenditure of public funds is involved, the receiving PEB president will approve the request and refer it for action to the appropriate Staff Judge Advocate. If the requested action involves payment of TDY costs, expenses will be paid from funds available to the PEB president requesting the deposition. A counsel may believe that a deposition is required and it cannot be obtained as described above. If so, the counsel may make a request to the officer exercising GCMCA over the installation at which the PEB is located. If the GCMCA approves taking the deposition, he or she will refer the request to the GCMCA in the area in which the deponent is located for action. The deponent will return the deposition through the referring GCMCA. Depositions may be taken on oral or written questions. Depositions will be prepared as provided in rule 703, Military Rules of Evidence, Manual for Courts-Martial, United States,1984.

*p. Procedural objections.* The soldier (the soldier's next-of-kin, legal guardian, or counsel) may object to any actions taken or proposed to be taken by the board or to the admission of evidence. When an objection is made, it will be recorded as part of the record. The president of the board will rule on objections. If any board member dissents from the president's ruling, however, the board will be closed for deliberation and the objection will be ruled upon by majority vote. Upon reopening of the board, the ruling of the board will be announced in open session and recorded as part of the record.

*q. Closed deliberations.* Upon completing an open hearing, the board is closed for deliberation. The voting members decide the findings and recommendations according to policies stated in chapter 3 and criteria in this chapter.

*r. Findings and recommendations.*

(1) The board, upon completion of deliberations, will reopen and inform the soldier of the findings and recommendations. (In cases of mental incompetence or in deleterious-type cases, the board will inform the soldier's counsel, next-of-kin, or legal guardian.) If the soldier (soldier's next-of-kin or legal guardian) is not present at the hearing, notice of the findings and recommendations will be provided to them in writing. (Figs 4–7 and 4–8 respectively show a sample notification to the soldier and the next-of-kin.)

(2) The PEB may change, modify, or correct its findings and recommendations at any time before the record of proceedings is delivered to the CG, USAPDA or Commander, PERSCOM. When such changes are made in previously announced findings or recommendations, the PEB will inform the soldier(soldier's next-of-kin, counsel, or legal guardian) in writing, of the proposed change. The PEB will afford the soldier the opportunity to accept or rebut the proposed change.

(3) When the soldier personally appears before the board, the DA Form 199 will be prepared immediately following the conclusion of the hearing and a copy provided to the soldier. The soldier will be afforded the opportunity to make an election at this time but may choose to take the full time-period permitted for reaching a decision. When the soldier does not appear at the hearing, the DA Form 199 and election form will be transmitted to the commander of the applicable MTF within 24 hours of the adjournment of the hearing. The actual date of delivery to the soldier will be documented in the case file.

*s. Soldier's response.* DA Form 199–1 (Election to Formal Physical Evaluation Board Proceedings) will be provided to the soldier as the election statement to formal proceedings. This form is distributed from the Army Publication Center solely to PEBs.

(1) The DA Form 199–1 and the letter of rebuttal must be received at the PEB within 10 days from the soldier's receipt of the formal findings unless the President of the PEB approves a request for an extension of time. A request for an extension must be received within 10 days of the soldier's receipt of the DA Form 199. If the request for extension is denied, the original time frame remains applicable. A copy of the PEB's decision on the request for extension will be sent to the soldier's counsel.

(2) If the soldier's statement of election or a request for an extension of time is not received within the required time, the PEB will deem that the soldier has waived the right to an election. The proceedings will be forwarded to PERSCOM for final disposition. The forwarding memorandum will document the circumstances resulting in the waiver of election (fig 4–2). The PEB will forward a copy of the memorandum to the soldier through the PEBLO.

(3) A soldier who fails to make an election or to submit a statement of rebuttal to formal proceedings within the allotted time if he or she is in disagreement with the findings and recommendations, will forfeit the opportunity for USAPDA review of his or her case (para 4–21*t* below).

*t. Rebuttals.* Letters of rebuttal to the findings and recommendation of formal proceedings (to include the recommended disability percentage) must be prepared and processed according to the following guidance.

(1) A rebuttal may only be based upon one or more of the issues listed below and must provide rationale in support of the issue.

*(a)* The decision of the PEB was based upon fraud, collusion, or mistake of law.

*(b)* The soldier did not receive a full and fair hearing.

*(c)* Substantial new evidence exists and is submitted which, by due diligence, could not have been presented before disposition of the case by the PEB.

(2) If a letter of rebuttal is received within the required time frame, the PEB will respond to the soldier, or his representative, normally within 3 days confirming that the rebuttal has been received and considered. If consideration of the rebuttal does not affect the outcome of any portion of the PEB decision, the response will include the reasons why the rebuttal does not support a change to the findings and recommendations. The soldier will be informed that the rebuttal will be forwarded with the case file to USAPDA for review (based on the soldier's election of nonconcurrence with submission of a rebuttal). The response by the PEB president will be included in the case file and a copy will be furnished to the soldier's legal counsel or other representative.

(3) If a soldier submits a letter of rebuttal after having initially made an election of concurrence and the rebuttal is submitted within the required time frame, the procedures of paragraph 4–21*t*(2) above apply. If the case has been forwarded to PERSCOM for final disposition based upon the soldier's initial concurrence, the PEB will recall the case. If the letter of rebuttal is received after the required time frame, the procedures of paragraph 4–2*t*(4) below apply.

(4) If a letter of rebuttal is received by the PEB after the soldier's case has been forwarded to PERSCOM for final disposition (based upon the soldier's failure to make an election within the required time frame or nonconcurrence without submission of a rebuttal) the PEB will consider the rebuttal as set forth below.

*(a)* If consideration of the rebuttal does not result in a change to the findings and recommendations, the PEB will advise the soldier, in writing, that no change is warranted and the rebuttal, together with the reply, has been forwarded to PERSCOM for inclusion in the case proceedings. A copy of the reply will be forwarded to the soldier's legal counsel or other representative.Review of proceedings by USAPDA is not required.

*(b)* When the consideration of the rebuttal results in a change to the PEB's findings and recommendations, the PEB will recall the case and effect the necessary changes by preparing a new DA Form 199. The new DA Form 199 will be furnished to the soldier according to normal processing procedures.

(5) Notwithstanding the above, when additional medical evidence or an addendum to the MEBD is received after the PEB has forwarded the case to USAPDA or PERSCOM and the PEB determines that such evidence would change any finding or recommendation, the case will be recalled by the PEB and a new DA Form 199 issued. Normal procedures apply following the preparation of a new DA Form 199.

*u. Mental incompetency.* Formal proceedings of cases involving mental incompetency or nonappearance because of the MTF commander's decision that it would be detrimental for the soldier's well being to appear, will be processed as follows:

(1) The DA Form 199 and DA Form 199–1 with all exhibits will be forwarded by certified mail, return receipt requested, to the soldier's guardian or next-of-kin (fig 4–8). A copy of the forwarding letter will be provided to the soldier's legal counsel or representative.

(2) The transmittal letter will advise the individual of the following:

*(a)* The individual has the right to make an election (DA Form 199–1)and to submit a letter of rebuttal to any finding or recommendation.

*(b)* The election (DA Form 199–1) and rebuttal must be received at the PEB within 10 days of receipt of the DA Form 199 unless, within the 10-day period, the president of the PEB has approved a request for extension.

*(c)* A rebuttal submitted within the allotted time must be considered and the individual notified of the PEB's determination.

*(d)* Upon failure of the individual to submit an election within 10 days, the appointed military counsel will take proper action in behalf of the soldier.

(3) The PEB will not forward the case for disposition until the DA Form 199–1 has been received or counsel has acted in behalf of the soldier.Counsel's action will be documented by memorandum, a copy of which will be included in the case proceedings (fig 4–3).

## Section V
## Review and Confirmation of PEB Action

### 4–22. Review by USAPDA

*a. Required review.* USAPDA will review the following cases.

(1) General and Medical Corps officers found unfit.

(2) Informal proceedings when the soldier nonconcurs with the PEB findings and recommendations, waives a formal hearing, submits a statement of rebuttal within the required time frame, and consideration of the rebuttal by the PEB does not result in a change to its findings and recommendations.

(3) Formal proceedings when the soldier nonconcurs with the PEB findings and recommendations, submits a statement of rebuttal within the required time frame, and consideration of the rebuttal by the PEB does not result in a change to its findings and recommendation.

(4) Cases in which a voting member of the PEB submits a minority report.

(5) Any case previously forwarded to USAPDA for review and approval and which has been returned to the PEB for reconsideration or rehearing.

(6) Cases designated by the CG, USAPDA for review.

(7) Cases of soldiers assigned to USAPDA.

*b. Purpose of review.* The review will be confined to the case records and proceedings and related evidence. The review will ensure that the following criteria have been satisfied.

(1) The soldier received a full and fair hearing.

(2) The proceedings of the medical evaluation board and the PEB were conducted according to governing regulations.

(3) The findings and recommendations of the MEBD and PEB were just, equitable, consistent with the facts, and in keeping with the provisions of law and regulations.

(4) Due consideration was given the facts and requests contained in any rebuttal to the PEB findings and recommendations submitted by, or for, the soldier being evaluated.

(5) Records of the case are accurate and complete.

*c. Determinations.* Based upon review of the PEB proceedings, USAPDA may take the following actions:

(1) Concur with the findings and recommendations of the PEB or make minor changes or corrections that do not affect the recommended disposition of the soldier or lower the combined percentage rating.

(2) Return the case to the PEB for reconsideration, clarification, further investigation, a formal hearing, or other action when the case records show such action is in the best interests of the soldier or the Army. A detailed explanation for the reasons for return of the case will be provided to the PEB.

(3) Issue revised findings providing for a change in disposition of the soldier or change in the soldier's disability rating.

(4) Refer the case to the APDAB.

*d. Revised findings.* USAPDA, will take the following actions when modifying PEB findings and recommendations.

(1) Furnish the soldier (next-of-kin or legal guardian) a copy of the revision by certified mail, return receipt requested. The letter of transmittal will state the reason for the change. Information copies will be provided to the PEBLO and to the soldier's counsel.

(2) Advise the soldier (next-of-kin or legal guardian) that his or her election or rebuttal to the revision must be received by USAPDA within 10 days from the soldier's receipt of the revised findings unless a request for extension is received and approved within the same time frame.

(3) Return the case records to the PEB if the soldier is eligible for and requests a formal hearing or if one is directed under the provisions of 4–22*c*(2), above. Processing will be according to paragraph 4–21.

*e. Consideration of rebuttal.*

(1) After considering the soldier's rebuttal to the revised findings, USAPDA will make one of the following determinations:

*(a)* Accept the rebuttal; issue new findings and recommendations according to the rebuttal; and forward the case to PERSCOM for final action.

*(b)* Concur with the original recommendations of the PEB; forward the case to PERSCOM for final action.

*(c)* Adhere to the revised findings and recommendations and forward the case to APDAB.

(2) USAPDA, will inform the soldier in writing of the results of its consideration of the rebuttal.

*f. Soldier's response.*

(1) If the soldier concurs with the revised findings and recommendations, USAPDA will approve the case for the Secretary of the Army and forward the case to PERSCOM for final disposition.

(2) If the soldier nonconcurs and submits a statement of rebuttal explaining his or her reasons for disagreement, and the consideration of the rebuttal does not result in a change to the revised findings, USAPDA will forward the case to APDAB for review unless (3) below is appliable.

(3) If the soldier fails to submit an election within the allotted time, USAPDA will deem that the soldier has waived his or her right to file a rebuttal. The proceedings will be forwarded to PERSCOM for final action.

*g. USAPDA disposition.*

(1) The proceedings of general and medical corps officers found physically unfit will be forwarded to ASD(HA) for review prior to disposition by PERSCOM. This is not required if the finding is fit.

(2) If the case file is to be forwarded to APDAB for appeal action, USAPDA will prepare a cover letter explaining the reasons for referral and note that final decision is deferred to the APDAB. If the APDAB's decision is unfit, and if the soldier has requested Continuance on Active Duty (COAD) under chapter 6, APDAB will forward the file to the appropriate office for COAD review. When the case is that of a General or Medical Corps officer, APDAB will return the case to USAPDA for forwarding to ASD(HA). If the General or Medical Corps officer has requested COAD, USAPDA will forward the case for COAD review upon confirmation of unfit determination by ASD(HA).

(3) When proper authority (AR 600–8–1) has made an unfavorable LD determination on the soldier's unfitting condition, USAPDA will modify the PEB findings and recommendations. USAPDA will notify the soldier that the modification resulted from a final LD decision by HQDA and that neither USAPDA nor APDAB are the approving authority for an appeal of the LD decision. LD appeal are governed by AR 600–8–1. This does not preclude an appeal of the determination of physical unfitness. Nor does it preclude the right to a formal PEB hearing if the soldier has not had a formal hearing (para 4–19*g*(2)). If the case file is forwarded to PERSCOM (TAPC–PED–S) to await a final LD decision, USAPDA will reflect in the cover letter the result of review subject to the final LD decision.

(4) If notice is received that a soldier whose case is in the disability system is AWOL, USAPDA will suspend further action on the case. If the soldier has been AWOL for 10 days or more, USAPDA will verify the fact of AWOL and return the case file, less PEB proceedings, to the MTF to which the soldier belongs. USAPDA will cancel PEB proceedings and notify the PEB and applicable MTF. If the case file has been forwarded to PERSCOM, USAPDA will recall the case for return to the MTF.

(5) With the exception of those cases noted above, USAPDA will approve revised findings for the Secretary of the Army and forward the case to PERSCOM for disposition.

### 4–23. Disposition of medical records

If the medical records were included in the case proceedings, they will be disposed of as follows:

*a.* If further review or appeal of the case is not involved, USAPDA will withdraw the medical records from the case file and will return them to the MTF that referred the case file to a PEB.

*b.* If the case is to be reviewed by APDAB or ASD(HA) and if the medical records are not included in the case, they will be requested and forwarded with the case file for the required review or appeal action. The review or appeal action may result in return of the case file to the CG, USAPDA, for final action. If so, the medical records will be disposed as indicated in paragraph"*a*" above.

## Section VI
## Disposition Subsequent to Adjudication

### 4–24. Disposition by PERSCOM

PERSCOM will dispose of the case by publishing orders or issuing proper instructions to subordinate headquarters, or return any disability evaluation case to USAPDA for clarification or reconsideration when newly discovered evidence becomes available and is not reflected in the findings and recommendations.

*a. Actions based upon modification by APDAB.* When APDAB changes the disposition of the soldier or lowers the disability rating, PERSCOM will—

(1) Notify the soldier (or next-of-kin, counsel, or guardian) of the changes by certified mail, return receipt.

(2) Furnish a copy of the notification to USAPDA, the PEB, and the PEBLO of the MTF concerned.

(3) Advise the soldier that his or her concurrence or rebuttal to the findings by the APDAB must be received by PERSCOM within 10 days of the receipt of the notification letter (based upon date of the certified return receipt)unless PERSCOM has approved an extension of time. Failure to respond within the allotted time will result in waiver of right to file a rebuttal to the new findings.

(4) If timely rebuttal is received, forward it and the proceedings to APDAB for reconsideration.

*b. Final disposition.* Based upon the final decision of USAPDA or APDAB, PERSCOM will issue retirement orders or other disposition instructions as follows:

(1) Permanent retirement for physical disability (see 10 USC 1201 or 1204).

(2) Placement on the TDRL (see 10 USC 1202 or 1205).

(3) Separation for physical disability with severance pay (10 USC 1203 or 1206).

(4) Separation for physical disability without severance pay (sections 630, 1162(a), 1165, or 1169, title 10, United States Code (10 USC 630, 1162(a),1165, or 1169)).

(5) Transfer of a soldier who has completed at least 20 qualifying years of Reserve service, and otherwise qualifies for transfer as described in paragraph 8–9, to the Inactive Reserve on the soldier's request (section 1209, title 10, United States Code (10 USC 1209)).

(6) Separation for physical disability without severance pay when the disability was incurred as a result of intentional misconduct, willful neglect, or during a period of unauthorized absence (10 USC 1207).

(7) Release from active duty and return to retired status of retired soldiers serving on active duty who are found physically unfit.

(8) Return of the soldier to duty when he or she is determined physically fit.

(9) Provide to ASD(HA) one copy of all retirement orders issued in the case of each general officer (O–7 or higher).

*c. AWOL.* PERSCOM will take the following actions when notified that a soldier in the disability system is AWOL.

(1) Suspend disposition action.

(2) If the soldier has been AWOL for 10 days or more, or upon expiration of 10 days in AWOL status, verify with the unit commander the fact of AWOL.

(3) If AWOL status is confirmed, void the proposed disposition.

(4) Notify the soldier's commander, the PEBLO, and USAPDA of the revoked disposition.

(5) Return the case file to USAPDA.

*d. Medical records.* Upon completion of disposition processing, PERSCOM will remove medical records from the proceedings and return them to the MTF that referred the soldier to a PEB.

**4–25. The APDAB**

The Army Physical Disability Appeal Board is a component of the Army Council of Review Boards. It reviews cases forwarded by the CG,USAPDA as provided in paragraph 4–22*f*(2) above.

*a. Determinations.* The APDAB will determine if—

(1) The soldier received a full and fair hearing.

(2) The evaluation proceedings conformed to current laws and governing regulations.

(3) Findings and recommendations of the PEB, as changed or modified by the CG, USAPDA are supported by the evidence.

*b. Actions.* The APDAB will take one of the following actions and forward the case to PERSCOM (or to USAPDA if the case is that of a general officer or medical doctor).

(1) Concur with the decision of the CG, USAPDA.

(2) Concur with the recommendations of the PEB.

(3) Adopt the recommendations of the minority member of the PEB when PEB recommendations were not unanimous.

(4) Concur with the requests contained in the rebuttal submitted by the soldier being evaluated.

(5) Specify new findings and recommendations or other proper actions.

*c. Limitations.* APDAB does not have appellate review authority over modifications resulting from ASD(HA) decisions or adverse line of duty determinations by HQDA.

**4–26. ADRRB**

The Army Disability Rating Review Board (ADRRB) is a component of the Army Council of Review Boards (ACRB). The ADRRB reviews disability percentage ratings on request of a soldier who was retired because of physical disability.

*a. Determinations.* The ADRRB may notify or amend a fully executed retirement order of a soldier based upon the following criteria:

(1) The original order was based on fraud or mistake of law.

(2) The soldier was not granted a full and fair hearing when the soldier had made timely demand for such a hearing.

(3) Substantial new evidence exists which, by due diligence, could not have been presented before disposition was accomplished, and the evidence would have warranted a higher percentage of disability if presented before disposition.

*b. Petition procedures.*

(1) The person concerned, legal representative, or any informed DA authority may request relief on the grounds set forth above.

(2) The request for relief must be filed within 5 years from the effective date of the disposition complaint.

(3) Request for relief is addressed to the ADRRB. No special form is required. However, the petition must state the reason for requesting relief and the relief desired.

(4) If the petition is based on evidence that is not on DA records, forward the evidence as an enclosure to the petition.

(5) The filing of a petition for relief will not affect the directed disposition unless the SA or authority acting for the SA so directs. If operation of the directed disposition is suspended by proper authority, the suspension does not extend the time limit within which an application for review must be submitted to a statutory board.

*c. Review procedures.*

(1) The ADRRB will consider all petitions submitted according to the criteria of paragraph 4–26*b* above.

(2) If the person concerned (or his or her legal representative) did not submit the petition, the ADRRB will give the retiree (or his or her legal representative) reasonable notice of the matter presented by the petition and the opportunity to submit a statement or other evidence in rebuttal.

(3) The Director, ACRB may act for the SA on petitions submitted if the recommendation of the ADRRB is unanimous. Other cases are referred to the SA for action. (The authority herein conferred is permissive only. It will not prevent referral of a case to the SA for action.) In acting on a petition, the Director, ACRB, may—

*(a)* Deny relief, set aside the final disposition or placement on the TDRL directed in a case and direct further retirement proceedings.

*(b)* Direct such action as is needed to effect the relief requested or any other action thought proper.

**Table 4–1**
**Assembly of records by PEB**

| Documents | ORIG | PDA | MBR | MTF | HR | PEB |
|---|---|---|---|---|---|---|
| **Documents for Informal Proceedings (See note 1)** | | | | | | |
| DA Form 199 (PEB Proceedings) | X | X | X | X | X | X |
| PEB's waiver of soldier's election when soldier fails to respond.(Include certified mail return receipt for TDRL cases.) (See note 2) | X | X | X | | | X |
| PEBLO's statement concerning soldier's failure to make election. (See note 2) | X | X | | | | X |
| PEB's response to soldier's statement of rebuttal. (See note 2) | X | X | X | | | X |
| Soldier's statement of election if made on other than DA Form 199. (See note 2) | X | X | | | | X |
| Soldier's statement of rebuttal. (See note 2) | X | X | | | | X |
| PEBLO/soldier statement of counseling when soldier concurs with informal findings. (See note 2) | X | X | | | | X |
| Additional medical information requested by PEB from MTF. | X | X | | | | X |
| PEB's memorandum requesting additional medical information or returning case to MTF. | X | X | | | | X |
| PEB appointing orders with membership indicated. | X | X | | | | X |
| DA Form 3947 (MEBD Proceedings) and allied documents in order listed in para 4–15. | X | X | | | | X |
| Other allied documents. | X | X | | | | X |
| Health and clinical records when required by PDA. | X | | | | | |
| **Documents for Formal Proceedings (See note 1)** | | | | | | |
| DA Form 199 (PEB Proceedings) stamped "formal." | X | X | X | X | X | X |
| PEB's waiver of soldier's election when soldier fails to respond.(Include certified mail return receipt for TDRL cases.) (See note 2) | X | X | X | | | X |
| PEBLO's statement concerning soldier's failure to make election. (See note 2) | X | X | | | | X |
| PEB's response to soldier's statement of rebuttal. (See note 2) | X | X | X | | | X |
| Soldier's statement of election. (See note 2) | X | X | | | | X |
| Soldier's statement of rebuttal. (See note 2) | X | X | | | | X |
| PEBLO/soldier statement of counseling. (See note 2) | X | X | | | | X |
| Notification to soldier or next-of-kin of PEB formal findings. | X | X | | | | X |
| Transcript of formal hearing when applicable. | X | X | | | | X |
| Documents submitted and accepted as exhibits. | X | X | | | | X |
| PEB appointing orders with membership indicated. | X | X | | | | X |
| Informal PEB proceedings with allied documents. | X | X | | | | X |
| Acknowledgement of counseling on legal and procedural rights | X | X | | | | X |
| Other allied documents. | X | X | | | | X |
| Health and clinical records when required by PDA. | X | | | | | |

Notes:
[1] Documents are to be assembled in the order listed above, availability based on type case. The assembly of documents, however, should reflect the sequence of events as they are completed. With the exception of the DA Form 199 as the topmost document, deviation from the above listing is permitted when necessary to maintain correct chronology.
[2] Or individual authorized to act in soldier's behalf.