# TAB

# C2

**Table 4–2**
**Eligibility index table for regulars and members on active duty for more than 30 days**

| RULE | If the disability was result of intentional misconduct, willful neglect, or was incurred while AWOL | If the soldier is entitled to basic pay and the disability was incurred while entitled to basic pay | and if soldier has at least 20 years of service | and the percentage of disability is— | and based upon accepted medical principals the disability is— | and soldier has at least 8 years of service, or— | disability is proximate result of performing active duty, or— | disability was incurred in LD in time of war or National Emergency, between 15 Sep 78 & 30 Sep 79, or after Sep 78 (See note 1.) | Action— |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Yes | | | | | | | | Discharge under 10 USC 1207. |
| No | No | | | | | | | | Discharge under other than chapter 61, 10 USC. (See note 2). |
| No | Yes | Yes | 0–100 | perm | | | | | Permanent retirement under 10 USC 1201. |
| No | Yes | Yes | 0–100 | May be perm | | | | | Temporary retirement 10 USC 1202. |
| No | Yes | No | 30–100 | perm | Yes | No | No | Permanent retirement under 10 USC 1201. | |
| No | Yes | No | 30–100 | May be perm | Yes | No | No | Temporary retirement under 10 USC 1202. | |
| No | Yes | No | 30–100 | perm | No | Yes | No | Permanent retirement under 10 USC 1201. | |
| No | Yes | No | 30–100 | May be perm | No | Yes | No | Temporary retirement under 10 USC 1201. | |
| No | Yes | No | 30–100 | perm | No | No | Yes | Permanent retirement under 10 USC 1201. | |
| 10 | No | Yes | No | 30–100 | May be perm | No | No | Yes | Temporary retirement under 10 USC 1201. |
| 11 | No | Yes | No | 30–100 | | No | No | No | Discharge with disability severance pay under 10 USC 1203. |
| 12 | No | Yes | No | Under 30 | | Yes | No | No | Discharge with disability severance pay under 10 USC 1203. (See notes 3 and 4). |
| 13 | No | Yes | No | Under 30 | | No | Yes | No | Discharge with disability severance pay under 10 USC 1203. (See notes 3 and 4). |

**Table 4–2**
**Eligibility index table for regulars and members on active duty for more than 30 days—Continued**

| RULE | If the disability was result of intentional misconduct, willful neglect, or was incurred while AWOL | If the soldier is entitled to basic pay and the disability was incurred while entitled to basic pay | and if soldier has at least 20 years of service | and the percentage of disability is— | and based upon accepted medical principals the disability is— | and soldier has at least 8 years of service, or— | disability is proximate result of performing active duty, or— | disability was incurred in LD in time of war or National Emergency, between 15 Sep 78 & 30 Sep 79, or after Sep 78 (See note 1.) | Action— |
|---|---|---|---|---|---|---|---|---|---|
| 14 | No | Yes | No | Under 30 | | No | No | Yes | Discharge with disability severance pay under 10 USC 1203. (See notes 3 and 4). |

Notes:
[1] Public Law 94–412, 14 Sep 76, terminated all national emergencies on 14 Sep 78. Public Law 95–377 and Executive Order 12082, both dated 19 Sep 78, continued the same disability separation and retirement practices that were dependent on existence of a national emergency for the period 15 Sep 78 and ending 30 Sep 79. Public Law 1980, P. L. 96–513, designated "in LD after 14 Sep 78".
[2] See chapter 5.
[3] If a Reservist is eligible under 10 USC 1209 (has 20 years qualifying years), the Reservist may elect to be transferred to the Retired Reserve instead of being separated with severance pay.
[4] To receive severance pay, a soldier must have at least 6 months' service for retirement on date of separation. Less than 6 months results in a 0 multiplier in the severance pay formula.

***(Letterhead)***

***(Office symbol)*** ***(Date)***

MEMORANDUM FOR Commander, U.S. Army Reserve Personnel Center,9700 Page Boulevard, St. Louis, MO 63132–5200

SUBJECT: Request for Statement of Service for Physical Disability Processing

1. SSG John E. Doe, 987–65–4321, is being medically evaluated. He will probably be referred to a Physical Evaluation Board in the near future.

2. Before final disposition can be made by HQDA, an official statement of service is required. Please prepare a statement of service and forward it promptly to CDR, PERSCOM, ATTN: TAPC–PDB–A, 200 Stovall Street, Alexandria, VA 22332–0477. The statement is needed for issuing timely separation or retirement orders if the member is found unfit because of physical disability.

FOR THE COMMANDER:

SUSAN GREEN
Physical Evaluation Board
Liaison Officer

Note:
For members of the NG, FOR ADDRESS would be the applicable State Adjutant General.

**Figure 4-1. Sample request for statement of service**

***(Letterhead)***

***(Office symbol)*** ***(Date)***

MEMORANDUM FOR Commander, Total Army Personnel Command, ATTN:TAPC–PDB, Hoffman II, 2461 Eisenhower Avenue, Alexandria, VA 22331–9476

SUBJECT: Waiver of Right to Election

1. A copy of the informal PEB proceedings in the case of SSG John E. Doe,987–654–321, was forwarded to the soldier thru the PEBLO.

2. The soldier was properly advised of his election rights by the PEBLO but has not responded. In accordance with AR 635–40, para 4–20e the soldier is considered to have waived his right of election.

FOR THE PRESIDENT:

THOMAS H. MILLER-
Board Recorder

CF:
Soldier
PEBLO

Note:
1. MEMORANDUM FOR line will be CDR, USAPDA when case requires review.
2. Cite applicable para reference when waiving formal election.

**Figure 4-2. Sample format for forwarding memorandum when active duty soldier fails to make an election**

*(Letterhead)*

*(Office symbol)* *(Date)*

MEMORANDUM FOR President, U.S. Army Physical Evaluation Board, Forest Glen Section—WRAMC, Washington, D.C. 20307–5001

SUBJECT: Statement in Behalf of SSG John E. Doe, 987–654–321

1. In view of the soldier"s medical condition, he is unable to make an election to the informal PEB findings dated 20 January 1990. Since Mr. John B. Doe, the established next-of-kin, has failed to make an election, this statement is submitted in behalf of SSG John E. Doe. (See note.)

2. As appointed counsel for the soldier, I have carefully studied the evidence and proceedings. I concur with the findings of the informal PEB.

STERLING T. JUSTICE
Captain, JA
Appointed Legal Counsel

Note:
Modify memo as appropriate to the situation—formal or informal, concurrence or nonconcurrence with statement of rebuttal.

**Figure 4-3. Appointed Counsel's statement in soldier's behalf when next-of-kin fails to make an election**

*(Letterhead)*

*(Date)*

Board Recorder
Washington—Physical Evaluation Board

Staff Sergeant John E. Doe
12 Cross Street
Petersburg, VA 23803

Dear Sergeant Doe:

You are hereby notified of a formal Physical Evaluation Board hearing of your case with your personal appearance on Tuesday, February 20, 1990 at 9:00 a.m., in Bldg 101, Room 1106, Forest Glen Section, Walter Reed Army Medical Center, Washington, D.C. 20307–5001.

Consistent with the elections made by you on January 29, 1990, in regard to the informal findings and recommendations, the information below applies.

As you requested regularly appointed counsel to represent you, Captain Sterling T. Justice, Judge Advocate General"s Corps, has been appointed to advise you in preparing your case. Captain Justice will assist you in examining and cross-examining witnesses and in conducting your case before the Board. A postponement cannot be granted solely on the grounds that you have not contacted counsel. Your failure to get in touch with appointed military counsel may result in your case being submitted to the board with little or no argument on your behalf. You must contact Captain Justice within 3 working days after receipt of this letter. Before signing the attached acknowledgment, call collect (301) 427–5214 or AUTOVON 291–5214.

You and your counsel are entitled to examine all written evidence. You may examine and cross-examine witnesses and present your case orally or in writing.

The attendance of witnesses who are members or employees of either the U.S. Army or another Armed Service who are essential to the presentation of your case may be requested. Witnesses will not be required to appear unless they are essential. You are responsible for the attendance of witnesses who are not members or employees of the Army or other Armed Services. This responsibility includes the cost of travel and lodging. There are no witnesses currently scheduled to appear in your case.

Please complete and return the attached acknowledgment within 3 days after receipt.

Sincerely,

Enclosures

Thomas J. Miller
Board Recorder

**Figure 4-4. Sample format of notice to soldier of formal PEB when representation of Appointed Counsel is elected**

*(Letterhead)*

*(Date)*

Board Recorder
Washington—Physical Evaluation Board

Staff Sergeant John E. Doe
12 Cross Street
Petersburg, VA 23803

Dear Sergeant Doe:

You are hereby notified of a formal Physical Evaluation Board hearing of your case with your personal appearance on Tuesday, February 20, 1990, at 9:00 a.m., in Bldg. 101, room 1106, Forest Glen Section, Walter Reed Army Medical Center, Washington, D.C. 20307–5001.

Consistent with the elections made by you on January 29, 1990, in regard to the informal findings and recommendations, the information below applies.

In your elections, you indicated that you will have counsel of your own choice. Counsel may be either civilian, military, or both. The securing of such counsel must not result in expense to the Government or in unreasonable delay of the formal board proceedings. Military counsel of your choice must be reasonably available. Captain Sterling T. Justice, the regularly appointed counsel to the Physical Evaluation Board, will act as associate counsel, unless properly excused. You, or your counsel, must communicate with Captain Justice within 3 working days after receipt of this letter. Before signing the attached acknowledgment, call collect, (301) 427–5214 or AUTOVON 291–5214.

You and your counsel are entitled to examine all written evidence. You may examine and cross-examine witnesses and present your case orally or in writing. Since you have selected counsel of your own choice, complete the attached statement authorizing counsel access to your medical records. Return this statement with the attached acknowledgment.

The attendance of witnesses who are members or employees of the U.S. Army or another Armed Service who are essential to the presentation of your case may be requested. Witnesses will not be required to appear unless they are essential. You are responsible for the attendance of witnesses who are not members or employees of the Army or other Armed Services. This responsibility includes the cost of travel and lodging. There are no witnesses currently scheduled to appear in your case.

Please complete and return the attached acknowledgment within 3 days after receipt.

Sincerely,

Enclosures

Thomas J. Miller
Board Recorder

**Figure 4-5. Sample format for notice to soldier of formal PEB when representation by Counsel of Choice is elected**

*(Letterhead)*

*(Date)*

Board Recorder
Washington—Physical Evaluation Board

Mr. Thomas B. Doe
2576 Webster Street
Washington, D.C. 20011

Dear Mr. Doe:

The Washington Army Physical Evaluation Board (PEB) will convene a formal hearing on Tuesday, February 20, 1990 at 9:00 a.m. in bldg 101, Room 1106, Forest Glen Section, Walter Reed Army Medical Center, Washington, D.C., to evaluate the physical condition of your son, Sergeant John E. Doe.

Captain Sterling T. Justice, Judge Advocate General"s Corps has been appointed military counsel to represent Sergeant Doe. You may arrange for representation by other counsel of your choice at your expense if you wish. You and your counsel are entitled to examine all written evidence, to examine and cross-examine witnesses, and to present other evidence orally or in writing.You may communicate with the military counsel at any time. You should contact Captain Justice upon receipt of this letter for purposes of initial counseling, even if you elect other representation. Please call collect (301) 427–5214 or AUTOVON 291–5214.

You may travel to the hearing at government expense provided that invitational travel orders are issued in advance of the travel. Contact the Physical Evaluation Board Liaison Officer at Walter Reed Army Medical Center at(202) 576–1131 to arrange for orders.

The PEB Recorder will arrange to secure the attendance of requested witnesses if they are members of the Army or other Armed Service, and are determined by the PEB to be reasonably available and essential to the presentation of the case. Witnesses determined to be nonessential may attend but at no expense to the government.

Following the formal hearing you will be notified of the findings and recommendations. You will be asked to indicate whether you agree with the findings and recommendations or desire to submit a statement of rebuttal. The statement of rebuttal may be prepared by you, or you may request the counsel to prepare it.

The PEB is a board of officers appointed to determine the following facts about each soldier referred to it:

a. Whether the soldier is fit for duty, or is unfit for further military service by reason of physical disability.

b. Whether the disability is, or is not the result of intentional misconduct or willful neglect.

c. Whether the soldier meets the requirements under law for entitlement to disability compensation.

d. A percentage of disability, when applicable.

Please complete the enclosed statement. Return the original in the self-addressed envelope. If your reply is not received by the PEB within 10 days of the date of receipt of this letter, it will be presumed that you will not attend the hearing and that you are satisfied with the appointed military counsel.

Sincerely,

Enclosures

Ambrose P. Collier
Colonel, U.S. Army
President

**Figure 4-6. Sample format for notification of next-of-kin (or other authorized individual) of formal PEB hearing**

*(Letterhead)*

*(Date)*

Board Recorder
Washington—Physical Evaluation Board

Staff Sergeant John E. Doe
12 Cross Street
Petersburg, VA 23803

Dear Sergeant Doe:

Enclosed is the record of proceedings (DA Form 199) of the formal hearing in your case. Also enclosed is the statement of election (DA Form 199–1).Please complete the election statement and return it in the self-addressed envelope. The statement of election must be received by this board within 10 days of your receipt of this letter. If you do not respond within the required time, you will forfeit your right to an election. Your case file will be forwarded to the U.S. Total Army Personnel Command for final processing.

If you do not agree with the recommended findings, you may prepare a statement of rebuttal as an enclosure to your election. The rebuttal must be based on one or more of the following issues and must provide reasons why the issue or issues are applicable.

a. The decision of the PEB was based upon fraud, collusion, or mistake of law.

b. You did not receive a full and fair hearing.

c. Substantial new evidence exists and is submitted, which, by due diligence, could not have been presented before disposition of the case by this Physical Evaluation Board.

The rebuttal will be considered by this board. You will be notified in writing of the results. Should the previous finding and recommendations be affirmed, your case will be forwarded to USAPDA for review and action. Should you need more time to prepare the rebuttal, you may request a reasonable extension. The request must be received within the same time requirement as the statement of election and must provide compelling reasons for the requested delay.

If denied, your case will be forwarded to PERSCOM for final processing.The counsel who represented you at the hearing may assist you in the preparation of your rebuttal.

Sincerely,

Enclosures

Ambrose P. Collier
Colonel, U.S. Army
President

**Figure 4-7. Sample format of notice to soldier of formal PEB findings and recommendation**

*(Letterhead)*

*(Date)*

Board Recorder
Washington—Physical Evaluation Board

Mr. Thomas B. Doe
2576 Webster Street
Washington, D.C. 20011

Dear Mr. Doe:

The purpose of this letter is to inform you of the recommended findings and recommendations of the formal Physical Evaluation Board concerning your son, Sergeant John E. Doe, and to request your election in his behalf.

As recorded on the DA Form 199, your son was found unfit because of physical disability. It was recommended that he be retired from the Army for physical disability with a disability rating of 30 percent.

You are requested to complete the enclosed statement of election (DA Form 199-1) and return it in the self-addressed envelope furnished for this purpose.If you do not agree with the recommended findings you may prepare a statement of rebuttal as an enclosure to the election statement. The rebuttal must be based on one or more of the following issues and must provide reasons by the issue or issues apply in this case.

a. The decision of the PEB was based upon fraud, collusion, or mistake of law.

b. Your son did not receive a full and fair hearing.

c. Substantial new evidence exists and is submitted, which by due diligence, could not have been presented before disposition of the case by this Physical Evaluation Board.

The original statement of election and rebuttal, if any, must be received by this Physical Evaluation Board within 10 days of your receipt of the proceedings. Should you need more time to prepare a rebuttal, you may request a reasonable extension. The request for extension must be received within the same time requirement as the statement of election and must provide compelling reasons for the requested delay. The board will notify you in writing of the results of its consideration of the rebuttal.

If your statement of election, or request for extension, is not received within the required time, the appointed military counsel will take proper action in behalf of your son.

Sincerely,

Enclosures

Ambrose P. Collier
Colonel, U.S. Army
President

**Figure 4-8. Notice of next-of-kin following formal board action**

## Chapter 5
## Separation for Non-Service Aggravated, EPTS Conditions upon Soldier's Waiver of PEB Evaluation

### 5–1. General

*a.* This chapter provides for separation of an enlisted soldier for non-service aggravated EPTS conditions when soldier requests waiver of PEB evaluation.

*b.* This chapter is applicable to enlisted soldiers on active duty for more than 30 days.

*c.* Separation under the authority of this chapter is not to be confused with separation under the provisions of AR 635-200, chapter 5. The latter provides for involuntary separation within the first 6 months of entry onto active duty for failure to meet procurement fitness standards. If the time period exceeds 6 months or if the condition is disqualifying under AR 40-501, chapter 3, a soldier is entitled to evaluation by a PEB or may waive evaluation under this chapter.

### 5–2. Criteria

*a.* Case must meet the conditions, set forth below:

(1) Soldier is eligible for referral into the disability system (chap 4, sec I).

(2) The soldier does not meet medical retention standards as determined by the MEBD.

(3) The disqualifying defect or condition existed prior to entry on current period of duty and has not been aggravated by such duty.

(4) The soldier is mentally competent.

(5) Knowledge of information about his or her medical condition would not be harmful to the soldier's well being.

(6) Further hospitalization or institutional care is not required.
(7) After being advised of the right to a full and fair hearing, the soldier still desires to waive PEB action.
(8) Soldier has been advised that a PEB evaluation is required for receipt of Army disability benefits, but waiver of the PEB will not prevent applying for VA benefits.
*b.* Not used.

### 5–3. Actions by PEBLO

*a.* The PEBLO will inform the soldier of the rights and conditions outlined above. If the soldier declines the opportunity to apply for discharge, the PEBLO will notify the commander in writing. Such notice will state that the soldier has been fully informed of the provisions of this chapter and that the soldier has declined to apply for discharge.

*b.* If the soldier requests to apply for discharge, the PEBLO will assist the soldier in preparing a Request for Discharge for Physical Disability using figure 5–1 as a guide.

*c.* PEBLO will forward the request and four copies of the MEBD report to the soldier's immediate commander for separation processing. The separation authority will be advised of any pending disciplinary or other action that may affect the soldier's disposition.

### 5–4. Authority to order discharge

Commanders with special court-martial convening authority may approve or disapprove discharge of a soldier of his or her command processed under this chapter if no adverse administrative or disciplinary action is pending against the soldier. This authority may not be further delegated. (See chap 4 if administrative or disciplinary action is pending.)

### 5–5. Action by commander authorized to effect discharge

*a.* Commanders authorized to effect the discharge of soldiers under provisions of this chapter will effect such discharge expeditiously. As part of the outprocessing procedure, commanders will ensure soldiers complete VA Form 21–526 (Veteran's Application for Compensation or Pension) or sign DA Form 664 Service Member's Statement Concerning Compensation from the Veterans Administration) prior to separation. No medical examination will be accomplished during separation processing unless there is reason to believe that material change has occurred in the soldier's physical or mental condition since his or her appearance before the MEBD.

*b.* Unless otherwise indicated, the soldier will be issued DD Form 256A(Honorable Discharge Certificate) or DD Form 257A (General Discharge Certificate (Under Honorable Conditions)). DD Form 214 (Certificate of Release or Discharge from Active Duty) will be prepared in each case. If the soldier is in entry level status at the time of processing, DD Form 214 may describe service as uncharacterized (see AR 635–200, chap 3).

*c.* The soldier will be furnished one copy of the approved report of medical board proceedings (with copy of the report of the medical examination).One copy will be filed in the Military Personnel Records Jacket (MPRJ).

*d.* One copy of each of the documents listed below will be sent through the commander of the MTF providing primary medical care for the headquarters discharging the soldier to the Commander, U.S. Army Recruiting Command, ATTN:USARCAO–M, Fort Sheridan, Illinois 60037–6000.
(1) DA Form 3947 (Medical Evaluation Board Proceedings) and SF 502(Narrative Summary).
(2) SF 88 (Report of Medical Examination) and SF 93 (Report of Medical History) prepared for the separation action.
(3) SF 88 and SF 93 pertaining to entry (pre-induction, induction, enlistment, or call to active duty) examination.

*e.* A cover letter will cite this regulation as authority for the action. The letter will furnish the following information:
(1) The date on which the soldier was discharged.
(2) The date of the soldier's entry on active duty.
(3) The name and location of the medical facility that conducted the soldier's medical examination before the soldier's enlistment or induction.

*(Letterhead)*

*(Office symbol)* *(Date)*

MEMORANDUM FOR Commander, Walter Reed Army Medical Center, ATTN: HSHL–PAD–PA, Washington, D.C. 20307–5001

SUBJECT: Request for Separation and Waiver of PEB Evaluation

1. I request discharge for physical disability based upon the findings and recommendations of a medical evaluation board (MEBD). The MEBD considers me unqualified for retention in the military service because of physical disability that was found to have existed prior to my entry into active service (EPTS). The MEBD found the disability neither incident to nor aggravated by, my military service.

2. I have been fully informed and understand that I am entitled to the same consideration and processing as any other soldier of the Army separated for physical disability. I understand this includes the consideration of my case by a Physical Evaluation Board. However, I elect not to exercise this right. I also understand the Veterans Administration (VA) will determine entitlement to VA benefits.

3. If this application is approved, I understand that I will be separated by reason of EPTS physical disability. I also understand that I will receive a discharge in keeping with the character of my service, as decided by the officer designated to effect my separation.

John E. Doe
987–65–4321
SSG, Medical Holding Co.

**Figure 5-1. Sample format for request for separation with waiver of PEB evaluation**

## Chapter 6
## Continuance of Disabled Personnel on Active Duty

### 6–1. General

*a.* This chapter prescribes procedures under which certain soldiers of the Active Army (on the active duty list) who are eligible for retirement or separation because of physical disability may be COAD. COAD will be upon approval of their application for waiver. The policies of paragraph 3–10 apply to all cases processed under this chapter.

*b.* Soldiers in the RC (not part of Active Army end strength), to include AGR program, who request continuance in the RC will be processed according to paragraph 8–7. The criteria delineated in paragraph 6–3 are not applicable to soldiers requesting continuance in the RC.

### 6–2. Objective

The primary objective of this program is to conserve manpower by effective use of needed skills or experience. A soldier who is physically unqualified for further active duty has no inherent or vested right to be COAD. Disapproval of such a request has no bearing on the disposition of a case processed under other chapters of this regulation.

### 6–3. Qualification for continuance

To be considered for COAD under the provisions of this chapter, a soldier must be—

*a.* Found unfit by a PEB because of a disability that was not the result of intentional misconduct nor willful neglect, nor incurred during a period of unauthorized absence.

*b.* Capable of maintaining one's self in a normal military environment without adversely effecting one's health and the health of others and without undue loss of time from duty for medical treatment.

*c.* Physically capable of performing useful duty in an MOS for which he or she is currently qualified or potentially trainable.

*d.* Eligible through one of the criteria below as determined by the appropriate approving authority listed in paragraph 6–10.

(1) Has 15 years but less than 20 years of total service, or

(2) Is qualified in a critical skill or shortage MOS confirmed by PERSCOM; or

(3) Disability is the result of combat.

### 6–4. Processing of application

A soldier on active duty being evaluated for possible unfitness because of physical disability may submit an application through the MTF for COAD. The application must be submitted when the soldier is being evaluated by the MEBD or during counseling by the PEBLO after the informal PEB. The soldier may not submit the application directly to the PEB. (fig 6–1.)

### 6–5. Special counseling

*a. Application.* Before the soldier completes an application for COAD, the PEBLO will counsel the soldier according to appendix C. The PEBLO will specifically inform the soldier of the procedures listed below.

(1) That the PEB will process the case to completion to include the following:

*(a)* Convening a formal hearing, if requested.

*(b)* Determining a percentage rating.

*(c)* Recommending a disposition that will apply if application for continuance is disapproved.

(2) Of the criteria for qualification for continuance.

(3) That the appropriate approving authority in paragraph 6–10 will determine whether the criteria for qualification are met.

(4) That if continuance is approved, the soldier will again be referred into the disability system for reevaluation upon final separation or retirement.

(5) That subsequent adjudication upon final separation or retirement may determine the soldier to be physically fit or unfit according to paragraph 6–14.

(6) That if the application is disapproved, the disapproving authority will forward the case file directly to PERSCOM for separation or retirement action.

*b. Soldiers with 18 years.* When a soldier with 18 years but less than 20 years of active service is referred to a PEB for further processing and elects not to submit a request for COAD, such election will be in writing and attached to the MEBD proceeding. If

the soldier does not indicate in writing his or her desire not to request COAD, the PEBLO will include a signed certificate stating that the soldier has been counseled and elects not to submit an election in writing.

**6–6. Reclassification procedures (enlisted soldiers only)**
Policies and procedures of AR 600–200 apply when reclassification into another MOS is necessary. Reclassification action is not within the authority of USAPDA.

**6–7. Processing by MTF**
The policies and procedures described in chapter 4 of this regulation apply.The MTF commander will ensure that—

*a.* Item 16 of DA Form 3947, Medical Board Proceedings, is completed indicating whether COAD is medically inadvisable.

*b.* Item 3 of DA Form 3349 lists assignment limitations.

*c.* Documents specified in paragraph 4–15 are included in the case file forwarded to the PEB. The commander's statement should include a recommendation for or against approval of continuance.

**6–8. PEB processing**

*a. Policy.* The PEB will consider the case according to chapter 4. The fact that a soldier has applied for COAD must not influence the listing of disabilities or percentage ratings. Policy requires that findings and recommendations of the PEB be as carefully decided as if the soldier had not applied for continuance. The PEB's function is to establish whether the soldier is physically unfit. Its action is one of a series of actions to confirm the soldier's unfitness and to determine whether he or she is acceptable for COAD.

*b. DA Form 199.*

(1) If the soldier is found physically unfit, the following statement will be added in block 8. "Soldier has applied for COAD. The recommended disposition in block 9 applies if soldier's application for continuance is denied."

(2) If the soldier submits an application for COAD after the informal PEB, all copies of DA Form 199 will be amended to reflect the above statement and copies provided to the soldier and MTF.

*c. PEB recommendation.* While not required, the PEB is encouraged to include in the forwarding letter to the approving authority a recommendation for or against approval of the soldier's application.

*d. Suspense File.* For those cases which the PEB approves for the SA, PEB will forward the case file for COAD consideration to the applicable approving authority listed in paragraph 6–10. A suspense file will be maintained.

**6–9. Review at USAPDA or APDAB**

*a.* When the review confirms the findings and recommendations of the PEB, USAPDA will forward the case file to the applicable addressee listed in paragraph 6–10 for action on COAD application. A suspense file will be maintained.

*b.* When review by APDAB is required, USAPDA will request APDAB to forward case to the applicable addressee if finding of unfit is confirmed.

*c.* When the case concerns a finding of unfit for a General or Medical Corps officer, USAPDA will obtain review by OASD(HA) prior to forwarding the case file for consideration of COAD application.

**6–10. Action by Approving Authority**

*a.* The approving authority listed in (1) through (6) below will act on the soldier's request for COAD.

(1) *Regular Army enlisted.* Commander, PERSCOM, ATTN:TAPC–PDB, Hoffman II, 2461 Eisenhower Avenue, Alexandria, VA 22331–0477.

(2) *Regular Army officers.* Commander, PERSCOM, ATTN:TAPC–OPP–M, 200 Stovall Street, Alexandria, VA 22332–0418.

(3) *USAR Officers (OBV tour, VI status, or otherwise counted in the Active Duty End Strength).* Commander, PERSCOM, ATTN: TAPC–OPP–M, 200 Stovall Street, Alexandria, VA 22332–0418.

(4) *MSC Officers (Active Component).* HQDA, ATTN:DAPC–OPH–PS, 1900 Half Street, S.W. Washington, DC 20324.

(5) *Chaplains (Active Component).* HQDA, ATTN: DACH–PZB, Pentagon, Room 1E417, Washington, DC 20310–2206.

(6) *JAGC Officers (Active Component).* HQDA, ATTN: DAJA–PT, Pentagon, Room 2E443, Washington, DC 20310–2206.

*b.* If the soldier's application is approved, the approving authority will—

(1) Notify the MTF commander of the action and furnish assignment orders or instructions, if appropriate.

(2) Notify soldier's Military Personnel Service Center (PSC)—

*(a)* Of the serial code (AR 40–501, table 7–2) to be entered on DA Forms 2 and 2–1.

*(b)* That the assignment limitations detailed on DA Form 3349 must be followed.

(3) Furnish an information copy of the action to the PEB from which the case originated; the CG, USAPDA; and Cdr, USAEREC, ATTN: PCRE–FS, Fort Benjamin Harrison, IN 46249–5301.

*c.* If the soldier's application is disapproved, the disapproving office will notify the MTF commander promptly so that the soldier may be informed. The disapproving office will furnish CG, USAPDA, and the PEB originating the case with information copies of the letter of disapproval. The disapproving office will forward the original DA Form 199 and enclosures referred by USAPDA, less medical records, without delay to Commander, PERSCOM, ATTN: TAPC–PDB, 2461 Eisenhower Avenue, Alexandria, VA 22331–0477. PERSCOM will take action required by chapter 4.

**6–11. Disposition of records**

*a.* If the soldier's application for COAD is approved—

(1) File the original of the DA Form 199, the medical board proceedings, and other enclosures to the DA Form 199 in the soldier's official military personnel file (OMPF).

(2) Include a copy of the letter of approval.

(3) Exclude medical records, Health Record, and similar supporting documents if they are included with the application.

(4) Return the records mentioned in (3) above, with the approval letter, to the MTF commander who sent the case to the PEB for disposition prescribed by other regulations.

(5) The MTF commander will provide the soldier a copy of the letter of approval.

(6) HQDA will retain the remaining copy of the DA Form 199 and attachments as working file copy, destroying them when they are no longer needed.

(7) The MTF commander will annotate copies of the PEB and medical board proceedings retained at the MTF to reflect the approval action and file them.

(8) The MTF commander will forward the letter of approval to the soldier's military personnel office (MILPO) for filing in the soldier's unit DA Form 201 (Military Personnel Records Jacket, U.S. Army).

*b.* Not used.

**6–12. Disposition of soldiers unable to perform their duty**
Any soldier COAD under the provisions of this regulation who is later found to be unable to perform effectively the duties to which assigned because of physical disability must be referred to an MTF for re-evaluation. The MTF will process his or her case through the Physical Disability Evaluation System with a new MEBD.

**6–13. Reevaluation**

*a. Periodic medical examination.* A soldier COAD under this program must be reevaluated periodically to determine whether further continuance or, conversely, retirement or separation is in the best interest of the Army and service member. AR 40–501 establishes acceptable schedules.Exceptions to established schedule are as follows:

(1) The condition causing the soldier's physical unfitness is such that more frequent examination is indicated.

(2) The soldier has been rehospitalized because of worsening of the unfitting condition.

(3) The soldier has been rehospitalized because of some other condition impacting on the soldier's ability to perform duty.

*b. Responsibilities of the managing physician.* The managing physician must give special attention to the stability of the soldier's unfitting condition. The physician will—

(1) If severity increases, estimate the impact on the soldier's ability to perform duty.

(2) If degradation of the soldier's condition occurs so as to further impair performance of duty, note such findings and conclusions on the SF 88.

(3) Notify the soldier's commander.

*c. Referral to PEB.* If the managing physician believes it is needed, or the soldier's commander requests it, a MEBD will be prepared. The MEBD will refer the case to a PEB for processing.

*d. Request for reenlistment.* An enlisted soldier whose term of service expires during the period for which COAD has been approved may request reenlistment with a waiver of the physical disqualification. Requests from personnel serving on extended active duty will be submitted to the Commander, United States Army Enlistment Eligibility Activity (USAEEA), 9700 Page Boulevard, St. Louis, Missouri 63132-5260. The soldier will complete DA Form 3072 (Waiver of Disqualification for Reenlistment/Promotion in the Regular Army) in support of the DA Form 3340 (Request for Regular Army Reenlistment or Extension). The soldier must support the request for waiver by a current DA Form 3947, SF 502, and SF 88. The DA Form 3947 contains a recommendation for, or against, reenlistment. (PEB consideration is not required unless reenlistment is denied. If reenlistment is denied, the MTF Commander will forward the case to the supporting PEB as provided in chapter 4.) Request for reenlistment will be submitted between 4 and 6 months in advance of expiration of term of service (ETS). The Commander, USAEEA will approve or disapprove reenlistment.

*e. Request for extension of continuance.* A soldier may request extension of COAD. The soldier will forward an application to the approving authority in paragraph 6-10, 4 to 6 months before expiration of the period for which continuance was approved.

(1) An officer may apply by letter. He or she will attach DA Form 3947, SF 502, and SF 88. The DA Form 3947 contains a recommendation for, or against, extension of the officer's COAD. The officer will forward the letter of application through his or her rater. The rater will comment on the officer's physical capacity to perform assigned duties. The rater will recommend for or against extension of the officer's COAD.

(2) Enlisted soldiers will use the procedures of reenlistment described in paragraph "d" above.

*f. Extension request denial.* An enlisted soldier whose request for continuance is denied by the Commander, USAEEA will not be offered the opportunity to apply for continuance during further processing of his or her medical proceedings (para 6-14).

### 6-14. Final retirement or separation

*a.* A soldier COAD under the provisions of this chapter will be reevaluated by a MEBD and PEB when processing for final retirement or when the soldier's continuance is ended and reenlistment or extension of continuance is denied. The disqualifying defect will be evaluated under the physical standards in effect at the time of current evaluation. If the disability has improved so as to no longer be unfitting or has been cured, the soldier may be found fit.If the disability has remained unchanged or increased in severity, the PEB will find the soldier unfit because of physical disability. Presumption of fitness(para 3-2*b*(2)) does not apply to the subsequent disability processing of soldiers who were approved for COAD. The disability will be rated under the current VASRD.

*b.* The PEB may not judge a COAD soldier physically unfit or determine disability rating on the basis of how the disability may impact on the soldier's future ability to perform his or her duties.

*c.* Cases of medical officers and general officers and the cases of any other designated soldier will be reviewed by the ASD(HA). The review may affect the final decision on the soldier's unfitness.

*(Letterhead)*

*(Office symbol)* *(Date)*

MEMORANDUM FOR Commander, PERSCOM, ATTN: TAPC–PDB, Hoffman II, 2461 Eisenhower Avenue, Alexandria, VA 22331–00477

SUBJECT: Request for Continuance on Active Duty

1. If I am determined unfit because of physical disability, I hereby apply for continuance on active duty. I apply for assignment to duties that I am able to perform within the limitations imposed by my physical disabilities. I request continuance instead of retirement or separation disposition.

2. I meet the following criteria for application for COAD:
________I have 15 years of total service but less than 20.
________I am qualified in shortage MOS.
________My disability is the result of combat.

3. I also understand that—
a. I must be able to maintain myself in a normal military environment without the environment adversely affecting my health or requiring extensive medical care.
b. My disabilities will be periodically reevaluated to decide whether further continuance on active duty or retirement or separation is in the best interests of myself and the Army.
c. Should I later incur a service obligation, I remain liable to complete such obligation in spite of my condition. Only when my disabilities progress to a point that I am no longer able to perform duty with proper limitations am I no longer liable to complete such obligation.
d. At the time of my final retirement or separation from active duty, I will be evaluated under the regulations in effect at that time, and I may be found physically fit.
e. I will not be separated without proper examination and physical disability evaluation.
f. If my term of service expires during the period for which continuance on active duty has been approved, I may request reenlistment with a waiver, and such request may be disapproved.

4. I request consideration for assignment to one of the following installations. (I have listed three in order of my preference.)
a. Fort Detrick
b. Fort Lee
c. Fort Wainwright

John E. Doe
987–65–4321
SSG, 76P30
HQ, USA Quartermaster Center
244th Quartermaster Battalion
Fort Lee, VA 23801–5260

**Figure 6-1. Sample format to request COAD**

# Chapter 7
# Temporary Disability Retired List

## Section I
## Introduction

### 7–1. Overview
This chapter outlines procedures for administration and processing of soldiers whose names are on the TDRL.

### 7–2. Reasons for placement on the TDRL
*a.* A soldier's name may be placed on the TDRL when it is determined that the soldier is qualified for disability retirement under 10 USC 1201 but for the fact that his or her disability is determined not to be of a permanent nature and stable.

*b.* A soldier with a hereditary or congenital condition that is unfitting and known to be progressive will not be placed on the TDRL unless there is unstabilized service aggravation and the soldier is qualified as described above. If upon removal from the TDRL, there is no evidence of residual aggravation, the soldier may be found to be ineligible for disability benefits.

*c.* TDRL will not be used for convalescence. When a soldier's correct rating is less than 30 percent, a rating will not be increased to 30 percent solely for the purpose of making a soldier eligible for TDRL.

### 7–3. Information reflected on the TDRL
The TDRL will list names of all soldiers temporarily retired. The list, as a minimum, will reflect—
*a.* The identity of the soldier.
*b.* The date the soldier was placed on the TDRL.
*c.* The month and year in which the next medical examination is required.

*d.* Current address and phone number.

### 7–4. Requirement for periodic medical examination and PEB evaluation

A soldier on the TDRL must undergo a periodic medical examination and PEB evaluation at least once every 18 months to decide whether a change has occurred in the disability for which the soldier was temporarily retired.

*a.* Soldiers who have waived retired pay to receive compensation from the VA, continue to be retired Army soldiers. These soldiers must undergo examinations when ordered by Commander, PERSCOM, acting on behalf of the SA.

*b.* Soldiers recalled to active duty while still on the TDRL must also undergo a periodic examination when ordered by the Commander, PERSCOM.

*c.* Soldiers who fail to complete a physical examination when ordered will have their disability retired pay suspended.

*d.* Soldiers on the TDRL will notify Commander, PERSCOM, ATTN: TAPC–PDB,2461 Eisenhower Drive, Alexandria, VA 22331–0477, of any change in their current mailing address.

### 7–5. Counseling

The PEBLO is responsible for counseling the soldier until the informal PEB is completed. The soldier may demand a formal hearing. If so, the regularly appointed PEB counsel is responsible for the counseling unless the soldier elects a different counsel. Counseling will be according to appendix C.Soldiers on the TDRL are more difficult to counsel because they are not as readily available to the counselor as are soldiers on active duty.Nevertheless, they must be counseled to the same extent required for active duty soldiers.

### 7–6. Prompt processing

To prevent the soldier suffering severe financial and other hardships, processing delays will be avoided. All portions of the medical examination will be conducted on a priority basis. All involved agencies and personnel will ensure that cases of soldiers nearing expiration of 5-year TDRL tenure are identified and given priority processing.

### 7–7. Prompt removal from TDRL

Medical examiners and adjudicative bodies will carefully evaluate each case.They will recommend removal of the soldier's name from the TDRL as soon as the soldier's condition permits. Placement on the TDRL confers no inherent right to remain for the entire 5-year period allowed by 10 USC 1210.

## Section II
## Administration

### 7–8. Individual TDRL file

CG, PERSCOM will maintain an active file for each soldier on the TDRL. The file will contain the following:

*a.* Complete identification, grade, and a statement of total active service when placed on the TDRL; orders placing the soldier on the TDRL; the soldier's current mailing address.

*b.* Original copy of PEB proceedings with exhibits, less medical and health records; original reports of periodic medical examinations and evaluations.

*c.* Record of current location of clinical, medical, and health records to make the next periodic medical examination easier.

*d.* Significant correspondence with the former soldier and medical treatment facility in order to support suspension of pay for failure to report for scheduled reexaminations or to show that reasonable efforts were made to notify the soldier.

### 7–9. PERSCOM's letter of instruction to the MTF commander on periodic medical examination

*a. Procedural instructions.* PERSCOM will issue a letter of instructions to the MTF commander responsible for the medical examination 4 months before the month during which the examination is to be carried out.PERSCOM will coordinate with the U.S. Army Health Services Command (HSC) in issuing the letter. The letter will include—

(1) Name and address of the soldier requiring examination.

(2) A statement that the periodic medical examination is required during the month prescribed.

(3) Location of medical records, if known (the MTF commander will obtain all medical records).

(4) Instructions on completing the enclosed travel order as to the exact place and date of the examination.

(5) Authority for the MTF commander to arrange for the examination to be conducted. Another U.S. Government MTF, a civilian medical facility, or civilian physician(s), including medical consultants, may conduct the examination. The examination will be conducted as close to the soldier's home as circumstances and requirements of the case permit.

(6) Specific guidance governing conduct of the examination needed.

*b. Preparation of orders.* PERSCOM will prepare travel orders to accompany the letter of instructions. The travel orders permit payment for TDY only for the period needed to complete the TDRL examination. These orders do not provide for periods of medical treatment after the examination.

*c. Supporting documents.* The following documents will accompany the letter of instructions:

(1) Proceedings of the PEB and supporting documents that placed the soldier on the TDRL.

(2) A copy of the letter notifying the soldier of the examination.

*d. Final TDRL examination.* PERSCOM will initiate processing action no later than 6 months before the fifth anniversary date of the soldier being placed on the TDRL. The MTF commander and the soldier will be advised that the final examination must be expedited to ensure removal from the TDRL before the soldier's completion of 5 years on the list.

### 7–10. PERSCOM's letter of instruction to the soldier

PERSCOM will notify the soldier of the forthcoming medical examination. The letter will include the information below:

*a.* Name, address, and telephone number of the appointed MTF closest to the soldier's home.

*b.* Name and telephone number of the PEBLO who will assist the soldier during and after the medical examination.

*c.* The soldier may telephone the MTF collect to resolve any problems.

*d.* The MTF will arrange for and schedule the medical examination. Every effort will be made to schedule the examination for the soldier's convenience;however, the medical examination must be carried out within the month prescribed.

*e.* At the discretion of PERSCOM an escort may accompany a soldier who is unable to travel alone to the place of examination. One person may travel with the soldier upon request when the record clearly shows that the soldier is not physically or mentally able to travel without help. The attendant is entitled to file a claim for expenses according to JFTR, volume I, chapter 7, part I. If a private conveyance is used for travel, only the retired soldier may be reimbursed for transportation cost. Request for attendant must be approved by PERSCOM, (TAPC–PDB) in advance of travel.

*f.* The MTF will forward the following:

(1) Travel orders issued by PERSCOM if needed.

(2) Facts for obtaining transportation request and collection of approved travel expense.

(3) Per diem allowance if applicable.

*g.* Failure to make or follow through with arrangements with the hospital for carrying out the medical examination during the required month may result in the suspension of disability retirement pay.

*h.* The soldier must inform the MTF of visits to civilian or military physicians or other Federal medical facilities for treatment while on the TDRL and give permission to obtain records of such visits if available.

**7–11. Disposition of the TDRL soldier**

*a. Action following periodic PEB evaluation or on fifth anniversary.* PERSCOM will remove a soldier from the TDRL as described below on the fifth anniversary of the date the soldier's name was placed on the list, or sooner on the approved recommendation of a PEB.

(1) *Permanent retirement.* If the soldier meets the criteria below, the soldier will be removed from the TDRL, permanently retired for physical disability, and entitled to receive disability retired pay:

*(a)* The soldier is unfit.

*(b)* The disability causing the soldier's name to be placed on the TDRL has become permanent.

*(c)* The disability is rated at 30 percent or more under the VASRD, or the soldier has at least 20 years of active Federal service.

(2) *Separation.* A soldier will be removed from the TDRL and separated with severance pay if the soldier—

*(a)* Has less than 20 years of service.

*(b)* Is unfit because of the disability for which the soldier was placed on the TDRL; and either the disability has stabilized at less than 30 percent; or the disability, although not stabilized, has improved so as to be ratable at less than 30 percent. A former RA enlisted soldier who would be separated under this authority may request a waiver to reenlist. (See AR 601–210, chap 4.)

(3) *Fit for duty.* If a soldier is determined physically fit to perform the duties of his or her office, grade, rank or rating (and is otherwise administratively qualified), the following procedures apply:

*(a)* Former RA officers and warrant officers, subject to their consent, will be recalled to active duty. Action will be started to effect reappointment to the active list in the regular grade held when placed on the TDRL, or the next higher grade. If the officer does not consent to be called to active duty, TDRL status and disability pay will be ended as soon as possible.

*(b)* Former RA enlisted soldiers, subject to their consent, will be reenlisted in their regular component in the grade held on the day before the date place on the TDRL, or in the next higher grade. If the soldier does not consent to reenlistment, TDRL status and disability pay will be ended as soon as possible.

*(c)* Former soldiers of the U.S. Army Reserve (USAR), subject to their consent, will be reappointed or reenlisted in the USAR in the grade held on the day before the date placed on the TDRL, or in the next higher grade or transferred to the Retired Reserve, if eligible. They may request active duty, under USAR regulations.

*(d)* Former soldiers of the Army National Guard of the United States(ARNGUS), subject to their consent, may be reappointed or reenlisted in the ARNGUS in the grade held on the day before the date placed on the TDRL, or in the next higher grade if the proper State authorities reappoint or reenlist them in the Army National Guard (ARNG) of the State concerned. They may request active duty. If the soldier cannot be reappointed or reenlisted in the ARNG, and subject to the soldier's consent, he or she will be reappointed or reenlisted in the USAR or transferred to the Retired Reserve, if eligible.

*(e)* If the soldier in (a) thru (d) above has completed 20 years of active service when placed on TDRL, and does not consent to return to active duty upon being found fit for duty, the soldier may request voluntary retirement by reason of length of service upon removal from the TDRL.

*(f)* If the soldier in (c) and (d) above has completed at least 20 qualifying years of service computed under section 1332, title 10, United States Code (10 USC 1332) when placed on the TDRL, the soldier may request if otherwise eligible, retirement under section 3911, title 10, United States Code(10 USC 3911) from the TDRL.

(4) *Unfit—not in LD disability.*

*(a)* A soldier may recover from the disability resulting in placement on the TDRL. If while on the TDRL, the soldier incurs another unfitting disability, the soldier may be separated without benefits.

*(b)* If the soldier mentioned in (a) above was RA and had completed 20 years or more of active service when placed on the TDRL, the soldier may request voluntary retirement.

*(c)* If the soldier mentioned in (a) above was USAR and had completed at least 20 qualifying years of service computed under 10 USC 1332 when placed on the TDRL, the soldier may request transfer to the Retired Reserve or retirement if qualified under 10 USC 3911.

*b. Periodic examination not performed.* PERSCOM will take the actions described below when a periodic examination cannot be carried out.

(1) *Soldier's failure to report or reply.* If a soldier fails to respond to correspondence concerning the medical examination or fails or refuses to complete a medical examination, PERSCOM will make an effort to discover the reason. If such action cannot be justified and the fifth anniversary of placement on the TDRL has not been reached, PERSCOM will notify the soldier and the Chief, Retired Pay Operations, U.S. Army Finance and Accounting Center (USAFAC), to suspend retired pay. PERSCOM will keep the soldier's name on the TDRL until the fifth anniversary unless it is removed sooner by other action.

(2) *Unable to locate soldier.* When reasonable efforts to locate the soldier are unsuccessful, PERSCOM will take the action prescribed in(1) above.

(3) *Soldier imprisoned by civil authorities.* A report by the responsible MTF commander may indicate that examination of a soldier is not possible because the soldier is imprisoned and civil authorities will not permit the examination. If so, PERSCOM will take the action prescribed in (1) above.

(4) *Removal on fifth anniversary.* Soldiers on the TDRL shall not be entitled to permanent retirement or separation with severance pay without a current acceptable medical examination, unless just cause is shown for failure to complete the examination. Six months before the fifth anniversary of placement on the TDRL, PERSCOM will make a final attempt to contact the soldier ((1) and (2) above) or proper civil authorities ((3) above)and arrange a final examination. If this fails and the soldier does not undergo a physical examination, PERSCOM will administratively remove him or her from the TDRL on the fifth anniversary of placement on the list without entitlement to any of the benefits provided by 10 USC 61.

**7–12. Restoring eligibility**

PERSCOM may restore the soldier's eligibility to receive disability retirement pay if, after failure to report for and complete the required periodic examination, the soldier later satisfactorily meets the examination requirements. PERSCOM will notify the Chief, Retired Pay Division, USAFAC, to restore disability retired pay retroactive to the date the soldier undergoes the examination provided the soldier is still qualified for retention on the TDRL. The soldier's eligibility to receive retired pay may be made retroactive, not to exceed 1 year, if the soldier can show just cause for failure to respond to official notice or orders. A soldier's name may have been removed from the list as provided in paragraph 7–11*b*(4). If so, the soldier may take application to the Army Board for Correction of Military Records (ABCMR).

## Section III
## Periodic Medical Examination

**7–13. Responsible MTF**

The commander of the MTF, notified as provided in paragraph 7–9, is responsible for reexamining the soldier. If the MTF was obviously or apparently incorrectly selected, the commander will promptly notify PERSCOM to transfer the case file to another MTF.

**7–14. Selection of examining facilities**

*a. Other locations.* Upon review of the medical records, the MTF commander or his or her designee will arrange to have the portions of the examination that cannot be accomplished at the Army MTF conducted at one of the locations below. These locations are listed in the order of preference.

(1) Another uniformed service MTF.

(2) Other Federal medical facility at, or near, the soldier's home.

(3) Civilian-operated clinic or hospital at, or near, the soldier's home.

*b. Hospitalization.* Examination of a soldier on an out-patient basis is preferred. When hospitalization is foreseen, however, or when extensive tests or observations require hospitalization, the soldier will be ordered to report to the MTF designated, or if more appropriate, to a Federal MTF near the soldier's home. If the soldier is hospitalized at the time the examination is scheduled, a NARSUM from the hospital facility providing his or her care may suffice to meet the needs of a report of periodic examination.

*c. Costs.* The cost of medical examinations carried out at Government MTFs, including consultations from civilian sources, are payable from funds available to operate MTFs. Costs of medical examinations carried out at civilian MTFs or by civilian physicians at, or near, the soldier's home will be handled according to AR 40–3, chapter 15.

### 7–15. Medical records

The commander of the MTF responsible for the medical examination will promptly initiate a request for the soldier's medical records from information provided by PERSCOM or by the soldier. The commander will ensure that the medical records are available to the examining physician before the periodic medical examination. The examining physician must return all records furnished with the report of medical examination to the MTF commander for forwarding to the proper PEB.

### 7–16. The MTF commander's duties in notifying the soldier

The MTF commander will provide to the soldier the information specified in paragraph 7–10. Confirmation of the date of examination should be made by certified mail, return receipt, restricted delivery. If the notification is returned as undelivered or soldier fails to report as directed, the MTF commander will notify PERSCOM (TAPC–PDB).

### 7–17. Examination of the soldier

*a. Purpose of medical examination.* The purpose of the TDRL periodic medical examination is to—

(1) Determine the soldier's condition at the time of the examination.

(2) Decide if a change has occurred in the disability for which the soldier was placed on the TDRL.

(3) Decide if the disability has become stable enough to permit removal from the TDRL.

(4) Identify any new disabilities while the soldier has been on the TDRL.

*b. Extent of the examination.* The medical examination must be objective and complete. One or more physicians will conduct the examination.Proceedings of previous PEB actions and all medical records will be made available to the examiner. Diagnostic, laboratory, and radiological procedures, including photographs, should be used to the extent needed to establish and describe the soldier's current physical condition accurately. Detailed requirements for medical examinations for disability evaluations are contained in the VA Physician's Guide for Disability Evaluation Examinations and the VASRD.(See AR 40–3, chapter 8.)

*c. Consultants.* Advice of professional consultants may be obtained whenever needed during periodic medical examinations.

*d. Soldiers physically unable to travel or mentally incompetent.* When the responsible hospital commander determines that a soldier is physically unable to travel (for example, bedridden) or is mentally incompetent, the commander will make all reasonable efforts to have the soldier examined. Bringing the soldier to the hospital by ambulance or arranging for a visit by a physician to the soldier's residence is included when the effort is in the best interests of the Government. If the soldier is under medical treatment, current medical records from the MTF, or the physician treating the soldier, may provide adequate clinical data for the report of periodic examination.

*e. Soldiers imprisoned by civil authorities.* When a soldier is found to be imprisoned by civil authorities, the appointed MTF commander will request the confinement facility, or other proper authority, to have the soldier medically examined and to provide a report of the soldier's current medical state. The report will be processed in the normal manner upon receipt and forwarded to the PEB for adjudication. If an examination is impossible or no report is received, the MTF commander will return the medical records to PERSCOM with a summary of efforts to obtain adequate information. PERSCOM will take action prescribed in paragraph 7–11*b*.

### 7–18. Report of the medical examination

*a.* The report of periodic medical examination may be prepared using a letter or SF 502. The guidance in paragraph 4–11 applies. In addition, the following information will be provided:

(1) An estimate of change since the previous examination.

(2) A medical appraisal of all defects incurred, or discovered, after the soldier was placed on the TDRL. The report must clearly show the etiology of defects found during the examination so a decision can be made as to whether they relate to a condition that existed or was incurred while the soldier was on active duty, or was incurred while the soldier was on the TDRL.

(3) An opinion on whether the conditions have become stable. If not stable, provide an opinion as to the progress of the disability and a suggested time frame (not to exceed 18 months) for the next examination.

*b.* The report requires only the signature of the medical officer or physician appointed to conduct the medical examination. Forward the report to the commander of the MTF for review and approval.

### 7–19. Review and forwarding the report of the examination

*a.* The MTF commander, or designee, will ensure the completed report clearly describes the soldier's present condition and functional impairments.MEBDs are not required for TDRL periodic physical examinations; however, the MTF commander may refer a TDRL examination to a MEBD, especially one presenting a problem or dispute.

*b.* The MTF commander will give the soldier the opportunity to review and comment on the report of examination before forwarding it to the PEB. The soldier will sign the report of examination acknowledging receipt. If the soldier does not agree with the report of examination, the MTF commander will review and act on any objections. The MTF commander has the right of final approval; however, any written appeal or objection prepared by or for the soldier will be attached to the medical examination report.

*c.* The MTF commander or his designee will approve and forward the report to the servicing PEB.

*d.* The soldier's correct mailing address, area code, and telephone number will be confirmed to the PEB. A copy of the transmittal document will be provided to PERSCOM (TAPC–PDB).

## Section IV
## Physical Disability Decision

### 7–20. PEB processing

*a. Deficiencies in report of examination.* PEB will resolve deficiencies in a report of periodic examination to the extent possible with MTF commander. A case file will not be returned to PERSCOM because of deficiencies or need for further information except through USAPDA.

*b. Changes in a soldier's condition while on the TDRL.* The combined percentage rating approved at the time the soldier was placed on the TDRL cannot be changed by the PEB throughout the period the soldier is on the TDRL. Adjustment will be made at the time of removal from the TDRL to reflect the degree of severity of those conditions rated at the time of placement on the TDRL and any ratable conditions identified since placement on the TDRL. An

EPTS factor may be added, modified, or eliminated at this time if additional evidence is obtained that was not previously available or apparent during the initial evaluation; or placement on the TDRL was due to fraud, mistake of law, or mathematical miscalculation.

*c. Retention on the TDRL.* A soldier may be retained on the TDRL if disabilities causing placement on the TDRL have not become stable, and either of the following occurs:

(1) The combined rating at the time of re-evaluation is at least 30 percent.

(2) The soldier has at least 20 years of service if the combined rating is less than 30 percent.

*d. Entries on DA Form 199.* Entries on DA Form 199 will reflect the soldier's condition at the time of the most recent periodic examination. When the soldier is recommended for retention, the DA Form 199 will record any new conditions but will not list a disability rating. When a soldier is recommended for permanent retirement, entries must be made for all conditions present whether or not previously recorded. The DA Form 199 will include the reason for variation between the original action (findings, recommendations, or ratings) causing the soldier's placement on the TDRL and current action removing him or her from the list. Explanations need not be lengthy, but must be understandable. Procedures for administrative relief pertaining to a correction or adjustment of the percentage of physical disability while a soldier is on the TDRL are contained in paragraphs 4–25 and 4–26.

*e. Notice to soldier.*

(1) If the PEB recommends removal from the TDRL, the PEB will forward to the soldier DA Form 199 and letter of explanation by certified mail, restricted delivery, return receipt requested. The letter will inform the soldier of his or her rights and responsibilities. It will provide the name, location, and telephone number of the PEBLO (fig 7–1). The soldier will sign the original copy of the DA Form 199 and return it after giving his or her choice of options in block 13. The copy of the DA Form 199 is the soldier's copy.

*(a)* If the certified mail receipt is not returned, or if the correspondence is returned undelivered, the PEB will try to verify the soldier's address by contacting PERSCOM, the MTF, the U.S. Army Finance and Accounting Center (USAFAC), or the VA regional office. If a new address is obtained, the PEB will try to deliver the notice. If not, a memorandum waiving the soldiers right of election will be prepared (fig 7–2).

*(b)* If the receipt is returned but no election is received, the PEB president will prepare a memorandum waiving the soldier's right of election for failure to respond (fig 7–3). The certified mail receipt will be included in the case file as proof that the soldier was notified.

*(c)* The PEB president will forward the case file to PERSCOM (TAPC–PDB)for final disposition.

(2) If the PEB recommends retention on the TDRL, the PEB will forward the DA Form 199 and a letter advising that there will be no change in the soldier's status or retired pay as long as the soldier remains on the TDRL.Notification will be by ordinary mail (fig 7–4). The DA Form 199 will include a statement that failing to notify PERSCOM of the current mailing address will result in the suspension of disability retired pay if the Army is prevented from properly notifying the retiree of a scheduled examination.

(3) The PEBLO of the MTF responsible for the periodic medical examination is responsible for counseling the soldier. Therefore, the PEB will provide the PEBLO a copy of the letter and DA Form 199 (with enclosures).

### 7–21. Travel orders for formal hearing

*a.* When the soldier elects to appear in person at the hearing, the recorder of the PEB will endorse the original travel orders according to AR 310–10. If a new fiscal year starts between the time the soldier completes the TDRL medical examination and the scheduled formal hearing, the PEB will endorse the orders using the new fiscal year fund cite. The new fiscal year fund cite can be obtained from PERSCOM, (TAPC–PDB). The PEB will inform the soldier in writing of the date, time, and place of the hearing, to include building and room number. If soldier lives in an area from which travel to the PEB is "local", as defined by the JFTR chapter 3, part F, orders are not required.

*b.* The PEB will provide one copy of the endorsed travel order to PERSCOM (TAPC–PDB). PERSCOM will commit the funds. The endorsement of orders and the commitment of funds must occur in advance of the soldier's travel for reimbursment of travel expense to be approved.

*c.* An attendant may accompany a soldier who is unable to travel alone to the formal hearing. The attendant is entitled to file a claim for expenses according to JFTR, volume I, chapter 3, part I. If a private conveyance is used for travel, only the retired soldier may be reimbursed for transportation cost.The soldier must contact the PEB in advance of travel to request travel orders for the attendant. If orders were issued for an attendant in connection with travel to the periodic exam, the PEB will endorse the orders and forward one copy to PERSCOM (TAPC–PDB). If no previous orders were issued or a different individual is serving as attendant, the PEB will contact PERSCOM for approval and fund cite. The PEB will forward one copy of the orders to PERSCOM(TAPC–PDB).

### 7–22. Review of TDRL cases

When a PEB completes its action, the case file will be disposed of as prescribed in chapter 4.