# TAB

# D3

E4.9.4. Polycythemia. When unresponsive to therapy.

E4.9.5. Purpura or Bleeding disorders.

E4.9.6. Chronic Anticoagulation Therapy.

E4.9.7. Hypercoagulable states with thromboembolic disease.

E4.9.8. Indwelling Filter to prevent embolic phenomena.

E4.9.9. Leukemia, or history thereof.

E4.9.10. Lymphomas, or history thereof.

E4.9.10.1. Hodgkin's.

E4.9.10.2. Non-Hodgkin's.

E4.10. SKIN AND CELLULAR TISSUES

E4.10.1. When conditions are severe, unresponsive to therapy, and interfere with the satisfactory performance of duty, wearing of the uniform, or using military equipment.

E4.10.2. Systemic Conditions including:

E4.10.2.1. Amyloidosis.

E4.10.2.2. Dermatomyositis.

E4.10.2.3. Dermatographism.

E4.10.2.4. Eczema.

E4.10.2.5. Chronic Lymphedema.

E4.10.2.6. Erythema Multiforme.

E4.10.2.7. Hyperhidrosis.

E4.10.2.8. Leukemia Cutis or Mycosis Fungoides.

E4.10.2.9. Neurofibromatosis.

E4.10.2.10. Psoriasis.

E4.10.2.11. Parapsoriasis.

E4.10.2.12. Scleroderma.

E4.10.2.13. Pemphigus.

E4.10.2.14. Exfoliative Dermatitis.

E4.10.2.15. Epidermolysis Bullosa.

E4.10.2.16. Urticaria.

E4.10.2.17. Lichen Planus.

E4.10.2.18. Cutaneous Lupus Erythematosus.

E4.10.3. Localized Conditions

E4.10.3.1. Radiodermatitis. Particularly if there is malignant degeneration not amenable to therapy.

E4.10.3.2. Intractable Plantar Keratosis.

E4.10.3.3. Scars and Keloids. Locally extensive and adherent so as to interfere with the function of a body part or prevent the wearing of the uniform.

E4.10.3.4. Xanthoma.

E4.10.3.5. Cysts and Tumors. When not amenable to accepted therapy.

E4.10.3.6. Atopic Dermatitis.

E4.10.3.7. Ulcers of the skin. When not responsive to therapy.

E4.10.4. Infectious Conditions

E4.10.4.1. Acne, Cystic, Severe. When unresponsive to therapy.

E4.10.4.2. Dermatitis Herpetiformis.

E4.10.4.3. Panniculitis.

E4.10.4.4. Cutaneous Tuberculosis.

E4.10.4.5. Elephantiasis.

E4.10.5. Other Chronic Skin Disorders.

E4.11. ENDOCRINE SYSTEM AND METABOLIC CONDITIONS.

E4.11.1. General. Any abnormality that does not respond to therapy satisfactorily or where replacement therapy presents significant management problems.

E4.11.2. Diabetes

E4.11.2.1. All cases requiring oral hypoglycemics.

E4.11.2.2. All cases requiring insulin and/or restrictive diet for control.

E4.11.2.3. When individuals requiring insulin for maintenance are under poor control ("brittle diabetics").

E4.11.3. Acromegaly.

E4.11.4. Adrenal Hyper or Hypofunction.

E4.11.5. Diabetes Insipidus.

E4.11.6. Hyper or Hypothyroidism. When not controlled by accepted therapy.

E4.11.7. Hyper or Hyoparathyroidism. Especially when residuals or complications of surgical treatment (renal, skeletal or mental alterations) prevent performance of duty.

E4.11.8. Hyperinsulinism. When caused by malignancy or not readily controlled.

E4.11.9. Gout. In advanced cases with frequent (>3/yr) acute exacerbations or

severe bone, joint, or renal damage.

E4.11.10. <u>Osteomalacia</u>. With residuals that prevent the performance of duties.

E4.11.11. <u>Hypogammaglobulinemia</u>.

E4.11.12. <u>Hypercoaulable States</u>.

E4.11.13. <u>Heat Injury</u>

E4.11.13.1. <u>Recurrent Heat Exhaustion</u>. Manifested by collapse, including syncope, occurring during or immediately following exercise or in an environment of increased heat. Must occur at least three or more times in twenty-four months. No remedial factor can be identified.

E4.11.13.2. <u>Heat Stroke</u>. Hyperpyrexia (core temperature >106 degrees Fahrenheit), collapse, encephalopathy and organ damage and/or systemic inflammatory activation during the episode. In the absence of encephalopathy, exertional rhabdomyolysis and myoglobinuria are sufficient. A trial of duty may be recommended if complicating factors have been identified and there are no residuals.

E4.12. <u>NERVOUS SYSTEM</u>

E4.12.1. <u>General</u>. (To better measure conditions involving the nervous system, it is mandatory that certain yardsticks be employed. In DEMENTIA AND HEAD TRAUMA CASES , neuropsychiatric measurements should be performed as early as possible. In MIGRAINE CASES, the number of incapacitating episodes (those that require the individual to stop the activity in which engaged and seek medical treatment) per week, month or year should be noted and verified by a physician. In SEIZURE DISORDER CASES, the evaluation will be done by a neurologist. An EEG, MRI/CT will be included in the initial examination. When subsequent seizure episodes occur while on medical therapy, blood levels of prescribed medication(s) will be determined. All cases of neuropathies will have EMG and nerve conduction studies performed. Cases of multiple sclerosis will have an MRI. Estimation of the degree of social and industrial impairment incurred by the Service member due to migraine and seizure disorder should be included.)

E4.12.2. <u>Neurogenic Muscular Atrophy</u>

E4.12.2.1. Amyotrophic Lateral Sclerosis.

E4.12.2.2. All Primary Muscle Disorders.

E4.12.2.2.1. Facioscapulohumeral Dystrophy.

E4.12.2.2.2. Limb Girdle Dystrophy.

E4.12.2.2.3. Myotonia Dystrophy.

E4.12.2.3. Myasthenia Gravis. Other than solely ocular.

E4.12.2.4. Polio.

E4.12.3. Progressive Degenerative Disorders.

E4.12.3.1. Parkinson's Disease.

E4.12.3.2. Huntington's Chorea.

E4.12.3.3. Hepatolenticular Degeneration.

E4.12.3.4. Friedreich's Ataxia.

E4.12.4. Demyelinating Disorders.

E4.12.4.1. Multiple Sclerosis.

E4.12.4.2. Optic Neuritis, recurrent or with residuals.

E4.12.4.3. Transverse Myelitis.

E4.12.5. Residuals of Cerebrovascular Accidents.

E4.12.6. Residuals of Traumatic Brain Injury.

E4.12.7. Headaches. Headaches, Migraine, Tension, Vascular, Cluster Types. When manifested by documented frequent incapacitating attacks.

E4.12.8. Seizure disorders.

E4.12.9. Narcolepsy.

E4.12.10. Sleep Apnea Syndrome, when complicated by requirement for an

appliance such as CPAP for control.

E4.12.11. Peripheral Nerve Dysfunctions

E4.12.11.1. Neuralgia. When severe, persistent, and not responsive to therapy.

E4.12.11.2. Neuritis.

E4.12.11.3. Paralysis.

E4.12.12. Syringomyelia.

E4.12.13. General Neurological Disorders. Any other neurological condition, regardless of etiology, when, after adequate treatment, residual symptoms prevent the satisfactory performance of duty.

E4.13. PSYCHIATRIC DISORDERS

E4.13.1. General

E4.13.1.1. The terminology and diagnostic concepts used in this section are in consonance with the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV).

E4.13.1.2. The Multiaxial System of Diagnosis will be used for all psychiatric conditions that are the subject of an MEB:

| | |
|---|---|
| AXIS I. | Clinical Psychiatric Disorders and Other Psychiatric conditions that may be a focus of clinical attention. |
| AXIS II. | Personality Disorders; Mental Retardation. |
| AXIS III. | General Medical Disorders. |
| AXIS IV. | Psychosocial and Environmental problems. |
| AXIS V. | Global Assessment of Function (GAF). |

E4.13.1.3. All AXES I and II diagnoses will be assessed as to the Impairment for Military Duty as well as the Impairment for Social and Industrial functioning. This applies even though conditions normally placed on Axis II do not render a Service member medically unable to perform assigned duties. (See Enclosure 1 of DOD Instruction 1332.39 (reference (i)) on VASRD under "Psychoses".)

E4.13.1.4. Personality, Sexual, or Factitious Disorders, Disorders of impulse control not elsewhere classified, Adjustment Disorders, Substance-related Disorders, Mental Retardation (primary), or Learning Disabilities are conditions that may render an individual administratively unable to perform duties rather than medically unable, and may become the basis for administrative separation. These conditions do not constitute a physical disability despite the fact they may render a member unable to perform his or her duties.

E4.13.1.5. Any MEB listing a psychiatric diagnosis must contain a thorough psychiatric evaluation and include the signature of at least one psychiatrist (identified as such) on the MEB signatory face sheet.

E4.13.2. Disorders with Psychotic Features (Delusions or prominent Hallucinations). One or more psychotic episodes, existing symptoms or residuals thereof, or a recent history of a psychotic disorder.

E4.13.3. Affective Disorders (Mood Disorders). When the persistence or recurrence of symptoms requires extended or recurrent hospitalization, or the need for continuing psychiatric support.

E4.13.4. Anxiety, Somatoform Dissociative Disorders (Neurotic Disorders). When symptoms are persistent, recurrent, unresponsive to treatment, require continuing psychiatric support, and/or are severe enough to interfere with satisfactory duty performance.

E4.13.5. Organic Mental Disorders. Dementia or organic personality disorders that significantly impair duty performance.

E4.13.6. Eating Disorders. When unresponsive to a reasonable trial of therapy or interferes with the satisfactory performance of duty.

E4.14. NEOPLASMS

E4.14.1. Malignant Neoplasms

E4.14.1.1. Malignancies which are unresponsive to therapy or whose residuals prevent satisfactory performance of duty.

E4.14.1.2. When the service member with a malignant neoplasm refuses

accepted therapy.

E4.14.1.3. When, for a variety of reasons, a service member, who has been treated for a malignant neoplasm, will leave active duty before having had an adequate period of observation to determine whether a cure has been effected. These do not include basal cell carcinomas or small squamous cell carcinomas.

E4.14.2. Benign Neoplasms. Usually benign tumors do not prevent satisfactory performance of duty.

E4.14.2.1. When the Service member refuses accepted medical treatment.

E4.14.2.2. Ganglioneuroma.

E4.14.2.3. Meningeal Fibroblastoma.

E4.14.2.4. Pigmented Villonodular Synovitis.

E4.15. GULF WAR CASES

E4.15.1. Comprehensive Clinical Evaluation Program (CCEP) participants who are diagnosed with conditions that are cause for referral into the DES shall receive a MEB to determine if the case is to be referred to the PEB. Referral of a CCEP participant can occur at any point during CCEP process once a condition which is cause for referral into the DES is identified. However, CCEP participants who have undiagnosed medical complaints should not be referred until they have completed Phase II of the CCEP protocol.

E4.15.2. All disability cases that involve service members who have undergone any part of the CCEP shall include:

E4.15.2.1. A medical board report, or addendum to an original medical board report, with a summary of the CCEP findings.

E4.15.2.2. Copies of all CCEP documentation (e.g., test results, consultation reports, et al).

E4.15.3. Failure to include the foregoing information in any case referred to the PEB for adjudication shall result in its return to the convening authority.

Attachments - 1.

1. Minimum Requirements For Medical Evaluation Board (MEB) Addenda and Narrative Summary With Annotations

# E4.A1. ENCLOSURE 4 ATTACHMENT 1

## MINIMUM REQUIREMENTS FOR MEDICAL EVALUATION BOARD (MEB) ADDENDA AND NARRATIVE SUMMARY WITH ANNOTATIONS

E4.A1.1.1. PURPOSE. This attachment details the minimum medical information requirements to be annotated in any Medical Evaluation Board or addendum. This information must be documented and approved prior to forwarding the case to the Physical Evaluation Board (PEB).

E4.A1.1.2. MEDICAL EVALUATION BOARD (MEB) DOCUMENTATION

E4.A1.1.2.1. Required Information

E4.A1.1.2.1.1. Member's name, rank, grade, and social security number

E4.A1.1.2.1.2. The specialty of the signatory physicians.

E4.A1.1.2.1.3. The Clinical Department and/or Service.

E4.A1.1.2.1.4. The Medical Treatment Facility and its location.

E4.A1.1.2.1.5. Date Medical Evaluation Board (MEB) was conducted.

E4.A1.1.2.2. On each page:

E4.A1.1.2.2.1. Member's Last name, last four digits of Social Security Number, and date typed or transcribed in bottom margin.

E4.A1.1.2.2.2. Page number will be annotated at the bottom center of the page.

E4.A1.1.2.3. Reason for Doing the MEB (e.g., physician-directed, command-directed).

E4.A1.1.2.4. Service Member's Eligibility for MEB.

E4.A1.1.2.5. Military History

E4.A1.1.2.5.1. Date of first and most recent entry into service.

E4.A1.1.2.5.2. Estimated termination of Service.

E4.A1.1.2.5.3. Administrative Actions ongoing, pending, or completed (e.g., Line of Duty Investigations, Courts-martial, Selective Early Retirement, Bars, Retirement or Separation Dates).

E4.A1.1.2.6. Chief Complaint. Preferably stated in Service member's own words.

E4.A1.1.2.7. History of Present Illness. Exact details, including pertinent dates regarding injuries, how incurred, and a statement of the final Line of Duty (LOD) determination, if available. Enclose and summarize any pertinent previous MEBs.

E4.A1.1.2.8. Past Medical History.

E4.A1.1.2.8.1. Past injuries and illnesses.

E4.A1.1.2.8.2. Prior disability ratings (e.g., given by the DES or Department of Veterans Affairs).

E4.A1.1.2.8.3. Past hospitalizations and relevant outpatient treatment, including documentation of diagnosis and therapy, pertinent dates, and location should be listed.

E4.A1.1.2.8.4. Social information should be provided which includes but is not limited to:

E4.A1.1.2.8.4.1. Living arrangements (e.g., by oneself, with spouse and children, with parents and siblings).

E4.A1.1.2.8.4.2. Marital status (single, married, separated, divorced, and the type of relationship (harmony or strife)).

E4.A1.1.2.8.4.3. Leisure activity (sports, hobbies, TV, reading)

E4.A1.1.2.8.4.4. Acquaintances (male, female, both sexes, many, few).

E4.A1.1.2.8.4.5. Substance use or abuse (alcohol, drugs)

E4.A1.1.2.8.4.6. Police encounters/record.

E4.A1.1.2.8.5. Illnesses, conditions, and prodromal symptoms, existing prior to service (referred to as EPTS or EPTE conditions).

E4.A1.1.2.9. Laboratory Studies. All studies that support and quantify the diagnosis(es) should be included as should any studies that conflict with the diagnosis(es).

E4.A1.1.2.10. Present Condition and Current Functional Status

E4.A1.1.2.10.1. The current clinical condition of the service member should be noted including required medications and any non-medication treatment regimens (e.g., physical therapy) in progress.

E4.A1.1.2.10.2. Functional status.

E4.A1.1.2.10.2.1. The Service member's functional status as to the ability to perform his or her required duty should be indicated.

E4.A1.1.2.10.2.2. If possible, a summation of the member's ability to perform the civilian equivalent of their assigned duties should be indicated.

E4.A1.1.2.10.3. A statement should be given regarding the prognosis for functional status after completion of treatment if chronic treatment is not necessary.

E4.A1.1.2.10.4. A statement should be given regarding the prognosis for functional status in cases requiring chronic treatment.

E4.A1.1.2.10.5. The stability of the current clinical condition and functional status should be addressed.

E4.A1.1.2.10.6. Statement of compliance with treatment recommendations and reasonableness of any refusal of recommended treatment procedures.

E4.A1.1.2.10.7. Requirement for monitoring including frequency of indicated treatment and/or therapy visits and associated operational assignment limitations.

E4.A1.1.2.11. Conclusions

E4.A1.1.2.11.1. An informed opinion should be stated as to the Service member's ability to meet current Retention Standards.

E4.A1.1.2.11.2. If a Service member does not meet Retention Standards, the specific reasons why should be stated.

E4.A1.1.2.11.3. Treatment recommendations including medications, procedures, and behavior and/or lifestyle modifications. Include a statement concerning the member's compliance. If non-compliant, indicate whether the non-compliance is reasonable.

E4.A1.1.2.11.4. Under no circumstances is the narrative to indicate the members is unfit, nor recommend a disability percentage rating. It is the PEB's responsibility to determine fitness and disability percentage ratings. The MEB may state something to the effect, "the member is referred to the PEB because we are of the opinion that the member's condition may interfere with the performance of his or her duties because the member does not meet medical retention standards as described in..."

E4.A1.1.2.12. Diagnosis(es). The diagnostic terminology used by the MEB should correlate, if at all possible, with that of the Veterans Affairs Schedule for Rating Disabilities (VASRD). Because the Physical Evaluation Boards are required to assess a Service member's status based on the VASRD, a clearer understanding of that status is facilitated when the same terminology is used by the MEBs and the PEBs.

E4.A1.1.2.13. Profile. (If required by service regulation).

E4.A1.1.2.13.1. The Physical Profile of the service member should agree with the severity of the medical impairment as expressed in by the MEB.

E4.A1.1.2.13.2. The Physical Profile (PULHES) of the SF-88 should agree with that of the Physical Profile Form as well as that noted in the MEB cover sheet.

E4.A1.1.3. PHYSICAL EXAMINATION (PE). A complete Physical Examination must be recorded in the MEB. For all conditions, hand dominance must be stated. Selected specialty-related considerations and guidelines follow.

E4.A1.1.3.1. Cardiology

E4.A1.1.3.1.1. Results of special studies to support and quantify the cardiac impairment should be noted e.g. treadmill and thallium stress tests, angiography, and other special studies.

E4.A1.1.3.1.2. It is imperative that the Functional Therapeutic Classification of the cardiac condition be included. Either the New York or Canadian classification system may be used.

E4.A1.1.3.2. Gastroenterology. Service members with fecal incontinence should have recorded findings of rectal examination e.g., digital exam, manometric studies as indicated, and radiographic studies. The degree and frequency of the incontinence should be noted as well as the incapacitation caused by the condition.

E4.A1.1.3.3. Neurosurgery

E4.A1.1.3.3.1. For Vertebral Disc problems, radicular findings on PE should be supported by laboratory studies such as CAT scan, MRI, EMG, NCV. In cases where surgery has been performed, both pre- and postoperative deep tendon reflexes should be documented.

E4.A1.1.3.3.2. For head injuries neuropsychiatric assessment should be accomplished in all head injury cases. Results of any clinically indicated neuropsychological testing should be included.

E4.A1.1.3.4. Ophthalmology. If retention standards are not met for reasons related to vision, visual fields must be included in the PE and verified by an ophthalmologist. Specialist examination should include uncorrected and corrected central visual acuity. Snellen's test or its equivalent will be used and if indicated measurements of the Goldman Perimeter chart will be included.

E4.A1.1.3.5. Orthopedics

E4.A1.1.3.5.1. Range of Motion (ROM) measurements must be documented for injuries to the extremities. The results of the measurement should be validated and the method of measurement and validation should be stated.

E4.A1.1.3.5.2. In cases involving back pain, the use of Waddell's signs should be included in assessing the severity and character of the pain. (Waddell G,

McCulloch JA, Kummel E, Venner RM. Non-organic physical signs in low back pain. Spine. 1980;5:117-125. Waddell G. Somerville D, Henderson I, Newton M. Objective clinical evaluation of physical impairment in chronic low back pain. Spine. 1992;17:617-628.)

E4.A1.1.3.6. Otolaryngology: Audiograms must include speech discrimination scores.

E4.A1.1.3.7. Psychiatry (Also refer to pages 76 - 77 paragraph E4.13 )

E4.A1.1.3.7.1. Particular attention should be paid to documenting all prior psychiatric care. Supportive data should be obtained for verification of the patient's verbal history.

E4.A1.1.3.7.2. Psychometric assessment should be carried out if such assessment will help quantify the severity of certain conditions and allow a reference point for future evaluation.

E4.A1.1.3.7.3. The Diagnostic and Statistical Manual of Mental Disorders (most recent edition) will be used for diagnostic terminology. The Multiaxial System of Assessment will be used to include Axes I-V. The degree of industrial and industrially related social impairment must be individually determined and documented, for each Axis I and Axis II diagnosis, and correlated to the Service member's clinical manifestations. Increased severity of symptoms due to transient stressors associated with the PEB and prospect of separation or retirement and relocation or re-employment will not be considered in determining the degree of impairment. In addition relationship of the impairment to military and civilian performance is required. The service member's total impairment for civilian industrial adaptability from all sources (Axes I, II, III) should be determined and documented. The contribution of each condition to the total adaptability impairment should then be individually noted and correlated with the service member's clinical manifestations.

E4.A1.1.3.7.4. Every effort must be made to distinguish symptoms and impairment resulting from personality disorder or mal-adaptive traits from impairments based on other psychiatric conditions.

E4.A1.1.3.8. Pulmonary. When an MEB is held for restrictive or obstructive pulmonary disease, documentation will be provided of pulmonary function testing carried out when service member is on and off therapeutic

medication. There must be three pulmonary function tests (PFTs) done off medication, two of which must be in agreement within the five percent (5%) level, and three done on medication, two of which must agree within the five percent level.

E4.A1.1.3.9. Urology

E4.A1.1.3.9.1. Cases involving neurogenic bladder must include studies that document the condition.

E4.A1.1.3.9.2. All cases involving incontinence must include studies that document the condition.

E4.A1.1.3.9.3. Cases involving incontinence and/or neurogenic bladder should have documentation regarding severity as indicated by the number of times self catheterization is required, the number and type of pads required in a day, or the soilage frequency.

E5. ENCLOSURE 5

CONDITIONS NOT CONSTITUTING A PHYSICAL DISABILITY

E5.1.1. PURPOSE. To detail conditions which do not constitute a physical disability.

E5.1.2. GENERAL CONSIDERATIONS

E5.1.2.1. Certain conditions and defects of a developmental nature designated by the Secretary of Defense do not constitute a physical disability and are not ratable in the absence of an underlying ratable causative disorder. If there is a causative disorder it will be rated in accordance with other provisions of this Instruction.

E5.1.2.2. These conditions include but are not limited to those listed in paragraph E5.1.3., below.

E5.1.2.3. Such conditions should be referred for appropriate administrative action under other laws and regulations.

E5.1.3. DEVELOPMENT DEFECTS AND OTHER SPECIFIC CONDITIONS

E5.1.3.1. Enuresis

E5.1.3.2. Sleepwalking and/or Somnambulism

E5.1.2.3. Dyslexia and Other Learning Disorders

E5.1.2.4. Attention Deficit Hyperactivity Disorder

E5.1.2.5. Stammering or Stuttering

E5.1.2.6. Incapacitating fear of flying confirmed by a psychiatric evaluation.

E5.1.2.7. Airsickness, Motion, and/or Travel Sickness.

E5.1.2.8. Phobic fear of Air, Sea and Submarine Modes of Transportation

E5.1.2.9. Certain Mental Disorders including:

E5.1.2.9.1. Uncomplicated Alcoholism or other Substance Use Disorder

E5.1.2.9.2. Personality Disorders

E5.1.2.9.3. Mental Retardation

E5.1.2.9.4. Adjustment Disorders

E5.1.2.9.5. Impulse Control Disorders

E5.1.2.9.6. Homosexuality

E5.1.2.9.7. Sexual Gender and Identity Disorders, including Sexual Dysfunctions and Paraphilias

E5.1.2.9.8. Factitious Disorder

E5.1.2.10. Obesity.

E5.1.2.11. Overheight.

E5.1.2.12. Psuedofolliculitis barbae of the face and/or neck.

E5.1.2.13. Medical Contraindication to the Administration of Required Immunizations.

E5.1.2.14. Significant allergic reaction to stinging insect venom.

E5.1.2.15. Unsanitary habits including repeated venereal disease infections.

E5.1.2.16. Certain Anemias (in the absence of unfitting sequelae) including G6PD Deficiency, other inherited Anemia Trait, and Von Willebrand's Disease.

E5.1.2.17. Allergy to Uniformed Clothing.

# Department of Defense
# INSTRUCTION

NUMBER 1332.39
November 14, 1996

ASD(FMP)

SUBJECT: Application of the Veterans Administration Schedule for Rating Disabilities

References: (a) DoD Directive 1332.18, "Separation or Retirement for Physical Disability", November 4, 1996
(b) Title 10, United States Code
(c) DoD Instruction 1332.38, "Physical Disability Evaluation", November 14, 1996
(d) Veterans Administration Schedule for Rating Disabilities (38 CFR, Part 4)
(e) DoD Directive 6130.3, "Physical Standards for Appointment, Enlistment, and Induction," May 2, 1994
(f) Title 37, United States Code

1. PURPOSE

This Instruction implements policy, assigns responsibilities, and prescribes procedures, under the authority of reference (a), for rating disabilities of Service members determined to be physically unfit and who are eligible for disability separation or retirement under reference (b).

2. APPLICABILITY

This Instruction applies to the Office the Secretary of Defense (OSD) and the Military Departments.

3. DEFINITIONS

Terms used in this Instruction are defined in enclosure 1.

4. POLICY

4.1. Ratable Disabilities. Disabilities determined to be physically unfitting and compensable under reference (c) shall be assigned a percentage rating.

4.2. Standard. Chapter 61 of reference (b) establishes the Department of Veterans Affairs'(DVA) Veterans Administration Schedule for Rating Disabilities (VASRD) (reference (d)) as the standard for assigning percentage ratings. The percentage ratings represent, as far as can practicably be determined, the average impairment in civilian occupational earning capacity resulting from certain diseases and injuries, and their residual conditions. However, not all the general policy provisions in Sections 4.1 - 4.31 of the VASRD are applicable to the Military Departments. Many of these policies were written primarily for DVA rating boards, and are intended to provide guidance under laws and policies applicable only to the DVA. This Instruction replaces these sections of the VASRD. The remainder of the VASRD is applicable except those portions that pertain to DVA determinations of Service connection, refer to internal DVA procedures or practices, or are otherwise specifically identified in Enclosure 2 as being inapplicable.

5. RESPONSIBILITIES

5.1. The Assistant Secretary of Defense for Force Management Policy, under the Under Secretary of Defense for Personnel and Readiness, shall ensure consistency between this Instruction and DoD Directive 1332.18 (reference (a)) and DoD Instruction 1332.18 (reference (c)).

5.2. The Assistant Secretary of Defense for Health Affairs, under the Under Secretary of Defense for Personnel and Readiness, shall:

5.2.1. Perform, on a periodic basis, such review as is necessary to determine uniform application by the Military Departments of the VASRD as modified by this Instruction.

5.2.2. Amend or modify this Instruction, as appropriate, after coordination of any proposed amendment or modification with the Assistant Secretary of Defense for Force Management Policy and the Secretaries of the Military Departments.

5.2.3. Review substantive changes proposed by the Military Departments for rating disabilities which affect the uniformity of ratings provided for in this Instruction.

5.3. The Secretaries of the Military Departments shall ensure their respective physical disability evaluation systems apply the VASRD in accordance with this Instruction.

## 6. PROCEDURES

### 6.1. Essentials of Rating Disabilities

6.1.1. The VASRD. The VASRD is primarily used as a guide for evaluating disabilities resulting from all types of diseases and injuries encountered as a result of, or incident to, Military Service. Because of differences between Military Department and DVA applications of rating policies for specific cases, differences in ratings may result. Unlike the DVA, the Military Departments must first determine whether a Service member is fit to reasonably perform the duties of the member's office, grade, rank, or rating. Once a Service member is determined to be physically unfit for further Military Service, VASRD percentage ratings are applied to the unfitting condition(s). Percentages are based on the severity of the condition(s).

6.1.2. Medical Treatment at the Time of Voluntary and/or Mandatory Separation and/or Retirement. Medical and surgical procedures are frequently performed near the end of a Service member's military career. Those are intended to improve a Service member's health. Corrective treatment and convalescence will not be considered as a valid contribution to disability unless unexpected adverse effects occur that are expected to persist after discharge from active duty and are ratable.

6.1.3. Failure to Comply with Prescribed Treatment. A Service member's degree of disability may have been aggravated or increased by an unreasonable failure or refusal to submit to medical or surgical treatment or therapy, to take prescribed medications, or to observe prescribed restrictions on diet, activities, or the use of alcohol, drugs or tobacco. The compensable disability rating may be reduced to compensate for such aggravation when the existence and degree of aggravation are ascertainable by application of accepted medical principles, and where it is clearly demonstrated that:

6.1.3.1. The Service member was advised clearly and understandably

of the medically proper course of treatment, therapy, medication or restriction; and

6.1.3.2. The Service member's failure or refusal was willful or negligent, and not the result of mental disease or of physical inability to comply.

6.1.4. Illegal and/or Controlled Substances. The following applies to Unfitting Medical Disorders and/or Conditions that result from the use of Substance Abuse and/or Chemical Dependency:

6.1.4.1. Illegal and/or Controlled Substances or generally known toxins; e.g., cocaine, PCP, LSD, & heroin: Treat as misconduct unless use was the product of an otherwise unfitting condition.

6.1.4.2. Other substances, e.g., alcohol and Nicotine: Any physical disability resulting from post Level II or III or equivalent treatment will be considered as Non-Compliance.

6.1.5. Objective Medical Findings and Disability Ratings. Physical examination findings, laboratory tests, radiographs and other findings are not, in themselves, ratable. A rating for a disability must be based on demonstrable impairment of function unless otherwise provided in this regulation.

6.1.6. Elective Surgery or Treatment. Prior to any elective treatment by the Military Health Services System (MHSS), a Service member must consult with a competent military medical authority. A Service member who elects to have such treatment done at his or her own expense will not be eligible for compensation under the provisions of this Instruction for any adverse residuals resulting from the elected treatment, unless it can be shown that such election was reasonable or resulted from a significant impairment of judgment that is the product of a ratable medical condition. A record of the counseling will be made by the Health Benefits Advisor or other designated individual to document that the member was counseled about the elective treatment and his or her subsequent ineligibility for disability compensation for any adverse residuals incurred secondary to the elective treatment.

6.1.7. Disabilities Not Unfitting for Military Service. Conditions that do not themselves render a Service member unfit for military service will not be considered for determining the compensable disability rating unless they contribute to the finding of unfitness.

6.1.8. The Relative Contribution of Non-Compensable Medical Conditions (Condition(s) Not Considered Physical Disabilities) to Current Industrial Impairment

of Ratable Neuropsychiatric Conditions. Personality Disorder(s), Impulse Control Disorders, or Substance Use and/or Abuse Disorder(s) are examples of condition(s) not constituting a physical disability that often significantly contribute to, or may be the chief cause of, any industrial and industrially related social impairment suffered by the Service member who has a compensable Neuropsychiatric condition. Unfitting disability resulting therefrom will not be rated. In such instances, the overall rating of psychiatric impairment will be reduced to the impairment rating that would be warranted in the absence of the influence of the non-compensable condition according to generally accepted medical principles. It is imperative that the Medical Evaluation Board (MEB) quantify the contribution of each medical condition to the overall industrial impairment manifested by the Service member.

6.2. Higher of Two Evaluations. When the circumstances of a case are such that two percentage evaluations could be applied, the higher percentage will be assigned only if the Service member's disability more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. When, after careful consideration of all reasonably procurable and assembled data, there remains a reasonable doubt as to which rating should be applied, such doubt will be resolved in favor to the member.

6.3. Changes in Rating Criteria. Members on the TDRL shall be rated under the VASRD criteria in effect at the time of their final reevaluation.

6.4. Pyramiding. Pyramiding is the term used to describe the application of more than one rating to any area or system of the body when the total functional impairment of that area or system is adequately reflected under a single appropriate code. Disability from injuries to the muscles, nerves, and joints of the extremity may overlap to a great extent. Special rules for their valuation are included in appropriate sections of the VASRD and in enclosure 2 of this Instruction. Related diagnoses should be merged for rating purposes when the VASRD provides a single code covering all their manifestations. This prevents pyramiding and reduces the chance of over-rating. For example, disability from fracture of a tibia involving malunion, limitations of dorsiflexion, eversion, inversion, and subtalar motion, as well as traumatic arthritis of the ankle would be rated using one diagnostic code (5271) that reflects overall ankle function, rather than by adding separate ratings for the limitations of motion and the traumatic arthritis.

6.5. Total Disability Rating. Total disability will be considered to exist when the member's impairment is sufficient to render it impossible for the average person suffering the same medical condition to engage in a substantially gainful civilian

occupation. Accordingly, in cases in which the VASRD does not provide a 100 percent rating under the appropriate (or analogous) code, a member may be assigned a disability rating of 100 percent if the member's impairment is sufficient to render it impossible to engage a substantially gainful occupation.

6.6. Extra-Schedule Ratings in Exceptional Cases. The requirement to use the VASRD in rating disabilities does not prevent the Secretary of the Military Department concerned from assigning ratings in unusual cases not covered by the VASRD. In such cases, extra-schedule ratings commensurate with the average earning capacity impairment due exclusively to Service-connected disability may be assigned. Such cases must be rated in accordance with procedures established by the Secretary of the Military Department concerned. The basis of the conclusion that the case presents such an exceptional or unusual disability picture that the regular VASRD standards do not apply must be documented.

6.7. Convalescent Ratings. Under certain diagnostic codes, the VASRD provides for a convalescent rating to be awarded for specified periods of time without regard to the actual degree of impairment of function. SUCH RATINGS DO NOT APPLY TO THE MILITARY DEPARTMENTS. Convalescence will ordinarily have been completed by the time optimum hospital improvement (for disposition purposes) has been attained. If not, rate according to the manifest impairment.

6.8. Observation Ratings. The VASRD, in cases of malignancy, has ratings applicable for a one to two year period of observation. Following this period of observation residuals will be rated. Observation ratings do apply to the Military Departments.

6.9. Analogous Ratings. When an unlisted condition is encountered, it is permissible to rate it by analogy to a closely related disease or injury. The unlisted and analogous conditions should reflect adverse impact upon reasonably similar functions, anatomical structures, or be symptomatically similar. Conjectural analogies, analogous ratings for conditions of doubtful diagnosis, and diagnoses not fully supported by clinical/laboratory findings are not acceptable. Organic diseases or injuries will not be rated by analogy to disorders of psychiatric origin (VASRD codes 9000 - 9511), except when directed by law (e.g., Gulf War cases). (See the Analogous Rating Table, enclosure 3).

6.10. Zero Percent Ratings and Minimum Ratings

6.10.1. Occasionally, a medical condition that causes or contributes to

unfitness for military service is of such mild degree that it does not meet the criteria for even the lowest rating provided in the VASRD under the applicable code. A zero percent rating may be applied in such cases even though the lowest rating listed is 10 percent or more, except when "minimum ratings" are specified. The "Bilateral Factor" (see paragraph 6.13.) will be applied when a disability is present in two paired extremities, even though one extremity is rated at zero percent.

6.10.2. In some instances, the VASRD provides a "minimum rating," without qualifications as to residuals or impairment. Diagnosis alone is sufficient to justify the minimum rating. Syringomyelia, code 8024, is an example. Although higher ratings may be awarded in consonance with degree of severity, no rating lower than the "minimum" may be used if the diagnosis is satisfactorily established.

6.10.3. The VASRD provides a minimum rating for "residuals" in certain medical conditions. A given Instruction may state, "rate residuals, minimum _______ percent," or may specify what impairment to rate and give a minimum rating for that impairment. Examples are code 8011, anterior poliomyelitis, and 6015, benign new growth of eyeball and adnexa, other than superficial. To justify the minimum rating for residuals, a functional impairment or other residual caused by the condition must exist. Otherwise, a zero percent is appropriate if the primary condition is unfitting.

6.11. Rating of Medical Impairments Existing Prior To Service

6.11.1. Permanent Service Aggravation. A medical condition manifesting itself prior to entry into military service will be considered "permanently service aggravated" when military service lastingly worsens that medical condition beyond its natural progression. Generally accepted medical principles will be used to determine "natural progression".

6.11.2. No Permanent Aggravation. For service members for whom no permanent service aggravation has occurred, no rating will be listed. However, the rationale will state the basis for the determination that the unfitting condition existed prior to service (EPTS) and was not permanently aggravated by service. When the condition is considered unfitting due to natural progression without permanent service aggravation, the accepted medical principle that supports the finding of "natural progression" will be addressed in all cases for which a rationale for the findings is published.

6.11.3. Aggravation and Present Degree of Disability Less than 100

percent. In cases involving service members with permanent service aggravation and a current degree of impairment less than total, the rating will reflect only the degree of disability over and above that existing at the time of entrance into active service. This requirement applies whether the particular condition was noted at the time of entrance into active service or is later determined, upon the evidence of record, to have existed at that time. It is necessary, therefore, to deduct from the present degree of disability the degree of disability, if ascertainable, that existed prior to entrance into active service. In assessing EPTS disability, the full EPTS clinical course of the impairing medical condition will be taken into consideration. Such deduction should be in terms of the rating schedule for the given condition. The deduction will be recorded on the rating sheet. If the degree of disability at the time of entrance into the Military Service is not ascertainable in terms of the schedule, no deduction will be made. The rating sheet will reflect that the EPTS factor is indeterminable, and a zero percent deduction will be made.

6.11.4. Aggravation and Present Degree of Disability 100 percent. When permanent service aggravation has occurred and the current degree of disability is 100 percent, the rating sheet will reflect the EPTS factor, but no deduction will be made.

6.11.5. Congenital and Hereditary Conditions. Congenital and hereditary conditions that do not manifest symptomatology until after a member enters active duty under orders specifying a period of more than 30 days shall not be considered Service-incurred. These conditions will be presumed service aggravated unless a preponderance of evidence based on accepted medical principles clearly establishes that the condition is solely the time result of the natural progression of the congenital or hereditary condition.

6.11.6. Paired Organs Involving EPTS and Service Aggravation. No deduction for EPTS factor will be made when the member is unfit for any of the following situations involving paired organs. However, the rating sheet will reflect the EPTS factor, and that the EPTS deduction is zero (0) percent.

6.11.6.1. Blindness in one eye as a result of Service-connected disability and blindness in the other eye as a result of non-service connected disability.

6.11.6.2. Loss or loss of use of one kidney as a result of Service-connected disability and involvement of the other kidney as a result of non-service connected disability.

6.11.6.3. Total deafness in one ear as result of Service-connected disability and total deafness in the other ear as a result of non-service connected disability.

6.11.6.4. Permanent Service-connected disability of one lung, rated 50 percent or more disabling, in combination with a non-service connected disability of the other lung.

6.12. Combined Ratings Table. When a member has more than one compensable disability, the percentages are combined rather than added (except when the VASRD modified by enclosure 2 indicates otherwise). The combined rating is based on the "whole person concept". A person without a medical impairment is considered 100% fit. An unfitting ratable medical impairment renders an individual less that 100% fit. A revised fitness level results. Subsequent impairments are calculated as a percentage basis of the new fitness level that is always less than 100%. Thus, a person having a 60 percent disability is considered to have a remaining efficiency or fitness of 40 percent. If there is a second disability rated at 20 percent, then the person is considered to have lost 20 percent of that remaining 40 percent, (20% x 40% = 8%). Hence, a 60 percent disability combined with a 20 percent disability results in a combined rating of 68 percent, and a 70% rating in the VASRD. The combined rating for any combination of disabilities is always determined by first arranging the disabilities in their exact order of severity and then referring to the Combined Ratings Table in the VASRD in accordance with the following Instructions:

6.12.1. Combining Two Percentages. The higher impairment percentage is located in the left-hand column. The combined percentage is found where the row indicating the percentage of the first (higher) impairment intersects with the column headed by the percentage of the second impairment.

6.12.2. Combining Three or More Percentages. The first two percentages are combined as indicated in subparagraph 6.12.1., above. The result is a new impairment percentage that can be combined with a third percentage following the same procedure as in subparagraph 6.12.1., above. (Example: 50 combined with 30 equals 65. 65 combined with 20 equals 72). If there are additional percentages, the procedure is repeated using the new combined value and the next percentage. Rounding off is not done until the final value has been calculated and converted as described below in paragraph 6.12.3.

6.12.3. <u>Converting a Combined Rating</u>. After all percentages have been combined, the resulting combined value is converted to the nearest number divisible by 10. Combined values ending in 5 are adjusted upward. If the combined value includes a decimal fraction of 0.5 or more as a result of applying the bilateral factor (see paragraph 6.13.), the fraction is converted to the next higher whole number; otherwise the decimal fraction is disregarded. (Example: If the combined value is 64.5, the fraction is rounded to a combined value of 65, which is adjusted upward to 70. If the combined value is 64.4, the decimal fraction is disregarded and the combined value of 64 is rounded off to 60.)

6.13. <u>Bilateral Factor</u>. When a partial disability results from injury or disease of both arms, or both legs, or of paired skeletal muscles, the ratings for the disabilities of the right and left paired sides are first combined in the standard manner. Ten (10) percent of the result (called the Bilateral Factor) will be added to the first combined rating before proceeding with further combinations, or converting to degree of disability. The Bilateral Factor is applied to the bilateral disability combination before final combinations with unpaired disabilities are carried out. The rating for a "Bilateral" disability (combined rating plus the Bilateral Factor) is to be treated as one disability rating when arranging multiple impairments in order of severity prior to calculating further combinations. For example, with disabilities evaluated at 60 percent, 20 percent, 10 percent and 10 percent (the two 10s representing bilateral disabilities), the order of severity would be 60, 21 and 20. The 60 and 21 combine to 68 percent and the 68 and 20 to 74 percent, converted to 70 percent as the final degree of disability. (See paragraph 6.13.2., below, when there is more than one paired disability.)

6.13.1. The terms "arms" and "legs" refer to the whole upper and lower extremities respectively. Thus, when there is a compensable disability of the right thigh (for example, amputation), and of the left foot (for example, amputation of the great toe), the Bilateral Factor applies. Similarly, the Factor is applied whenever there are compensable disabilities affecting use of paired extremities regardless of location or specified type of impairment, except as noted in paragraph 6.13.3., below.

6.13.2. The correct procedure when applying the Bilateral Factor to disabilities affecting both upper extremities and both lower extremities is to combine the ratings of the disabilities affecting the four extremities in order of their individual severity and apply the Bilateral Factor by adding 10 percent to the total combined value thus attained.

6.13.3. The Bilateral Factor is not applicable unless there is an unfitting disability in each of two paired extremities or paired skeletal muscles. Special instructions regarding the applicability of the Bilateral Factor are provided in various parts of the VASRD. For example, codes 7114 - 7117 and codes 8205 - 8412. The Bilateral Factor is not applicable in skin disabilities rated under code 7806.

6.14. Use of VASRD Codes. The VASRD code number appearing opposite a listed disability indicates the basis of the assigned valuation. Code numbers are also used for statistical analysis upon which policy decisions may be made. Great care must be exercised in the selection of the applicable code and in its citation on the rating sheet.

6.14.1. Each rated disability is assigned a single code number unless a hyphenated code is expressly authorized. It is not proper to use additional codes as a means of further describing defects except as authorized by the VASRD (e.g., in Gulf War cases). The written diagnosis entered on the rating sheet should include any description considered necessary to indicate the extent, severity or etiology of the coded condition.

6.14.2. Injuries are generally assigned codes that reflect the residual condition on which the rating is based.

6.14.3. Diseases are generally coded directly by the number assigned to the disease itself. If the rating is determined on the basis of residual conditions, the number appropriate to the residual condition will be added, preceded by a hyphen. Thus, atrophic (rheumatoid) arthritis rated as ankylosis of the lumbar spine would be "5002-5289". The percentage rating in such cases is reflected in the second number ("5289" in the example). In this way, the basis of each rating can be easily identified.

6.14.4. Hyphenated codes are used only:

6.14.4.1. When the VASRD provides that a listed condition is to be rated as some other code; e.g., myocardial infarction rated as arteriosclerotic heart disease (7005-7006) or nephrolithiasis rated as hydronephrosis (7508-7509).

6.14.4.2. When the VASRD provides for a "minimum rating" and the disability is being rated on residuals; e.g., multiple sclerosis rated as incomplete paralysis of all unilateral upper extremity radicular groups (8018-8513) in which case the minimal rating will be 30%.

6.14.4.3. When an unlisted condition is rated by analogy, e.g., spondylolisthesis rated as sacroiliac injury and weakness (5299-5294). If an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the diagnostic code number will be "built-up" as follows: The first two digits will be selected from that part of the schedule most closely identifying the part, or system, of the body involved; the second two digits will be "99". The resulting four-digit number will be connected by hyphen to the code for the analogous condition. This procedure facilitates monitoring of new and unlisted conditions. (See Table of Analogous Ratings, enclosure 3.)

6.14.4.4. The DVA has prepared special analogous ratings for "undiagnosed symptom complexes" associated with Gulf War service. (See Appendix of the Table of Analogous Ratings.)

6.14.5. In the narrative citation of disabilities on rating sheets, the diagnostic terminology may be any combination of the medical examiner's or VASRD terminology which accurately reflects the degree of disability. Residuals of diseases or therapeutic procedures will not be cited without reference to the basic disease.

6.15. <u>Rating principles for specific disabilities</u>. Enclosure 2 provides instructions and explanatory notes for rating certain disabilities. This guidance will be followed unless a subsequent change to the VASRD makes the guidance obsolete.

7. <u>EFFECTIVE DATE</u>

This Instruction is effective immediately.

Edwin Dorn
Under Secretary of Defense for
Personnel and Readiness

Enclosures - 3
1. Definitions
2. Special Instructions and Explanatory Notes
3. Table of Analogous Codes

# E1. ENCLOSURE 1

## DEFINITIONS

E1.1.1. Accepted Medical Principles. Fundamental deductions, consistent with medical facts that are so reasonable and logical as to create a virtual certainty that they are correct.

E1.1.2. Accession Standards. Physical standards or guidelines that establish the minimum medical conditions and physical defects acceptable for an individual to be considered eligible for appointment, enlistment or induction into the military Services (DoD Directive 6130.3, reference (e)).

E1.1.3. Active Duty. Full-time duty in the active Military Service of the United States. It includes:

E1.1.3.1. Full-time National Guard Duty.

E1.1.3.2. Annual training.

E1.1.3.3. Attendance while in active Military Service at a school designated as a Service school by law or by the Secretary of the Military Department concerned.

E1.1.3.4. Service by a member of a Reserve component ordered to active duty (with or without his or her consent), or active duty for training (with his or her consent), with or without pay under competent orders.

E1.1.4. Active Duty for a Period of More than 30 Days. Active duty or full-time National Guard Duty under a call or order that does not specify a period of 30 days or less.

E1.1.5. Active Reserve Status. Status of all Reserves who are not on an active-duty list maintained under section 574 or 620 of 10 U.S.C. (reference (b)), except those in the inactive National Guard or on an inactive status list or in the Retired Reserve. Reservists in an active status may train with or without pay, earn retirement points, and may earn credit for and be considered for promotion. In accordance with the Reserve Officer Personnel Management Act (ROPMA), a member in an Active Reserve status must be on the Reserve Active Status List (RASL) (10 U.S.C. 14002, reference (b)).

E1.1.6. Active Service. Service on active duty or full-time National Guard duty.

E1.1.7. Compensable Disability. A medical condition determined to be unfitting by reason of physical disability and which meets the statutory criteria under Chapter 61 of reference (b) for entitlement to disability retired or severance pay.

E1.1.8. Competency Board. A board consisting of at least three medical officers or physicians (including one psychiatrist) convened to determine whether a member is competent (capable of making a rational decision regarding his or her personal and financial affairs).

E1.1.9. Death. A determination of death must be made in accordance with accepted medical standards and the laws of the State where the member is located or the military medical standards in effect at an overseas location.

E1.1.10. Deployability. A determination that the member is free of a medical condition(s) that prevents positioning the member individually or as part of a unit, with or without prior notification to a location outside the Continental United States for an unspecified period of time.

E1.1.11. Duty Related Impairments. Impairments which, in the case of a member on active duty for 30 days or less, are the proximate result of, or were incurred in line of duty after September 23, 1996, as a result of:

E1.1.11.1. performing active duty or inactive duty training;

E1.1.11.2. traveling directly to or from the place at which such duty is performed; or

E1.1.11.3. after September 23, 1996, an injury, illness, or disease incurred or aggravated while remaining overnight, between successive periods for purposes of IDT, at or in the vicinity of the site of the IDT, if the site is outside reasonable commuting distance of the member's residence.

E1.1.12. Extended Active Duty. Active duty under orders specifying a period of more than 30 days.

E1.1.13. Final Reviewing Authority. The final approving authority for the findings and recommendations of the PEB.

E1.1.14. Full and Fair Hearing. A hearing held by a board, before which the Service member has the right to make a personal appearance with the assistance of counsel and to present evidence in his or her behalf.

E1.1.15. Impairment of Function. Any disease or residual of an injury that results in a lessening or weakening of the capacity of the body or its parts to perform normally, according to accepted medical principles.

E1.1.16. Inactive Duty Training (IDT). Duty prescribed for Reservists, other than active duty or full-time National Guard Duty, under 37 U.S.C. 206 (reference (f)) or other provision of law. It does not include work or study in connection with a correspondence course of a Uniformed Service.

E1.1.17. Instrumentality of War. A vehicle, vessel, or device designed primarily for Military Service and intended for use in such Service at the time of the occurrence of the injury. It may also be a vehicle, vessel, or device not designed primarily for Military Service if use of or occurrence involving such a vehicle, vessel, or device subjects the individual to a hazard peculiar to Military Service. This use or occurrence differs from the use or occurrence under similar circumstances in civilian pursuits. There must be a direct causal relationship between the use of the instrumentality of war and the disability, and the disability must be incurred incident to a hazard or risk of the service.

E1.1.18. Line of Duty Investigation. An inquiry used to determine whether an injury or disease of a member performing military duty was incurred in a duty status; if not in a duty status, whether it was aggravated by military duty; and whether incurrence or aggravation was due to the member's intentional misconduct or willful negligence.

E1.1.19. Natural Progression. The worsening of a pre-Service impairment that would have occurred within the same timeframe regardless of Military Service.

E1.1.20. Nonduty Related Impairments. Impairments of members of the Reserve components that were neither incurred nor aggravated while the member was performing duty, to include no incident of manifestation while performing duty which raises the question of aggravation. Members with nonduty related impairments are eligible to be referred to the PEB for solely a fitness determination but not a determination of eligibility for disability benefits.

E1.1.21. Office, Grade, Rank, or Rating

E1.1.21.1. Office. A position of duty, trust, authority to which an individual is appointed.

E1.1.21.2. Grade. A step or degree in a graduated scale of office or military rank that is established and designated as a grade by law or regulation.

E1.1.21.3. Rank. The order of precedence among members of the Armed Forces.

E1.1.21.4. Rating. The name (such as "Boatswain's Mate") prescribed for members of an Armed Force in an occupational field.

E1.1.22. Optimum Hospital and Medical Treatment Benefits. The point of hospitalization or treatment when a member's progress appears to be stabilized; or when, following administration of essential initial medical treatment, the patient's medical prognosis for being capable of performing further duty can be determined.

E1.1.23. Performing Military Duty of 30 days or less. A term used to inclusively cover the categories of duty pertaining to 10 U.S.C. 1204 - 1206 (reference (b)) (active duty, IDT, and travel directly to and from active duty or IDT).

E1.1.24. Permanent Limited Duty. The continuation on active duty or in the Ready Reserve in a limited duty capacity of a Service member determined unfit as a result of physical disability evaluation or medical disqualification.

E1.1.25. Physical Disability. Any impairment due to disease or injury, regardless of degree, that reduces or prevents an individual's actual or presumed ability to engage in gainful employment or normal activity. The term "physical disability" includes mental disease, but not such inherent defects as behavioral disorders, adjustment disorders personality disorders, and primary mental deficiencies.

E1.1.26. Preponderance of Evidence. That evidence that tends to prove one side of a disputed fact by outweighing the evidence on the other side (that is, more than 50 percent). Preponderance does not necessarily mean a greater number of witnesses or a greater mass of evidence; rather, preponderance means a superiority of evidence on one side or the other of a disputed fact. It is a term that refers to the quality, rather than the quantity of the evidence.

E1.1.27. Presumption. An inference of the truth of a proposition or fact, reached through a process of reasoning and based on the existence of other facts.

Matters that are presumed need no proof to support them, but may be rebutted by evidence to the contrary.

E1.1.28. Presumption Period. The designated time frame that requires application of the Presumption of Fitness Rule to a member's physical disability evaluation.

E1.1.29. Proximate Result. A disability the result of, arising from, or connected with active duty, annual training, active duty for training, or inactive duty training (IDT), (etc.) to include travel to and from such duty or remaining overnight between successive periods of inactive duty training. Proximate result is a statutory criteria for entitlement to disability compensation under Chapter 61 of 10 U.S.C. (reference (b)) applicable to Reserve component members who incur or aggravate a disability while performing an ordered period of military duty of 30 days or less.

E1.1.30. Ready Reserve. Units and individual reservists liable for active duty as outlined in Sections 12301 (Full Mobilization) and 12302 (Partial Mobilization) of reference (b). This includes members of units, members of the Active Guard Reserve Program, Individual Mobilization Augmentees, Individual Ready Reserve, and the Inactive National Guard.

E1.1.31. Retention Standards. Physical standards or guidelines which establish those medical conditions or physical defects that may render a Service member unfit for further Military Service and are therefore cause for referral of the member into the DES.

E1.1.32. Service Aggravation. The permanent worsening of a pre-Service medical condition over and above the natural progression of the condition caused by trauma or the nature of Military Service.

## E2. ENCLOSURE 2

## SPECIAL INSTRUCTIONS AND EXPLANATORY NOTES

### E2.1. GENERAL

E2.1.1. This enclosure is a supplement to the VASRD that contains principles for rating disabilities where additional guidance or clarification is needed for processing active duty and Reserve military disability cases. Portions requiring special comment, or that have been the cause of misunderstanding in the past, are included. Comments and rating instructions also supplement the VASRD in those instances in which recent medical advances are inadequately covered. Supplements to the VASRD published by the DVA following the effective date of this Instruction shall take precedence unless the changes included in the supplement are identified by the Assistant Secretary of Defense for Health Affairs through a published interim change to this Instruction to be inappropriate to military requirements.

E2.1.2. In adjudicating cases, the VASRD is the starting point and initial guidance for an impairment rating. Because this enclosure modifies selected VASRD ratings, it is the final reference for impairment adjudications.

E2.1.3. Unless otherwise directed, separate disability ratings are combined rather than mathematically summed.

### E2.2. NEW GROWTHS, MALIGNANT

E2.2.1. The policies contained in this paragraph apply to malignant new growths except as modified by notes for specific tumors. Special consideration must be given to determination of fitness or unfitness, since many Service members are not disabled by these diseases, their treatment, or the outcome.

E2.2.2. A Service member with a diagnosed malignant tumor that has metastasized, and has not FAVORABLY responded to therapy, if unfit, SHALL be permanently retired, at 100 percent if such rating is not expected to change within the next 5 years. In such cases, metastasis may be defined as distant spread of the tumor or as local invasion that renders treatment non-curative.

E2.2.3. A Service member with a diagnosed malignant tumor that has not metastasized and has responded favorably to therapy to the extent that no current