# TAB

# D4

evidence of the disease exists, NEED NOT BE FOUND UNFIT. A Service member who is functionally unfit because of residual conditions secondary to treatment of a malignancy (e.g., chemotherapy, radiation therapy, and surgery) may be rated using the Alphabetical Listing of Analogous Ratings (enclosure 3). The code for the relevant malignancy should be listed first, followed by the analogous code(s). For example, the code for leukemia in remission associated with fatigue secondary to chemotherapy would be "7703-6399-6354". Residuals shall be rated according to the applicable VASRD code and not necessarily according to the code for malignancy. The minimal rating for the malignancy does not apply.

E2.2.4. A Service member who is undergoing chemotherapy that constitutes the whole or part of definitive treatment may be retained on active duty, placed on TDRL, or permanently retired or separated, as indicated by individual circumstances.

E2.2.5. When chemotherapy is used as an adjunctive treatment and no evidence of an unfitting residual malignant tumor exists, the use of chemotherapy will not necessarily influence the disposition of the case unless adverse effects of the chemotherapy have ensued.

E2.2.6. Malignancies, including the leukemias, that require bone marrow transplantation usually result in a Service member being unfit and placed on the Temporary Disability Retired List (TDRL) to be reevaluated at 18 months, or sooner if required. A disability rating awarded after a TDRL interim evaluation shall be based on residual conditions. If recurrent tumor is found, permanent retirement at the appropriate disability rating disability is indicated.

E2.3. <u>ORGAN TRANSPLANTS</u>

E2.3.1. Joint prosthetic transplants are discussed under codes 5051 through 5056.

E2.3.2. Vascular system prosthetics are addressed under the 7000 code.

E2.3.3. Service members requiring transplant will ordinarily be unfit due to organ failure. The Service member should be placed on the TDRL. In those cases in which a definite date has been set for transplantation, disposition shall be postponed and residuals rated after the transplantation.

E2.3.4. Those cases that have not come before the PEB before transplantation shall be rated based on the following factors:

E2.3.4.1. The functional status of the transplanted organ.

E2.3.4.2. The need for sustained immunosuppression or its adverse effects. Adverse effects may be rated on the basis of specific infections or by analogy (see enclosure 3: Table of Analogous Ratings).

E2.4. <u>ANTICOAGULANT PROPHYLAXIS OR TREATMENT</u>

E2.4.1. The long-term use of anticoagulants will not be the cause to increase the rating of a given medical impairment.

E2.4.2. Complications arising from the use of anticoagulants should be given separate ratings.

E2.4.3. Hypercoagulable states requiring chronic use of anticoagulants shall be rated either at:

E2.4.3.1. Zero percent if there has been no thrombophlebitis or embolus in the past year; or,

E2.4.3.2. At least 10 percent if there has been thrombophelebitis or embolus in the past year.

E2.4.3.3. A rating greater that ten percent shall be based on unfitting residuals due to thrombophlebitis or embolus.

E2.5. <u>HUMAN IMMUNODEFICIENCY VIRUS INFECTION (HIV) AND/OR ACQUIRED IMMUNE DEFICIENCY SYNDROME (AIDS)</u>

Members found unfit for HIV and/or AIDS will be rated according to the 6351 code and the rating scheme in the VASRD. The minimum rating of 30 percent, which existed prior to the establishment of the VASRD Code 6351, is no longer in effect.

E2.6. <u>GULF WAR CASES</u>

E2.6.1. Military personnel who served in the Southwest Asia theater of operations (from August 2, 1990, through a date to be determined) and who are unfit for a diagnosis of "undiagnosed illness" shall be rated in accordance with the

VASRD rating guidance for "undiagnosed illnesses."

E2.6.2. A two-part hyphenated code is used to describe the unfitting condition. The FIRST PART is composed of a prefix of "88" combined with the first two numbers of the body system to which the unfitting symptoms most closely relate. The SECOND PART of the code is the medical condition, in the code series indicated by the second two numbers of the first part of the code, that most closely resembles the Service member's circumstances. For example, the first part of the code to describe a case in which the predominant symptom is fatigue could be 8863. The second part is the medical condition in the 6300 series that most closely resembles that of the Service member. In that example, the code "6354" is used. Thus, the case is rated by analogy to "Chronic Fatigue Syndrome". The resulting code is "8863-6354".

E2.6.3. Two requirements must be met to justify using the coding system described in paragraph E2.6.2., above.

E2.6.3.1. The Service member is suffering a symptom complex that is not reasonably definable using currently acceptable diagnostic nomenclature (an "undiagnosed symptom complex"); and,

E2.6.3.2. The Service member is unfit because of the "undiagnosed symptom complex."

E2.7. <u>NECROTIZING FASCIITIS</u>

E2.7.1. Those cases in which the condition has a systemic effect should be rated according to the Alphabetical Listing of Analogous Ratings (enclosure 3).

E2.7.2. If the systemic component has overwhelmed the Service member's endogenous immune system, the disability should be rated at 100 percent and the Service member placed on the TDRL. Ratings at final disposition shall be based on residuals.

Service members with cardiac, vascular or neurosurgical conditions that require indwelling foreign bodies (e.g., pacemakers, defibrillators, venous umbrellas, and venrticulo-peritoneal shunts) who are unfit should be rated at a minimum of 30%.

E2.8. <u>FIBROMYALGIA</u>

E2.8.1. This condition must be evaluated by a rheumatologist and meet the requirements of paragraph E2.A1.1.5.2., below.

E2.8.2. The diagnostic criteria put forth by the American College of Rheumatology must be met.

As medicine advances, new diagnoses will emerge. Those diagnoses generally accepted by the medical profession (or by a respectable minority of the profession) shall be rated by analogy until the diagnoses become incorporated in the VASRD.

Attachments - 1
1. Instructions for Specific VASRD Codes

## E2.A1. ATTACHMENT 1 TO ENCLOSURE 2

## INSTRUCTIONS FOR SPECIFIC VASRD CODES

E2.A1.1. 5000 Series

E2.A1.1.1. 5000. Osteomyelitis

E2.A1.1.1.1. Saucerization or sequestrectomy does not necessarily equate with stabilization or cure.

E2.A1.1.1.2. Osteomyelitis extending into a major joint is rated in accordance with the amputation rule.

E2.A1.1.2. 5002. Rheumatoid Arthritis

E2.A1.1.2.1. Active process: The rating is based on clinical and laboratory features and coded under 5002.

E2.A1.1.2.2. Chronic residuals are rated under appropriate limitation of motion codes (5200 series). Chronic residuals shall be based on clinical features plus radiographic evidence.

E2.A1.1.2.3. The bilateral factor is applied when appropriate.

E2.A1.1.2.4. Ratings for active disease process (5002) should not be combined with ratings for residuals (5200 series).

E2.A1.1.2.5. Pulmonary involvement is rated separately under 6802.

E2.A1.1.2.6. Enteropathies are rated separately under the 7300 series.

E2.A1.1.3. 5003. Arthritis, Degenerative, Hypertrophic, and Pain Conditions Rated by Analogy to Degenerative Arthritis

E2.A1.1.3.1. Each major joint (or grouping of minor joints) with objective limitation of motion plus radiographic evidence is rated at 10 percent. (The bilateral factor applies.)

E2.A1.1.3.2. Radiographic evidence of two or more major joints or groups of minor joints, when accompanied by occasional exacerbations of incapacitating symptoms, is given a total rating of 20 percent. Radiographic evidence alone

without symptoms is rated at 10 percent. (No Bilateral Factor applies.)

E2.A1.1.3.3. Limitation of motion of affected joints may warrant rating under 5200 series or 9905. (Bilateral Factor applies.)

E2.A1.1.3.4. In cases in which there is a limitation of motion not of sufficient degree to rate under the 5200 series or 9905, the rating shall be done under 5003.

E2.A1.1.3.5. For rating purposes, combinations of interphalangeal, metacarpal-phalangeal, and metatarsal-phalangeal joints are groups of minor joints equivalent to a major joint.

E2.A1.1.3.6. 5285-5295. The spine: Each segment of the spine (cervical, dorsal, and lumbar) segments is regarded as a group of minor joints. Combination of sacroiliac and lumbosacral joints is regarded as a major joint. Each group of minor joints is ratable as one major joint only when separate ratings are justified by Radiographic evidence of pathology besides limitation of motion or other evidence of painful motion of the individual segments involved.

E2.A1.1.4. 5004-5009-5017-5024. Arthritis, Miscellaneous. 5004-5009-5017 are rated according to Code 5003. The remainder, including all of the septic, infectious, or other arthritides, are rated on the basis of associated constitutional symptoms according to VASRD codes 5002. Reiters syndrome, spondylitis, transplantation antigen-related arthritis, or arthritis secondary to bowel disease are examples.

E2.A1.1.5. 5025. Fibromyalgia

E2.A1.1.5.1. Fibromyalgia (also called fibrositis, myofascial pain syndrome, or primary fibromyalgia syndrome), is a syndrome of chronic, and widespread musculoskeletal pain associated with multiple tender or "trigger" points, and is often accompanied by multiple somatic complaints. It is a condition for which diagnostic criteria were formally established in 1990.

E2.A1.1.5.2. Diagnostic criteria include the following:

E2.A1.1.5.2.1. A history of widespread pain that has been present for at least 3 months. There must be both axial skeletal pain and peripheral pain.

E2.A1.1.5.2.2. The presence of pain on digital palpation at 11 of 18

tender point sites.

E2.A1.1.5.2.3. The presence of a second clinical disorder does not exclude the diagnosis.

E2.A1.1.5.2.4. That diagnosis should have been made by or with the consultation of a rheumatologist.

E2.A1.1.6. <u>5051-5056. Prosthetic Implants</u>

E2.A1.1.6.1. Those do not necessarily render a Service member unfit.

E2.A1.1.6.2. If a Service member is considered to be unfit at the time of a Physical Evaluation Board, placement on TDRL should be considered.

E2.A1.1.6.3. If the Service member is still found to be unfit at TDRL reevaluation, a permanent rating should be considered based on residual impairment. In such cases the amputation rule applies, but convalescent ratings do not apply.

E2.A1.1.7. <u>5126-5151. Multiple Finger Disabilities</u>. A convenient method of computation has made the difficulty often encountered in rating multiple finger disabilities simpler. An "average amputation level" for fingers involved may be calculated by assigning graded values for each finger according to the level at which it was amputated (See Table 1 and Plate III). Graded values may also be assigned for the severity of a finger's ankylosis. The disability may then be rated according to the notes of instruction in the VASRD. The method is as follows:

E2.A1.1.7.1. <u>Step One</u>. The appropriate grade value for each of the individual finger defects is selected by referring to figure 1 and by matching the appropriate description in column A of table 1 with the corresponding value in column C. These values are ADDED together (totaled).

E2.A1.1.7.2. <u>Step Two</u>. The average grade value is found by dividing the totaled values for the individual fingers by the number of fingers involved. Fractions are rounded to the nearest whole number.

E2.A1.1.7.3. <u>Step Three</u>. The category of defects (favorable ankylosis, unfavorable ankylosis, and amputation) applicable to the multiple finger disabilities taken as a whole is found in column B by matching with the previously calculated average grade value in column C.

E2.A1.1.7.4. Step Four. The correct disability percentage rating is arrived at by referring to the VASRD code that addresses the category of defects found in step three and calculating for the number of fingers involved.

E2.A1.1.7.5. Example: An evaluee has had the following amputations: thumb amputated through the middle phalanx; index and little fingers through the middle phalanges; and the entire ring finger, including more than one-half of the metacarpal.

| | |
|---|---|
| Grade Value for the thumb | 2 |
| Grade Value for index finger | 2 |
| Grade Value for little finger | 2 |
| Grade Value for ring and metacarpal | 4 |
| Total Value | 10 |

Total value/Number of fingers involved = ratable value 10/4 = 2 1/2 = 3

Referring to table 1, grade 3 is ratable as amputation. Amputation of four fingers (thumb, index, ring, and little) is ratable under VA code 5127 at 70 percent for major hand, or 60 percent for minor hand.

E2.A1.1.7.6. For rating purposes, the thumb is regarded as having no distal phalanx. Amputation of the thumb at or distal to the interphalangeal joint shall be graded as unfavorable ankylosis (grade value 2).

E2.A1.1.8. 5171. Amputation of Great Toe. Must be through the proximal phalanx to warrant a 10 percent rating.

E2.A1.1.9. 5200-5295. Rating Involving Joint Motion

E2.A1.1.9.1. In measuring joint motion it is incumbent on the medical examiner to utilize the standardized description portrayed in figures 2 and 3.

E2.A1.1.9.2. When the reported limited range of motion falls between two points specified in the VASRD, the higher percentage of disability is applied.

E2.A1.1.9.3. Ankylosis is the absence of motion of a joint. For disability rating purposes, it is complete fixation, or a limitation of motion so severe in degree that the amount of movement is negligible.

E2.A1.1.9.4. Use of analogies such as "other impairment of" elbow or knee (code 5209 or 5257), is to be avoided when the actual impairment is a limitation of motion of the joint, properly ratable as limitation of flexion or extension of the part

distal to the joint.

E2.A1.1.9.5. In some cases of limitation, or of other abnormal joint motion, the basic cause is injury to muscle or tendon rather than to bone or joint. A careful distinction must be made for appropriate rating.

E2.A1.1.10. <u>5205-5208. Ankylosis or Limitation of Motion of Elbow and Forearm</u>

E2.A1.1.10.1. <u>5205</u>. When a rating for unfavorable ankylosis is not based on the additional finding of complete loss of supination or pronation, the rating may be combined with 5213, subject to the amputation rule. If less then complete loss of supination or pronation occurs, 5205 may be combined with 5213, but the percentage must not exceed the rating for unfavorable ankylosis under 5205.

E2.A1.1.10.2. <u>5206-5208</u>. These codes may be combined with 5213, but the percentage must not exceed the rate for unfavorable ankylosis under 5205. If residuals exceed the maximum rating allowable under 5205 or 5209, the rating for amputation below insertion of the deltoid (5122) may be used.

E2.A1.1.10.3. Codes 5209-5212 should not be combined with code 5213.

E2.A1.1.11. <u>5213. Impairment of Pronation and Supination</u>

E2.A1.1.11.1. The following terminology for describing measurements of pronation and supination must be used, when assessing impairment, to facilitate uniformity of disability ratings.

E2.A1.1.11.1.1. The STARTING POINT for all motions of pronation and supination shall be zero degrees (thumb on the upper side of the hand with the hand held perpendicular to a flat surface). Supination is that motion between the starting point and palm up position. Pronation is that motion from the starting point to palm down.

E2.A1.1.11.1.2. Full supination is 80 degrees of motion from the starting point. Full pronation is 80 degrees of motion from the starting point.

E2.A1.1.11.1.3. Position of function is 20 degrees pronation (AMA guide).

E2.A1.1.11.2. VASRD rating 5213.

E2.A1.1.11.2.1. The hand is fixed in full supination with the palm up.

E2.A1.1.11.2.2. Hyperpronation continues beyond the 80 degrees of full pronation with the thumb down.

E2.A1.1.11.2.3. The hand fixed in full pronation is fixed with palm down.

E2.A1.1.11.2.4. The VASRD term "middle of arc" is equivalent to zero degrees.

E2.A1.1.11.2.5. The VASRD term "beyond the last quarter of the arc" is equivalent to the inability to pronate beyond 40 degrees from the starting point.

E2.A1.1.11.3. Limitation of either pronation or supination may be rated. However, both should never be rated in the same arm. The higher rating applies.

E2.A1.1.12. <u>5214. Wrist, Ankylosis of</u>

E2.A1.1.12.1. Ankylosis of the wrist in 10 degrees to 30 degrees of dorsiflexion shall be considered favorable and rated accordingly.

E2.A1.1.12.2. Wrist replacement prostheses are rated according to functional impairment.

E2.A1.1.13. <u>5215-5253. Limitation of Extension and Flexion of the Thigh.</u> Ratings allowable under those codes may not accurately reflect the degree of disability in circumstances where limitation of motion may reflect a more serious underlying disability of the sacroiliac region, pelvis, acetabulum, or head of the femur. The variability of residuals following injuries to these structures necessitates rating specific residuals; e.g., faulty posture, limitation of motion, muscle injury, painful motion of the lumbar spine, mild to moderate sciatic neuritis, peripheral nerve injury, or limitation of hip motion. More suitable ratings may be selected from VA code 5250 (hip, ankylosis of), VA code 5255 (femur, impairment of, with hip disability), or VA code 5294 (sacroiliac injury).

E2.A1.1.14. <u>5255-5262. Defects of Long Bones of the Lower Extremity.</u> These codes (malunion with adjacent joint disability) should be applied when appropriate, to avoid multiple codes and ratings. When both a proximal and a distal major joint are affected, however, an additional rating may be indicated for the less

disabled joint. Those codes are often appropriate when joint surfaces are included in fracture lines.

E2.A1.1.15. 5257. Knee, Other Impairments

E2.A1.1.15.1. Patellectomy, chondromalacia, osteochondritis dissecans should be rated under 5003. Exceptions are cases in which objective findings warrant rating under code 5257.

E2.A1.1.15.2. Recurrent subluxation or external instability.

E2.A1.1.15.2.1. A rating of 30 percent for severe knee instability is awarded in those cases where a Lachman's test of ligament instability-to-stress test reveals a reading in excess of 3+ and where a knee brace, usually a derotation brace, is prescribed for a functional as opposed to a protective purpose. Specifically, a functional knee brace supplements or replaces the function of a major ligament or ligaments required for stability. Laxity in a effected knee must be compared to that of the unaffected knee to determine deviation caused exclusively by the medical condition.

E2.A1.1.15.2.2. A rating of 20 percent for moderate instability is awarded in those cases where the Lachman's test measures an instability reading of 2+ and physical therapy results in no improvement of the knee's lateral instability.

E2.A1.1.15.2.3. A rating of 10 percent for slight knee instability is appropriate in cases where the Lachman's test measures an instability reading between 1+ and 2+ and physical therapy does not improve the knee's lateral instability.

E2.A1.1.15.2.4. Knee joint replacement shall be rated according to code 5055.

E2.A1.1.16. 5285-5295. The Spine

E2.A1.1.16.1. Each segment of the spine (cervical, dorsal, and lumbar) segments is regarded as a group of minor joints. Combination of sacroiliac and lumbosacral joints is regarded as a major joint. Each group of minor joints is ratable as one major joint only when separate ratings are justified by radiographic evidence of pathology besides limitation of motion or other evidence of painful motion of the individual segments involved.

E2.A1.1.16.2. Arthritic impingement on nerve roots produces degeneration of the nerve function or frequent, prolonged attacks of neuralgia. These attacks are to be distinguished from brief episodes of radicular pain. The arthritic impingement should be rated as one entity under codes for neurologic conditions. The exception is a case in which limitation of spinal motion justifies an additional rating.

E2.A1.1.17. <u>5285. Residuals of Fracture of Vertebra</u>

E2.A1.1.17.1. The need for a Service member to wear some type of brace to restrict lumbar or dorsolumbar movement is not similar to the requirement for a jury mast type of neck brace for abnormal mobility after cervical fracture. When no cord involvement is evident, the disability should be rated according to the degree of limited motion with brace in place.

E2.A1.1.17.2. The 10 percent addition to the rating is made only for demonstrable, substantial deformity of a vertebral body (i.e., visible to the naked eye and greater than 50 percent compression on a X-ray). It should not be added in those instances of insignificant deformity such as slight shortening of the anterior vertical dimension of the vertebral body. When a successful spinal fusion has been performed because of the deformity, the degree of instability has usually been removed, or so far reduced that the addition of 10 percent is not justified. An extensive spinal fusion may result in a ratable limitation of motion.

E2.A1.1.18. <u>5286-5289. Ankylosis of a Spinal Segment</u>

E2.A1.1.18.1. A rating for ankylosis is given only when the range of motion of the whole spinal segment is absent or negligible. Ankylosis of a part of a segment may leave some degree of useful motion for the segment as a whole. In such cases the appropriate rating would be for limitation of motion.

E2.A1.1.18.2. The combination of separate ratings for ankylosis of a spinal segment shall not exceed 60 percent of the rating for complete ankylosis of the spine at a favorable angle.

E2.A1.1.19. <u>5293. Intervertebral Disc Syndrome</u>. The intervertebral disc syndrome involves a herniation of the nucleus pulposus with impingement on the nerve root resulting in irritation and a radicular distribution of pain.

E2.A1.1.19.1. In view of the fact that 40 percent - 50 percent of the population have herniated discs which are asymptomatic, finding a herniated disk on

MRI in a Service member with back pain does not necessarily imply the herniated disk is the primary cause of the pain.

E2.A1.1.19.2. Ratings of 40 percent - 60 percent will be predicated upon objective neurological findings supported by laboratory data, such as EMG, nerve conductive studies; flow and manometric studies for bowel and bladder involvement.

E2.A1.1.19.3. The weight attached to each finding shall vary according to the co-presence of other findings.

E2.A1.1.19.4. Surgical excision of a disc without evidence of recurrent disc herniation at the same level or a different level precludes the application of the 5293 code.

E2.A1.1.19.5. Residual cervical pain with radiculopathy, status post excision of a herniated disc should be rated for the pain (5003) or limitation of motion (5290) and for the radiculopathy under the appropriate 8500 series code.

E2.A1.1.19.6. Residual lumbar pain with radiculopathy should be rated as 5295 and the relevant code for neurological impairment.

E2.A1.1.20. 5295. Lumbosacral Strain

E2.A1.1.20.1. Zero percent rating shall be awarded for chronic low back pain of unknown etiology (mechanical low back pain).

E2.A1.1.20.2. Demonstrable pain on spinal motion associated with positive radiographic findings shall warrant a 10 percent rating. If paravertebral muscle spasms are also present, a 20 percent rating may be awarded. Such paravertebral muscle spasms, however, must be chronic and evident on repeated examinations.

E2.A1.1.21. 5296. The Skull

E2.A1.1.21.1. Areas of loss where bone regeneration has taken place are not ratable. If regeneration has partially closed the defect, only the remaining area of loss is to be rated.

E2.A1.1.21.2. Total bone loss from a single area of the skull is not ratable if the defect has been successfully repaired with a prosthetic plate. Residual neurological deficit or cosmetic deformity shall be rated separately if appropriate.

E2.A1.1.21.3. The following conversion measurements shall be used in applying VASRD ratings:

E2.A1.1.21.3.1. Defect of a diagnostic burr hole approximates one square centimeter.

E2.A1.1.21.3.2. A 25 cent piece (quarter) = 4.6 square centimeters.

E2.A1.1.21.3.3. A 50 cent piece (half dollar) = 7.35 square centimeter.

E2.A1.1.21.3.4. Diagnostic burr holes and other bony defects are ratable only when contiguous and when there is loss of both inner and outer tables of bone. The areas are added and the total is rated.

E2.A1.1.21.3.5. When there is total bone loss from multiple areas, such as in trephining, the rating should not be assigned based upon "coin measurement" but on the basis of the aggregate area of loss in terms of square centimeters.

E2.A1.1.21.3.6. Suboccipital skull defects shall not be rated.

E2.A1.1.22. <u>5297. Removal of Ribs</u>

E2.A1.1.22.1. For removal of ribs, the VASRD requires the complete removal from the vertebral angle to the costo-cartilaginous junction. Removals of a lesser degree are rated as rib resections.

E2.A1.1.22.2. The presence of certain conditions precludes the assignment of an additional rating under Code 5297; exceptions are allowed in specific situations. "Notes (1)" and "(2)" under this code in VASRD provide pertinent guidance.

E2.A1.1.23. <u>5003-5279. Stress Fractures</u>

E2.A1.1.23.1. Since the VASRD has no specific rating schedule for these conditions, rating shall be done, as follows:

E2.A1.1.23.1.1. If there is radiographic evidence of fracture of the femur or tibia, it should be rated as any other fracture. The Bilateral Factor would apply, if appropriate.

E2.A1.1.23.1.2. Fracture of the pubic rami confirmed by radiographic

findings should be rated under 5003. That is a membranous bone that can be expected to heal quickly. Muscle action of the large thigh adductors is the main aggravating force, not weight bearing.

E2.A1.1.23.1.3. Fracture of tibial and fibular malleoli are seldom displaced, may not require surgery, and except for offering some comfort, casts are not required. The most appropriate rating would be analogous to 5262, slight.

E2.A1.1.23.1.4. Stress fracture of the tarsals or metatarsals should be rated under 5279, metatarsalgia.

E2.A1.1.23.1.5. Tibial plateau and femoral condyle stress fractures are stable unicortical defects which should be rated as analogous to 5259 because of some impairment of knee function. The use of the 5257 would be inappropriate because the lesion is extra-articular and produces pain, not knee instability.

E2.A1.1.23.1.6. Stress reaction without radiographic evidence of fracture should be rated as periostitis under 5022.

E2.A1.1.23.2. Radiographic Evidence. At the time of the original MEB, a Service member may have pain not explained by routine radiographic examination. A bone scan, however, may reveal increased vascularity consistent with stress fracture or stress reaction. After a year, only routine radiographs are necessary to demonstrate that there is or is not evidence of a healed fracture. There is no need for a bone scan. If the Service member originally had a fracture, it will be evident on the radiograph. If the current radiographic is normal, then a fracture did not exist at the time of the MEB. The most likely diagnosis was stress reaction.

E2.A1.1.23.3. Service members who develop stress fractures, especially of the femoral neck, during basic training which prevents them from completing basic should be separated with appropriate rating as the injury most likely will recur when the Service member is recycled.

E2.A1.1.24. 5301-5326. Muscle Injuries

E2.A1.1.24.1. Pyramiding must be avoided. For example, separate ratings should not be given for an ankylosed joint and an injured muscle acting on that joint.

E2.A1.1.24.2. Ratings for bone and joint impairment should not be combined with ratings for muscle and nerve impairments affecting the same joint.

E2.A1.2. <u>6000 Series</u>

E2.A1.2.1. <u>6000-6092. Diseases of the Eye</u>

E2.A1.2.1.1. The adjudication of disabilities of the visual apparatus is difficult. In some cases involving a combination of defects, it may not be possible to arrive at an equitable percentage rating through literal application of the terms of the VASRD. The complexity of those conditions does not permit the construction of a simple schedule that is adequate for the variety of defects and resulting types and degrees of impairment that may occur. Here, the concept of "visual efficiency" may be helpful. Visual efficiency is the product of the interdependent relationship of all the functions of the ocular apparatus, of which the three principal ones are central visual acuity, field of vision, and muscle function. Since the estimation of visual efficiency, as such, is not provided by the VASRD as a means of determining a degree of disability, it is useful only to determine the Service member's real functional handicap so that an equitable rating in terms of the schedule can be recommended.

E2.A1.2.1.2. The VASRD provides that the combined disabilities of the same eye are not to exceed the rating for total loss of vision of that eye, unless there is an enucleation or a serious cosmetic defect added to the total loss of vision. Accordingly, where there is a cosmetic defect, even though limited to the eye with the visual loss, representing a separate and distinct entity, namely, facial disfigurement, a separate rating of 10, 30, or 50 percent is permitted under 7800 to be combined with the rating for visual loss or rating for enucleation.

E2.A1.2.1.3. Visual field defects must be reported according to the method prescribed in the VASRD, paragraphs 4.76 and 4.76a. Results of muscle function examinations should be reported in accordance with VASRD, paragraph 4.77. Reference to the AMA Guides to the Evaluation of Permanent Impairment (4th ed.) may assist in computing the extent of impairment.

E2.A1.2.1.4. When computerized techniques are used to determine the extent of diplopia, visual fields, or scotomata, the results must be interpreted in relation to the standard VASRD charts to render a rating.

E2.A1.2.2. <u>6000-6009. Conditions Involving Structures of the Globe</u>

E2.A1.2.2.1. Disabilities resulting from these conditions are rated as

follows:

E2.A1.2.2.1.1. STEP ONE:

E2.A1.2.2.1.1.1. Impairment of visual acuity is rated.

E2.A1.2.2.1.1.2. Impairment of field of vision is rated.

E2.A1.2.2.1.1.3. Active pathology, if present, is rated at 10 percent.

E2.A1.2.2.1.1.4. The higher of the ratings in (1) and (2) is combined with (3).

E2.A1.2.2.1.2. STEP TWO: Pain, rest requirements and/or episodic incapacity are rated from 10 to 100 percent. This rating, when only one eye is involved, is not necessarily limited to the 30 percent rating for total loss of vision of one eye, since pain or rest requirements may be incapacitating to any degree, including total. This rating is assigned the code which covers the basic condition (i.e., Code 6000 through 6009). Analogy to another code is not required. It is an estimate based as nearly as possible upon the actual impairment of social and industrial function which is imposed by the pain experienced, the time lost because of the requirement for rest, the frequency of incapacitating episodes, or any combination thereof. The additional rating of 10 percent for continuance of active pathology should not be combined with this rating.

E2.A1.2.2.1.3. STEP THREE: The higher of the ratings resulting from Steps One and Two, is awarded.

E2.A1.2.2.2. Retained foreign body is rated as active pathology as in Step One, above, if in a critical area or not stabilized. Otherwise, the rating is for residuals under Step Two.

E2.A1.2.3. 6013. Glaucoma, Simple, Primary, Noncongestive. The minimum rating is applicable if the diagnosis is satisfactorily established, whether or not visual acuity or field of vision has been affected. The rating is for the disease, rather than for functional impairment of an individual organ, and applied whether the disease progresses or not.

E2.A1.2.4. 6029. Aphakia, Process Involves One or Both Eyes. This condition is usually not unfitting. However, requirements of a particular military

occupational skill must be considered in making a fitness determination. If the member is determined unfit, the appropriate rating shall be applied. The condition, if corrected by successful prosthetic implants (pseudophakia), is not considered unfitting or ratable unless the prosthetics are specified as too unstable to withstand duty stress.

E2.A1.2.5. 6081. Scotoma, Pathological. The rating is 10 percent whether unilateral or bilateral. Other ratings may be combined with the reservation that the rating for one eye may not exceed 30 percent, unless there is enucleation or a serious cosmetic defect. Central scotoma cannot, however, be combined with central visual loss.

E2.A1.2.6. 6090-6092. Diplopia. The VASRD uses the Goldman Perimeter Chart to describe the location in the field of vision where diplopia occurs. The VASRD, under 6090-6092, converts the location in the field of vision where diplopia occurs to an equivalent visual acuity that then can be used in the final rating. The final rating is achieved by referring to VASRD Table V "Ratings for Central Visual Acuity Impairment". The equivalent visual acuity is substituted for the actual visual acuity of the worse eye (if visual acuity is the same in both eyes, one eye will arbitrarily be considered worse), and plotted against the actual visual acuity of the better eye. The intersecting box provides the percentage rating and the VASRD code.

E2.A1.2.7. 6309. Rheumatic Fever. When a member is determined to be unfit because of recurrence of disease, the member may be rated at zero percent (see VASRD paragraph 4.31) if there is no residual functional impairment. If residual functional impairment is diagnosed, the member shall be rated accordingly under the proper code.

E2.A1.2.8. 6350. Lupus Erythematosus, Systemic. Connective-tissue diseases, such as vasculitis, collagen disease, immune complex disease, and other disseminated diseases, not elsewhere covered, are to be rated under that code.

E2.A1.2.9. 6351. Human Immunodeficiency Virus Infection (HIV) and Acquired Immune Deficiency Syndrome

E2.A1.2.9.1. That is the only code used in rating HIV or AIDS.

E2.A1.2.9.2. The rating criteria shall be according to the VASRD. The Service member must be determined to be unfit because of that condition before

rating. Seropositivity alone is not unfitting.

E2.A1.2.10. <u>6354. Chronic Fatigue Syndrome</u>

E2.A1.2.10.1. These cases must meet the definition put forth by the National Institutes of Health (NIH Publication No. 92-484). Both major criteria and eight or more of the minor criteria must be met. "Incapacitation" means that the Service member requires bed rest and treatment by a physician.

E2.A1.2.10.2. An active duty Service member referred to the respective service DES (disability evaluation system) for Chronic Fatigue Syndrome must have been thoroughly evaluated. The referring MEB shall include a psychiatric evaluation, unit commander assessment, report of observation in a hospital setting, other observer (peers, et. al.) accounts, and interpretation of the results of (at least) the following laboratory tests: blood tests, including CBC; Differential; WBC; ESR; liver function tests; albumin; globin; calcium; phosphate; electrolytes; glucose; BUN; greatinine; thyroid studies, and urinalysis.

E2.A1.2.10.3. The fatigue symptoms may be part of the underlying psychiatric disorder. In such cases, the psychiatric disorder rather than Chronic Fatigue Syndrome should be assessed as the potentially unfitting condition. If the Service member is rated separately for Chronic Fatigue Syndrome <u>and</u> the psychiatric disorder, pyramiding would result. However, if the Service member has a psychiatric disorder that is clearly separate from a coexisting Chronic Fatigue Syndrome that is validly based on NIH diagnostic criteria, both conditions should be assessed and rated as to impact on fitness.

E2.A1.2.11. <u>6519. Aphonia, Organic</u>. Impairment of ability to speak may be ratable under more than one code, depending on the cause and severity of the impairment. In such instances, the highest applicable rating is awarded. This Instruction does not apply to speech impairment due to loss of whole or part of tongue that is rated under Code 7202.

E2.A1.2.12. <u>6600-6630. Disease of the Trachea and Bronchi</u>. Unless contra-indicated, pulmonary function tests, performed both with and without medication, must confirm the clinical diagnosis and severity (See Table 2). If the Service member's condition is subject to significant variation over time, a single clinical and pulmonary function evaluation may not be adequate. Response to therapy is to be considered in all cases. The following pulmonary function test values serve as guidelines in determining ratings (See Table 2).

E2.A1.2.13. <u>6701-6704; 6730-6732. Active Tuberculosis.</u> Active tuberculosis shall be rated under code 6730. All periods of time specified in the VASRD for the management of tuberculosis, active or inactive, apply only to the VA and do not apply to the military. Treatment and clinical response shall serve as the criteria for disposition. Rating for residuals shall be based on functional impairment.

E2.A1.2.14. <u>6721-6724; 6731. Inactive Pulmonary Tuberculosis</u>

E2.A1.2.14.1. <u>Determining Inactivity</u>. Pulmonary tuberculosis is considered to be inactive when:

E2.A1.2.14.1.1. There are no symptoms of tuberculous origin. Serial roentgenograms show stability or very slow shrinkage of the tuberculous lesion. There is no evidence of cavitation. Sputum or gastric washings show negative on culture or guinea pig inoculation. Those conditions shall have existed for at least 6 months.

E2.A1.2.14.1.2. Established by evaluation. That is usually, but not always, at the time the patient is declared to have received the maximum benefits of hospitalization.

E2.A1.2.14.1.3. Six months have passed since surgical excision of an active lesion during which time there shall have been no evidence of tuberculous activity in any body system.

E2.A1.2.14.2. <u>Chemotherapy</u>. Treatment by medication is frequently continued beyond the date when the disease becomes inactive according to the above criteria. The ending date of such treatment does not define the beginning of the inactive status.

E2.A1.2.14.3. <u>Rating Residuals</u>. A rating of 100 percent for 1 year after the date of attaining inactivity shall not be used. After the condition becomes inactive, residuals (e.g., impairment of pulmonary function, surgical removal or resection of a part) should be rated under the appropriate VA Code, subject to the limitations contained in paragraphs 4.96a and b of the VASRD.

E2.A1.2.15. <u>6803-6806, 6808. Mycotic Pulmonary Infections</u>. Active disease is rated by analogy to code 6821.

E2.A1.2.16. <u>6807. Aspergilloses of Lung</u>. That code refers only to invasive

aspergillosis or to aspergilloma. Active or recurrent allergic aspergillosis is rated by analogy to code 6602 (asthma) raised to next higher level (e.g., "mild" active aspergillosis would be rated as "moderate" asthma). Permanent residuals of allergic aspergillosis are rated analogous to code 6802.

E2.A1.2.17. <u>6810. Pleurisy, Serofibrinious</u>. Significant ventilatory impairment is rated as analogous to code 6811.

E2.A1.2.18. <u>6814. Pneumothorax</u>. The "100 percent 6 months" rating should not be applied. A known underlying condition may be rated. If there is none, rating may be analogy to emphysema (code 6603) or pneumoconiosis (code 6802).

E2.A1.2.19. <u>6815. Pneumonectomy</u>. Pneumonectomy is rated at 60 percent regardless of number of ribs removed. If, at a later date, thoracoplasty becomes necessary for obliteration of space within the thorax, the rating for pneumonectomy shall be combined with a rating removal of the ribs. Note (2), which follows code 5297 in the VASRD, provides rating guidance for a case of that type.

E2.A1.2.20. <u>6816. Lobectomy</u>. An entire lobe other than the right middle lobe must be removed for the defect to be ratable. Excision of the right middle lobe, segment resection, or lingulectomies are not ratable. Ratings are based on total body impairment.

E2.A1.2.21. <u>6847. Sleep Apnea Syndromes</u>. The VASRD lists four percentage rating options: 0%, 30%, 50%, and 100% under this code, corresponding to assessed levels of disability relative to civilian earning capacity due to Sleep Apnea. The following interpretation will apply:

| | |
|---|---|
| Total industrial impairment | 100% |
| Considerable industrial impairment | 50% |
| Definite industrial impairment | 30% |
| Mild industrial impairment | 0% |

E2.A1.3. <u>7000 Series Codes</u>

E2.A1.3.1. <u>7000 Series. Cardiovascular Disease</u>. (Tables 3 and 3a provide guidance for rating cardiac functional status.)

E2.A1.3.1.1. <u>Pyramiding Must be Avoided</u>. Only one rating should be given for all manifestations of cardiovascular or renal disease when, according to accepted medical principles, the conditions have the same origin or cause. For

example, hypertension and end organ nephropathy due to arteriosclerosis are related etiologically and may be regarded as one clinical entity. The disability should be rated under the code representing the predominant signs and symptoms. In some cases, the related manifestations in another body system will be so severe as to increase the Service member's overall impairment to the point that the next higher percentage under the selected code shall be justified. The note in the VASRD under code 7507 is pertinent.

E2.A1.3.1.2. <u>Criteria for Assigning Ratings Under These Codes are</u>:

E2.A1.3.1.2.1. The 100 percent rating. When more than sedentary employment is precluded. New York Heart Association Functional Therapeutic Class IV (NYHA FTC IV).

E2.A1.3.1.2.2. The 60 percent rating. When more than light manual labor is precluded as indicated by a NYHA FTC III heart or by congestive heart failure as established by a left ventricular ejection fraction reading in the low 20's.

E2.A1.3.1.2.3. The 30 percent rating. When more than ordinary manual labor is prevented, for instance, by NYHA FTC IIb heart.

E2.A1.3.1.3. Types of employment referred to, above, and used for rating purposes are:

E2.A1.3.1.3.1. <u>Sedentary Employment</u>. Work that is not time dependent.

E2.A1.3.1.3.2. <u>Light Manual Labor</u>. "Bench work" equivalents.

E2.A1.3.1.3.3. <u>Ordinary Manual Labor</u>. Leg, back, and arm effort; time dependent.

E2.A1.3.1.3.4. <u>Strenuous Labor</u>. Repetitive and rapid combined arm, leg and trunk effort.

E2.A1.3.1.4. <u>Valvular Heart Disease</u>. Valvular heart disease not of arteriosclerotic or hypertensive origin should be rated as rheumatic heart disease, code 7000 if the predominant symptoms are due to valvular pathology.

E2.A1.3.1.5. <u>Rheumatic Heart Disease</u>

E2.A1.3.1.5.1. A determination of existed prior to service for rheumatic heart disease may be justified even though its presence was not previously recorded. Such a determination shall depend upon the medical history and findings in the light of accepted medical principles. A stenotic valvular lesion, discovered early in military service, is an example.

E2.A1.3.1.5.2. A "definitely" enlarged heart is one in which there is positive evidence of enlargement beyond the "doubtful" or "borderline" enlargement that is sometimes reported when the presence of enlargement is uncertain. Voltage criteria alone are not acceptable as electrocardiographic evidence of definite enlargement. Enlargement of the heart shall be determined by objective evidence using appropriate measures other the electrocardiogram.

E2.A1.3.1.5.3. The 100 percent rating for active rheumatic heart disease for 6 months is not applicable.

E2.A1.3.2. <u>7005-7017. Disease of the Coronary Arteries, Surgical Procedures, and Trauma</u>

E2.A1.3.2.1. For Service members on active duty, to include those active duty for less than 31 days, myocardial infarction incurred during such periods shall be presumed "aggravated" by performing such duty. This presumption may be overcome when it can be shown by a preponderance of evidence that the condition was not aggravated by military service.

E2.A1.3.2.2. Coronary bypass surgery, valve prosthesis, or other cardiac surgery shall be rated on the extent of residual functional impairment when the condition is stable. If stability cannot be established, a period of TDRL should be considered.

E2.A1.3.2.3. <u>7015-7017; 7110. Surgical Procedures Associated with AV Block, Heart Valve Replacement, Aneurysms.</u> Convalescent ratings and ratings for specified periods of time following surgery do not apply. Ratings are based on the degree of functional impairment. However, maximum ratings do apply.

E2.A1.3.2.4. <u>7100. Arteriosclerosis, general.</u> The 20 percent rating under that code is rarely appropriate. It is preferable to rate impairment of the body system most involved by the disease.

E2.A1.3.2.5. <u>7114-7117. Peripheral Vascular Diseases</u>

E2.A1.3.2.5.1. The symptoms and signs of these conditions should be considered as manifestations of a systemic disease entity, wherein bilateral involvement of extremities is natural and expected. They are distinct from local mechanisms affecting peripheral circulation (for example, varicose veins or phlebitis) in which bilateral involvement is more nearly equivalent to coincidental duplication of the disease, rather than its direct extension.

E2.A1.3.2.5.2. When manifestations are limited to the extremities, the percentage of disability is based on the most severely affected extremity unless each of the two or more extremities separately meets the requirements for valuation in excess of 20 percent. In the latter case, 10 percent shall be added to (not combined with) the valuation for the more severely affected extremity, except where the disease has resulted in amputation. When both upper and lower extremities are involved, the above rating procedures are first applied to the upper extremities, then to the lower extremities. Ratings shall be combined if each group has a total rating in excess of 20 percent.

E2.A1.3.2.5.3. The bilateral factor applies in all cases of an amputation of one extremity with any compensable degree of disability of the other extremity.

E2.A1.3.2.5.4. A rating of 20 percent or less for a peripheral vascular disease should not be combined with any other peripheral vascular disease rating.

E2.A1.3.2.5.5. Peripheral vascular disease ratings for codes 7114 through 7117 are listed in table 4.

E2.A1.3.2.6. <u>7120 (7199-7120). Hypercoagulable states requiring chronic anticoagulation</u>

E2.A1.3.2.6.1. A minimum rating of 30 percent is given if there have been episodes of thrombophlebitis or emboli in the past year.

E2.A1.3.2.6.2. A zero percent rating is given if there have been no episodes of thrombophlebitis or embolus in the past year.

E2.A1.3.2.6.3. Higher ratings are based on residuals to emboli or thrombophlebitis.

E2.A1.3.2.7. <u>7305. Ulcer, Duodenal</u>. Medical and surgical management have been increasingly effective. Cases refractory to accepted medical therapy may

be determined unfit for continued active duty.

E2.A1.3.2.8. 7307. Gastritis, Hypertrophic. That diagnosis must be made by endoscopy. It should not be rated separately, however, if other conditions are present that produce a common impairment. A single valuation shall be assigned under the diagnostic code that reflects the predominant disability with elevation to the next higher rating if the severity of the overall disability warrants.

E2.A1.3.2.9. 7308. Postgastrectomy Syndrome. In evaluating and rating, care must be taken to differentiate between nondisabling symptoms or minor discomfort which sometimes result from overindulgence, such as that experienced from overeating by a person without a gastrectomy, and discomfort symptomatic of a true postgastrectomy syndrome. Circulatory or comparable symptoms, even though mild or intermittent, such as a need for rest after meals, are indicative of impairment that may be a basis for rating.

E2.A1.3.2.10. 7328-7329. Intestinal Resections. When portions of both large and small intestines have been removed, the rating should be done using the code that is most representative of the clinical manifestations.

E2.A1.3.2.11. 7332-7336. Ano-Rectal Conditions. Pilonidal cyst or sinus is primarily a disorder of ectoderm and shall be rated as a skin condition. However, when an active process is present the rating is by analogy to Code 5000.

E2.A1.3.2.12. 7338. Hernia, Inguinal. If correctable and there are not contra-indications to surgery, hernia is not ratable even if surgery if refused.

E2.A1.3.2.13. 7345. Hepatitis, Infectious

E2.A1.3.2.13.1. Acute infectious hepatitis will usually resolve without residual impairment. Liver function tests should return to normal.

E2.A1.3.2.13.2. Chronic persistent hepatitis is a condition with minimally disturbed histology and liver function tests. There is no persistent disability or progression, and both time and supporting evidence confirm that. Rating for residuals is seldom justified. Placement on the TDRL may be proper when the clinical and laboratory course (particularly in the presence of persistent antigenemia) indicates a need for continued observation to rule out chronic active hepatitis.

E2.A1.3.2.13.3. Chronic active hepatitis is a frequently progressive

condition that may or may not be associated with a demonstrable antigen. Since the course of the disease is often difficult to predict, placement on the TDRL may be proper before permanent disposition is made.

E2.A1.3.2.14. 7347. Pancreatitis. If diabetes is present, the predominant disease should be rated, with consideration given to the other, under a single code, to avoid pyramiding.

E2.A1.3.2.15. 7500-7542. The Genitourinary System

E2.A1.3.2.15.1. The VASRD has published a new rating scheme for disabilities related to the genitourinary system based on renal or voiding dysfunctions, infections, or a combination of these. The major areas of rating are as follows:

E2.A1.3.2.15.1.1. Renal dysfunction

E2.A1.3.2.15.1.2. Voiding dysfunction

E2.A1.3.2.15.1.2.1. Urinary frequency

E2.A1.3.2.15.1.2.2. Obstructed voiding

E2.A1.3.2.15.1.3. Urinary tract infection

E2.A1.3.2.15.2. 7500-7531. The Genitourinary System. Sterility and impotence are not ratable entities. Anatomical loss of procreative organs shall not be rated.

E2.A1.3.2.15.3. 7500-7509. Upper urinary tract. In assessing impairment of the upper urinary tract, the endogenous creatinine clearance tests serve as guidelines for evaluating renal function. Normal creatinine clearance is 80-139 milliliters (ml)/minute in men and 80-125 ml/minute in women. (See Table 5).

E2.A1.3.2.15.4. 7512. Total Incontinence. Incontinence may be rated as bladder fistula, 100 percent, when use of an appliance is unsatisfactory or not feasible.

E2.A1.3.2.15.5. 7526. Prostate Resection. In order to be ratable, there must be symptoms and objective evidence of impairment.

E2.A1.3.2.15.6. 7528. New growths, Malignant, Any Specified Part of Genitourinary System. Some malignant tumors of the genitourinary tract are subject to cure, even if widespread metastases have taken place. Completion of treatment and follow-up on active duty are desirable. If adverse reaction to treatment or persistent evidence of tumor activity interfere with duty, TDRL may be considered. In those instances when specific tumors are refractory to all treatment, final disposition should be made.

E2.A1.3.2.15.7. 7542. Neurogenic Bladder. The number of required catheterizations or number of changes of absorbent pads per day should be listed to ascertain the functional impairment.

E2.A1.3.2.16. 7600-7627. Gynecological Conditions

E2.A1.3.2.16.1. The VASRD has rating criteria for unfitting gynecological conditions that include endometriosis and removal of the mammary gland(s) or segments of the mammary gland.

E2.A1.3.2.16.2. 7617, 7618, 7619. Procreative Organs. Loss of procreative organs is not ratable. Only significant disqualifying residuals should be rated.

E2.A1.3.2.16.3. 7626-7627. Mammary Gland Removal. Not all Service members who have had mastectomies for malignancy are unfit. Unfitness is based on residual impairment of the arm or chest wall or effects of radiation or other treatment. The 100 percent rating in the VASRD does not apply in cases in which the Service member does not have evidence of metastasis.

E2.A1.3.2.17. 7703. Leukemia. Leukemia requiring the use of chemotherapeutic agents is rated analogous to leukemia requiring irradiation or transfusion. Although some prolonged remissions and "cures" are being achieved with acute leukemia, temporary retirement should be considered in most cases at a maximum rating. Service members with chronic leukemia who require treatment are often fit for prolonged periods of time with few profile restrictions. Such cases must be individually judged on their merits. The principles noted below under 7709, paragraph (E2.A1.3.2.19.2.), should be considered in leukemia cases.

E2.A1.3.2.18. 7705-7706. Purpura Hemorrhagica; Splenectomy. Only residuals, if any, of the basic condition leading to the splenectomy should be rated.

E2.A1.3.2.19. 7709. Lymphogranulomatosis (Hodgkin's Disease)

E2.A1.3.2.19.1. Clinical staging serves as a general guide for treatment, rating, and disposition of Hodgkin's Disease. Table 6 can be used with the understanding that many advances in treatment that may permit exceptions are taking place.

E2.A1.3.2.19.2. Prolonged remissions and cures, even with salvage treatment, are becoming more commonplace. Regardless of the pretreatment stage of the disease, retention on active duty during treatment, or return to active duty after treatment on the TDRL may be possible. Intensive treatment, however, may be extremely traumatic. Degradation of both physical and mental functions may be disabling for varying periods of time. Final disposition must be individualized according to both subjective and objective residuals.

E2.A1.3.2.20. 7714. Sickle Cell Anemia. The VASRD rates all the manifestations of sickle cell disease and its variants. Individuals with the more severe hemoglobinopathies are not acceptable for entry into the Military Services. Policies concerning line of duty and Service aggravation apply.

E2.A1.3.2.21. 7716. Aplastic Anemia. That is a new ratable condition. A Service member scheduled for transplantation shall be rated after the transplant.

E2.A1.3.2.22. 7801-7802. Scars, Burns. When calculating burn areas, Plate IV, Table 7 and the following measurements may be of assistance:

| | | |
|---|---|---|
| Average 70kg (150 lbs) male body surface | = | 1.7m2 |
| 2636 in2 | = | 18.3 ft2 |
| 1 meter | = | 39.375 inches |
| 1 meter2 | = | 1550.4 in2 |

E2.A1.3.2.23. 7913. Diabetes Mellitus

E2.A1.3.2.23.1. The format published by the National Diabetes Group shall serve as the basis for classifying diabetes mellitus (DM). The severity of each case should be individualized taking into consideration the expected natural course of the disease variants. Insulin dosage is not a good indicator of severity and is only one factor to consider in the overall evaluation of the disease. Response to specific therapy, diet, activity, compliance, and time are all important. With adequate compliance, many diabetics are fit with minimum restrictions. That is particularly

true of type II DM (noninsulin dependent), even though insulin is prescribed for optimum control. Young adults with type I DM (insulin dependent) are not a good risk for retention.

E2.A1.3.2.23.2. If unfitness derives, in part, from documented non-compliance with prescribed treatment, including diet and weight control, the assigned rating should not be higher than the disease would warrant if under prescribed treatment.

E2.A1.3.2.23.3. DM controlled by diet and oral medication, without a need for daily insulin, and that does not impair health or vigor, or cause significant limitation of activity, is considered to be mild, if unfitting.

E2.A1.3.2.23.4. Ratings must reflect the severity of the DM, as such. Undue importance should not be given to early or questionable complications. That is particularly true in considering ratings of 60 percent or above. In most instances, a lower rating should be given. Complications such as vascular insufficiency, visual defects, pruritis, and neuropathies should be rated separately. The presence of early or questionable complications in otherwise less than severe DM does not automatically warrant a higher rating.

E2.A1.4. <u>8000 Series Codes</u>

E2.A1.4.1. <u>8000-8412. Organic Disease of the Central Nervous System</u>

E2.A1.4.1.1. Careful correlation of the footnote under 8046 with the italicized introduction to 8000-8046 should enable Boards to select the proper rating approach. In some of those conditions, the minimum rating may be awarded on the basis of the diagnosis alone, whether or not there are residuals. In others, the minimum rating may be awarded only if there are residuals. If such cases have neither residuals capable of objective verification nor subjective residuals which are credible, consistent with the disease, and are not more likely attributable to other disease, the condition should be ratable at zero percent, if the Service member is unfit.

E2.A1.4.1.2. <u>8007-8009. Brain Vessels</u>. The six-month convalescent rating does not apply. In many of these cases, the danger of disastrous recurrences justifies a rating (of residuals) sufficiently liberal to provide temporary retirement and subsequent re-evaluation.

E2.A1.4.1.3. <u>8017-8018, 8023-8025. Degenerative Disorders of the</u>

Central Nervous System. Combined ratings may be assigned under those codes with the bilateral factor added.

E2.A1.4.1.4. 8100. Migraine. "Prostrating" means that the Service member must stop what he or she is doing and seek medical attention. The number of prostrating attacks per time period (day, week, month) should be recorded by a neurologist for diagnostic confirmation. Estimation of the social and industrial impairment due to migranious attacks should be made.

E2.A1.4.1.5. 8108. Narcolepsy. The VASRD defers the determination of disability ratings to code 8911 (epilepsy, petit mal). The latter code lists five percentage rating options for minor seizures: 10%, 20%, 40%, 60%, and 80% corresponding to assessed levels of disability relative to civilian earning capacity due to subject condition. The following interpretation will apply:

| | |
|---|---|
| Profound industrial impairment | 80% |
| Severe industrial impairment | 60% |
| Considerable industrial impairment | 40% |
| Definite industrial impairment | 20% |
| Mild industrial impairment | 10% |

E2.A1.4.1.6. 8205-8412. Diseases of the Cranial Nerves. There is provision for combined ratings under these codes when there is bilateral involvement, but without the addition of the bilateral factor.

E2.A1.4.2. 8510-8730. Disease of the Peripheral Nerves

E2.A1.4.2.1. Cases that are rated based on residuals should be adjudicated on the basis of impairment of function rather than on anatomical diagnosis. For example, a complete paralysis of the circumflex nerve of the major extremity carries a 50 percent rating under 8518. In many cases, however, abduction of the arm when the circumflex nerve is paralyzed is possible because other muscles take over the function of the paralyzed muscles. To warrant the 50 percent rating, the Service member's residual loss of function must actually include all the defects listed under 8518. When other muscles have taken over the function of the circumflex-innervated deltoid, the residual loss of function is properly ratable under 5201, "limitation of arm motion", or 5303, "muscle injury, Group III", whichever better reflects the predominant impairment. Careful documentation of evaluations are required before assigning a rating for paralysis that would equal that for amputation of the innervated area. For example, cases of "paralysis of the common peroneal nerve with foot drop", 8521, should be rated in terms of loss of function.

"Amputation below the knee", 5165, is ratable at 40 percent. In order to warrant a similar rating for peroneal palsies, there must be sufficiently severe symptoms, such as trophic and circulatory changes and other concomitants, to make the functional impairment reasonably equivalent to loss of foot.

E2.A1.4.2.2. Service members with paralysis of an extremity or hemiparesis shall be rated according to the Table of Analogous Ratings. Codes are as follows:

E2.A1.4.2.2.1. 8599 - 8513 - Paralysis of upper extremity

E2.A1.4.2.2.2. 8599 - 8520 - 8526 - Paralysis of lower extremity

E2.A1.4.2.3. 8599. Scalenus Anticus Syndrome. That syndrome is rated by analogy with the lower radicular group (8512), or less commonly, with either erythromelalgia (7119) or Raynaud's Disease (7117), depending upon predominant symptoms and overall functional impairment.

E2.A1.4.3. 8910-8914. Epilepsies

E2.A1.4.3.1. Service member must be evaluated and the diagnosis made by a neurologist.

E2.A1.4.3.2. The number of seizures each time frame (day, week, and month) must be recorded.

E2.A1.4.3.3. Attacks following omission of prescribed medication or the ingestion of alcoholic beverages are not indicative of the controllability of the disease and are not relevant to the determination of seizure frequency for rating purposes.

E2.A1.4.3.4. Estimation of the social and industrial impairment due to the seizure activity should be made.

E2.A1.4.3.5. Seizures that occur during sleep ("nocturnal seizure") are not relevant to the determination of seizure frequency unless they can be shown to significantly impair industrial adaptability.

E2.A1.5. 9000 Series Codes

E2.A1.5.1. 9200-9511. Mental Disorders

E2.A1.5.1.1. Functional Impairment. Loss of function is the principal criterion for establishing the level of impairment resulting from mental illness. Loss of function is reflected in impaired social and industrial adaptability. Psychoses specifically include disorders manifesting disturbances of perception, thinking, emotional control, and behavior, severe enough to hinder economic adjustment, that is, hinder the Service member's capacity to perform military duties or to earn a living. Even psychosis, however, may resolve such that the impact on economic adjustment is minimal to none.

E2.A1.5.1.1.1. In rating impairment of social and industrial capability, if any, a comparison must be made between pre- and post-illness adjustment. All pertinent information provided by the MEB and TDRL interim examination done by the examining physicians and other competent medical authorities should be reviewed before arriving at a final determination. Inconsistencies between the clinical data (history, mental status, hospital course, and present condition) and the diagnosed psychiatric condition, or between data provided by different physicians must be resolved before a final rating decision. Action taken to resolve these difference should be documented in the proceedings.

E2.A1.5.1.1.2. Assessing the degree of permanent impairment resulting from a psychotic process is often difficult during the weeks immediately following an acute episode. Sometimes a Service member's period of intensive in-hospital treatment has not been completed at the time of the initial MEB. With the passage of time, the clinical picture often becomes stable. The degree of permanent impairment may then be estimated more accurately.

E2.A1.5.1.2. Social impairment. Information that relates to social impairment includes, but is not limited to, the following:

E2.A1.5.1.2.1. Living arrangements (by oneself, with parents and siblings, or with wife and children).

E2.A1.5.1.2.2. Marital status (single, married, separated, or divorced, and the type of relationship (harmony or strife)).

E2.A1.5.1.2.3. Leisure activity (sports, hobbies, TV, reading, sleeping).

E2.A1.5.1.2.4. Acquaintances (male, female, both sexes, many, few).

E2.A1.5.1.2.5. Substance use or abuse (alcohol and/or illicit drugs).

E2.A1.5.1.2.6. Police record.

E2.A1.5.1.3. Industrial Impairment. Information that relates to industrial impairment includes, but is not limited to, the following:

E2.A1.5.1.3.1. Job stability (unemployed, part-time work, full-time job, quit, fired, or promoted).

E2.A1.5.1.3.2. Type of job (menial, responsible, OJT, technical, for a relative, or for a private employer).

E2.A1.5.1.3.3. Schooling (grade, technical, academic, high school, college, or postgraduate).

E2.A1.5.1.4. Additional Factors. Other factors that bear on social and industrial adaptability include, but are not limited to, the following:

E2.A1.5.1.4.1. Mental Competency. The MEB should include a statement as to whether the Service member is competent to handle his or her financial affairs, and to participate in Board proceedings.

E2.A1.5.1.4.2. Level of Supervision. There are several levels of supervision. The most disabling is constant hospitalization. Constant supervision at home or intermittent and repeated hospitalizations are disabling factors to be considered. Being placed in one's own custody suggests that a lower level of supervision, if any, is required.

E2.A1.5.1.4.3. Contact with Reality. Certain Service members have lost all contact with reality and cannot tell fact from fantasy. Dreams, imaginations, delusions, and hallucinations are just as real to certain Service member as actual events. The quality of loss of contact with reality as well as quantity of time that the Service member is not in contact with reality are factors to be considered.

E2.A1.5.1.4.4. Potential for Harm. At times, individuals suffering from mental disorders may be dangerous to themselves or to others. They may be homicidal, suicidal, or violently destructive to property. Their judgment may be so impaired that they could jeopardize or destroy a family, business, or themselves, financially, socially, and legally.

E2.A1.5.1.4.5. The degree of industrial and industrially related social

impairment is influenced by the number and intensity of signs or symptoms of mental disorders. Those signs or symptoms may be overtly apparent or they may be subtle and apparent only to skilled examiners. Their significance must be carefully evaluated. A partial list of the more common signs or symptoms include autism, ambivalence, inappropriate affect, dissociative thinking, bizarre behavior, delusions, hallucinations, pronounced anxiety, hyperactivity, depression, disorientation, emotional lability, memory defects, unfounded somatic complaints, phobias, compulsions, lack of insight, and poor judgment.

E2.A1.5.1.4.6. Medication or Psychotherapy. The type of (potent or mild), the amount (large or small doses) and the route of administrations of medication as well as the frequency (daily, weekly, or as needed) should be considered. The frequency of psychotherapy and by whom administered (psychiatrist, psychologist, social worker, nurse) also should be considered. The fact that a Service member is receiving medication and/or psychotherapy does not automatically equate with a certain level of disability.

E2.A1.5.1.5. VASRD Classification. The VASRD uses specific terms to classify the level of social and industrial impairment. Those are further characterized below for ratings under 9201 through 9511.

E2.A1.5.1.5.1. Total at 100 percent.

E2.A1.5.1.5.1.1. Usually mentally incompetent to handle financial affairs and to participate in PEB proceedings.

E2.A1.5.1.5.1.2. Usually hospitalized; rarely in care of next of kin or guardian.

E2.A1.5.1.5.1.3. Actively psychotic, and often totally out of contact with reality.

E2.A1.5.1.5.1.4. Requires constant supervision and care.

E2.A1.5.1.5.1.5. Significant potential to be harmful to self or others.

E2.A1.5.1.5.1.6. Employability limited to sheltered supervised settings.

E2.A1.5.1.5.1.7. Incapable of any social adjustment.

E2.A1.5.1.5.2. Severe at 70 percent.

E2.A1.5.1.5.2.1. Usually financially mentally competent and capable of cooperating in PEB proceedings but occasionally may be incompetent.

E2.A1.5.1.5.2.2. Usually hospitalized, but often in care of next of kin or guardian.

E2.A1.5.1.5.2.3. Actively psychotic, but may have intermittent contact with reality.

E2.A1.5.1.5.2.4. Requires supervision approximately 50 percent or more of the time.

E2.A1.5.1.5.2.5. Some potential to be harmful to self or others.

E2.A1.5.1.5.2.6. Unemployable

E2.A1.5.1.5.2.7. Evidence of minimal social adjustment.

E2.A1.5.1.5.3. Considerable at 50 percent.

E2.A1.5.1.5.3.1. Nearly always mentally competent to handle financial affairs and to participate in PEB proceedings.

E2.A1.5.1.5.3.2. Overtly displays some signs or symptoms of mental illness such as: autism, ambivalence, inappropriate affect, dissociative thinking, delusions, hallucinations, hyperactivity, depression, lack of insight, poor judgment, bizarre behavior, disorientation, emotional lability, memory defects, unfounded somatic complaints, phobias, compulsions, decreasing IQ, and personality changes.

E2.A1.5.1.5.3.3. Requires constant medications or psychotherapy.

E2.A1.5.1.5.3.4. Suffers extreme job instability (not due to substance abuse, economic conditions, personality disorders, etc.).

E2.A1.5.1.5.3.5. Suffers significant industrially related social maladjustment (not due to substance abuse, economic conditions, personality disorders, etc.).

E2.A1.5.1.5.3.6. May demonstrate a significant requirement for hospitalization.

E2.A1.5.1.4.4. Definite at 30 percent.

E2.A1.5.1.4.4.1. Does not demonstrate a significant requirement for hospitalization.

E2.A1.5.1.4.4.2. Displays some signs or symptoms of mental illness on examination.

E2.A1.5.1.4.4.3. Usually requires medication and/or frequent psychotherapy.

E2.A1.5.1.4.4.4. May experience some job instability.

E2.A1.5.1.4.4.5. Evidences borderline social adjustment.

E2.A1.5.1.4.5. Mild at 10 percent

E2.A1.5.1.4.5.1. Maintains an adequate job adjustment.

E2.A1.5.1.4.5.2. Maintains an adequate social adjustment.

E2.A1.5.1.4.6. Full remission at zero percent.

E2.A1.5.1.4.6.1. Symptom free.

E2.A1.5.1.4.6.2. Requires only interval medical supervision.

E2.A1.5.1.4.6.3. Has an acceptable work record, if employed.

Table 8 has been compiled to assist in the determination of functional impairment. Terminology is consistent with the "Diagnostic and Statistical Manual of Mental Disorders IV". It is viewed as an aid rather than a prescription.